EXHIBIT D

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| **NOTICE TO DEFENDANT:** *(AVISO AL DEMANDADO):* | i360, LLC, a Delaware Limited Liability Company; GC STRATEGIES, LLC, a California Limited Liability Company; JOSEPH LEVENTHAL, an individual; and DOES 1-1,000 , |

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**05/26/2021 at 02:05:54 PM**
Clerk of the Superior Court
By Carolina Miranda,Deputy Clerk

| | |
|---|---|
| **YOU ARE BEING SUED BY PLAINTIFF:** *(LO ESTÁ DEMANDANDO EL DEMANDANTE):* | Jennifer Tag, on behalf of herself and all others similarly situated, and the general public , |

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | Hall of Justice 330 West Broadway San Diego, California 92101 | **CASE NUMBER:** *(Número del Caso):* 37-2021-00023265-CU-CR-CTL |
|---|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Ronald A. Marron, Law Offices of Ronald A. Marron, APLC,651 Arroyo Drive, San Diego, California 92103

| DATE: *(Fecha)* | 05/27/2021 | Clerk, by *(Secretario)* | C. Avila | , Deputy *(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: i360, LLC

under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☒ other *(specify)*: LLC
4. ☒ by personal delivery on *(date)*: 5/28/2021

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 *www.courts.ca.gov* |
|---|---|---|

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[ Print this form ]   [ Save this form ]                    [ Clear this form ]

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
LILACH HALPERIN (SBN 323202)
*lilach@consumersadvocates.com*
ELISA PINEDA (SBN 328285)
*elisa@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Attorneys for Plaintiff and the Proposed Class*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF SAN DIEGO**

| | |
|---|---|
| JENNIFER TAG, on behalf of herself, all others similarly situated, and the general public, | Case No.: |
| | **CLASS ACTION** |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF:** |
| v. | |
| i360, LLC, a Delaware Limited Liability Company; GC STRATEGIES, LLC, a California Limited Liability Company; JOSEPH LEVENTHAL, an individual; and DOES 1-1,000, | 1. **Negligence** |
| | 2. **Public Disclosure of Private Facts** |
| | 3. **Invasion of Privacy, Cal. Const. Art. 1, § 1** |
| | 4. **California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200** |
| Defendants. | |
| | **DEMAND FOR JURY TRIAL** |

- 1 -

Class Action Complaint

Plaintiff Jennifer Tag ("Plaintiff"), on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, hereby brings this Class Action against Defendant i360, LLC ("i360"), Defendant GC Strategies, LLC ("GC Strategies"), and Defendant Joseph Leventhal ("Joe Leventhal") (collectively, "Defendants") to obtain actual and punitive damages, pre- and post-judgment interest, injunctive relief, restitution, and a declaration that Defendants' actions were unlawful as further set forth below.  Plaintiff alleges the following based upon personal knowledge as to herself and her own acts, and on information and belief as to all other matters, investigation conducted by and through her counsel.

## NATURE OF THE ACTION

1.     "It is the intent of the Legislature that a voter be fully informed of the permissible uses of personal information supplied by him or her for the purpose of completing a voter registration affidavit."  Cal. Elec. Code § 2157.1.

2.     The personal information that Californian voters supply on their voter registration affidavit, including their home address, telephone number, and email address, is confidential and shall not be disclosed except for limited exceptions so as to protect against unauthorized disclosures of confidential information.

3.     The disclosure of a Californian voter's personal information shall only occur upon submission of an application to the Secretary of State and only be used for the specific purposes permitted by law and approved by the Secretary of State.

4.     Californian law reflects the established principal that individuals have a substantial privacy interest in the personal information included on each voter's registration affidavit.

5.     In spite of this, Defendant i360, LLC and Defendant GC Strategies, LLC have a pattern and practice of profiting from the sale and distribution of Californian voters' personal information in violation of Californian voters' privacy rights.

Class Action Complaint

1    6.    Defendant Joe Leventhal knowingly aided this pattern and practice by
2  obtaining Californian voters' personal information from Defendant i360 in violation
3  of Californian voters' privacy rights.

4    7.    Plaintiff Jennifer Tag uncovered Defendants' wrongful conduct after
5  Plaintiff discovered that a campaign worker for the 2020 City Council candidate for
6  the City of San Diego, Defendant Joe Leventhal, obtained Plaintiff's personal
7  information from Defendant i360 in violation of applicable state laws.

8    8.    Plaintiff further uncovered an agreement between Defendants GC
9  Strategies and i360 whereby GC Strategies profits from i360's wrongful conduct by
10  applying and obtaining California voter registration information on i360's behalf.

11    9.    Upon obtaining the voter registration information from GC Strategies,
12  Defendant i360 distributes and sells Californian voters' personal information to
13  countless other political candidates, campaigns, and organizations, which make up
14  i360's clientele, including Defendant Joe Leventhal.

15    10.    Defendants have a duty to comply with state laws relating to the
16  application for and use of Californian voters' personal information.  Compliance with
17  these laws is necessary to ensure the safety and privacy of each Californian voter.

18    11.    Defendants i360 and GC Strategies failed to uphold their duty when they
19  sold Californian voters' information to i360's clients without obtaining the prior
20  express approval from the California Secretary of State.

21    12.    Defendant Joe Leventhal failed to uphold his duty to comply with state
22  laws relating to the application for and use of Californian voters' personal
23  information when he unlawfully purchased said information from i360 and
24  disseminated this information to his committee workers.

25    13.    Upon information and belief, Plaintiff alleges Defendant i360
26  wrongfully distributes and sells Californians' personal information to countless others
27  which make up i360's clientele.

28

- 3 -

Class Action Complaint

14.     Accordingly, Plaintiff brings this class action on behalf of herself and on behalf of all others similarly situated and the general public and asserts the following causes of action: negligence; public disclosure of private facts; invasion of privacy under Cal. Const. Art. 1, § 1; and violations of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200 *et seq.*

## JURISDICTION AND VENUE

15.     Jurisdiction is proper in the Superior Court of San Diego pursuant to California Code of Civil Procedure § 410.10 because Defendant Joe Leventhal resides in California and because Defendants GC Strategies and i360 have substantial, continuous and systematic contacts with the State and have purposefully availed themselves of the benefits and privileges of conducting business activities within the State of California. GC Strategies is registered to do business in California as a limited liability company under entity number 201815010176, and its only listed member, Cameron Wessel, resides in California. i360 obtains and sells California voter registration data to political candidates and committees in the State of California.

16.     This Court has both general and specific personal jurisdiction over Defendants because Defendants have affirmatively established and maintained sufficient contacts with the State of California and conduct significant business in California and otherwise intentionally avail themselves to the markets in California, including the collection, distribution, and sale of voter data in this District and in California. This Court has specific personal jurisdiction arising from Defendants' decision to obtain, distribute, and sell Californian voter data. Furthermore, Defendant Joe Leventhal is a resident of California.

17.     Venue is proper in this Court because Plaintiff's claims alleged herein arose in the County of San Diego, including, specifically, the distribution and sale of Plaintiff's and Class Members' personal information. Venue is also appropriate here because Defendants GC Strategies and i360 obtain and sell California voter

- 4 -

Class Action Complaint

1   registration data, including the Plaintiff's information, within the County of San

2   Diego.  Lastly, upon information and belief, venue is also appropriate here because

3   Defendant Joe Leventhal resides within the County of San Diego as this is a

4   requirement that he was subjected to in order to run for City Council for the City of

5   San Diego during the 2020 elections.  *See How To Run for Office,*

6   https://www.sandiego.gov/sites/default/files/how-to-run-for-office.pdf (to be eligible

7   to run for City Council, candidate must be registered to vote in the district where the

8   candidate wants to serve and upon taking any office, candidate must be a resident of

9   the appropriate jurisdiction).

10                            **PARTIES**

11       18.    At all times alleged herein, Plaintiff Jennifer Tag, individual, was a

12   citizen and resident of San Diego, California and was registered to vote in the State of

13   California.  Each of the allegations that gave rise to Plaintiff's claims against

14   Defendants arose while she was a citizen and resident of San Diego, California and

15   was registered to vote in the State of California.

16       19.    Defendant i360, LLC is a Delaware limited liability company that

17   collects, markets, advertises, and sells voter data in California and throughout the

18   United States.  i360 maintains its principal place of business at 2300 Clarendon

19   Boulevard, Suite 800, Arlington, Virginia, 2201-0000.

20       20.    Defendant GC Strategies, LLC is a California limited liability company

21   that specializes in political, marketing, and public relations consulting services.  GC

22   Strategies has a contractual agreement with Defendant i360 to apply for Californian

23   voter registration information on i360's behalf.  GC Strategies maintains its principal

24   place of business at 9087 Arrow Route, Suite 210, Rancho Cucamonga, California

25   91730.  GC Strategies' only listed member is Cameron Wessel, who resides at 7922

26   Day Creek Boulevard, No. 6314, Rancho Cucamonga, California 91739.

27       21.    Defendant Joe Leventhal is a citizen and resident of San Diego,

28   California and was a political candidate for San Diego City Council in 2020.  Joe

- 5 -

Class Action Complaint

1 | Leventhal was a former member of the San Diego County Ethics Commission from
2 | 2017-2018.   Joe Leventhal willfully and knowingly authorized the purchase of
3 | California voter registration information from i360 in violation of state law in his
4 | official capacity as the agent of his candidate-controlled committee, Leventhal for
5 | Council 2020. *See* Cal. Govt. Code § 82016(a) (defining "controlled committee" as a
6 | committee directly or indirectly controlled by a candidate in connection with the
7 | making of expenditures); *see also* **Exhibit A** [listing Leventhal for Council 2020 as a
8 | "candidate controlled committee"] at p. 2.

9 | 22.   The true names and capacities of Defendants sued as Does 1 through
10 | 1,000 are unknown to Plaintiff at this time.   Plaintiff therefore sues said Defendants
11 | by such fictitious names.  Plaintiff will amend this Complaint to allege the true names
12 | and capacities of Does 1 through 1,000 when ascertained.  Plaintiff is informed and
13 | believes, and thereupon alleges, that each of the Doe Defendants, jointly and
14 | severally, are in some manner responsible for the damages alleged herein.   Any
15 | reference to "Defendant" includes Doe 1 though 1,000, inclusive.

16 | **AGENCY; AIDING AND ABETTING; AND CONSPIRACY**

17 | 23.   At all times relevant thereto, Defendants, and each of them, were acting
18 | as the agents, employees or representatives of each other, and were acting within the
19 | course and scope of their agency and employment with the full knowledge, consent,
20 | permission, authorization and ratification, either express or implied, of each of the
21 | other Defendants in performing the acts alleged in this Complaint.

22 | 24.   As members of the conspiracies alleged more fully below, each of the
23 | Defendants participated or acted with or in furtherance of such conspiracy and have
24 | performed acts and made statements in furtherance of the conspiracy and other
25 | violations of California law.   Each Defendant acted both individually and in
26 | alignment with the other Defendants with full knowledge of their respective wrongful
27 | conduct.   Defendants thus conspired together, each building upon the other's
28 |

Class Action Complaint

1  wrongdoing in order to accomplish the bad acts of Defendants identified in this
2  Complaint.

3      25.    Defendants are individually sued as principals, participants, aiders and
4  abettors, and co-conspirators in the wrongful conduct identified in this Complaint.
5  Each Defendant has engaged in all or part of the improper acts, plans, scheme,
6  conspiracies or transactions complained of herein.

7                              **FACTUAL ALLEGATIONS**
8      **a. Defendant i360**

9      26.    Defendant i360 is in the business of "harvest[ing] troves of data to build
10 profiles of every voter and potential voter in the country."  Source: *Koch Data*
11 *Mining Company Helped Inundate Voters With Anti-Immigrant Messages*, Lee Fang,
12 THE INTERCEPT, Sept. 9, 2019  https://theintercept.com/2019/09/09/koch-anti-
13 immigrant-data-i360/ (last accessed May 21, 2021).

14     27.    i360 was founded by Charles Koch "in the aftermath of the 2012
15 election, in which Republican candidates favored by Koch fared poorly . . . i360 was
16 envisioned as a way to revolutionize right-wing pressure campaign and election
17 efforts by incorporating the latest in data science." *Id.*

18     28.    The company "serves as a data warehouse and data resource vendor to
19 its customers, candidates, and political committees."  *See* **Exhibit B**, at p. 2
20 [Defendant i360's Response to FEC Complaint].

21     29.    "i360, at its core, is a commercial data vendor selling data from its data
22 library of over 190 million voters and 250 million American consumers, including
23 hundreds of aggregate data points on such individuals, as well as proprietary
24 predictive modeling data." *Id.*

25     30.    The foundation of i360's database library is the personal information
26 obtained from voter registration files maintained by Secretaries of States. *Id.* at p. 6
27 ("One thing that has not changed with the recent data analytics boom, though, is that
28

'[t]he foundation of voter databases is the publicly available official voter files maintained by Secretaries of State.'") (citation omitted).

31.    i360 self-describes the voter registration files it obtains from Secretaries of State as being "publicly available." *Id.*

32.    <u>This is false</u>. In California, voter registration files are "confidential and shall not be disclosed to any person, except pursuant to Section 2194 of the Elections Code." Elec. Code § 6254.4.

33.    Yet i360 describes its database library as being "akin to an enhanced phone book" that can be accessed by each of its clients. *See* **Exhibit B**, at p. 9 ("In other words, it is the end-user customer who ultimately decides what to select from the i360 data library."); *id.* at p. 13.

34.    "i360's service can also be viewed in the same light as Lexis or Westlaw – each contain massive amounts of information, but it is the end-user who must decide what to pull, what to emphasize and how to use it in an end-product." *Id.* at p. 6, n3.

35.    "For example, [an i360] customer could pull or select a list of all female registered voters in Baltimore. A customer could further refine their pull to all female registered voters in Baltimore who are registered Democrat yet appear to be pro-life under the age of 35." *Id.* at p. 8.

36.    i360's clients may also upload their own data, which i360 will then use "to further refine and tag i360's already-existing data library and the predictive models it contains." *Id.* at p. 9.

37.    In sum, the "i360[] database constitutes a library of factual, qualitative information, available to be accessed and used by its clients on their own prerogative." *Id.* at p. 23.

38.    "i360 employs a number of data scientists to maintain the database and proprietary modeling algorithms based on a multitude of individual data points. As in

- 8 -

Class Action Complaint

any statistically-based endeavor, there is . . . a powerful corollary incentive for obtaining as much data as possible[.]" *Id.* at p. 7.

39.     The incentive to collect as much data as possible led i360 to form a data sharing agreement with another data company called Data Trust.

40.     As it does with other commercial data resources, i360 entered into a business deal with Data Trust, another commercial vendor which possessed commoditized data that could be useful to the existing i360 data library and predictive models, and thus improve i360's product. *Id.* at p. 10.

41.     i360 and Data Trust announced the agreement in late August of 2014. The goal of the arrangement was to give each entity's clients access to more and better data by sharing and updating data across each entity's respective voter database. Source: FEC Complaint Against i360, LLC, MUR # 6888, at p. 5, Oct. 23, 2014, https://www.fec.gov/files/legal/murs/6888/16044391307.pdf (last accessed May 21, 2021).

42.     Pursuant to the terms of the agreement, "[c]lients of either The Data Trust or i360 can improve the data shared with all clients. For example, if a client of either company conducting voter outreach identifies a voter attribute or preference, clients of the other organization will benefit from that information. As a result, conservative groups and campaigns will have more information about voters at their disposal for their own activities than ever before." *Id.* at p. 5-6.

43.     i360 and Data Trust entered into another agreement to share voter data in the 2016 election cycle.  Source: *Koch network strikes new deal to share voter data with RNC-aligned firm*, Matea Gold, THE WASHINGTON POST, July 29, 2015, https://www.washingtonpost.com/news/post-politics/wp/2015/07/29/koch-network-strikes-new-deal-to-share-voter-data-with-rnc-aligned-firm/ (last accessed May , 2021).

44.     "The partnership – similar to the one that the two entities had in 2014 – mean[t] that the eventual GOP presidential nominee w[ould] have a voter file

Class Action Complaint

1   enriched with data gathered by other Republican contenders as well as Koch-backed
2   groups such as Americans for Prosperity." *Id.*

3       45.   The agreement between i360 and Data Trust prompted criticism from
4   then chief of staff of the Republican National Committee, Katie Walsh, who stated
5   "that she believed 'its very dangerous and wrong to allow a group of very strong,
6   well-financed individuals *who have no accountability to anyone* to have control over
7   who gets access to the data when, why and how.'" *Id.* (emphasis added).

8       **b. Defendant GC Strategies' Agreement to Obtain California Voter**
9       **Information on Behalf of Defendant i360**

10      46.   Public records show that on or around July 18, 2018, Defendant GC
11  Strategies LLC began obtaining personal information from Californian voter
12  registration files on Defendant i360's behalf. *See* **Exhibit C** [Application for
13  California Voter Registration file made by GC Strategies on i360's behalf], at p. 2.

14      47.   A letter from i360 to the Secretary of State, dated July 23, 2018, stated
15  the voter registration files requested by GC Strategies on i360's behalf shall be used
16  "in accordance with Title 2, Division 7, Chapter 1, Article I of the California Code of
17  Regulations, and Elections Code Sections 2188 and 2194, Government Code Section
18  6254.4, and any other applicable California laws." *See* **Exhibit D** [i360 letter to
19  Secretary of State], at p. 2.

20      48.   A letter from GC Strategies to the Secretary of State, dated August 22,
21  2018, stated GC Strategies would contractually require i360 to use administrative,
22  physical, and technical safeguards to protect the voter registration records and that
23  only authorized employees of GCS and i360 would have access to the data. *See*
24  **Exhibit E** [GC Strategies letter to Secretary of State], at p. 2-3.

25      49.   On August 27, 2018, the Secretary of State wrote a letter to GC
26  Strategies enclosing the requested Californian voter registration files. The letter
27  further stated, "You are approved to use this data only for the purpose stated in your
28  application – **not for any type of commercial purpose**. You must obtain

- 10 -

authorization from the Secretary of State before this data can be used for any other purpose or before it can be transferred to another party." *See* **Exhibit F** [Secretary of State letter to GC Strategies], at p. 2 (emphasis in original).

50.    GC Strategies thereafter continued to submit applications for California voter registration information on i360's behalf.

51.    On August 26, 2019, GC Strategies submitted another letter to the Secretary of the State regarding a California Voter Registration File request made on i360's behalf. *See* **Exhibit G** [GC Strategies letter to Secretary of State].

52.    GC Strategies stated:

> GCS is requesting the California voter registration information for its own use and to transfer . . . to the Transferees. i360, the Transferee, utilizes strict security and confidentiality measures which are consistent with high standards in the data management industry, to secure and protect the voter registration list from unauthorized us [sic], access, or disclosure.

*See id.* at p. 2.

53.    Notably, an application from GC Strategies made on July 30, 2019 and on i360's behalf was flagged by a government employee named "Renee" who handwrote the following:

> GC Strategies and i360 made a PVRDR Request on 08/27/19.[1] The letters they used then are very similar to the ones on their new application. On both applications, they do not state who they will eventually share the data with[.]
>
> • Renee 12/06/19

*See* **Exhibit H** [GC Strategies July 30, 2019 application], at p. 2.

---

[1] It appears the letter "Renee" refers to is the August 26, 2019 application, *see* Ex. J, as reflected by the applications found in public records. *See* Cal. Elec. Code § 2188 ("Completed applications for voter registration information shall be retained by the elections official for five years from the date of application.")

- 11 -

Class Action Complaint

54.     On January 16, 2019, i360 wrote the Secretary of State with the subject line "Re: Following up on Conversation with Cameron Wessel of GC Strategies Regarding California Voter Registration File Request." *See* **Exhibit I** [i360 Letter to Secretary of State], at p. 2.

55.     The letter stated that "Mr. Wessel advised i360 that we submit this letter to your office to describe i360's activities as a transferee of the California voter registration file from GC Strategies and include i360's clients that would access the California voter registration file through i360." *See id.*

56.     The last page of the letter listed the following clients:

- Republican Party of San Diego
- Jay Obernolte for Congress
- Laurie Davies for State Assembly
- Jeremy Smith for State Assembly
- Check Washington for Supervisor 2020
- Carl Demaio for Congress
- River Right LLC Diane Dixon for Assembly 2020

*See id.* at p. 3.

**c. Californian Voters' Privacy Rights**

57.     On June 15, 2004, California Secretary of State Kevin Shelley released recommendations made by a Task Force created to focus on Voter Privacy.  Source: *Secretary of State Kevin Shelley Announces Recommendations from Task Force on Voter Privacy*, June 15, 2004, https://admin.cdn.sos.ca.gov/press-releases/prior/2004/04_039.pdf (last accessed May 21, 2021).

58.     Secretary of State Shelley stated "Californians are increasingly concerned about protecting their privacy . . . The Task Force made recommendations that enhance the protection of private information contained in voter files and ensure that voters receive vital information on how to protect themselves from identity theft and other crimes." *Id.*

Class Action Complaint

59.     One of the key recommendations issued by the Task Force to increase voter privacy protections was to require "additional restrictions to prevent misuse by those authorized to use voter registration information." *Id.*

60.     "The Task Force believe[d] that current laws should be strengthened to protect against impermissible uses of voter information, especially by secondary users."   Source: *Task Force on Voter Privacy: FINAL REPORT*, Presented to Secretary of State Kevin Shelley and Members of the Legislature, June 14, 2004, at p. 23, https://elections.cdn.sos.ca.gov/voter_privacy_final_report/intro_tfvp_final_report.pdf, (last accessed  May 21, 2021).

61.     "The Task Force recommend[ed] that the Secretary of State sponsor legislation to:

- Require that applications for voter file data identify the 'end-user' of the data; for example a scholarly use of the data might be identified with a specific university, or a political use might be identified with a specific ballot measure committee.

- Specify that reuse or resale of the data, even for a similar purpose, by another party is prohibited without further written authorization from the state or county elections officials from whom the voter registration file data was obtained.

- Require a retention and disposal procedure to safeguard the information while it is in the possession of the end user and ensure proper disposal of data when the end user discards it."

*Id.* at pp. 23-24.

62.     Thereafter, the Secretary of State sponsored Assembly Bill No. 2079 "to codify the consensus recommendations of the Voter Privacy Task Force."   Source: *Secretary of State Kevin Shelley Announces Recommendations from Task Force on*

- 13 -

Class Action Complaint

1 *Voter Privacy*, June 15, 2004, https://admin.cdn.sos.ca.gov/press-
2 releases/prior/2004/04_039.pdf (last accessed May 21, 2021).

3     63.    Assembly Bill No. 2079 was passed on February 17, 2004.  A.B. 2079,
4 CA,                 Feb.              17,               2004,
5 https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=200320040AB20
6 79 (last accessed May 21, 2021).

7     64.    Assembly Bill ("AB") No. 2079 states: "It is the intent of the Legislature
8 that a voter be fully informed of the permissible uses of personal information
9 supplied by him or her for the purpose of completing a voter registration affidavit."
10 *See* Cal. Elec. Code § 2157.1.

11     65.    Elections Code § 2194 was amended by AB 2079, to read:
12     The voter registration card information identified in subdivision (a) of
13     Section 6254.4. of the Government Code:
14 (1) Shall be confidential and shall not appear on any computer terminal, list,
15     affidavit, duplicate affidavit, or other medium routinely available to the
16     public at the county elections official's office.
17 (2) Shall not be used for any personal, private, or commercial purpose . . .
18 (3) Shall be provided with respect to any voter, subject to the provisions of
19     Section 2188, to any candidate for federal, state, or local office, to any
20     committee for or against any initiative or referendum measure for which
21     legal publication is made, and to any person for election, scholarly,
22     journalistic, or political purposes, or for governmental purposes, as
23     determined by the Secretary of State,
24     66.    Government Code § 6254.4 states that "the home address, telephone
25 number, email address, precinct number, or other number specified by the Secretary
26 of State for voter registration purposes, and prior registration information shown on
27 the affidavit of registration, is confidential and shall not be disclosed to any person,
28 except pursuant to Section 2194 of the Elections Code."

Class Action Complaint

67. Elections Code § 2188, which governs the application for voter registration information, was amended to read: "Any application for voter registration information available pursuant to law and maintained by the Secretary of State or by the elections official of any county shall be made pursuant to [Election Code § 2188]." *See* Elec. Code § 2188(a).

68. If an application for voter registration information is made on behalf of another person, the applicant shall, in addition to providing their information, provide the information of the person on whose behalf the application is being made. *See* Elec. Code § 2188(c).

69. All applications for voter registration information must be signed under penalty of perjury. *See* Elec. Code § 2188(c).

70. California Code of Regulations ("CCR") regulates for what purpose voter registration information may be used.

71. California voter registration information obtained by any person shall be used solely for election and governmental purposes. *See* CCR § 19002.

72. Pursuant to CCR § 19003, "election and governmental purposes" include but is not limited to the following:

(a) Using registration information for purposes of communicating with voters in connection with any election.

(b) Sending communications, including but not limited to, mailings which campaign for or against any candidate or ballot measure in any election.

(c) Sending communications, including but not limited to, mailings by or on behalf of any political party; provided however, that the content of such communications shall be devoted to news and opinions of candidates, elections, political party developments and related matters.

- 15 -

Class Action Complaint

(d) Sending communications, including but not limited to, mailings, incidental to the circulation or support of, or opposition to any recall, initiative, or referendum petition.

(e) Sending of newsletters or bulletins by any elected public official, political party or candidate for public office.

(f) Conducting any survey of voters in connection with any election campaign.

(g) Conducting any survey of opinions of voters by any government agency, political party, elected official or political candidate for election or governmental purposes.

(h) Conducting an audit of voter registration lists for the purpose of detecting voter registration fraud.

(i) Soliciting contributions or services as part of any election campaign on behalf of any candidate for public office or any political party or in support of or opposition to any ballot measure.

(j) Any official use by any local, state, or federal governmental agency.

73.     Pursuant to CCR § 19004, the following uses of voter registration information are <u>prohibited</u>:

(a) Any communication or other use solely or partially for any commercial purpose.

(b) Solicitation of contributions or services for any purpose other than on behalf of a candidate or political party or in support of or opposition to a ballot measure.

(c) Conducting any survey of opinions of voters other than those permitted by Sections 19003(f) and (g).

74.     Any person who obtains voter registration information is further prohibited from "mak[ing] any information available under any terms, in any format, or for any purpose, to any person <u>without receiving prior written authorization</u> from"

-16-

Class Action Complaint

1  the California Secretary of State. Such authorization will only be given "after the
2  person to receive such information has executed the written agreement set forth in
3  Section 19008." CCR § 19005.

4      75.    It is a misdemeanor for a person in possession of California voter
5  registration information to "knowingly [] use or permit the use of all or any part of
6  that information for any purpose other than as permitted by law."  Cal. Elec. Code §
7  18109.

8      76.    It is also a misdemeanor "for a person knowingly to acquire possession
9  or use of voter registration information from the Secretary of State or a county
10 elections official without first complying with Section 2188."  Cal. Elec. Code §
11 18109.

12     77.    Defendants i360 and GC Strategies, who applied and obtained California
13 voter registration information, were subject to the foregoing provisions.  Defendant
14 Joe Leventhal, who purchased and obtained California voter registration information
15 from Defendant i360, was also subject to the foregoing provisions.

16 **d.  The Defendants' Practice of Distributing and Selling Voter Data Without**
17 **Prior Express Approval Violates Voters' Privacy Rights**

18     78.    Defendants violate Californian voters' privacy rights through their
19 unlawful distribution and selling of Californian voter data.

20     79.    For example, Defendant Joe Leventhal created Leventhal for Council
21 2020 to use as his committee in the election.   State election records show that
22 Defendant Joe Leventhal through his candidate-controlled committee, Leventhal for
23 Council 2020, purchased California voter registration information from Defendant
24 i360 between February 16, 2020 to July 30, 2020.  *See* **Exhibit A** [Leventhal for
25 Council 2020 Campaign Statement].

26     80.    Defendant Joe Leventhal did not legally obtain Californian voters'
27 information from either the California Secretary of State, or the San Diego County
28 Registrars' Office.   Nor did Defendant Joe Leventhal have an application for

- 17 -

Class Action Complaint

1  Californian voters' information submitted on his behalf.  Defendant Joe Leventhal
2  thereby acted in violation of Elections Code § 2188.

3      81.    Defendant Joe Leventhal further disseminated this illegally obtained
4  Californian voter information to his committee workers in violation of CCR § 19005.
5  Defendant Joe Leventhal never complied with CCR § 19008 to obtain permission
6  from the Secretary of State prior to dissemination to his committee.  The Secretary of
7  State has no record of Joe Leventhal of either applying or having someone apply on
8  his or his committee's behalf in violation of Elections Code § 2188.

9      82.    Obtaining voter information from the Secretary of State of a county
10 elections official, i.e., the San Diego Registrar of Voters, without first complying
11 with Election Code § 2188 is a criminal misdemeanor offense per Elections Code §
12 18109(b).

13     83.    Upon information and belief, Defendant Joe Leventhal knowingly
14 committed this misdemeanor offense.

15     84.    Prior to running for council, Defendant Joe Leventhal had been
16 appointed to a four-year term with the San Diego Ethics Commission in 2017.
17 Source: *Joseph Leventhal Appointed to San Diego Ethics Commission*, Dinsmore,
18 Oct. 11, 2017, https://www.dinsmore.com/news/joseph-leventhal-appointed-to-san-
19 diego-ethics-commission/ (last accessed May 21, 2021).

20     85.    The San Diego Ethics Commission is responsible, in part, for "advising
21 and educating city officials, candidates, political committees, and lobbyists about
22 governmental ethics laws." *Id.*; *see also About the Commission*, CITY OF SAN DIEGO
23 https://www.sandiego.gov/ethics/about, (last accessed May 21, 2021).

24     86.    The "governmental ethics laws" are found in the San Diego Municipal
25 Code ("SDMC").  Relevant to the allegations set forth in this complaint is SDMC §
26 27.3503, which defines "confidential information" as information whose use or
27 disclosure is prohibited by a statute, regulations, or rule.  The San Diego Ethics
28 Commission is responsible for advising city officials, candidates, political

- 18 -

Class Action Complaint

committees, and lobbyists of the governmental ethics laws related to the use or disclosure of "confidential information." *See* SDMC § 27.3564 (prohibits current or former city officials from use or disclosing confidential information); *see also* SDMC § 27.4023 (prohibits lobbyists from directly or indirectly accepting, using, or disclosing confidential information).

87.   Upon information and belief, after having served on the Ethics Commission to advise candidates and political committees regarding governmental ethics laws, including those related to the use or disclosure of "confidential information," Defendant Joe Leventhal was intimately aware of the process for applying and obtaining California voter registration data.

88.   Despite his experience and knowledge, Defendant Joe Leventhal knowingly purchased and obtained California voter registration data from Defendant i360 without having Defendant i360 submit an application on his behalf, therefore acting in violation of Elections Code §§ 2188 and 18109 and CCR § 19005.

89.   Upon information and belief, Defendant i360 and Defendant GC Strategies distribute and sell California voter registration data to countless others which make up i360's clientele.

90.   For example, committee campaign records from the Federal Elections Commission indicate the following:

- Eric Early, through his principal campaign committee, Eric Early for Congress 2020, ID No. C00711432, purchased an online subscription for data services from i360 on August 21, 2020, November 19, 2020 and December 11, 2020;

- Joshua Scott, through his principal campaign committee, Joshua Scott for Congress, ID No. C00682179, purchased data to conduct surveys from i360 on March 10, 2020; April 3, 2020; July 3, 2020; September 4, 2020; September 16, 2020; and October 5, 2020;

- 19 -

Class Action Complaint

- • Greg Raths, through his principal campaign committee Greg Raths for Congress 2020, ID No. C00700599, purchased voter list data from i360 on August 12, 2020 and September 12, 2020 and data for phone banking on October 6, 2020, October 12, 2020, November 17, 2020

*See* **Exhibit J** [Independent Expenditures to i360 taken from Federal Election Commission website], at pp. 8-12, 14-16.

91.    Each of the campaigns listed above were for federal candidates running a campaign in California, and thus the voter data obtained from i360 would have been obtained by i360 via an application to the Secretary of State.

92.    Yet public records show that neither i360 nor GC Strategies disclosed in their applications to the California Secretary of State that the personal information of Californian voters would be sold and distributed to the federal candidates and committees listed above.   Such conduct violates the express prohibition on transferring voter registration information to any person without receiving prior written authorization from the Secretary of State.  *See* CCR § 19005; *see also* Cal. Elec. Code §§ 2188 and 18109.

93.    Upon information and belief, Defendant i360 provides California voter registration information to each of its clients upon granting access to i360's database without prior express approval from the California Secretary of State, therefore acting in violation of Elections Code §§ 2188 and 18109 and CCR 19005.

94.    Upon information and belief, Defendant GC Strategies is aware of i360's unauthorized disclosures of voter registration information and actively conspired with i360 and aided i360's wrongful conduct through its contractual agreement with i360 to apply and obtain Californian voter data on i360's behalf.

**e.  Plaintiff Jennifer Tag's Experience**

95.    Plaintiff Jennifer Tag became aware of Defendants' wrongful conduct after a campaign worker for Defendant Joe Leventhal's campaign, Leventhal for

Class Action Complaint

1  Council 2020, arrived at her home to campaign for Joe Leventhal on February 24,
2  2020.

3      96.   Prior to this, Plaintiff, who was a Deputy District Attorney for the
4  County of San Diego, had obtained what is referred to as "confidential voter status"
5  on or around November 18, 2019.

6      97.   "Confidential voter status" is a type of heightened confidential status
7  that may be obtained pursuant to Elections Code §§ 2166 and 2166.7.[2]

8      98.   Elections Code § 2166.7 provides that any public safety officer may
9  obtain confidential voter status upon applying under penalty of perjury "that a life-
10 threatening circumstance exists to the officer or a member of the officer's family."
11 Such applications shall be a public record.

12     99.   Public safety officers include any attorney, whether active or retired,
13 who were employed by the County of San Diego District Attorney's Office. *See* Cal.
14 Govt. Code § 6254.24.

15     100.  For individuals who are not public safety officers and who are similarly
16 seeking confidential voter status due to life-threatening circumstances, an application
17 for such status may be made pursuant to Elections Code § 2166.

18     101.  Plaintiff Jennifer Tag obtained confidential voter status because she was
19 "a deputy district attorney for the San Diego County District Attorney's Office . . .
20 assigned to the Sex Crimes and Human Trafficking Division." As a result of her
21 position with the District Attorney's Office, Plaintiff Jennifer Tag was "the target of
22 threatening letters from stalkers [that she] prosecuted." Thus, she declared under
23 penalty of perjury that good cause exists for the heightened confidential voter status.
24 *See* **Exhibit K** [Plaintiff's Elections Code § 2166 form].

25

26

27

28 [2] All Californian voters' personal information supplied on their voter registration is
   confidential regardless of whether the voter obtains the heightened confidential voter
   status pursuant to Elections Code §§ 2166 and 2166.7. *See* Govt. Code § 6254.4.

Class Action Complaint

102.   Upon obtaining heightened confidential voter status, elections officials, in producing any voter registration information pursuant to an application under Elections Code § 2188, must exclude such voters from any produced voter registration files.

103.   Accordingly, Joe Leventhal's campaign worker should not have been able to obtain Plaintiff's personal information from i360 because such information would have been excluded by elections officials following Plaintiff obtaining confidential voter status on or around November 18, 2019.

104.   Plaintiff became greatly concerned that her personal information was being distributed in violation of state law and thereafter invested significant time and expense, including out-of-pocket expenses of approximately $102.52 and countless hours, to investigate the matter.

105.   Plaintiff discovered that Defendant Joe Leventhal had obtained her voter registration information from Defendant i360, LLC.

106.   Public records show that neither Defendant i360 nor Defendant GC Strategies disclosed in their applications to the California Secretary of State or the San Diego County Registrar of Voters that the personal information of Californian voters would be distributed to Defendant Joe Leventhal or his candidate-controlled campaign, Leventhal for Council 2020.   Yet such information *was* sold to and used by Joe Leventhal's campaign by i360.

107.   Public records further show that Defendant Joe Leventhal and his candidate-controlled committee, Leventhal for Council 2020, did not obtain prior express approval in accordance with Elections Code § 2188 to obtain  Californian voter registration information or to disseminate such information to his committee workers.

108.   Plaintiff continued her investigation and on or around July 28, 2020, Plaintiff conducted a "LiveChat" with an i360 customer service representative named Chris.  Attached as **Exhibit L** is a copy of the Chat Transcript.

- 22 -

Class Action Complaint

109.   The following portion of the Chat Transcript confirms that i360 ignores California state law's requirements for use of voter registration information and distributes such information without limit to its clients.  Plaintiff is listed as "Visitor":

Visitor                                              09:05:07 pm

if purchased does it provide a list of voters within a certain city, and I can narrow down by political party?

Chris                                              09:06:59 pm

Yes, our platform provides all of the voter data so you can define universes based on whatever criteria you'd like. You can then create a survey for the walk app that provides efficient routing for the voters you've chosen.

**Visitor**                                              **09:07:41 pm**

**so do we need to cross reference in any way with the county registrar of voters?**

**Chris**                                              **09:08:08 pm**

**Nope! We already have all of the voter data.**

**Visitor**                                              **09:08:22 pm**

**wow, so it makes it easier for us**

**how often is it updated? like is someone moves residences etc**

**\*if**

**Chris**                                              **09:09:00 pm**

- 23 -

1    We do quarterly voter file updates and monthly NCOA (change of
2    address) updates.
3    What campaign or organization would this be for?
4
5    Visitor                                          09:09:42 pm
6    and it it automatically loaded onto the platform? so we don't have to
7    worry and it would be updated in real time?
8
9    Chris                                            09:10:02 pm
10   That's right, your database will automatically update.
11
12   Visitor                                          09:10:35 pm
13   have there been issue if someone has a confidential address? would
14   those come through to? my neighbor is a police officer for instance
15   how much does this service cost?
16
17   Chris                                            09:11:10 pm
18   We follow all applicable laws and regulations – if their address is not
19   on the voter file, we don't ingest it. If it's a confidential address,
20   generally those don't make it onto the voter file.
21   . ./.
22
23   Visitor                                          09:13:23 pm
24   does the quarterly update always occur on a set date? or is it
25   quarterly from your individual purchase date?
26
27   Chris                                            09:14:12 pm
28

Class Action Complaint

1  **It's not a set date as the state varies on when they will provide it, but**

2  **its approximately every three months**

3  *See* **Exhibit L** at pp. 2-3 (emphasis added).

4  110.  The Chat Transcript shows that i360 treats each application for

5  California voter registration information as a "quarterly update" to the voter data

6  provided to each of its clients.

7  111.  i360 and GC Strategies are obligated under state law to list in its

8  application for California voter registration information each individual and/or entity

9  that will access the information provided to i360.  *See* CCR § 19005.

10  112.  Yet, i360 failed to obtain express written approval to provide the

11  personal information of Californians voters to its clientele, including Defendant Joe

12  Leventhal.

13  113.  Upon information and belief, i360 distributes and sells voter registration

14  information to countless more political candidates, campaigns, and organizations,

15  which make up i360's clientele.

16  114.  Further, i360 falsely asserts that it wipes voters with confidential voter

17  status from the database each time it conducts its "quarterly update."  Had this been

18  true, Plaintiff's voter registration information would have been wiped during this so-

19  called update.

20  115.  Regardless, i360 violates California state law by countlessly distributing

21  and selling Californian voters' information without obtaining express written

22  approval from the California Secretary of State in violation of CCR § 19005.

23  116.  It is a misdemeanor to knowingly use or permit use of any part of the

24  voter registration information obtained pursuant to Government Code § 6254.4 for

25  any purpose other than permitted by law; or to knowingly acquire possession or use

26  of voter registration information from the Secretary of State without first complying

27  with Elections Code § 2188.  *See* Elec. Code § 18109.

28

- 25 -

Class Action Complaint

117. i360's response to complaints made against it to the Federal Election Commission on October 23, 2014 further confirms i360's disregard for California laws regarding voter registration information.

118. In its response to allegations made against it, i360 describes and admits that it engages in the type of data sharing prohibited by California law. *See e.g.,* **Exhibit B:**

- "i360's service can also be viewed in the same light as Lexis or Westlaw – each contain massive amounts of information, but it is the end-user who must decide what to pull, what to emphasize and how to use it in an end-product." *Id.* at p. 6, n.3.

- "For example, [an i360] customer could pull or select a list of all female registered voters in Baltimore. A customer could further refine their pull to all female registered voters in Baltimore who are registered Democrat yet appear to be pro-life under the age of 35." *Id.* at p. 8, n.6.

- Data uploaded by a client can be accessed and analyzed "to further refine and tag i360's *already-existing data library* and the predictive models it contains. . . Though much of this imported data is redundant with existing data points, it is still valuable for i360's future purposes, because even redundant enhances the i360 database and models with issue and demographic information *relevant to individuals i360 already has in its database." Id.* at pp. 9-10 (emphasis added).

- "i360 is in the business of selling enhanced data with respect to the named Respondents—akin to an enhanced phone book based upon publicly available voter rolls and consumer data[.]" *Id.* at p. 16.

Class Action Complaint

- "[T]he bedrock of the i360 data library comes from publicly available sources, such as voter lists and consumer data." *Id.* at p. 20.

- "i360's database constitutes a library of factual, qualitative information, available to be accessed and used by its clients on their own prerogative." *Id.* at p. 23.

119. i360 admits that it collects voter registration information and uses it to refine its existing data-library, which can then be accessed by any of its clients without regard to California's prerequisite for prior express approval.

120. i360's clients, including Defendant Joe Leventhal, then continue this illegal use of California voter information by paying for i360's service and providing the illegally obtained voter information to numerous committee workers and volunteers without any safeguarding of voter registration information.

121. Defendants' wrongful conduct violates Californian voters' privacy rights and exposes them to serious risks of identity theft.

122. As explained by a member of the California Task Force on Voter Privacy, "the data elements of a voter record, in the wrong person's hands, essentially comprise an 'identity starter kit.' The only other data the thief needs to complete the starter kit is the Social Security number, which is relatively easy to obtain through other means." Source: *Task Force on Voter Privacy: FINAL REPORT*, Presented to Secretary of State Kevin Shelley and Members of the Legislature, June 14, 2004, at p. 9, https://elections.cdn.sos.ca.gov/voter_privacy_final_report/intro_tfvp_final_report.pdf, (last accessed May 21, 2021).

123. Identity theft is a serious concern not only in California but across the nation. In 2017 alone, there was 12.7 million U.S. adult victims, which represents 4% of U.S. adults and includes over 1.5 Californians. Source: *Identity Thief*, State of

Class Action Complaint

1  California Department of Justice, https://oag.ca.gov/idtheft (last accessed May 21,
2  2021).

3      124.   The regulations for obtaining and distributing Californian's personal
4  information from voter registration files are intended to protect against the risk of
5  identity theft and misuse of personal information.

6      125.   Furthermore, related to Plaintiff specifically and others similarly situated
7  with life-threatening conditions who have obtained a heightened confidential voter
8  status pursuant to Elections Code § 2166, there is a serious concern for safety when
9  personal information is illegally obtained and disseminated.

10     126.   To permit Defendants i360 and GC Strategies to distribute Californian
11  voters' personal information without limitation and in violation of state law creates a
12  risk of harm to each Californian voter whose information is contained in i360's
13  existing database and carries a serious risk of creating a chilling effect on voter
14  participation for fear of misuse of personal information.

15     127.   To permit political candidates and committees, such as Defendant Joe
16  Leventhal, to use this illegally obtained Californian voter information without
17  limitation and in violation of state law further exacerbates this risk of harm to every
18  Californian voter.

19                        **CLASS ACTION ALLEGATIONS**

20     128.   While reserving the right to redefine or amend the class definition prior
21  to seeking class certification, pursuant to California Code of Civil Procedure § 382,
22  Plaintiff seeks to represent a class defined as follows:

23         All individuals whose California voter registration information was
24         distributed and sold by GC Strategies, LLC or i360, LLC to other
           persons and/or entities without the prior express approval from the
25         California Secretary of State or California elections officials on or after
26         May 1, 2018 and until notice is disseminated to the Class (the "Class
           Period").
27

28     129.   Plaintiff further seeks to represent a Sub-Class as defined below:

---

- 28 -

Class Action Complaint

All individuals who are members of the Class and who obtained confidential voter status pursuant to California Elections Code § 2166.

130.   The following people are excluded from the Class and Sub-Class: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which Defendants or their parents have a controlling interest, and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of such excluded persons.

131.   <u>Numerosity</u>.  The members in the proposed Class and Sub-Class include all Californian voters whose voter registration information was obtained and distributed without prior express approval from the California Secretary of State. During the 2020 general election, there were approximately 22,389,846 registered voters in California. Accordingly, the Class and Sub-Class likely number millions of Californian voters.   Individual joinder of all members is impracticable, and the disposition of the claims of all Class members in a single action will provide substantial benefits to the parties and Court.

132.   <u>Commonality</u>.  Questions of law and fact common to Plaintiff and the Class include:

    a.   Whether Defendants obtained prior written express approval from the California Secretary of State prior to distributing and selling voter registration information to third parties;

    b.  Whether Defendants' conduct violated applicable state laws; and

    c.  Whether Plaintiff and the Class are entitled to actual and punitive damages, restitution, injunctive relief, declaratory relief, or other relief;

    d.  Whether Defendants' conduct was negligent;

Class Action Complaint

1     e.  Whether Defendants' conduct constituted public disclosure of private

2     facts.

3     133.  <u>Typicality.</u>  Plaintiff is a member of the Class and Sub-Class.  Plaintiff's

4   claims are typical of the claims of each Class and Sub-Class member in that Plaintiff

5   and Class Members sustained damages arising out of Defendants' pattern and

6   practice of distributing Californian voter registration data in violation of California

7   voters' privacy rights, and Plaintiff and Class members sustained similar injuries and

8   damages as a result of Defendants' uniform unlawful conduct.

9     134.  <u>Adequacy.</u>   Plaintiff is an adequate class representative because

10  Plaintiff's interest do not conflict with the interests of the Class she seeks to

11  represent.  Plaintiff's claims are common to all members of the Class, and Plaintiff

12  has a strong interest in vindicating the rights of absent Class members.  Plaintiff has

13  retained counsel competent and experienced in complex class action litigation, and

14  she intends to vigorously prosecute this action.

15    135.  <u>Ascertainability.</u>  Class and Sub-Class Members can easily be identified

16  by the objective criteria set forth in the Class and Sub-Class definition.

17    136.  <u>Predominance.</u>   The common issues of law and fact identified above

18  predominate over any other questions affecting only individual members of the Class

19  and Sub-Class.  Class issues fully predominate over any individual issue.

20    137.  <u>Superiority.</u>  A class action is superior to other available methods for the

21  fair and efficient adjudication of this controversy because: (a) the joinder of all

22  individual Class Members is impracticable, cumbersome, unduly burdensome, and a

23  waste of judicial and/or litigation resources; (b) the individual claims of the Class and

24  Sub-Class members may be relatively modest compared with the expense of litigating

25  the claim, thereby making it impracticable, unduly burdensome, and expensive to

26  justify individual actions; (c) when Defendants' liability has been adjudicated, all

27  Class and Sub-Class Members' claims can be determined by the Court and

28

Class Action Complaint

administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases.

138.   This class action is also properly brought and should be maintained as a class action because Plaintiff seeks injunctive relief on behalf of the Class and Sub-Class on grounds generally applicable to both Classes.   Certification is appropriate because Defendants have acted or refused to act in a manner that applies generally to the injunctive Class (i.e., Defendants violated Plaintiff's and the Class Members' privacy rights by selling and distributing the personal information included in Plaintiff's and Class Members' voter registration information in violation of applicable state laws).   Thus, any final injunctive relief or declaratory relief would benefit the Class as a whole.

## CAUSES OF ACTION

### First Cause of Action

### Negligence

139.   Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

140.   Plaintiff brings this claim on behalf of herself and members of the proposed Class and Sub-Class against each of the Defendants.

141.   Defendants owed Plaintiff and Class Members a duty to exercise reasonable care in distributing and selling their confidential voter registration information in their care and custody, including following applicable state laws governing the use and distribution of such information.

142.   Defendants owed a duty of care to Plaintiff and Class Members because Plaintiff and Class Members are foreseeable and probable victims of Defendants' failure to properly secure confidential voter registration information.

143.   Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' confidential voter registration information by distributing and selling such information to unauthorized third parties

- 31 -

1 and by failing to properly supervise the manner in which the information was used
2 and exchanged.

3    144.   The risk that unauthorized persons would gain access upon purchasing
4 access to i360's existing database of confidential voter registration information and
5 misuse of such information was foreseeable.

6    145.   Defendants knew, or should have known, the risk in allowing each of
7 i360's clients to obtain, use, handle, and store the confidential voter registration
8 information of Plaintiff's and Class Members and the importance of exercising
9 reasonable care in handling it.

10    146.   Defendants breached their duty by failing to exercise reasonable care in
11 handling and distributing the confidential voter registration information of Plaintiff
12 and Class Members, which actually proximately caused Plaintiff's and Class
13 Members' injuries. As a direct and traceable result of Defendants' negligence,
14 Plaintiff and Class Members have suffered or will suffer damages.

15    147.   Defendants' breach of their common law duties to exercise reasonable
16 care and Defendants' failures and negligence actually and proximately caused
17 Plaintiff's and Class Members' actual and tangible injury-in-fact, and damages,
18 including without limitation the improper disclosure of their confidential voter
19 registration information and lost time and money incurred to investigate, mitigate and
20 remediate the effects of unregulated distribution and sale of their confidential
21 information that resulted from and was caused by Defendants' negligence, which
22 injury-in-fact and damages are ongoing, imminent, immediate, and which they
23 continue to face.

24    148.   Alternatively, Defendants' violation of state laws relating to voter
25 registration is evidence of Defendants' breach of duty to exercise reasonable care in
26 distributing and selling Plaintiff's and Class Members' confidential voter registration
27 information.

28

- 32 -

Class Action Complaint

149. "Any application for voter registration information available pursuant to law and maintained by the Secretary of State or by the elections official of any county shall be made pursuant to [Election Code § 2188]." Elec. Code § 2188(a).

150. Any person who obtains voter registration information shall not "make any information available under any terms, in any format, or for any purpose, to any person without receiving prior written authorization from" the California Secretary of State. Such authorization will only be given "after 'the person to receive such information has executed the written agreement set forth in Section 19008." CCR § 19005.

151. "It is a misdemeanor for a person in possession of [voter registration information] knowingly to use or permit the use of all or any part of that information for any purpose other than as permitted by law." Cal. Elec. Code § 18109.

152. Defendants violated CCR § 19005 and Elections Code § 18109 when Defendants distributed and sold California voter registration information without following the requirements set forth under CCR § 19005. Defendant GC Strategies aided Defendant i360's scheme to profit off the unauthorized distribution of Californian voter registration information by applying and obtaining the data on i360's behalf. Defendant i360 then distributed and sold the voter data to each of its clients through the i360 database. Defendant Joe Leventhal knowingly continued this illegal use and distribution when he obtained the voter registration data from Defendant i360 without obtaining prior express approval in accordance with Elections Code § 2188 and further disseminated the voter data to his committee workers.

153. Defendants' violations of CCR § 19005 and Elections Code §§ 2188 and 18109 actually and proximately caused Plaintiff's and Class Members' actual and tangible injury-in-fact, and damages, including without limitation the improper disclosure of their confidential voter registration information and lost time and money incurred to investigate, mitigate and remediate the effects of unregulated distribution

- 33 -

Class Action Complaint

1    and sale of their confidential information that resulted from and was caused by

2    Defendants' violations of state law, which injury-in-fact and damages are ongoing,

3    imminent, immediate, and which they continue to face.

4        154.   Defendants' violations of CCR § 19005 and Elections Code §§ 2188 and

5    18109 were a substantial factor in bringing about the harm suffered by Plaintiff and

6    Class Members.

7        155.   The harm suffered by Plaintiff and Class Members resulted from an

8    occurrence of the nature which CCR § 19005 and Elections Code §§ 2188 and 18109

9    were designed to prevent.   For example, Elections Code § 2188 was passed in

10   response to a belief that state laws must be strengthened to prevent "impermissible

11   uses of voter information, especially by secondary users."   Source: *Task Force on*

12   *Voter Privacy: FINAL REPORT*, Presented to Secretary of State Kevin Shelley and

13   Members   of   the   Legislature,   June   14,   2004,   at   p.   23,

14   https://elections.cdn.sos.ca.gov/voter_privacy_final_report/intro_tfvp_final_report.pd

15   f, (last accessed  May 21, 2021).

16       156.   Plaintiff and Class Members are within the class of persons for whose

17   protection CCR § 19005 and Elections Code §§ 2188 and 18109 were designed to

18   prevent.   *See* Cal. Elec. Code § 2157.1 ("It is the intent of the Legislature that a voter

19   be fully informed of the permissible uses of personal information supplied by him or

20   her for the purpose of completing a voter registration affidavit."); *see also Secretary*

21   *of State Kevin Shelley Announces Recommendations from Task Force on Voter*

22   *Privacy*,   June   15,   2004,   https://admin.cdn.sos.ca.gov/press-

23   releases/prior/2004/04_039.pdf (last accessed  May 21, 2021) ("Californians are

24   increasingly concerned about protecting their privacy . . . The Task Force made

25   recommendations that enhance the protection of private information contained in

26   voter files and ensure that voters receive vital information on how to protect

27   themselves from identity theft and other crimes.").

28

- 34 -

Class Action Complaint

157. Accordingly, Plaintiff and Class Members seek damages in accordance with applicable law.

### Second Cause of Action

### Public Disclosure of Private Facts

158. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

159. Plaintiff brings this claim on behalf of herself and members of the proposed Class and Sub-Class against each of the Defendants.

160. Defendants, by distributing and selling Plaintiff's and Class Members' voter registration information in disregard of applicable state law to countless numbers of political candidates, campaigns, committee workers, and organizations, effectively publicized private information concerning Plaintiff and Class Members.

161. A reasonable person in Plaintiff's and Class Members' position would consider the publicity of voter registration information highly offensive and dangerous. The voter registration information included Plaintiff's and Class Members' private information, such as their home address, telephone number, and email address. This information essentially comprises an identity theft starter kit. Distribution of this information also puts Plaintiff and members of the Sub-Class in serious fear of their safety as a life-threatening condition was present, necessitating a heightened confidential status of their private information.

162. Defendants knew, or acted with reckless disregard of the fact, that a reasonable person in Plaintiff's and Class Members' position would consider the publicity of voter registration information highly offensive and dangerous.

163. The private information was not of legitimate public concern.

164. Defendants' wrongful conduct actually and proximately caused Plaintiff's and Class Members' actual and tangible injury-in-fact, and damages, including without limitation the improper disclosure of her confidential voter registration information and lost time and money incurred to investigate, mitigate and

Class Action Complaint

1 | remediate the effects of unregulated distribution and sale of their confidential
2 | information that resulted from and was caused by Defendants' negligence, which
3 | injury-in-fact and damages are ongoing, imminent, immediate, and which they
4 | continue to face.

5 |     165.   Defendants' conduct was a substantial factor in causing Plaintiff's and
6 | Class Members' harm.

7 |     166.   Accordingly, Plaintiff and Class Members seek damages in accordance
8 | with applicable law.

**Third Cause of Action**

**Invasion of Privacy, Cal. Const. Art. 1, § 1**

11 |     167.   Plaintiff repeats the allegations contained in the foregoing paragraphs as
12 | if fully set forth herein.

13 |     168.   Plaintiff brings this claim on behalf of herself and members of the
14 | proposed Class and Sub-Class against each of the Defendants.

15 |     169.   Plaintiff and Class Members have a legally protected privacy interest in
16 | the personal information provided in their California voter registration.  *See* CCR §
17 | 19005 (prohibiting unauthorized disclosure of voter registration information); *see*
18 | *also* Cal. Elec. Code § 18109 (unauthorized disclosure of voter registration
19 | information is a misdemeanor); Cal. Elec. Code § 2157.1 ("It is the intent of the
20 | Legislature that a voter be fully informed of the permissible uses of personal
21 | information supplied by him or her for the purpose of completing a voter registration
22 | affidavit.").

23 |     170.   Plaintiff and Class Members have a reasonable expectation of privacy in
24 | their voter registration information.  *See* Cal. Elec. Code § 2157.2 (To fully inform
25 | voters of the permissible uses of personal information supplied on a voter registration
26 | affidavit, the permissible uses must be printed on the state ballot pamphlet and posted
27 | on local elections official website and the Secretary of State's website).

28 |

171.   Defendants' unauthorized disclosure of Plaintiff's and Class Members' voter registration information constitutes a serious invasion of Plaintiff's and Class Members' privacy.

172.   Accordingly, Plaintiff and Class Members seek damages in accordance with applicable law.

**Fourth Cause of Action**

**Violations of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

173.   Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

174.   Plaintiff brings this claim on behalf of herself and members of the proposed Class and Sub-Class against each of the Defendants.

175.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

176.   Defendants violated the unlawful prong of the UCL. The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

a.   California Elections Code § 2188

b.   California Elections Code § 18109

c.   California Code of Regulations § 19004

d.   California Code of Regulations § 19005

177.   Defendants' actions also constitute negligence, public disclosure of private facts, and an invasion of privacy under the California constitution.

178.   Defendants profited from their wrongful sale and distribution of Plaintiff's and Class Members' voter registration information.

179.   Plaintiff and Class Members are likely to be damaged by Defendants' wrongful practices, as Defendants continue to illegally sell and disseminate their voter registration information to any person and/or entity without regulation and are

otherwise free to continue to disseminate such information in violation of state law. Thus, injunctive relief enjoining this deceptive practice is proper.

180.  Defendants' conduct caused and continues to cause substantial injury to Plaintiff and Class Members, who have suffered injury in fact as a result of Defendants' unlawful conduct.

181.  Defendants GC Strategies and i360's conduct is also "unfair" because Defendants each profit from their unlawful disclosure of the personal information provided by Plaintiff and Class Members in their voter registration affidavit.  Such conduct is immoral, unethical, unscrupulous, and substantially injurious to Plaintiff and Class Members and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

182.  Defendants GC Strategies, i360, and Joe Leventhal's conduct with respect to their unlawful disclosure of Californian voter registration information is also unfair because it violates public policy as declared by specific constitutional, statutory and regulatory provisions, including but not limited the right to privacy under the California Constitution, California Elections Code §§ 2188 and 18109, and California Code of Regulations §§ 19004 and 19005.

183.  In accordance with Bus. & Prof. Code § 17203, Plaintiff, on behalf of herself, the Class, and the general public, seek an order enjoining Defendants from continuing to conduct business through unlawful and unfair acts and practices.

184.  Plaintiff, on behalf of herself and the Class also seek an order for the restitution of all monies expended due to Defendants' unlawful conduct and acts of unfair competition.

## **PRAYER FOR RELIEF**

185.  Wherefore, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendants as to each and every cause of action, and the following remedies:

- 38 -

Class Action Complaint

a.  An Order declaring this action to be a proper class action, appointing Plaintiff as class representative, and appointing their undersigned counsel as class counsel;

b.  An Order entering judgment against Defendants for the causes of action asserted herein;

c.  An award of actual, nominal and/or statutory damages, punitive damages, prejudgment and post-judgment interest, in an amount to be determined at trial;

d.  An award of restitution to Plaintiff and Class Members;

e.  An award of equitable, injunctive, and declaratory relief as may be appropriate;

f.  An award of all costs, including attorneys' fees and the costs of prosecuting this action, as allowed by law;

g.  Any other or further legal and equitable relief, as the Court may deem appropriate.

## **JURY DEMAND**

186.  Plaintiff hereby demands a trial by jury on all issues so triable.

Date: May 26, 2021          **LAW OFFICES OF RONALD A. MARRON**

By: */s/ Ronald A. Marron*

RONALD A. MARRON
KAS L. GALLUCCI
MICHAEL T. HOUCHIN
LILACH HALPERIN
ELISA PINEDA
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiff and the Proposed***

- 39 -

Class Action Complaint

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Class*

Class Action Complaint

# Exhibit A

# Recipient Committee
# Campaign Statement
# Cover Page

(Government Code Sections 84200-84216.5)

SEE INSTRUCTIONS ON REVERSE

COVER PAGE

## CALIFORNIA FORM 460

Page __1__ of __87__

For Official Use Only

**Date Stamp**

E-Filed
07/31/2020
10:00:59

Filing ID:
191491847

**Statement covers period**

from __02/16/2020__

through __06/30/2020__

**Date of election if applicable:**
(Month, Day, Year)

_____

## 1. Type of Recipient Committee: All Committees – Complete Parts 1, 2, 3, and 4.

☒ Officeholder, Candidate Controlled Committee
 ○ State Candidate Election Committee
 ○ Recall
 *(Also Complete Part 5)*

☐ General Purpose Committee
 ○ Sponsored
 ○ Small Contributor Committee
 ○ Political Party/Central Committee

☐ Primarily Formed Ballot Measure Committee
 ○ Controlled
 ○ Sponsored
 *(Also Complete Part 6)*

☐ Primarily Formed Candidate/Officeholder Committee
 *(Also Complete Part 7)*

## 2. Type of Statement:

☐ Preelection Statement
☒ Semi-annual Statement
☐ Termination Statement
 (Also file a Form 410 Termination)
☐ Amendment (Explain below)

☐ Quarterly Statement
☐ Special Odd-Year Report
☐ Supplemental Preelection Statement - Attach Form 495

## 3. Committee Information

I.D. NUMBER
1421046

COMMITTEE NAME (OR CANDIDATE'S NAME IF NO COMMITTEE)
Leventhal for Council 2020

STREET ADDRESS (NO P.O. BOX)

CITY        STATE   ZIP CODE    AREA CODE/PHONE
San Diego    CA     92119      (858)215-2345

MAILING ADDRESS (IF DIFFERENT) NO. AND STREET OR P.O. BOX

CITY        STATE   ZIP CODE    AREA CODE/PHONE

OPTIONAL: FAX / E-MAIL ADDRESS
april@aprilboling.com

## Treasurer(s)

NAME OF TREASURER
C. April Boling

MAILING ADDRESS

CITY                  STATE   ZIP CODE   AREA CODE/PHONE
San Diego              CA     92119     (619)713-6888

NAME OF ASSISTANT TREASURER, IF ANY

MAILING ADDRESS

CITY                  STATE   ZIP CODE   AREA CODE/PHONE

OPTIONAL: FAX / E-MAIL ADDRESS
april@aprilboling.com

## 4. Verification

I have used all reasonable diligence in preparing and reviewing this statement and to the best of my knowledge the information contained herein and in the attached schedules is true and complete. I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on __07/30/2020__   By __C. April Boling__
         Date                Signature of Treasurer or Assistant Treasurer

Executed on __07/30/2020__   By __Joe Leventhal__
         Date                Signature of Controlling Officeholder, Candidate, State Measure Proponent or Responsible Officer of Sponsor

Executed on _____   By _____
         Date                Signature of Controlling Officeholder, Candidate, State Measure Proponent

Executed on _____   By _____
         Date                Signature of Controlling Officeholder, Candidate, State Measure Proponent

FPPC Form 460 (Jan/2016)
FPPC Advice: advice@fppc.ca.gov (866/275-3772)
www.fppc.ca.gov

FPPC Form 460 (Jan/2016)
FPPC Advice: advice@fppc.ca.gov (866/275-3772)
www.fppc.ca.gov

Exhibit A, Page 2

www.netfile.com

## Schedule G
## Payments Made by an Agent or Independent Contractor (on Behalf of This Committee)

SEE INSTRUCTIONS ON REVERSE

**SCHEDULE G**

**CALIFORNIA FORM 460**

| Statement covers period | |
|---|---|
| from | 02/16/2020 |
| through | 06/30/2020 |

Page __87__ of __87__

I.D. NUMBER
1421046

NAME OF FILER

Leventhal for Council 2020

NAME OF AGENT OR INDEPENDENT CONTRACTOR

Republican Party of San Diego County

Amounts may be rounded to whole dollars.

**CODES:** If one of the following codes accurately describes the payment, you may enter the code. Otherwise, describe the payment.

| | | | |
|---|---|---|---|
| CMP | campaign paraphernalia/misc. | MBR | member communications |
| CNS | campaign consultants | MTG | meetings and appearances |
| CTB | contribution (explain nonmonetary)* | OFC | office expenses |
| CVC | civic donations | PET | petition circulating |
| FIL | candidate filing/ballot fees | PHO | phone banks |
| FND | fundraising events | POL | polling and survey research |
| IND | independent expenditure supporting/opposing others (explain)* | POS | postage, delivery and messenger services |
| LEG | legal defense | PRO | professional services (legal, accounting) |
| LIT | campaign literature and mailings | PRT | print ads |

| | |
|---|---|
| RAD | radio airtime and production costs |
| RFD | returned contributions |
| SAL | campaign workers' salaries |
| TEL | t.v. or cable airtime and production costs |
| TRC | candidate travel, lodging, and meals |
| TRS | staff/spouse travel, lodging, and meals |
| TSF | transfer between committees of the same candidate/sponsor |
| VOT | voter registration |
| WEB | information technology costs (internet, e-mail) |

\* Payments that are contributions or independent expenditures must also be summarized on Schedule D.

| NAME AND ADDRESS OF PAYEE OR CREDITOR (IF COMMITTEE, ALSO ENTER I.D. NUMBER) | CODE | OR | DESCRIPTION OF PAYMENT | AMOUNT PAID |
|---|---|---|---|---|
| 1360 LLC<br>Arlington, VA 22201 | | Data and texts | | 1,691.07 |
| 1360 LLC<br>Arlington, VA 22201 | | Data and texts | | 962.16 |
| 1360 LLC<br>Arlington, VA 22201 | | Data | | 693.40 |
| | | | | |
| | | | | |

Attach additional information on appropriately labeled continuation sheets.

TOTAL* $ | 3,346.63

*Do not transfer to any other schedule or to the Summary Page. This total may not equal the amount paid to the agent or independent contractor as reported on Schedule E.*

FPPC Form 460 (Jan/2016)
FPPC Advice: advice@fppc.ca.gov (866/275-3772)
www.fppc.ca.gov

# Exhibit B



## BEFORE THE FEDERAL ELECTION COMMISSION

)
)   MUR 6888
)

## RESPONSE OF i360 TO THE COMPLAINTS IN MUR 6888

By and through the undersigned counsel, i360 hereby responds to the

Complaint and Supplemental Complaint ("the Complaints") in the above-captioned

Matter Under Review ("MUR").  Because the Complaints fail to allege a violation of

the Federal Election Campaign Act of 1971 (as amended) ("the Act") or the

Commission's regulations implementing same, and misstate both the law and the

facts, we respectfully request that the matter be dismissed and the file closed:

- The Complaints have not alleged that i360 meets the payment prong of the coordination analysis; nor do they identify specific communications by i360 that would satisfy the content prong.

- i360 is not a common vendor: it did not create, produce, or distribute the communications vaguely referenced in the complaint; it did not use or convey any of its campaign customers' plans, projects, activities, or needs to its outside group clients; it employs both an organizational structure and a firewall to prevent such an occurrence; and its data does not contain communicative information, such as source, about its origin or use.

- i360 does not select the audience for its customers' communications; the customers themselves must decide on their content, timing, intended audience and the like; there is no information available to a customer regarding the activities of other customers.

- The Complaints make no allegations as to i360 regarding "Establish, Finance, Maintain, or Control" or in-kind contributions.

- The Commission has not previously concerned itself with data of this sort and instead has dismissed similar enforcement matters. Given that the Commission has previously approved a number of advisory opinions regarding list swaps, to change course now would improperly regulate a relatively new area by enforcement action rather than rulemaking.

## I.    INTRODUCTION

This matter stems from Complaints filed by the American Democracy Legal Fund, an IRS Section 527 political organization formed for the purpose of targeting Republicans with complaints. *See* ADLF IRS form 8871, Line 12. In the waning days of the 2014 election, ADLF's treasurer—who is also former communications director of the DNC and president of a Democrat-aligned Super PAC—issued press releases and filed the above-referenced Complaints against i360 and dozens of other respondents alleging a wandering grand conspiracy based on inference, innuendo, and conjecture that, as explained below, is unencumbered by either law or the facts.

Respondent i360 is a for-profit company that serves as a data warehouse and data resource vendor to its customers, which include businesses, not-for-profit entities, political committees, candidates, and political party committees. Palmer Aff. at ¶1 (attached hereto as Exhibit A). i360, at its core, is a commercial data vendor selling data from its data library of over 190 million voters and 250 million American consumers, including hundreds of aggregate data points on such individuals, as well as proprietary predictive modeling data. *Id.* at ¶2. In addition, i360 has developed grassroots and analytical tools that assist clients in managing and using data effectively, including data management platforms and mobile canvassing applications (so-called "apps").[1] *Id.* at ¶3.

---

[1] On a limited basis, i360 also provides other services, including media buying, but did not provide any such other services to any of the respondents in this matter, and those other services are not raised in the complaint and are beyond the scope of this current matter.

2

The Complaints center on a methodology the media has termed "Big Data" but which is more accurately described as "data analytics" and its product: "modeling." Over the past decade or so, and after the Commission's coordination rule was promulgated, data analytics have increasingly become a part of daily life— from internet searching to consumer habits to trends in the stock market—and political life is no exception. David W. Nickerson and Todd Rogers, "Political Campaigns and Big Data," Harvard Kennedy School at 4 (Feb. 2014) , *available at* https://research.hks.harvard.edu/publications/getFile.aspx?Id=1040 (attached hereto as Exhibit B) [hereinafter "HKS Working Paper"].[2] While political campaigns and advocacy groups have always sought lists and information about voters and activists, data analytics and modeling on the scale we see today were virtually absent just ten years ago. Since then, data analytics have become big business and a regular part of campaigns across the political spectrum. *Id.*

The term "Big Data" is, at its core, misleading in this context. The essence of the modern data analytics is not just larger and better "lists" of information; modern techniques involve databases rather than lists. The difference is more than one of degree. Where the interchange of lists may involve exchanging information so that the recipient obtains new information it did not originally have (such as names, addresses or responses to various direct mail or other solicitations), data analytics starts from a different base: the entities using today's data analytics generally have

---

[2] This recent Harvard Kennedy School Working Paper "describes the state of contemporary data analytics" in campaigns. The paper was co-authored by David Nickerson, Notre Dame professor and former "Director of Experiments" of the Obama campaign's data analytics department, and Todd Rogers, Harvard Kennedy School professor and co-founder of the Analyst Institute, which focuses on developing best practices for "progressive political communications," and authored a 2008 after-action report for Democrat-aligned data vendor, Catalist.

Exhibit E, Page 4 of 69

the vast majority of the information utilized in generating those analytics already in their databases.  The business of data analytics is not so much about obtaining new information as it is the analysis, interpretation and production of new and different information not previously available.  This is generally done scientifically or through mathematical predictions or calculations.

What is exchanged today acts not as a source of new information, but a verification or test of algorithms and methodologies in use by the analysts themselves.  Unlike list exchanges of a few years ago, the information exchanged today is not used directly by the analysts or their vendors as a means of communicating messages; instead it is used to validate already-existing choices and unrelated determinations.  This is different from the sort of information considered by the regulations to be material strategic information about communications.

In other words, data analysis today is mathematics-based, and the influence of any single bit of information is very minor.  In older, list-based methodologies, a campaign, for example, might try to obtain a list of persons who responded to a particular communication, about which the campaign had no previous information.  Today, however, the data analysts already have thousands of data points on each individual, no single one of which is determinative.

The impact of data analytics is in the aggregation of these huge numbers of data points, and the resultant predictions, based on algorithms rather than past behavior, gives a more precise picture of the persons to be reached.  Thus, the data obtained through information exchanges between databases is used not for targeting communications or determining strategies (except in the grossest sense);

4

it is used to validate or challenge the algorithms and predictive "models" that make up the proprietary products of the data analysts. The algorithms themselves, and the "modeled" data provided to customers as a result of those calculations, do not depend on the results of individual exchanges such as those used in prior years' list-based exchanges or rentals.[3]

One thing that has not changed with the recent data analytics boom, though, is that "[t]he foundation of voter databases is the publicly available official voter files maintained by Secretaries of State." HKS Working Paper at 8. Such voter files can and are enhanced with additional publicly available data such as geographic attributes, precinct-level turnout, census and other additional demographic data, as well as commercially available consumer data (which can provide information about education status, home ownership, consumer tastes, and thousands of other data points). *Id.* at 9-10. Commercial services can also match or "append" telephone numbers and email addresses to individual records to further enhance the library of data. *Id.* Through this process, any one individual could be associated with thousands of data points, such as "female," "age 47," "registered voter," "Smith County resident," "holds college degree," "married," "home owner," "subscriber to

---

[3] At the risk of using analogy (but described in more detail below), i360 furnishes a constantly-replenished warehouse of possible ingredients to choose from, but it does not dictate what is for dinner, who is invited or at what time the meal is served. Or to choose a more technological example, a campaign and independent advocacy group may both use Google to search for public domain images of a flag to use in a mailer, and Google uses both users' resulting "clicks" from that search to refine its algorithms about which images to display in the future, but, since there is no exchange of information about the uses of the image, that analysis and use of the results of the analysis does not amount to coordination. i360's service can also be viewed in the same light as Lexis or WestLaw – each contain massive amounts of information, but it is the end-user who must decide what to pull, what to emphasize and how to use it in an end-product. Merely because multiple users employ such services does not mean they are working in concert.

*Field & Stream* magazine," "voted in the 2012 primary," etc.  Though this information is available to the public, some of it is by no means free and on its own is probably of very little use to anyone. *Id.*

From such publicly available files, businesses like i360 have built proprietary predictive models, the backbone of which is information about a person's identity, geographical location, demographics, voting history, and other behaviors. *Id.* This raw data can be analyzed, modeled, and tested, so that groups such as i360 can create predictive models based on this data, where future behaviors and preferences can be anticipated by i360's proprietary modeling algorithms. *Id.*

Predictive models use statistical principles to test data and attempt to discern whether certain variables (the data points) suggest a predisposition to certain behaviors.[4]  Commercial businesses such as i360 collect and purchase, organize, maintain, update, and aggregate individual data points into a commoditized database and develop predictive statistical models based upon that data using advanced data mining techniques and statistical pattern recognition.[5]

---

[4] For example, a predictive model could suggest that male homeowners over age 40 in a rural area who subscribe to *Field & Stream* are more strongly predisposed to purchase fishing equipment in the next six months than single male recent college graduates who live in an urban area and subscribe to *Hipster*. In the election context, variables, coupled with data such as previous turnout, exit polling, and other factors can be tested and analyzed to create predictive models concerning likely strength of association with a political viewpoint, propensity to vote, or other factors.  The same is true in the fields of issue and legislative advocacy, where a person's buying habits and other factors help predict predisposition to certain messages.

[5] The HKS Working Paper authors, familiar with Obama for America's massive data analytics operation, explain this in terms of an individual campaign purchasing and aggregating this information—an operation simply unfathomable for the overwhelming majority of non-presidential campaigns to undertake in-house.  Data vendors—both those catering to either side of the aisle, across the political and ideological spectrum, and those offering services to all who pay—fill this void for campaigns, organizations, and other smaller-scale customers.

6

This is no small matter; i360 employs a number of data scientists to maintain the database and proprietary modeling algorithms based on a multitude of individual data points. As in any statistically-based endeavor, there is a substantial potential for error or distortion, and thus a powerful corollary incentive for obtaining as much data as possible, and then repeatedly testing and verifying the algorithms and their products. Generally, in the study and business of statistical analysis and predictive modeling, the more valid data points are available to be tested and manipulated, the better.

Because it has built a very large and very sophisticated database and set of modeling and analytical tools, i360 has a variety of for-profit, non-profit and political customers who have varying needs for various data and data management. Some customers access the i360 library of enhanced data and predictive modeling through a web-based data management system. This system provides customers an interface to query the database based on attributes the customer desires to generate information.[6]

Critically, however, the database and its products are not determinants of communications strategy or usage; they are tools for use once a communications strategy is already determined. A customer must first decide on a preferred message, and also decide what sort of audience ought to receive their message. Once a customer has made such decisions, they can then query the i360 database. These queries are based, in large part, on the proprietary i360 predictive models,

___

[6] For example, a customer could pull or select a list of all female registered voters in Baltimore. A customer could further refine their pull to include all female registered voters in Baltimore who are registered Democrat yet appear to be pro-life under the age of 35.

although some customers can adapt their queries based upon customer-selected criteria. In other words, it is the end-user customer who ultimately decides what to select from the i360 data library, and usually does so on the basis of predictive models, and not the results of information exchanged as erroneously alleged in the Complaints. **Critically, in no case can a customer select data that that customer knows has been generated by a particular customer.** Palmer Aff. at ¶ 6. That information is simply not available to other customers, except as a result of the intensive processing of data as part of the modeled scores.

i360 also provides customers with data management tools. Several of i360's campaign customers (who are also respondents in the current matter) merely use this capability. This is known as "siloed" data; that is, data is kept in segregated "tables" or databases accessible only by that particular customer and its account representative. *Id.* at ¶ 5. Those customers upload their own data, where it remains in their own customer-specific siloed database. Such customers can then access and manipulate that data, and select from it based upon their needs and desires. For this, they generally pay a monthly fee and consent to allowing i360 to analyze the data. In other words, i360 is permitted to use this customer data to further refine and tag i360's already-existing data library and the predictive models it contains. i360 data analysts (who have no direct contact with campaign or non-campaign customers) perform this refining process by "testing" these imported data points, *i.e.*, comparing them with the results of its predictive models in i360's existing database. Though much of this imported data is redundant with existing data points, it is still valuable for i360's future purposes, because even redundant data

8

enhances the i360 database and models with issue and demographic information relevant to individuals i360 already has in its database. In short, the new data is used principally to check (or "verify") if it fits the constantly evolving predictive models; if it doesn't, the models are reviewed and altered to account for any discrepancy or shifts over time.

Consistent with what scholars have observed, "[t]he vast majority of these variables literally do nothing to increase the power of the models of mass behavior once prior behavior is accounted for (*i.e.*, any power of income or education measures to predict voter turnout are subsumed by controlling for prior turnout)." HKS Working Paper at 10. More importantly, "the attributes of these individuals can be used to develop behavior scores to identify others who may be likely [to do the same]." *Id.* In other words, data uploaded by a customer into their own siloed database is not then passed on to other customers in its raw form. Instead, it is used by i360 to double-check and enhance its already existing data and modeling, and predict the behavior of others similarly situated. **The verification process does not transmit communicative strategy or information; it is used to refine and enhance the data produced by the predictive models.**

The agreement between i360 and GOP Data Trust LLC ("Data Trust") serves a similar principal function—testing and verifying existing data models of i360's already-robust and thorough pool of data. The Complaints do not deal with this element of data analytics—which as shown above, is the defining aspect of the behaviors they object to—because they fail to understand it or how the law applies to it. Instead the Complaints try to fit superficial media stories into a pre-ordained,

9

obsolete narrative of a business model that does not apply here or elsewhere in the large data analytics world.

As it does with other commercial data resources, i360 entered into a business deal with Data Trust, another commercial data vendor[7] which possessed commoditized data that could be useful to the existing i360 data library and predictive models, and thus improve i360's product.   Palmer Aff. at ¶ 7.   Like all other data points in the i360 library and modeling database, end users cannot glean any identifying information about the source of any given data point.   *Id.*.  Nor can they ascertain who else may have used the data, how many times, for what purpose, or the like.   *Id.* at ¶¶ 6-7.

The Complaints, by contrast, paint an inaccurate factual picture, and attempt to concoct a heretofore-unknown and erroneous theory of coordination.   Under the misguided fictions contained in the Complaints, campaigns upload their own targeting lists and suggestive information to i360, which can instantly be accessed by otherwise-independent advocacy groups.  Similarly, the Complaints speculate that the Republican National Committee moves information through Data Trust, to i360, which in turn makes it instantly available to others.  This is flat wrong.

When a customer of i360 uploads information, it remains siloed in a customer-specific database, which other customers cannot access.  The account representative who handles that particular account is firewalled from speaking with

---

[7] i360 entered into a business deal with Data Trust as an independent, for profit business enterprise. i360 lacks any first-hand knowledge regarding the establishment of Data Trust, or any of the accusations raised in the Complaints regarding Data Trust's relationship with the Republican National Committee.

10

others in i360 who handle other non-campaign customers.  Palmer Aff. at ¶ 5.  The only information updates available in real-time to customers are those in their own siloes that such customers have themselves inputted *via* the data management system.  Thus, when another customer uses the i360 data warehouse, it does so without any indication where its selected data came from: publicly available voter file, consumer data, other publicly available data, or data points generated by other customers.  Critically, there is no communication between customers of material strategic information in this use, and, contrary to the unfounded conspiracy theory espoused in the Complaints, the use of such data is done at the sole discretion of the customer's strategists and communications personnel.

In sum, the Complaints' presentation of the facts and accompanying coordination conspiracy theory is wrong.  The vast majority of what is used by independent advocacy groups comes from publicly available information, and has gone through several filters, performed by professional individuals who are not involved in any way in a customer's development of their plans, projects, activities or strategic needs, with the added protection of an anti-coordination firewall.  What is left is mathematically reliable data, without any of the sort of human intuition or communication, strategic significance or any of the sorts of plans or needs contemplated by the Commission's coordination regulation.  Simply put, there is thus no material strategic information about communications in the exchange of data in today's database-oriented world.  The volume of information exchanged is not material (especially in the context of the overall information already in the database), the information is not used for strategic purposes (that is the focal point

11

of the predictive models, not the data itself), and the information exchanged is not available for the purposes alleged in the Complaints. Ultimately, what is left in the i360 database is akin to an enhanced phone book, which does not instruct the end-user on who to contact or how to use it. Such decisions are left to the end-user customer.

The Complaints simply do not understand this aspect of the activities they complain about, and they therefore misstate the law as much as they misstate the facts. Using a list-based analysis to challenge a database-oriented system overstates some aspects and underplays others, and the combination is far from accurate, complete or illuminating. It is simply a recitation of opinions without any recognition of what is really going on.

## II.   ANALYSIS

### A.   The Complaints Misstate and Misapply the Coordination Rule

The Commission's coordination regulation, found at 11 C.F.R. § 109.21, sets forth a three-part test, commonly summarized as (1) the payment prong, (2) the content prong, and (3) the conduct prong.  All prongs must be satisfied in order for the regulation to apply. *See* Explanation & Justification for Regulations on Coordinated and Independent Expenditures, 68 Fed. Reg. 421, 426 (Jan. 3, 2003) [hereinafter "2003 E&J"] ("For a communication to be 'coordinated,' all three prongs of the test must be satisfied" and "no one of these elements standing alone fully answers the question.").

This is true even at the initial reason to believe stage. *See* MUR 5823 (Club for Growth, Inc.) Factual & Legal Analysis at 8, 9 (finding no reason to believe

12

despite the fact that advertisements "appear to meet both the payment prong and

the content standard" because they "do not appear to meet the common vendor

conduct standard.").  The Commission has made clear that "reason to believe" is a

heightened standard:

> The Commission may find "reason to believe" only if a complaint sets forth
> sufficient separate facts, which, if proven true, would constitute a violation of
> the FECA.  Complaints not based upon personal knowledge must identify a
> source of information that reasonably gives rise to a belief in the truth of the
> allegations presented.

MUR 4960 (Hillary Rodham Clinton for U.S. Senate Exploratory Committee, Inc.),

Statement of Reasons of Commissioners David M. Mason, Karl J. Sandstrom, Bradley

A. Smith and Scott E. Thomas at 1 [hereinafter "MUR 4960 (Clinton) Statement of

Reasons"].  *See also* MURs 5878 (Arizona State Democratic Central Committee),

Statement of Reasons of Commissioners Donald F. McGahn, Caroline C. Hunter and

Matthew S. Petersen at 4-7 (discussing Commission's treatment of heightened

reason to believe standard); 4850 (Committee to Re-Elect Vito Fossella / Deloitte &

Touche, LLP), Statement of Reasons of Commissioners Darryl R. Wold, David M.

Mason and Scott E. Thomas at 2 ("A mere conclusory allegation without any

supporting evidence does not shift the burden of proof to the respondents.").  The

Commission has consistently dismissed complaints claiming coordination that are

sparse on facts or heavy on circumstantial evidence.  *See* MURs 6611 (Friends of

Laura Ruderman); 6368 (Friends of Roy Blunt); 6570 (Berman for Congress); 6359

(Voters Response); 6038 (Lamborn); 6077 (Coleman); 6050 (Boswell for Congress);

6059 (Sean Parnell for Congress); 6056 (Protect Colorado Jobs, Inc.); 5845 (Citizens

13

for Truth); 6164 (Sodrel); 5754 (MoveOn.org Voter Fund); 5568 (Empower Illinois);

5576 (New Democrat Network); 5609 (Club for Growth, Inc.); and 5691 (Whalen).

### 1. Neither the "Payment" nor "Content" prongs are met

The Complaints fail to point to any communications made by i360 that could

meet the payment prong. i360 does not pay for any communications and did not

otherwise distribute communications at issue in the Complaints, and therefore does

not satisfy the payment prong of the coordination analysis. 11 C.F.R. § 109.21(a)(1).

Thus, the Complaints ought to be dismissed as to i360 for this reason alone.

Further, the Complaints fail to point to any particular communications they

allege are coordinated. Rather, the Complaints attach what appears to be a random

sample of undifferentiated communications. The coordination regulations, though,

require more. *See* 11 C.F.R. § 109.21(a) (defining the scope of the regulation to a

specific communication, *i.e.*, "<u>A</u> communication is coordinated . . ."); MUR 6077

(Coleman) First General Counsel's Report at 8 (requiring the complaint to allege

"<u>specific</u> communications(s) . . . have been coordinated") (emphasis added); MUR

5845 (Citizens for Truth), Factual & Legal Analysis at 3 ("The complaint provides no

information indicating whether the content prong may be satisfied."). The

regulations center on the communication itself, requiring each prong of the analysis

to be satisfied. 11 C.F.R. § 109.21(a). Because the regulations are communication-

specific, a generalized accusation of atmospheric "coordination" is not enough under

the coordination regulations or under the reason to believe standard. *See* MUR

4960 (Clinton) Statement of Reasons at 3 ("[P]urely speculative charges, especially

when accompanied by a direct refutation, do not form an adequate basis to find

14

reason to believe that a violation of the FECA has occurred"). Moreover, it appears that, to the extent any particular communications can be gleaned by inference from the Complaints, they are television advertisements. Since i360 is in the business of selling enhanced data with respect to the named Respondents—akin to an enhanced phone book based upon publicly available voter rolls and consumer data—the Complaints' accusations regarding that data have nothing to do with the television ads referenced in the Complaints. The Complaints can also be dismissed on this ground alone.

### 2.  The "Conduct" prong is not met

The Complaints hinge on the erroneous notion that i360 serves as a "common vendor" under 11 C.F.R. § 109.21(d)(4). That section states:

All of the following statements in paragraphs (d)(4)(1) through (d)(4)(iii) of this section are true:

(i)  The person paying for the communication, or an agent of such person, contracts with or employs a commercial vendor, as defined in 11 CFR 116.1(c), to create, produce, or distribute the communication;

(ii) That commercial vendor, including any owner, officer, or employee of the commercial vendor, has provided any of the following services to the candidate who is clearly identified in the communication, or the candidate's authorized committee, the candidate's opponent, the opponent's authorized committee, or a political party committee, during the previous 120 days:

    (A) Development of media strategy, including the selection or purchasing of advertising slots; (B) Selection of audiences; (C) Polling; (D) Fundraising; (E) Developing the content of a public communication; (F) Producing a public communication; (G) Identifying voters or developing voter lists, mailing lists, or donor lists;  (H) Selecting personnel, contractors, or subcontractors; or (I) Consulting or otherwise providing political or media advice; and

(iii) This paragraph, (d)(4)(iii), is not satisfied if the information material to the creation, production, or distribution of the communication used or conveyed by the commercial vendor was obtained from a publicly available

source. That commercial vendor uses or conveys to the person paying for the communication:

> (A) Information about the campaign plans, projects, activities, or needs of the clearly identified candidate, the candidate's opponent, or a political party committee, and that information is material to the creation, production, or distribution of the communication; or

> (B) Information used previously by the commercial vendor in providing services to the candidate who is clearly identified in the communication, or the candidate's authorized committee, the candidate's opponent, the opponent's authorized committee, or a political party committee, and that information is material to the creation, production, or distribution of the Communication.

The Commission was clear in 2003 when it instituted this regulation that "[t]he common vendor rule is carefully tailored to ensure that all . . . conditions be met." 2003 E&J at 436; *see also* MUR 6277 (Kirkland), Statement of Reasons of Commissioners Caroline C. Hunter, Donald F. McGahn and Matthew S. Petersen at 8 ("the common vendor standard cannot be met where there is no common vendor").

But with respect to i360, the conditions are not met, specifically because:

- i360 was not hired to create, produce, or distribute communications, and thus cannot use any other client's information in the creation, production or distribution of a communication.

- The data in the i360 data library or predictive models does not and cannot contain communicative information or any indicia of another customer's plans, projects, activities or needs.

- Customers' data is initially siloed so that no one customer may access another's data.

- i360 account managers (who are aware of a specific customer's data) for outside groups are firewalled from those for candidate or party groups.

16

### a. i360 is not a "common vendor" because it was not hired to create, produce, or distribute any communications

Contrary to the Complaints' speculative and unfounded conclusory allegations, i360 does not come within the regulatory definition of "common vendor." Simply put, i360 was not hired by any of the other Respondents to either create, produce, or distribute any communications. Palmer Aff. at ¶ 8. Instead, i360 is in the business of data and the management thereof, and with respect to the respondents in this matter, does not "distribute" communications under the regulation. The Commission has already confirmed in its 2003 regulatory Explanation and Justification that the coordination regulation does not apply to such commercial vendors such as i360. There, the Commission made clear that the "standard only applies to a vendor whose usual and normal business includes the creation, production, or distribution of communications, and does not apply to the activities of persons who do not create, produce, or distribute communications as a commercial venture." 2003 E&J at 436; *see also FEC v. Christian Coalition*, 52 F. Supp. 2d 45 (D.D.C. 1999) (speaking to the meaning of "distribute" in the coordination context); Supplemental Notice of Proposed Rulemaking on General Public Political Communications Coordinated With Candidates, 64 Fed. Reg. 68951, 68951 (Dec. 9, 1999) (the proposed rules were intended to "incorporate . . . the standard articulated . . . in the *Christian Coalition* decision"). Data is not a communication, especially when it is anonymized as it is by i360 and most other modern data analytics organizations.

Past enforcement actions make the same point. For example, in MUR 6077 (Coleman), the Office of General Counsel observed that "a vendor is a 'common

17

vendor' for the purposes of the Act only if the same vendor creates or distributes the ad alleged to be coordinated." MUR 6077 (Coleman), First General Counsel Report at 7. Here, there is not even an allegation that i360 either created or distributed any of the communications referenced in the Complaints. The same was true in MUR 6050 (Boswell for Congress). There, even where a campaign and an advocacy group used a common mail house, which in turn used the same postal indicia on each client's mailing, coordination allegations were dismissed. *See* MUR 6050 (Boswell for Congress), Factual & Legal Analysis at 9-10. Thus, because i360 did not distribute any communications, the Complaints ought to be dismissed.

### b. Prior enforcement matters confirm that i360's business is not the sort from which common vendor coordination results.

Other Commission enforcement matters confirm that i360's business does not raise coordination concerns. For example, in MURs 5774 and 6038 (both of which concerned Lamborn for Congress), the Commission considered whether it was permissible for a commercial vendor to provide the same enhanced voter list already provided to the Lamborn campaign to an otherwise independent advocacy group. Further complicating the Lamborn matter was the fact the vendor was owned by the campaign manager, who in turn directed his company to provide to the advocacy organization the same enhanced list that was being used by the campaign. The Commission did not take issue with the arrangement, the result being that neither the vendor, the campaign, nor the advocacy organization violated the law.

Exhibit E, Page 19 of 69

MURs 5774 and 6038 also confirm that any enhancement of data i360

receives from its political customers is of no legal consequence. It was made clear

by the General Counsel in his initial report that the list at issue in MURs 5774 and

6038 was not simply an unaltered voter list, but instead had been enhanced by the

campaign manager's company. Even with those enhancements—added under the

direction and with the full knowledge of the campaign manager—coordination did

not occur when the campaign-enhanced list was sent to an advocacy group. And as

was the case in those MURs, here the bedrock of the i360 data library comes from

publicly available sources, such as voter lists and consumer data. Thus, as was

alluded to in MURs 5774 and 6038, this places it within the "public information" safe

harbor found in the Commission's regulations. *See* 11 C.F.R. § 109.21(d)(2), (3) &

(4)(iii) (regulation does not apply if "information material to the creation,

production, or distribution of the communication was obtained from a publicly

available source").

The same result ought to follow here. MURs 5774 and 6038 have already

blessed analogous list sharing, even when a campaign manager specifically requests

the list be given to an advocacy organization. That none of those more complicated

facts are present here makes i360 a much easier case than that presented in MURs

5774 and 6038. [8]  After all, i360 is not an old-fashioned list broker, nor does it

---

[8] In fact, some states not known for shyness in their efforts to regulate campaign finance have
similarly recognized that data analytics is a compliant use of data and campaign finance information.
*See, e.g.,* Minnesota Campaign Finance and Public Disclosure Board Advisory Opinion 418, at 3 (Oct. 4,
2011) ("Therefore, an association, including a for-profit association, may filter, improve or
implement the use of Board data for a fee."), *available at*
http://www.cfboard.state.mn.us/ao/AO418.pdf.

Exhibit E, Page 20 of 69

conduct the sort of "list development" contemplated by the Commission's regulations. *See* 11 C.F.R. § 109.21(d)(4)(ii)(G). The Complaints ought to be dismissed.

> **c. i360 is not a "common vendor" since the Complaints fail to allege any facts that i360 shared any sort of needs, plans or strategies among its customers**

The Complaints incorrectly assume that merely by declaring "common vendor," they have sufficiently alleged impermissible coordination. Not so. As the Commission has made clear time and time again, mere use of the same vendor is not disallowed; vendors can provide services including those enumerated in 11 C.F.R. § 109.21(d)(4)(ii) to multiple customers without running afoul of the coordination rules:

> But under this final rule, even those vendors who provide one or more of the specified services are not in any way prohibited from providing services to both candidates or political party committees and third-party spenders. This regulation focuses on the sharing of information about plans, projects, activities, or needs of a candidate or political party through a common vendor to the spender who pays for a communication that could not then be considered to be made "totally independent" from the candidate or political party committee.

2003 E&J at 436-7. i360 does not share such information, and the Commission has already made clear that as a commercial vendor it can permissibly provide services to both candidate and political party clients and third-party spenders without triggering coordination. In fact, the regulations require much, much more: first, that the vendor also obtain and convey to others "[i]nformation about the campaign plans, projects, activities, or needs" of either the candidate or a political party; and second, that such information is used, and "material to the creation, production, or distribution of the communication." 11 C.F.R. § 109.21(d)(4).

20

The Complaints fail to offer any evidence or coherent analysis of such requirements. Instead, they offer a series of straw men, that they quickly torch. Relying on the resulting smoke, and in lieu of such requisite factual assertions, the Complaints weave a speculative conspiracy theory: that either the Republican National Committee or campaign committees are providing specific targeted lists that are then in turn provided instantly to otherwise independent advocacy groups *via* either i360, Data Trust, or a combination of the two. This is flat wrong on the facts. Simply put, i360 does not engage in substantial discussion with or otherwise obtain from its campaign customers information about plans, projects, activities or needs, and certainly does not then convey such non-existent information to others. Instead, i360 merely provides, houses and, in most instances, enhances data. In fact, the enhancement is so total in most cases that the exchanged data itself is not identifiable to anyone either directly or because it is such a small part of the modeled score that the customer receives.

Ultimately, the Complaints' conspiracy theory is easily debunked for two central reasons. First, any notion that information is being passed from a campaign or party committee to an independent advocacy group is false. Data of the sort at issue does not include such communicative information. i360 does not identify to its customers from where the data came, who else is using it, or for what purpose, or the like. Contrary to the Complaints' speculation, end-users do not—and cannot—know who discovered a particular piece of information, let alone when or how.

Second, the Complaints improperly attempt to lump in with campaign decision making and strategic communications, the concept of an enhanced data

21

library (which finds its origin in publicly available information and qualitative statistical analysis). The existing coordination rules do not permit Complainants' creative leap. Rather, the common vendor and coordination regulations concern themselves with plans, projects, activities, needs—all things that are the subjective domain of the client, and which do not enter into the i360 library. i360's database constitutes a library of factual, qualitative information, available to be accessed and used by its clients on their own prerogative. Absent from this data is the sort of consulting, strategizing, or private campaign information from which coordination arises under FECA, the Commission's regulations, or the Commission's precedents.

### d. In an abundance of caution, i360 maintains an internal firewall to avoid even the appearance of improper coordination

Even though i360 does not fall under the category of common vendor, nor does it obtain or convey the sort of insider information covered by the coordination rule, it nonetheless maintains an internal firewall, where those employees who deal with campaign or party committee customers do not deal with advocacy groups, and those who deal with advocacy groups do not deal with campaigns or party committees. *See* Exhibit C. Thus, such prudent business practices insulate i360 from any coordination allegation. *See* MUR 5823 (Club for Growth, Inc.), Factual & Legal Analysis at 6 ("Importantly, [respondents] assert that, as a matter of policy and practice, they isolate consultants or employees who also provide services to the candidates clearly identified in their advertisements (or their opponents and authorized committees)").

22

In addition, at the times relevant to this matter, i360 employs six account managers to handle its various customers.  Those account managers who deal with campaign and party committee customers do not deal with relevant third-party advocacy customers, and those who deal with third-party advocacy customers do not deal with relevant campaigns and parties.  Palmer Aff. at ¶5.  They are physically separated, and sit in separate locations in i360's office.  Under i360's policy, they are not permitted to speak to each other about their respective customer accounts.  Thus, even if an account manager were to become privy to some potentially problematic insider information, the firewall policy prevents that information from going any farther.  Any possible communicative link between a client's data and outputs of the i360 data library is broken not once, but twice, by the operation of both i360's firewalls and its business practices.

The data itself is not a means of transmitting private plans, projects, activities, and needs between campaigns and independent advocacy customers.  Further, because any data points gleaned from the i360 data library or modeling scores have been scrubbed of source, circumstance, or any other identifying information, one customer cannot "reverse engineer" the data in the library in an attempt to gain information about another customer's activities, regardless of the Complaints' conjecture on the subject.[9]  Because i360 does not engage in the sort of

---

[9] Although not relevant for the purposes of the MUR, i360 provides other services to other clients, such as media placement.  To be clear, i360 did not provide such services to any Respondents in the current matter.  Because of these other services that are not at issue here, i360's firewall is written in the broadest terms, and contemplates situations where i360 might be hired by others to place media.  *See* i360 Firewall Policy (attached hereto as Exhibit C).  Regardless of such details, however, the written firewall, distributed to i360 employees, creates a wall between data account managers to prevent precisely the sort of free flow of information imagined in the Complaints.  The Commission

conduct covered by the Commission's coordination regulation, the Complaints ought

to be dismissed.

**B.** **The Allegations Regarding "Establish, Finance, Maintain, or Control"**
**and In-kind Contributions Between the Republican National**
**Committee and the Data Trust Are of No Consequence to i360**

    **1.** ***The Complaints do not claim that i360 was established,***
    ***financed, maintained, or controlled by the Republican National***
    ***Committee or any other political committee***

The main thrust of the Complaints concern the relationship between the

Republican National Committee, Data Trust and Crossroads. Other than what had

been included in the Complaints, i360 has no knowledge or information regarding

such accusations. In fact, any business relationship between i360 and Data Trust is

still quite new, and occurred long after Data Trust was established.

Regardless, the Complaints ignored well-settled precedent on the issue, and

create what can only be viewed as a novel approach to the issue, apparently based

solely on a few board members supposedly having "ties to the Republican Party

apparatus" (which has never been deemed a problem before) and an anonymous

blog post, which by any measure does not establish reason to believe. *See* MUR

5338 (The Leadership Forum) Statement of Reasons of Commissioners Ellen L.

---

has never troubled itself with such technical details, and ought not do so here. *See* MUR 5823 (Club for Growth, Inc.), Factual & Legal Analysis at 12 (Respondents "fail[ed] to establish that they have a written firewall policy that was distributed to all relevant employees, consultants, and clients and, thus, do not meet the technical requirements for the safe harbor at 11 C.F.R. § 109.21(h). Nonetheless, their representations regarding the policy and practice of isolating common vendors sufficiently refute the speculative allegations of common vendor coordination, particularly when considered with the other information in their sworn statements." (footnote omitted)); *see also* MUR 5506 (EMILY's List) (proffer by counsel in initial response was sufficient to establish firewall and dismissal of matter even where group had field staff working directly with campaigns who were the subject of otherwise independent advocacy). Because i360 has established a firewall, the Complaints must be dismissed.

Weintraub and Scott E. Thomas at 2 (chiding OGC for selective use of newspaper articles); *see also id.* at 3 (criticizing "transitive theory of affiliation"); 52 U.S.C. §30109 (formerly 2 U.S.C. § 437g(a)(1)) (requiring that complaints be filed under oath).

### 2. *Even if the Republican National Committee established, financed, maintained or controlled the Data Trust, that does not change the result with respect to i360*

i360 does not read the Complaints as even attempting to allege sufficient facts to establish reason to believe as to the business relationship between the Republican National Committee and Data Trust. But even assuming *arguendo* that there are sufficient facts to question the relationship between the Republican National Committee and Data Trust, that does not change the result with respect to i360. For decades, the Commission has never taken issue with list exchanges, and never so much as hinted that such conduct could somehow raise either coordination or other issues. For example, since at least 1981, the Commission has recognized the commoditized nature of lists. *See* AO 1981-46 (Dellums) ("no contribution or expenditure would result and the transaction would not be reportable under the Act" where "a corporation exchanges names with [a] Committee"). In fact, the Commission has even made clear that national party committees can sell or lease (and thus exchange) their lists—even with 527 organizations, 501(c)(4)s, and labor organizations. *See* AO 2002-14 (Libertarian National Committee). Thus, even if the Republican National Committee and the Data Trust are one and the same (a point the Complaints fail to establish, but we only assume *arguendo*), that does not preclude or otherwise call into question the commercial business arrangement

25

between i360 and Data Trust.  It is already protected by a Commission advisory

opinion.  *See* 52 U.S.C. § 30108(c) (formerly 2 U.S.C. § 437f) ("Any advisory opinion

rendered by the Commission under subsection (a) may be relied upon by . . . any

person involved in any specific transaction or activity which is indistinguishable in

all its material aspects from the transaction or activity with respect to which such

advisory opinion is rendered.").  In other words, even if there might be some

speculative questions or other conjecture about the Republican National Committee

and Data Trust, that does not preclude the dismissal of i360.

### 3. The Complaints' allegations concerning a possible in-kind contribution by the Data Trust to the Republican National Committee in the form of data services does not involve i360

The Complaints allege that the business deal between the Data Trust and the

Republican National Committee may somehow have resulted in an excessive in-kind

contribution to the Republican National Committee.  The Complaints make no

allegation or even suggestion that this claim involves i360 in any way.  Nor could

they.  i360 engaged in a *bona fide* commercial business deal with the Data Trust.

The Commission has a long history of approving *bona fide* business deals and

industry practices, especially when it comes to voter, mailing, and other lists of

individuals—even when it involved a federal committee—rather than viewing them

as contributions or in-kinds.  *See, e.g.,* AOs 1979-36 (Fauntroy) (approving industry

standard practice regarding direct mail prospecting); 1981-46 (Dellums)

(approving industry standard list exchange of names on mailing lists); 2002-14

(Libertarian National Committee) (approving party committee list rental per

industry standards).  Because the Commission has not previously questioned such

26

commercial deals before, it ought not do so here, and the Complaints ought to be dismissed.

### C.  The Commission Ought to Decline the Invitation to Engage in "Regulation *via* MUR"

#### 1.  *The FEC has not previously declared commercial transactions regarding data to be suspect*

The Commission has considered a number of enforcement matters in which coordination is alleged.  But a review of those matters confirms that the sort of commoditized information library at issue in the Complaints simply is not the sort of activity traditionally considered to raise questions regarding coordination.  Nothing in the Commission's regulations, rulemakings or history suggests that this sort of commercial data activity creates coordination concerns—in fact, it has said precisely the opposite in a case that included allegations of request or suggestion by a campaign manager acting through a common vendor which he managed, *see* MURs 5774 and 6038 (Lamborn), and the Commission has already acknowledged the practice.  *See* Notice of Proposed Rulemaking on Mailing Lists of Political Committees, 68 Fed. Reg. 52531, 52533 (Sept. 4, 2003) ("The Commission also seeks comment on whether it is usual and customary in the commercial list marketplace for one entity to provide raw list data to another entity that updates and enhances the data and where both entities consequently have access to the list.").  The Lamborn MURs only confirmed the Commission's settled approach to the subject both in the regulation (first announced at its time of promulgation in its Explanation and Justification), and its history of approving advisory opinions, such as the

approval of the Libertarian Party's proposal to rent its list to 501(c)(4) and 527

groups in AO 2002-14.

### 2. The advances in "Big Data" came about after the coordination rule was crafted.

The Commission ought not to be suspicious of Big Data. Campaigns and

advocacy groups have long had methods of trying to predict the behavior of

voters—from shoeboxes of index cards that served as a voter file to basic databases

with scores assigned from 1 to 4. Beginning with the Democratic National

Committee's utilization of the expertise of direct mail expert Matt Reese and the

associated firm Claritas in the 1970's, predicting the behavior of voters, citizens,

customers and consumers has evolved. Most recently, the use of Big Data as a

means to target, analyze and predict voter behavior has become common across the

political spectrum with Democratic companies and groups playing a leading role

over the last few years in developing these techniques.[10]  Merely because the

advance of technology has changed and made more sophisticated the means

available to target voters does not make these advances illegal.

It is likewise critical that the Commission recognize that similar advances in

Big Data have been employed across commercial contexts. Organizations in various

---

[10] *See* Robert Knight, Catalist, the Left's Secret Electoral Weapon, Outguns GOP, *Washington Times* (Sept. 15, 2014), http://www.washingtontimes.com/news/2014/sep/19/knight-the-lefts-mighty-catalist/?page=all. In fact, the Complainant was created by David Brock of Media Matters, a group funded by George Soros, who also funds Catalist, the Democratic data company. *See* Kenneth P. Vogel, Media Matters' David Brock Expands Empire, *Politico* (Aug. 31, 2014), http://www.politico.com/story/2014/08/david-brock-citizens-for-responsibility-and-ethics-in-washington-110003.html (discussing Brock's "golden touch" with George Soros); George Soros Reinvests in Progressive-cause Data Company, *CNN* (Nov. 14, 2013), http://www.politico.com/story/2014/08/david-brock-citizens-for-responsibility-and-ethics-in-washington-110003.html ("A data analytics company specializing in progressive causes is getting a new round of investment funding, including $2.25 million from liberal billionaire George Soros, the company said Thursday.... Soros ... was an initial investor of Catalist's in 2006.").

industries gather, purchase, sell, enhance, amalgamate, exchange, share, and use data much like that at issue in this matter in an every-day business context. The Commission should not preclude those who wish to exercise their First Amendment rights or otherwise engage in politics from availing themselves of the same technologies and methods. To do otherwise would put those whose livelihood focuses on the sale of such data at a significant competitive disadvantage as compared to those with a broader focus. Instead, the Commission should ensure that commercial conduct that is standard practice for Amazon or Facebook or *The Washington Post* remains an available tool, technique, and technology for those who participate in elections and wish to contact citizens to encourage civic participation.

After all this, however, in all critical respects, Big Data changes nothing about the key aspects of coordination—even with this emerging technology, the speakers themselves still must devise strategies, plans and messages on their own. They must still determine what they want to say and do on their own, before they utilize Big Data to inform their own list of targeted individuals. Ultimately, the content of the message is determined by the end-user, as is the intended audience. All so-called Big Data provides is a more detailed and nuanced ability to find that intended audience.

### 3. The Administrative Procedure Act, Due Process and the First Amendment preclude the FEC from changing course here

The Act is clear that any new rule must be done *via* public rulemaking. 52 U.S.C. § 30108(b) (formerly 2 U.S.C. § 437f(b)) ("Any rule of law which is not stated in this Act or in chapter 95 or chapter 96 of title 26 may be initially proposed by the Commission only as a rule or regulation pursuant to procedures established in

section 30111(d) of this title."); *see also* 5 U.S.C. § 551, *et seq.* (Administrative

Procedure Act). Numerous Commissioners have repeatedly cautioned against using

the enforcement process to make new rules or otherwise avoid so-called "regulation

*via* MUR." *See* MURs 6206 (BASF Corporation), Statement of Reasons of

Commissioners Matthew S. Petersen, Caroline C. Hunter and Donald F. McGahn at 2-

3 (declining to find RTB because it "would have required us to rely on mere

speculative inferences and to craft a new rule that goes beyond the plain language of

the Act and Commission regulations"); 6113 (Kirby Hollingsworth), Statement of

Reasons of Commissioners Matthew S. Petersen, Caroline C. Hunter and Donald F.

McGahn at 9 ("As we have repeatedly explained, the enforcement process of the

Commission is not the place to articulate new legal prohibitive norms"); 5937

(Romney for President, Inc.), Statement of Reasons of Commissioners Matthew S.

Petersen, Caroline C. Hunter and Donald F. McGahn; 5835 (DCCC / Quest Global

Research Group, Inc.), Statement of Reasons of Commissioners Matthew S. Petersen,

Caroline C. Hunter and Donald F. McGahn at 9 ("As we have done in other matters,

we decline the invitation to use the enforcement process to make new law, and we

will not engage in so-called regulation via MUR".); and 5541 (The November Fund),

Statement of Reasons of Commissioners Matthew S. Petersen, Caroline C. Hunter

and Donald F. McGahn.

In addition to such administrative restraints, the Supreme Court has made

clear that administrative agencies cannot simply change course and launch either

new or previously rejected legal theories in the enforcement context. *See FCC v. Fox

Television Stations, Inc.*, 132 S. Ct. 2307 (2012). To do so violates fundamental

notions of due process. *Id.* Similarly, given that the investigation of speculative coordination accusations involves the government oversight of the sort of speech that is at the core of First Amendment protection, in a close call, the Commission is obligated to err on the side of liberty. As the Supreme Court recently noted, "validly conferred discretionary executive authority is properly exercised . . . to avoid serious constitutional doubt." *Arizona v. Inter-Tribal Counsel of Ariz., Inc.*, 133 S. Ct. 2247, 2259, 570 U.S. ___ (2013). Thus, the Commission is obligated to honor the doctrine of constitutional avoidance, which has a particularly urgent application here, a matter that concerns protected politics. *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988); MUR 5541 (The November Fund), Statement of Reasons of Commissioners Matthew S. Petersen, Caroline C. Hunter and Donald F. McGahn.; *see also* MUR 5879 (Harry Mitchell for Congress), Statement of Reasons of Commissioners Caroline C. Hunter, Donald F. McGahn and Matthew S. Petersen (discussing the constitutional significance of coordinated and independent expenditures).

## III.    CONCLUSION

The i360 business i360 conducts is not the sort that is contemplated by the regulatory common vendor restriction; i360 does not create, produce, or distribute messages. And because it is not a campaign, party, or outside group making communications, it does not engage in activities that could be considered contributions to federal candidates. FECA and the regulations cannot be read broadly to apply to a commercial vendor—one which does not make communications and which has taken appropriate and responsible measures to

safeguard against being a means of coordination between their clients—in an unfounded attempt by a Complainant to somehow wrongly bring such activities under the purview of the Commission and the coordination rules.

Ultimately, the end-user customers of i360 determine what messages they wish to disseminate to whatever segments of the population those customer choose, at whatever time and means they choose. The use of i360 data does not provide such information, nor could it. It is the i360 customer who decides what they want to communicate in a message—and how they want to communicate their message—and selects what people they want to target with that message. Only then does the customer query the i360 data library in order to build a list and obtain contact information for that universe. And no record of what universes the customer pulls for what reasons and when could possibly reach any other customer of i360. In other words, i360 does not select the target audience; each customer does without knowing what any other customer is doing or has done.

For the foregoing reasons, Respondent respectfully requests that the Commission find **NO REASON TO BELIEVE** that a violation occurred, that this matter be **DISMISSED** and that the Commission **CLOSE THE FILE.**

Respectfully submitted,

Donald F. McGahn II
Jones Day
51 Louisiana Ave., N.W.
Washington, DC 20001
(202) 879-3939

*Counsel for i360*

32



RECEIVED
FEDERAL ELECTION
COMMISSION

2015 JAN -6  PH 4:49

OFFICE OF GENERAL
COUNSEL

# Exhibit

# B



**HARVARD Kennedy School**
JOHN F. KENNEDY SCHOOL OF GOVERNMENT

# Political Campaigns and Big Data

## Faculty Research Working Paper Series

David W. Nickerson
University of Notre Dame


Todd Rogers
Harvard Kennedy School

**Revised, February 2014**
**RWP13-045**

Visit the HKS Faculty Research Working Paper Series at:
http://web.hks.harvard.edu/publications

The views expressed in the HKS Faculty Research Working Paper Series are those of
the author(s) and do not necessarily reflect those of the John F. Kennedy School of
Government or of Harvard University.  Faculty Research Working Papers have not
undergone formal review and approval.  Such papers are included in this series to elicit
feedback and to encourage debate on important public policy challenges. Copyright
belongs to the author(s).  Papers may be downloaded for personal use only.

*www.hks.harvard.edu*

# Political Campaigns and Big Data

David W. Nickerson and Todd Rogers

David W. Nickerson is Associate Professor of Political Science, University of Notre Dame, South Bend, Indiana.  He served as the "Director of Experiments" in the Analytics Department in the 2012 re-election campaign of President Barack Obama. Todd Rogers is Assistant Professor of Public Policy, Harvard Kennedy School of Government, Cambridge, Massachusetts.  He co-founded the Analyst Institute, which uses field experiments and behavioral science insights to develop best practices in progressive political communications.  Their email addresses are dnickers@nd.edu and Todd_Rogers@hks.harvard.edu.

ABSTRACT (145 words):

Modern campaigns develop databases of detailed information about citizens to inform electoral strategy and to guide tactical efforts.  Despite sensational reports about the value of individual consumer data, the most valuable information campaigns acquire comes from the behaviors and direct responses provided by citizens themselves.  Campaign data analysts develop models using this information to produce individual-level predictions about citizens' likelihoods of performing certain political behaviors, of supporting candidates and issues, and of changing their support conditional on being targeted with specific campaign interventions.  The use of these predictive scores has increased dramatically since 2004, and their use could yield sizable gains to campaigns that harness them.  At the same time, their widespread use effectively creates a coordination game with incomplete information between allied organizations.  As such, organizations would benefit from partitioning the electorate to not duplicate efforts, but legal and political constraints preclude that possibility.

1

The all-encompassing goal of political campaigns is to maximize the probability of victory. To that end, every facet of a campaign is evaluated by how many votes an activity will generate and at what cost. But in order to perform this cost-benefit analysis, campaigns need accurate predictions about the preferences of voters, their expected behaviors, and their responses to campaign outreach. For instance, efforts to increase voter turnout are counter-productive if the campaign mobilizes people who support the opponent. Over the past six years, campaigns have become increasingly reliant on analyzing large and detailed data sets to create the necessary predictions. While the adoption of these new analytic methods has not radically transformed how campaigns operate, the improved efficiency gives data savvy campaigns a competitive advantage in targeting. This has led the political parties to engage in an arms race to leverage ever growing volumes of data to create votes. This paper describes the utility and evolution of data in campaigns.

As recently as a decade or two ago, the techniques used by political campaigns to predict the tendencies of citizens appear extremely rudimentary by current standards. At that time, citizens' likely support was gauged primarily by their party affiliation and the "performance" of the precinct in which they lived (that is, what percentage of the precinct had voted for a given party in the recent past). Whether a person was likely to turn out and vote was often based on the past four general elections; for example, it was not uncommon to hear phrases like "2 of 4 voter" or "3 of 4 voter" used in campaign targeting plans. Past donors would be recontacted and asked for a flat amount of money (or perhaps asked for their highest previous contribution if that information was available) and prior volunteer captains would be recontacted, but intermittent volunteers were unlikely to appear on any lists. At this time, a "numbers driven campaign" implied that candidates and their advisors paid close attention to poll numbers and adjusted policies in response to surveys. A memorable example of this dynamic is the story of President Clinton's advisor Dick Morris fielding a poll to choose Jackson Hole, Wyoming as the vacation spot for the president (Kuhn 2007). Presidential campaigns targeted states based on historical

2

notions of which states could see the vote swing either way, combined with the realities of the campaign budget.

In retrospect, the reliance of political campaigns on such rough—although often useful—heuristics is puzzling. Campaigns a decade ago already possessed considerable information on citizens' preferences based on what they had collected directly from volunteers, donors, and their own polling. Voter registration rolls were available from Secretaries of State. Detailed census information was available. Why did campaigns take so long to realize the value of information resources they already possessed?

Part of the answer is technological: adequate storage and computing power required large investments and were beyond the infrastructure of nearly all campaigns and state parties. Even if an entrepreneurial campaign made that investment, much of the available data would not have been as reliable as it is today. States were not required to keep electronic copies of which citizens voted in each past election until 2002 with the passage of the Help America Vote Act of 2002 (42 U.S.C. § 15483), so using that data would have been onerous in many regions.

But perhaps the biggest impediment to wider adoption of data-driven campaigning was simply that statistical thinking – and the human capital that produces it – had not yet taken root in the world of political consulting. Campaign consultants generate most of their business through social networks and are judged by win/loss records. Political candidates are typically trained in non-quantitative fields like law, education, and medicine, and are more focused on fundraising and voter outreach than the nitty-gritty of managing a campaign. There were certainly consultants specializing in campaign data analytics, and the development of predictive scores existed as a niche business, but most campaign decisions did not rely on these approaches. There were too few people with the skills required to make a noticeable impact on how campaigns operated, and too few decision-makers equipped to appreciate the effect that a fuller use of information could have. At that time, mail vendors were on the cutting edge of using

3

consumer data for modeling purposes and at least a decade ahead of the political campaign learning curve (Malchow 2003).

These impediments to data-driven campaigning have changed in recent years.  The costs of purchasing, storing, managing, and analyzing data have decreased exponentially.  The supply of quantitatively oriented political operatives and campaign data analysts has increased as predictive analytics has gained footholds in other sectors of the economy like banking, consulting, marketing, and e-commerce.  To reduce the need for individual campaigns to spend scarce funds purchasing citizen information from commercial vendors, the national parties have decided to construct, maintain, and regularly augment their own voter databases (McAuliffe and Ketten 2008, p. 280-287).

These conditions have provided fertile ground for analytically-minded consultants to apply statistical tools to campaign activities and campaign data. Contemporary political campaigns amass enormous databases on individual citizens and hire data analysts to create models predicting citizens' behaviors, dispositions, and responses to campaign contact.  This data-driven campaigning gives candidates and their advisors powerful tools for plotting electoral strategy.  A political campaign has limited financial resources. It can use this data-driven approach to shape decisions about who the campaign should target, with a sense of how much such contact will affect voter preferences, behaviors like fundraising, or turnout at the polls.  This technology allows campaigns to target campaign outreach tactically at particular individuals and then also to aggregate these predictive estimates up to the jurisdiction-level to inform large-scale strategic decisions.

Given that campaigns view their analytic techniques as secret weapons to be kept out of the hands of opponents, the public discourse on campaign data has been largely speculative and somewhat hypothetical, ranging from hyping the performance of the tools (Scherer 2012) to alarmist concerns about the personal privacy of voters (Duhigg 2012). This paper describes the state of contemporary campaign data analytics.  We begin by explaining why campaigns need data and the "predictive scores"

4

that they seek to calculate. We then describe where that data comes from and the techniques used to analyze political data. We conclude by noting several challenges facing campaigns as data analytics become more widely used and increasingly accurate. The analytics revolution has not radically transformed campaigns in the manner that television did in the 1960s, but in a close political contest, data-driven campaigning can have enough effect to make the difference between winning and losing.

### Why Do Campaigns Need Data?

Contemporary campaigns use data in a number of creative ways, but the primary purpose of political data has been – and will be for the foreseeable future –providing a list of citizens to contact. Campaigns need accurate contact information on citizens, volunteers, and donors. Campaigns would like to record which citizens engage in specific campaign-supporting actions like donating money, volunteering, attending rallies, signing petitions, or expressing support for candidates or issues in tracking polls. Indeed, the Federal Election Commission requires campaigns and coordinated committees to disclose the identity of all individuals who contribute more than $200 during the calendar year. These disclosure requirements mean that campaigns have a legal requirement – as well as financial incentive – to maintain good lists of donors.

Campaigns also use data to construct predictive models to make targeting campaign communications more efficient and to support broader campaign strategies. These predictive models result in three categories of "predictive scores" for each citizen in the voter database: behavior scores, support scores, and responsiveness scores.

*Behavior scores* use past behavior and demographic information to calculate explicit probabilities that citizens will engage in particular forms of political activity. The primary outcomes

5

campaigns are concerned with include voter turnout and donations, but other outcomes such as volunteering and rally attendance are also of interest.

*Support scores* predict the political preferences of citizens. In the ideal world of campaign advisers, campaigns would contact all citizens and ask them about their candidate and issue preferences. However, in the real world of budget constraints, campaigns contact a subset of citizens and use their responses as data to develop models that predict the preferences of the rest of the citizens who are registered to vote. These support scores typically range from 0 – 100 and generally are interpreted to mean "if you sample 100 citizens with a score of X, X percent would prefer the candidate/issue". A support score of "0" means that no one in a sample of 100 citizens would support the candidate/issue, "100" means that everyone in the sample would support the candidate/issue, and "50" means that half of the sample would support the candidate/issue. Support scores only predict the preferences at the aggregate-level, not the individual-level. That is, people with support scores of 50 are not necessarily undecided or ambivalent about the candidate/issue and, in fact, may have strong preferences. But when citizens have support scores of 50, it means that it is difficult to predict their political preferences.

*Responsiveness scores* predict how citizens will respond to campaign outreach. While there are theoretical rationales as to who might be most responsive to blandishments to vote (Arceneaux and Nickerson 2009) and attempts at persuasion (Hillygus and Shields 2008), in general, predicting which individuals will be most and least responsive to particular direct communications in a given electoral context is difficult. Campaigns can use fully randomized field experiments to measure the response to a campaign tactic (Gerber and Green 2000, 2008; Nickerson and Rogers 2010; Arceneaux and Nickerson 2010; Nickerson 2005; Nickerson, Friedrichs, and King 2006; Bryan, Walton, Rogers and Dweck 2011; Gerber and Rogers 2009; Bailey, Hopkins and Rogers 2013; Rogers and Nickerson 2013). The results of these experiments can then be analyzed to detect and model heterogeneous treatment effects (i.e.,

6

predictive scores) that guide targeting decisions (Issenberg 2012a, 2012b, 2012c). Some of the results of these experiments can only be used to inform decisions in future elections (e.g., the results of most voter turnout experiments necessarily come after Election Day), but others can be conducted during the election cycle to improve efficiency in real time. For example, the lessons from experiments evaluating the efficacy of treatments aimed at increasing observable behaviors like donations and volunteering can be put to immediate use. Similarly, the persuasiveness of campaign communications can be gauged through randomized experiments that measure voter preferences through post-treatment polling of the treatment and control groups. The citizens found to be especially responsive to the campaign treatment in these pilot experiments – as reflected in the responsiveness score – can be targeted during a larger roll out of the campaign treatment. Conversely, citizens who are unresponsive, or are predicted to respond negatively, can be avoided by the campaign.

Campaigns are primarily concerned with the practical question of how accurately predictive scores forecast the behaviors, preferences, and responses of individual citizens, not with testing an academic theory. As a result, the variables included in the construction of these scores often have thin theoretical justifications. That said, a variable in a data set that is found to predict an outcome of interest but has no theoretical rationale for the relationship is more likely to prove to be spurious when validated against an "out-of-sample" dataset. Thus, successful predictive scores need not be based on theories or imply causal relationships. However, campaign data analysts must think critically and creatively about what variables sensibly relate to their outcomes of interest in order to generate predictive scores with the external validity required by campaigns.

**Where Does Campaign Data Come From?**

7

Procuring and maintaining large databases of citizens with up-to-date information from multiple sources may seem straightforward, but it is a nontrivial logistical hurdle and requires substantial financial commitment. After all, people frequently change residences and contact information (Nickerson 2006a). Campaigns also need to track their own behavior to limit awkward interactions with citizens who have been contacted multiple times previously.

In the recent past, campaigns struggled to manage and integrate the various sources of their data. The data collected by those working on digital communications rarely linked with the data collected by those working on field operations--meaning canvassing, phone calls, volunteer recruitment, and so on---or fundraising. One of the most heralded successes of the 2012 campaign to re-elect President Obama was the creation of *Narwhal*, a program that merged data collected from these digital, field, and financial sources into one database (Gallagher 2012; Madrigal 2012). As a result, the Obama re-election campaign began with a 10TB database (BigData-Startups 2013) that grew to be over 50TB by the end of the election (Burt 2013).

The foundation of voter databases is the publicly available official voter files maintained by Secretaries of State, which ensure that only eligible citizens actually cast ballots and that no citizen votes more than once.[1] The official voter file contains a wide range of information. In addition to personal information such as date of birth and gender,[2] which are often valuable in developing predictive scores, voter files also contain contact information such as address and phone. More directly relevant to campaigns, certain details about past electoral participation are also recorded on official voter files. *Who* citizens vote for is secret, but *whether* citizens vote is reflected in official voter files – as is the method used to vote: for example, in person on Election Day, or by use of absentee or another form of

---

[1] The exception to this rule is North Dakota, which does not have a voter registration system. Eligible voters simply show up and prove their eligibility by showing a valid ID, utility bill, or having a neighbor vouch for their residency.
[2] In states that were subject to the Voting Rights Act, the self-identified race of the registrants is included on official voter files, though this may change in light of the Supreme Court's June 25, 2013, ruling in *Shelby County v. Holder* 570 US ___ (2013).

early voting.  This information concerning past vote history tends to be the most important data in the development of turnout behavior scores, which is unsurprising given that the act of voting reveals the person to be a person with a high propensity to vote.

The geographic location of citizens' residences can also provide valuable information, because campaigns can merge relevant Census and precinct data with the information on citizens in the voter database.  Census data—such as average household income, average level of education, average number of children per household, and ethnic distribution—is useful for the development of a host of predictive scores. Campaign data analysts also append the aggregated vote totals cast for each office and issue in past elections in each citizen's precinct to individual voter records in the voter database. Even being mindful of ecological fallacy—that is, inferring someone's individual characteristics based on their membership in a larger group or cluster—this aggregate-level information in fact tends to increase predictive score accuracy.

Campaign data analysts also can append two types of data from consumer databases.  First, and most essentially, they seek updated phone numbers.   Phone calls are a critical feature of campaigns. While a volunteer knocking on doors will make successful contact with 2 – 4 people/hour, a volunteer making phone calls can reach 10–15 people/hour (Nickerson 2006b; 2007a). Using an automated dialer, the total can be even higher. While most official voter files contain phone numbers, they are often out of date and coverage is incomplete. Election officials only request a phone number from voters registering for the first time, and so if someone continues voting in the same jurisdiction over time, it's not uncommon to find numbers that are 20 years out of date. Because current phone numbers are so important, campaigns find it worthwhile to purchase more accurate contact information available from consumer data firms.

Campaigns can also purchase a wide range of additional information from consumer data vendors relatively inexpensively, such as estimated years of education, home ownership status, and

9

mortgage information. In contrast, information on magazine subscriptions, car purchases, and other consumer tastes are relatively expensive to purchase from vendors, and also tend to be available for very few individuals. Given this limited coverage, this data tends not to be useful in constructing predictive scores for the entire population—and so campaigns generally avoid or limit purchases of this kind of consumer data. The vast majority of these variables literally do nothing to increase the predictive power of models of mass behavior once prior behavior is accounted for (i.e., any power of income or education measures to predict voter turnout are subsumed by controlling for prior turnout).

While campaigns do purchase some information, the vast majority of the useful information campaigns collect about individuals is provided by the individuals themselves. For example, those who have donated and volunteered in the past are high-value prospects for fundraising and volunteer-recruitment in the future. Moreover, the attributes of these individuals can be used to develop behavior scores to identify others who may be likely to donate or volunteer. Similarly, information about individuals who answered the phone or door in the past can be used to develop behavior scores for others who may be likely to be contactable moving forward. Data collected from online activities can be of particular value as well, because such activities require a relatively low thresholds for citizens to take action. For the small set of citizens who provide an email address to the campaign to receive campaign emails[3], all of their activity concerning those emails—for example, sign up, opening emails, clicking links in emails, taking actions like signing petitions—can be tracked and used to predict levels of support for the candidate or focal issue, likelihood of taking action, and in many cases the policy areas of greatest interest (for example, imagine a voter who opens emails about taxes twice as often as any other topic). Thus, a state party or political organization can compile valuable information for developing predictive scores just by maintaining accurate records of its interactions with citizens over time.

---

[3] In 2012, the Obama campaign had email addresses for 20 million supporters (Haberman 2013) compared with 13 million in 2008 and the 3 million addresses collected by the 2004 Kerry campaign (Vargas 2008).

In short, many of the claims about the information that campaigns purchase about individuals is overblown; little of the information that is most useful to campaigns is purchased. Official voter files are public records, census and precinct-level information are also freely available, and individual citizens themselves volunteer a wealth of data that can be used to develop scores that predict all citizens' behaviors and preferences. In fact, predictive scores can often allow campaigns to estimate some citizen preferences and behaviors more accurately than direct reports from citizens themselves (Rogers and Aida 2013; Ansolabehere and Hersh 2012). People may not be actively misrepresenting their intentions, but the desire to project a positive image of the self may lead voters to over-estimate the degree to which they will participate in a given election. Again, the most important piece of information campaigns purchase tends to be phone numbers – and this is purchased with the intent of performing the old-fashioned task of calling citizens directly. Because the most useful information tends to be collected directly from citizens, one of the most valuable data acquisition activities campaigns engage in is exchanging their information with that of other allied political organizations (when legal) to increase the breadth and scope of data that will useful for the development of predictive scores.

An interesting result of the type of data that campaigns acquire directly from citizens is that campaigns are able to predict with greater accuracy which citizens will *support* their candidates and issues better than which citizens will *oppose* their candidates or issues. Information regarding citizens who donate, volunteer, and subscribe to email lists is available to campaigns and can be used to predict which other citizens will be similar. In contrast, citizens who do not perform such behaviors at all, or who perform similar behaviors for opposing campaigns, cannot be directly observed, so discriminating among the citizens who do not actively support a campaign is a much more challenging task. As a result the distribution of support scores typically have 2 – 3 times more voters with the highest scores (99 and 100) than the lowest (0 and 1). This imbalance does not imply that the opposition enjoys less passionate support or the data analysts failed in their predictive task; it is a natural result of being able to observe

11

the activity of only one campaign's supporters in an electoral competition. Similarly, because the foundations of voter databases are official voter files from states, campaigns tend to have much more information on citizens who have voted and are registered than citizens who have never voted and are not registered. Predictive models can still be constructed to predict fruitful geographies or people to target for registration drives, but the data available is much sparser and the models necessarily more coarse. This likely exacerbates the inequality in campaign communication and outreach between those who are already politically engaged and those who are not, and between voters and non-voters (Rogers and Aida 2013).

### How Do Campaigns Analyze Data to Develop Predictive Scores?

The predictive scores campaigns construct can be roughly divided into two types. The first predicts the behavior or attitudes of voters. These models do not make any causal claim about why these individuals vote or donate or support the candidate; they merely predict the focal trait. As such causation is not a major concern and the goal of the analyst is primarily to avoid over fitting the data. The second type of score predicts how voters will respond to campaign outreach. These responsiveness scores typically come from exploring heterogeneous reactions to campaign treatments in randomized field experiments. The causal effect of the campaign outreach is established by the experiment and these estimated effects are used as parameters for strategic decision making. However, the moderators predicting strongly positive or weakly positive (or even negative) responsiveness to the treatment are not causal. In other words, the data may have been generated by an experiment, but the enterprise of modeling responsiveness to the treatment remains a matter of finding observed differences across types of subjects that predict large or small treatment effects. Thus, even the search for moderators of the treatment effect in an experiment is essentially observational in nature.

Most of the analytic techniques employed by campaign data analysts are taught in standard undergraduate econometrics or statistics classes.  Currently, the vast majority of the predictive scores used by campaigns are created by a campaign data analyst (or a team of them) using simple regression techniques: ordinary least squares for continuous outcomes; logistic regression for binary outcomes; and, rarely, tobit for truncated data like dollars donated or hours volunteered.  The skills necessary for developing such models are widespread and the models can easily be customized to specific political environments.  For instance, party registration is not predictive of candidate preference for older citizens in many Southern states, because the South was historically solidly Democratic and remained so at the state level well after the civil rights movement transformed the national political environment. Campaign data analysts modeling candidate support in these states need to be attuned to contextual facts like this, and can then accommodate them in regression analyses.

There are two major downsides to using regression techniques for constructing campaign models.  First, the utility of techniques that uncover correlations is highly dependent on the talent of the particular campaign data analyst employing them.  A capable campaign data analyst who is familiar with the properties of the variables available in voter databases can generate highly accurate predictive scores for citizens.  However, a slightly less capable campaign data analyst might generate predictive scores that are only slightly better than the unsophisticated methods employed by earlier campaigns. As an example, consider the task of predicting a person's likelihood of voting in an election.  Controlling for the whole set of turnout history available (often more than 50 elections) will typically predict around a third more variance in individual turnout than the old "of 4" rule of thumb (i.e., did the person vote in 0, 1, 2, 3, or 4 of the past elections).  However, these variables all tap into a common latent propensity to vote and exhibit considerable collinearity.  As a result, the coefficient for several of these variables will be negative and statistically significant. There is no theoretical rationale for why turnout in one election would decrease turnout in a future election, so observing negative coefficients would suggest

13

that the analyst has over fitted the data and should pare back the number of variables used or model the propensity to turnout differently. They will also construct relevant variables (e.g., past turnout among people in the household) and insert theoretically informed interactions (e.g., ethnicity of the voter by ethnicity of the candidate) to improve model fit. The marginal gains from these new variables are rarely as large as the initial gains from using a wide range of past turnout decisions, but that is to be expected -- the gains from good predictive models is incremental. Since the people running campaigns rarely have experience or expertise in data analytics, the competence of the campaign data analysts they employ cannot be taken for granted.

 The second drawback is that unique regression models typically need to be constructed for different regions, issues, and candidates, so the "modeling by hand" approach to analysis offers few economies of scale. While individual campaign data analysts likely become more efficient with each successive model they develop, constructing models for multiple races around the country either requires a small army of campaign data analysts, or else settling for very general national models that are not adapted for local contexts.

 Thus, campaign data analysts have been seeking more systematic methods for selecting a preferred regression. The commercial marketing industry often uses a form of "machine learning" (for example, k-means clustering or k-nearest neighbor classifiers, see Gan, Ma, and Wu 2007) and other to divide consumers into categorical types like "blue collar, grilling, SUV owner." However, these statistical methods to group similar individuals or households are less useful for campaign data analysts because strategic cost-benefit decisions in campaign planning are based on individual-specific probabilities for particular outcomes. For example, knowing that a set of citizens are similar in many dimensions does not assist with targeting if those dimensions are not highly correlated with behaviors like voting, ideology, and propensity to donate. For this reason, supervised learning algorithms are typically more appropriate for the task of modeling political data.

14

Supervised machine learning includes methods such as classification and regression trees (Breiman et al. 1984). In a regression tree approach, the algorithm grows a "forest" by drawing a series of samples from existing data; it divides the sample based on where the parameters best discriminate on the outcome of interest; it then looks at how regressions based on those divisions would predict the rest of the sample and iterates to a preferred fit. The researcher chooses the number of "trees"—that is, how many times the data will be divided. In the particularly popular "random forests" algorithm for implementing a regression tree (Breiman 2001), the algorithm uses only a randomly drawn sub-set of variables in each tree to decide on the fit rather than the entire set of available variables. The payoff for this approach is that it generates estimates of what parameters are most important: that is, what parameters add the most predictive power when the group of other parameters is unchanged. Aside from its analytical advantages "random trees" is a popular decision tree ensemble algorithm because it has very few tuning parameters and is available as an R-package, so that analysts with little formal education in statistics can develop the models. Bayesian Additive Regression Trees have similar advantages (Chipman, George, and McCollough 2010; Green and Kern 2011).

Supervised machine learning presents three major advantages for campaign data analytics. First, these classes of estimators are typically non-linear, so commonly known nonlinear relationships— such as the curvilinear relationship between age and turnout (i.e., older cohorts vote at higher rates than younger cohorts but this relationship peaks among group 60 – 70 years old and then reverses) — are easily accommodated by the algorithms. Second, the approach involves less discretion for the individual campaign data analyst, so the quality of the predictive scores generated is not as heavily dependent on the capabilities and integrity of analysts. People constructing the models still need to input the most diagnostic variables and set up rigorous out-of-sample tests to validate the models, but the algorithms are written in advance and run identically for every citizen in the voter database. Finally, these data-mining algorithms are relatively scalable. Some techniques may be computationally

15

intensive and the variables included may need to be customized, but generally the marginal cost of constructing additional models is lower using these algorithms than having a campaign data analyst construct new models from similar databases by building a series of regressions from the ground up.

The major downside of these regression tree algorithms from the campaign's perspective is that their use is relatively new and not widespread, and it will take experience to see how to trim the regression trees and customize the tuning parameters in a way that satisfies political requirements. Campaign data analysts must also take great care to not overfit their models to their data (Dietterich 1995), in which case the results become less likely to apply outside the model.  Typically, there is not sufficient data from any single jurisdiction to create a unique model, so the data from several jurisdictions need to be pooled to produce useful predictive scores.  Most algorithms can be adapted to accommodate jurisdiction-specific political requirements, but only a small fraction of campaign data analysts today have the necessary skillset.  In sum, as campaign data analytics becomes more common, sophisticated, and mature, the techniques most widely used will likely move away from creating a judgment-based series of regressions to those based on customized machine learning algorithms like regression trees.

**How Are Predictive Scores Used?**

Campaigns use predictive scores to increase the efficiency of efforts to communicate with citizens.  For example, professional fundraising phone banks typically charge $4 per completed call (often defined as reaching someone and getting through the entire script), regardless of how much is donated in the end.  Suppose a campaign does not use predictive scores and finds that upon completion

16

of the call 60 percent give nothing, 20 percent give $10, 10 percent give $20, and 10 percent give $60. This works out to an average of $10 per completed call. Now assuming the campaign sampled a diverse pool of citizens for a wave of initial calls. It can then look through the voter database that includes all citizens it solicited for donations and all the donations it actually generated, along with other variables in the database such as past donation behavior, past volunteer activity, candidate support score, predicted household wealth, and Census-based neighborhood characteristics (Tam Cho and Gimpel 2007). It can then develop a fundraising behavior score that predicts the expected return for a call to a particular citizen. These scores are probabilistic, and of course it would be impossible to only call citizens who would donate $60, but large gains can quickly be realized. For instance, if a fundraising score eliminated half of the calls to citizens who would donate nothing, so that in the resulting distribution would be 30 percent donate $0, 35 percent donate $10, 17.5 percent donate $20, and 17.5 percent donate $60. The expected revenue from each call would increase from $10 to $17.50. Fundraising scores that increase the proportion of big donor prospects relative to small donor prospects would further improve on these efficiency gains.

The same logic can be applied to target expenditures for voter mobilization and persuasive communications. Targeting persuasive communications to citizens who are extremely unlikely to vote is inefficient. Even if the persuasive communication were effective at convincing these citizens to support the campaign's candidate or issue, the usual assumption among practitioners is that changing citizens' candidate or issue preferences does not meaningfully change their likelihood of voting. A similar logic could be applied to citizens who are already extremely likely to support a campaign's candidate or issue. If the support score predicts that a citizen is 98 percent likely to support a campaign's candidate or issue, and assuming the opposing campaign's activities will not meaningfully undermine this citizen's support likelihood, one might decide that persuasive communications would be better targeted to citizens who have a moderate or low likelihood of supporting the campaign's candidate or issue, along

17

with a high likelihood of voting.  Relying on turnout scores and support scores to target persuasion efforts in this manner represents an increase in efficiency just as fundraising scores improve the cost effectiveness of fundraising calls.

The value of using predictive scores for targeting has become widely recognized by campaigns during the past five years.   Sophisticated use of these predictive scores allows campaigns to simultaneously broaden the populations targeted while pruning away groups they believe will be cost ineffective.

Catalist, LLC, is a political data vendor that compiles and maintains nationwide registration, demographic, and other political data for progressive, civic, and non-profit organizations such as labor unions, political candidates, and other advocacy groups.  They build predictive scores using this data to help their clients analyze the electorate and target their activities more efficiently. The firm provided data for showing how its targeting of populations for its clients evolved over the last three presidential elections in Ohio (see Ansolabehere and Hersh 2010). The discussion that follows includes data from the Kerry campaign in 2004 and the Obama campaign in 2008 and 2012 Ohio candidates other than Obama. In each election, Catalist had several hundred clients across the state of Ohio.  Catalist categorizes potential Ohio voters along two scales: whether or not they are likely to vote, and whether they are more likely to vote Democratic, Republican, or in-between. Divide each of these measures into a scale with 50 gradations, making a total of 2500 different cells.  You can then create a heat map of how often each one of those cells is contacted by allied campaigns, including all modes of contact for all purposes across the election cycle (see on-line appendix).  Given the centrality of Ohio in the past three Presidential elections, the calculations represent tens of millions of voter contacts.

Although Catalist's client base differed across all three cycles, this analysis shows the increasing reliance on targeting scores for their collective voter targeting efforts.  In 2004, when few clients relied on predictive scores for targeting, Catalist found that most contact was concentrated among people

predicted to support Democratic candidates, regardless of their likelihoods of voting. This meant that campaign resources were probably inefficiently allocated, with a substantial share going to Democrats who were extremely unlikely to vote, or to Democrats who were extremely likely to vote and did not require either mobilization or persuasion. In 2008, Catalist clients appear to have relied more on predictive scores for their targeting. The highest concentrations of direct contacts were observed among citizens who were predicted to support Democratic candidates but who had low likelihoods of voting, i.e., those who might be reasonable targets for voter mobilization. They also targeted high turnout citizens with middling partisanship scores, who might be reasonable targets for "persuasion." The reasonableness of targeting in these ways depends on the likelihood that voters can be moved to turn out, or to be persuaded. As mentioned above, a current practice is to develop "responsiveness scores" based on pilot experiments to optimize targeting – particularly for persuasion outreach. As a result, the targeting in 2008 appears much closer to optimal than was observed in 2004. The results for 2012 look much the same as those of 2008 except with smoother transitions and more consistency across the landscape, suggesting even wider adoption of predictive scores for targeting. One noticeable difference between the 2012 figure and those of previous cycles is that Catalist clients appear to have avoided communicating with citizens with the lowest turnout probabilities. Catalist's clients may have chosen this strategy for a range of reasons, but regardless of their strategic reasons, apparently Catalist's 300-plus Ohio clients in 2012 used predictive scores to manifest their strategic plans in ways that they had not in previous cycles.

**What Are Predictive Scores Worth?**

Campaign organizations have adopted predictive scores, which suggests that they are electorally useful. They use these scores to target nearly every aspect of campaign outreach: door-to-door

19

canvassing; direct mail; phone calls; email; television ad placement; social media outreach (e.g., Facebook and Twitter); and even web page display. Determining exactly how much using these scores affects electoral outcomes is difficult because the counterfactual is unclear. Is the appropriate comparison for assessing the value of campaign analytics between the current uses of predictive scores for targeting and a complete absence of targeting? Or would it be to compare currents uses to the basic heuristics that were used for targeting in the relatively recent past? Regardless, it is possible to derive bounds as to how much campaign analytics could matter to campaigns.

Persuasive communications is a good place to begin because targeting is so diffuse. There are so many possible targets, including potentially all citizens, and so many strategies, from shoring up support to causing opposition supporters to defect. Thus, persuasive campaign outreach can be directed almost anywhere along the support score spectrum from hard-core supporters to hard-core opponents. Thus, many campaigns use responsiveness scores as part of targeting their persuasive communications (Issenberg 2012a,b,c). Suppose a campaign's persuasive communications has an average treatment effect of 2 percentage points – a number on the high end of persuasion effects observed in high-expense campaigns: that is, if half of citizens who vote already planned to vote for the candidate, 52 percent would support the candidate after the persuasive communication. If a campaign indiscriminately attempted to persuade 8,500,000 citizens –about the size of the Florida electorate – it would generate 170,000 votes under this scenario.

Now imagine that the campaign has created a responsiveness score that predicts which citizens would be most responsive to its persuasive communications. Based on the responsiveness score, those in the top quintile are three times more responsive to the persuasive communications than the average citizen, the next quintile is twice as responsive, the middle quintile is no more responsive than average, the second quintile shows no average responsiveness to the persuasive communications, and the bottom quintile actually exhibited backlash to the persuasive communications equal to the overall

20

average treatment effect. Table 1 illustrates these outcomes.[4] Actual campaign data analysts would construct a continuous responsiveness score, but this example involving quintiles suffices for illustration.

For campaigns with the resources to contact only 20 percent of the electorate, the responsiveness score allows them to create 102,000 votes (1,700,000 x 0.02 x 3 = 102,000). Without any form of targeting the campaign would generate only 34,000 votes (1,700,000 x 0.02 = 34,000), so using predictive scores doubles the number of new votes (see Table 1, row 1). A better financed campaign that could contact 40 percent of the electorate and would target the two most promising quintiles of the population. This strategy would yield a total of 170,000 votes, which is a 150 percent increase over having no targeting (3,400,000 x 0.02=68,000) (see Table 1, row 2). In this scenario, using predictive scores still improves the campaign's impact, but the gain is less than that of the more resource-constrained campaign. A campaign with the resources to push up against the zero bound where additional contacts begin to cost the campaign votes would see its efficiency improve by only 50 percent (see Table 1, row 4). This dynamic means that smaller campaigns will benefit most from targeting based on predictive scores, but they are the ones who are least able to afford hiring campaign data analysts and voter databases. Well-financed campaigns benefit from targeting based on predictive scores, but yield smaller relative gains over not using predictive scores for targeting. In this sense, given that small campaigns tend to be less reliant on data analytics, it appears that smaller campaigns are under investing in the development and use of predictive scores.

---

[4] Backlash is not an uncommon observation among field experiments examining persuasive campaign effects (for example, Arceneaux and Kolodny 2009; Bailey, Hopkins and Rogers 2013), and among other types of experiments (Nicholson 2012; Hersh and Shaffner 2013)

**Table 1: Hypothetical Example of Persuasion Responsiveness Score's Value**

| Quintile | Effect Multiplier | Votes created in quintile | Cumulative votes | Improvement over no targeting |
|---|---|---|---|---|
| Top 20% | 3 | 102,000 | 102,000 | 200% |
| 60 – 80% | 2 | 68,000 | 170,000 | 150% |
| Middle 20% | 1 | 34,000 | 204,000 | 100% |
| 20 – 40% | 0 | 0 | 204,000 | 50% |
| Bottom 20% | -1 | -34,000 | 170,000 | 20% |

Note: This example assumed that the average effect of campaign contact is 2 percentage points, and that the electorate size is 8,500,000.

Again using the fairly generous multiplier regarding responsiveness scores and a baseline 2 percentage point average treatment effect, we can set an upper bound on how the use of such a score might affect campaign outcomes. If there are 8,500,000 citizens who will vote in a state (roughly the number of votes cast in the 2012 presidential election in Florida), and a campaign can successfully administer the attempted direct persuasive communications to only half the targeted citizens because of inability to reach all citizens, then a campaign that does not use responsiveness scores would generate 85,000 votes while a campaign that uses responsiveness scores would generate 102,000 votes through direct persuasive communications. While the difference of 17,000 votes is notable, it constitutes only 0.2 percent of the overall vote in this jurisdiction. That said, it would have constituted 23 percent of the 74,309 vote margin of victory for the Obama campaign in 2012.

Campaigns do not want to mobilize citizens to vote who support their opponent, so one of the most important uses for support scores is to identify which citizens should be targeted during voter mobilization efforts. In an evenly divided electorate, indiscriminately mobilizing citizens would net zero votes—because as many opponents would be mobilized as supporters. In this setting, a naïve comparison of data-based campaigning to absolutely no targeting is not appropriate. Instead, consider a comparison with the following relatively basic targeting strategy that is still employed today in electoral settings that do not have access to predictive scores. Imagine that a campaign attempts to identify individual citizens who support their candidate or issue by directly contacting them in person or

1604430-6346

over the phone. Imagine that this campaign can successfully reach half of the population and accurately identify their candidate/issue preference. For the remaining half of the population for whom the campaign has not identified a preference, the campaign proceeds to sweep through neighborhoods where more than half of the population supports the campaign's candidate, on the assumption that this approach will lead to a net gain in votes. The only people not targeted in these sweeps are those individuals concretely identified as supporters of the opponent. We can therefore express the expected yield in votes from this targeting strategy as

$$\begin{cases} 0.5\beta N_j(\%Support_j) \text{ if } \%Support_j < 0.5 \\ \beta N_j(\%Support) - 0.5\beta N_j(\%Oppose) \text{ if } \%Support_j > 0.5 \end{cases}$$

where $\beta$, is the mobilization effect from the campaign, $\%Support_j$ is the level of support for the candidate in precinct $j$, and $N_j$ is the number of registered voters in precinct $j$.

The first line points out that in precincts where support for the candidate is less than 50 percent, the only effect of this plan will be the direct contacts with supportive voters. However, by assumption the campaign only has the ability to identify half of these people. The second line points out that in areas where support for the candidate is more than 50 percent, the strategy will have two effects. The first is the benefit from mobilizing supporters in the precinct. Unfortunately, the sweep also mobilizes opponents in the proportion to which they are present ($\%Oppose$). However, the campaign managed to identify half of the people supporting the opposition and can choose to avoid these individuals, so the counter-productive mobilization can be cut in half.

We can now contrast this targeting strategy to an imagined predicted support score strategy. It would obviously be an unfair comparison to argue that the predicted support score strategy worked without error, so we assume that it includes both false positives (misidentifying opponents as supporters) and false negatives (misidentifying supporters as opponents). One can think of these errors

as reflecting the political diversity of a given neighborhood. In precincts where the vote is split 50/50, the false positive and false negative error rates are both 15 percent, because these would be the precincts where it is most difficult to infer political beliefs. However, in this hypothetical example the error rate tapers linearly as the precinct becomes more informative of resident beliefs, so that if a precinct unanimously supports one candidate or another, the error rate would obviously be zero. The equation below presents the formula used in this hypothetical model:

$$\begin{cases} \beta N_j [\%Support_j(0.85) - \%Oppose_j(0.15)] \text{ if } \%Support_j = 0.50 \\ \beta N_j [\%Support_j(1 - 0.15 * \frac{\%Support_j}{0.5}) - \%Oppose_j * 0.15 \frac{\%Oppose_j}{0.5}] \text{ if } \%Support_j < 0.50 \\ \beta N_j [\%Support_j(1 - 0.15 * \left(1 - \frac{\%Support_j}{0.5}\right)) - \%Oppose_j * 0.15 * \left(\frac{1 - \%Oppose_j}{0.5}\right)] \text{ if } \%Support_j > 0.50 \end{cases}$$

The equations make clear one under-appreciated aspect of predictive modeling; modeling can only increase the efficiency of mobilization efforts. If the outreach from the campaign is not effective (i.e., $\beta = 0$), then no votes are generated. Big data analytics may receive media attention, but its effectiveness is entirely reliant on the strength of more traditional aspects of the campaign. If a campaign does not have effective outreach to voters, then predictive analytics cannot solve that problem.

Comparing the traditional strategy of "identification and sweep" to the predictive model, two advantages of the predictive model become clear. First, predictive analytics allows the campaign to target likely supporters in otherwise unfriendly territory. Before accurate prediction was possible, campaigns would leave votes on the table by ignoring supporters living in opponent strongholds. Given the expense of actually identifying individual voter's preferences and the relatively low yield of supporters, avoiding these areas was not optimal tactically, but understandable. Second, precinct sweeps are inefficient because in evenly divided precincts many non-supporters are also mobilized and

24

thereby decrease the overall effectiveness of mobilization drives.  Predictive scores (to the extent they

are accurate) can prevent this inefficiency.  As a result, conditional on precinct size, the biggest

difference between the traditional "identification and sweep" tactic and modeled scores is found in the

most evenly divided precincts.

**Figure 2: Difference between Predictive Scores and Older campaign targeting heuristics.**



Note: X-axis is percent of the two-party vote share for Obama in a precinct in the 2012 general election.
Left y-axis, represented by dotted bars, reports the number of precincts with that given level of support for Obama.
Right y-axis, represented by the solid line, reports the hypothesized difference between the use of predictive scores for
targeting and the use of "identification and sweep."  Beta is assumed to be 0.01.
The distribution of precinct data comes from all 4,354 precincts in the 2012 presidential election in Florida.

Figure 2 shows the results of a thought experiment if these two tactics had been used in Florida

across all 4,354 precincts during the 2012 election.   The x-axis depicts the percent of votes cast in favor

of President Obama in each precinct and the left-hand y-axis shows in how many precincts President

Obama received that share of the vote. Thus, President Obama received between 0 and 3 percent of the vote in about 20 precincts (the left-most bar), and received between 97 and 100% of the vote in 140 precincts (the right-most bar). Now imagine as a hypothetical example that the Obama campaign knows the distribution of its support across precincts before the election, and is considering two possible strategies to increase its vote: the old-style "identification and sweep" combination of direct contact and precinct targeting, or the method using prediction scores. The solid line, measured on the right y-axis, shows the difference in the number of votes generated from these two approaches. The biggest difference between the two strategies takes place in the middle of the distribution where precincts are most evenly split.[5] The reason for this is clear when the tails are considered. In areas where support for Obama was low, there were not many Obama supporters to mobilize. In the areas where support for Obama was high, there were many supporters to mobilize, but both targeting strategies would target these citizens and neither would mistakenly mobilize those who support the opposing campaign's candidate. It is in areas where the precinct-level data is not predictive of which candidate citizen's support where predictive scores at the individual-level—even given the built-in assumption of a higher number of false positives and false negatives in these precincts--yield the greatest value.

With these assumptions, we can gain a rough sense of the impact of the Obama 2012 mobilization effort in Florida using the predictive scores for targeting (which was the strategy the campaign reportedly employed) compared to a precinct-based targeting strategy. Assuming the campaign had a 1 percentage point effect on turnout among the half of the citizens that it targeted for mobilization and successfully contacted, we estimate that it would have generated 8525 more votes in Florida targeting based on predictive scores relative to targeting based on precinct. This vote total would have been decisive in the 2000 election between Bush and Gore, and still constitutes 11 percent

---

[5] If the number of registered voters was held constant across precincts, then the point of maximum difference would be at 0.5. However, the precincts where Obama received 42 – 45% of the vote are larger than precincts with an even split so there are more votes to be harvested just to the left of the 50/50 mark.

of the 74,309 vote margin of victory Obama enjoyed in 2012. Combined with the persuasion analysis above, this thumbnail sketch makes an argument that the 2012 would have been closer in key states had it used the older and coarser targeting technologies, rather than the predictive scores produced by its campaign data analysts.

**Conclusion: Some Thoughts on Coordination**

Sophisticated campaigns develop and use voter databases that contain a range of detailed information on individual citizens. As a result, campaign data analysts occupy an increasingly important role in politics. They develop predictive models that produce individual-level scores that predict citizens' likelihoods of performing certain political behaviors, supporting candidates and issues, and responding to targeted interventions. The use of these scores has increased dramatically during the last few election cycles. Simulations suggest that these advances could yield sizable and electorally meaningful gains to campaigns that harness them.

Since predictive scores make campaigns more effective and efficient by increasing the cost effectiveness of communicating with citizens, a broad range of organizations do and will employ the technologies. To the extent that predictive scores are useful and reveal true unobserved characteristics about citizens, it means that multiple organizations will produce predictive score that recommend targeting the same sets of citizens. For example, some citizens might find themselves contacted many times while other citizens—like those with low turnout scores in 2012--might be ignored by nearly every campaign. The marginal effect of the fifth or sixth contact from a campaign will be less than the marginal effect of the first contact from a campaign. Thus, concentrating attention on the same set of citizens due to widespread adoption of predictive scores may offset some of the gains reaped from

27

developing predictive scores in the first place.  In this way, developing and using predictive scores creates a coordination game in which allied organizations would prefer to partition the electorate and not to duplicate efforts.

Coordination could theoretically happen between partisan organizations, like state parties, candidate campaigns, and coordinated campaigns, and across non-partisan activities, like civil rights groups, labor unions, and environmental groups. However, partisan and non-partisan organizations are not allowed to coordinate their electoral activities.  Since it is nearly impossible to observe whom campaigns target for direct communications—that is, direct mail, knock on doors, and making phone calls—this coordination game has incomplete information, which means that inefficiencies from overlapping contacts are inevitable.

Even when coordination is allowed by law, coalitions may have conflicting incentives.  There is enough regional variation in ideology that it is possible for local candidates to appeal to citizens who oppose the national candidate.  For instance, local Republicans mobilizing citizens in liberal districts would have hurt Mitt Romney and local Democrats mobilizing citizens in conservative districts would have hurt Obama in 2012.  The same dynamic plays out among non-partisan groups as well. While labor union members and environmentalists agree on many policies and values, it is likely that some members do not hold that same views on both labor and environmental issues.  In states like West Virginia where the local industry (i.e., coal) is considered "dirty" by environmentalists, the groups could be working cross-purposes both with regards to messaging and targeting.  Thus, mobilizing a set of citizens for a labor related ballot initiative might result in less support for an environmentally friendly candidate.  This tension is endemic to the very nature of the federal system of representation and coalition politics. The tension has always been present, but now that groups can share very detailed targeting plans and support scores, the tension can and will bubbles to the surface more often than in the past.

28

The improved capability to target individual voters offers campaigns an opportunity to concentrate their resources where they will be most effective. This power, however, has not radically transformed the nature of campaign work. One could argue that the growing impact of data analytics in campaigns has amplified the importance of traditional campaign work. Message polling no longer solely dictates targeting, but the increased demand for information on campaign has increased the amount of polling used to generate snapshots of the electorate. Professional phone interviews are still used for message development and tracking, but they are also essential for developing predictive scores of candidate support and measuring changes in voter preferences in experiments. Similarly, better targeting has made grassroots campaign tactics more efficient and therefore more cost competitive with mass communication forms of outreach. Volunteers still need to persuade skeptical neighbors, but they are now better able to focus on persuadable neighbors and use messages more likely resonate. This leads to higher quality interactions and (potentially) a more pleasant volunteer experience. So while savvy campaigns will harness the power of predictive scores, the scores will only help the campaigns that were already effective.

## References

Ansolabehere, Stephen, and Eitan Hersh. 2010. "The quality of voter registration records: A state-by-state analysis." *Cambridge, Mass.: Department of Government, Harvard University.*

Ansolabehere, Stephen and Eitan Hersh. 2012. "Validation: What Big Data Reveal About Survey Misreporting and the Real Electorate." *Political Analysis* 20(4):437-459.

Arceneaux, Kevin, and Robin Kolodny. 2009. "Educating the least informed: Group endorsements in a grassroots campaign." *American Journal of Political Science* 53.4: 755-770.

Arceneaux, Kevin and David W. Nickerson. 2009. "Who is Mobilized to Vote? A Re-Analysis of Seven Randomized Field Experiments." *The American Journal of Political Science* 53(1):1-16.

Arceneaux, Kevin and David W. Nickerson. 2010. "Negative and Positive Campaign Messages: Evidence from Two Field Experiments." American Politics Research 38(1): 54-83.

Bailey, Michael A., Daniel J. Hopkins and Todd Rogers. 2013. "Unresponsive and Unpersuaded: The Unintended Consequences of Voter Persuasion Efforts." *Working Paper.* http://ssrn.com/abstract=2307631 or http://dx.doi.org/10.2139/ssrn.2307631

BigData-Startups. 2013. "Big Data during the Obama campaign." http://www.bigdata-startups.com/BigData-startup/big-data-obama-campaign/. Accessed February 18,2014.

Breiman, Leo, Jerome Friedman, Charles J. Stone, and R.A. Olshen. 1984. *Classification and Regression Trees.* Boca Raton, FL: CRC Press.

Breiman, Leo. 2001. "Random Forests". *Machine Learning* 45:5–32.

Bryan, Christopher J., Gregory M. Walton, Todd Rogers, and Carol S. Dweck. 2011. "Motivating voter turnout by invoking the self." *Proceedings of the National Academy of Sciences* 108(31): 12653-12656.

Burt, Gabriel. 2013. "My Time at 'Obama for America'." *Tech in Motion* August 27, 2013. http://www.techinmotionevents.com/blog/post/2013/08/27/my-time-at-obama-for-america.

Chipman, Hugh A., Edward I. George, and Robert E. McCulloch. 2010. "BART: Bayesian Additive Regression Trees." *Annals of Applied Statistics* 4(1):266–98.

Dietterich, Tom. 1995. "Overfitting and Undercomputing in Machine Learning." *ACM Computing Surveys* 27(3):326-327.

Duhigg, Charles. 2012. "Campaigns Mine Personal Lives to Get Out Vote." *New York Times,* October 14, 2012, page A1.

Gallagher, Sean. 2012. "Built to win: Deep inside Obama's campaign tech" Arstechnica.com, November 14, 2012. http://arstechnica.com/information-technology/2012/11/built-to-win-deep-inside-obamas-campaign-tech/

Gan, Guojun, Chaoqun Ma, and Jianhong Wu. 2007. *Data Clustering: Theory, Algorithms, and Applications.* Alexandria, VA: SIAM, Society for Industrial and Applied Mathematics.

Gerber, Alan, and Todd Rogers. 2009. "Descriptive social norms and motivation to vote: Everybody's voting and so should you." *Journal of Politics* 71: 1-14.

Gerber, Alan S. and Donald P. Green. 2000. "The Effects of Canvassing, Direct Mail, and Telephone Contact on Voter Turnout: A Field Experiment." *American Political Science Review* 94(3):653-63.

Gerber, Alan S. and Donald P. Green. 2008. *Get Out the Vote!* Washington, DC: Brookings Institution Press.

Green, Donald P. and Holger L. Kern. 2011. "Modeling Heterogeneous Treatment Effects in Survey Experiments with Bayesian Additive Regression Trees." *Public Opinion Quarterly* 76(3):491-511.

Haberman, Maggie. 2013. "Obama '12 vets to share some, not all, data." *Politico* November 20, 2013. http://www.politico.com/story/2013/11/barack-obama-2012-campaign-data-100133.html

Hersh, Eitan D. and Brian F. Schaffner. 2013. "Targeted Campaign Appeals and the Value of Ambiguity." *Journal of Politics* 75 (2): 520-534..

Hillygus, D. Sunshine and Todd G. Shields. 2008. *The Persuadable Voter: Wedge Issues in Presidential Campaigns*. Princeton, NJ: Princeton University Press.

Issenberg, Sasha. 2010. "Nudge the Vote: How Behavioral Science is Remaking Politics." *New York Times Sunday Magazine*, October 31, 2010, page MM28.

Issenberg, Sasha. 2012a. *The Victory Lab: The Secret Science of Winning Campaigns*. New York, NY: Crown Publishers.

Issenberg, Sasha. 2012b. "The Death of the Hunch." *Slate*, March 22, 2012. http://www.slate.com/articles/news_and_politics/victory_lab/2012/05/obama_campaign_ads_how_the_analyst_institute_is_helping_him_hone_his_message_.html

Issenberg, Sasha. 2012c. "How President Obama's campaign used big data to rally individual voters, Part 2." *MIT Technology Review*, December 17, 2012. http://www.technologyreview.com/featuredstory/508851/how-obama-wrangled-data-to-win-his-second-term/

Kuhn, David Park. 2007. "Vacation Politics." CBSNews.com, December 5, 2007. http://www.cbsnews.com/2100-250_162-607234.html.

Madrigal, Alexis C. 2012. "When the Nerds Go Marching In." TheAtlantic.com, November 16, 2012. http://www.theatlantic.com/technology/archive/2012/11/when-the-nerds-go-marching-in/265325

Malchow, Hal. 2003. *The new political targeting*. Campaigns and Elections Magazine.

McAuliffe, Terry and Steve Kettman. 2008. *What A Party!: My Life Among Democrats: Presidents, Candidates, Donors, Activists, Alligators, and Other Wild Animals*. New York, NY: St. Martin's Press.

Nicholson, Steven P. 2012. "Polarizing cues." *American Journal of political science* 56(1): 52-66.

Nickerson, David and Todd Rogers. 2010. "Do you have a voting plan? Implementation intentions, voter turnout, and organic plan making." *Psychological Science* 21(2): 194-199.

Nickerson, David W. 2005. "Partisan Mobilization Using Volunteer Phone Banks and Door Hangers," The Annals of the American Academy of Political and Social Science 601:10-27.

Nickerson, David W. 2006a. "Hunting the Elusive Young Voter," *Journal of Political Marketing* 5(3):47-69.

Nickerson, David W. 2006b. "Volunteer Phone Calls Can Increase Turnout." *American Politics Research* 34(3):271-292.

Nickerson, David W. 2007a. "Quality is Job One: Volunteer and Professional Phone Calls," *American Journal of Political Science* 51(2):269-282.

Nickerson, David W. 2007b. "Don't Talk to Strangers: Experimental Evidence of the Need for Targeting." Paper presented at the Annual Meeting of the Midwest Political Science Association, Chicago, IL, April 12-15, 2007.

Nickerson, David W., Ryan F. Friedrichs, and David C. King. 2006. "Partisan Mobilization Experiments in the Field: Results from a Statewide turnout experiment in Michigan," Political Research Quarterly 34(1):271-292.

Rogers, Todd and Masa Aida. 2013. "Vote Self-Prediction Hardly Predicts Who Will Vote, And Is (Misleadingly) Unbiased." *American Politics Research*. doi: 10.1177/1532673X13496453

Rogers, Todd and David Nickerson. 2013. "Can Inaccurate Beliefs About Incumbents be Changed? And Can Reframing Change Votes?" *HKS Faculty Research Working Paper Series,* RWP13-018.

Scherer, Michael. 2012. "Inside the Secret World of Quants and Data Crunchers Who Helped Obama Win." *Time,* November 19, 2012, p. 56-60.

Tam Cho, Wendy K. and James G. Gimpel. 2007. "Prospecting for (Campaign) Gold." *American Journal of Political Science* 51(2):255-268.

Vargas, Jose Antonio. 2013. "Obama Raised Half a Billion Online." *Washingtonpost.com* "The Clickocracy" November 20, 2008.
http://voices.washingtonpost.com/44/2008/11/20/obama_raised_half_a_billion_on.html

Appendix: An Illustration of Using Predictive Scores

As discussed in the text, this figure shows the pattern of contact with potential voters for Catalist political clients in Ohio during the 2004, 2008, and 2012 election cycles. Each panel shows the same heat map. The y-axis describes citizens' turnout behavior scores; citizens at the bottom are the most likely to vote in that election.  The x-axis describes citizens' likelihoods of supporting Democratic candidates as opposed to Republican candidates; citizens who are likely to support Republican candidates are on the left and citizens who are likely to support Democratic candidates are on the right. Each axis is broken into 50 equally sized bins (2500 bins in total), and each bin is colored by the intensity of direct contact the average citizen in the bin received over the course of the election.  This includes all modes of direct contact, for all purposes, across the entire election cycle.  Darker green boxes were contacted at a relatively high rate; darker red boxes at a relatively lower rate; and shades of orange and yellow are in between.

**Figure 1**



Ohio Contacts Over Three Presidential Cycles

Source: Catalist, LLC

X-axis is likelihood of supporting a Democratic candidate over a Republican candidate, ranging from 0 (left) to 100 (right).

Y-axis is likelihood of voting ranging, ranging from 100 (low) to 0 (high).

Colors represent density/frequency of direct contacts from all Catalist clients over the course of the entire election cycle. Dark red means these citizens received the fewest direct contacts over the election cycle, and dark green means these citizens received the most direct contacts over the election cycle.

34

# Exhibit C

S62   PASSWORD ███████   APPROVED JCS   8/27/18

# APPLICATION: CALIFORNIA VOTER REGISTRATION FILE REQUEST

SECRETARY OF STATE
Elections Division
1500 11th Street, 5th Floor
Sacramento, CA 95814
(916) 657-2166 / www.sos.ca.gov

## CONTACT INFORMATION

**Full name of applicant**
GC Strategies, LLC

If applicable, the full name of the beneficiary, i.e., business, organization, or committee
1360, LLC

**Applicant's phone**
(909) 838-0022

**Applicant's email**
Cameron@GCStrategiesHQ.com

**Applicant's business address (street name and number)**
9087 Arrow Route   #210

City   Rancho Cucamonga   State   CA   Zip   91730

**Applicant's mailing address (if different than above)**
2300 Clarendon Blvd., Ste 800

City   Arlington   State   VA   Zip   22201

**Beneficiary's (business, organization, or committee) business address**

## REQUESTING QUALIFICATIONS

**What type(s) of business, organization, or committee do you represent?**

☐ Political Campaign/Committee   ☐ Academic
☐ Media   ☒ Private Vendor
☐ Legal   ☐ Governmental
☐ Investigation   ☐ Other (specify)

**For what purpose(s) are you requesting this information?**

California candidate(s) (list each)   Proposed California ballot measure(s) (list each)

☒ Political Research   ☐ Recall
☐ Scholarly Research   ☐ Governmental
☐ Initiative/Referendum   ☐ Other

Explain in detail (1) your intended use of this information and (2) how the information will be maintained securely and confidentially. If more space is needed, continue on another sheet of paper

Please see attached letter.

Rev 1/24

Exhibit C, 2 of 4
Page 1 of 5

## ORDER FORM

All applications must be received with an original signature, a clear copy of applicant's current valid driver license or state identification card, any accompanying documentation, and payment before the application will be reviewed. Applications must be hand-delivered or mailed to the Secretary of State at 1500 11th Street, 5th Floor, Sacramento, CA 95814. Applications will not be accepted by fax or email.

**Data Format**
The data is sent on an encrypted DVD in three plain text tab-delimited files. In many cases, the file is too large to save on a DVD; therefore, our office uses WinZip to compress the files onto one disk. Since voter registration data can be large and exceed record limitations of many applications, it is strongly suggested that you use a large database system to open and compile this information. In most cases, you will not be able to open this information with MS Excel or MS Access. Requests for specific voter records are sent by email in an encrypted WinZip attachment. The Secretary of State is not responsible for end-user technical support for processing data (text) files and does not provide training or assistance on converting the data for usage. Once data has been extracted and sent to the applicant, no refunds will be issued.

**Type of Data Requested**

Would you like available Voting History data included?   Yes ☒   No ☐

Would you like Precinct to District data included?   Yes ☒   No ☐

For what location(s) do you want registration information?

☒  State

☐  County (or counties): _____

☐  Specific voter records. Up to 10 per application. Please fill out record details in the next section (full name, date of birth, and county of residence, address, etc.)

☐  Other _____

**NOTE:** Please allow 7-14 business days to process the data once an application has been submitted and approved.

### SHIPPING INFORMATION

Ship to (full name)  G C Strategies, LLC      Phone  (909) 838-0082
9087 Arrow Route  #210

Address

Rancho Cucamonga,    CA         91730
City                  State        Zip

Ship via:

☒ US Mail (no fee)   ☐ Pick Up at SOS Office   ☐ Other*
                        (no fee)

*Include proper forms/labels and additional fee.

Rev 1/24

## SPECIFIC VOTER RECORDS

If requesting specific voter records, please specify the following information for the voter(s) below. The Secretary of State will ONLY use the exact information provided: full name, date of birth, county of residence, and residence address.

1. _____
2. _____
3. _____
4. _____
5. _____
6. _____
7. _____
8. _____
9. _____
10. _____

Exhibit C-3, of 4

Page 2 of 5

**AGREEMENT**

All information furnished in this application is subject to verification.

Applicant and beneficiary, if applicable, hereby agree that the information set forth in the voter registration records will be used for the approved purposes, consistent with state law, as defined by Elections Code section 2194, California Code of Regulations section 19003, and Government Code section 6254.4.

*Initial here* [CW]

Applicant and beneficiary, if applicable, further agree not to sell, lease, loan, or deliver possession of the registration information, or a copy thereof, or any portion thereof, in any form or format, to any person, organization, or agency without first submitting a new application and receiving written authorization from the Secretary of State to release such registration information.

*Initial here* [CW]

Applicant and beneficiary, if applicable, agree to maintain information in a secure and confidential manner and notify the Secretary of State immediately of any violation or breach.

*Initial here* [CW]

Applicant and beneficiary, if applicable, understand that it is a misdemeanor for a person in possession of voter registration information to use or permit the use of all or any part of the information for any purpose other than as permitted by law. (Elections Code section 18109)

*Initial here* [CW]

Applicant and beneficiary, if applicable, agree to pay to the State of California, as compensation for any unauthorized use of each individual's registration information, an amount equal to the sum of fifty cents ($.50) multiplied by the number of times each registration record is used by the applicant and/or the beneficiary, if applicable, in an unauthorized manner. (California Code of Regulations sections 19001-19009)

*Initial here* [CW]

I certify under penalty of perjury, under the laws of the State of California, that all the information provided on this application is true and correct.

Executed at: _____ Date: 07/18/18

Signature of Applicant or beneficiary

City: Rancho Cucamonga         State: CA         Zip: 91730

Print name of applicant or beneficiary: Cameron Wessel

Driver license number (include state if not CA): [redacted]

Residence address

City: Rancho Cucamonga         State: CA         Zip: 91739

Title or position: Owner

Email address: Cameron@GCStrategiesHQ.com

Home phone: N/A         Mobile phone: (909) 838-0022

Rev 1/24

Exhibit C, 4 of 4    Page 3 of 5

# Exhibit D



July 23, 2018

Elections Officer
Voter Registration and Elections

Re: Letter of Authorization

Dear Elections Officer,

We are writing to respectfully request access to the voter registration list via our private vendor, GC Strategies, LLC ("GCS"). GSC provides data and technology consulting services for political and non-profit organizations.

Our company shall use the voter file in accordance with Title 2, Division 7, Chapter 1, Article 1 of the California Code of Regulations, and Elections Code Sections 2188 and 2194, Government Code Section 6254.4, and any other applicable California laws.

*General Election and Political Use – Political Consultants:*

More specifically, our company intends to use the voter data for non-commercial, political purposes only, including efforts to enhance voter registration efforts, voter contact, election day mobilization, and other permissible, political activities as authorized under California law.

Please direct your response, or any questions that you may have concerning this request for access to the voter registration list, to our agent and private vendor, GCS, via Cameron Wessel – Owner, at (909) 838-0022, or Cameron@GCStrategiesHQ.com.

Thank you in advance for your reply.

Sincerely,

Chris Cardiff
Chief Operating Officer

Exhibit D, 2 of 2

# Exhibit E



August 22, 2018

Secretary of State
Elections Division
1500 11th Street
5th Floor
Sacramento, CA 95814

Re: Letter of Authorization

Dear Elections Officer,

GC Strategies, LLC ("GCS") is writing to respectfully request the use of the California voter registration information as a private vendor for the entities listed in the Attachment A (the "Requesting Entities"). GCS is a consulting and strategy company, with services including data and technology consulting services for political and non-profit organizations.

Our company, and the Requesting Entities listed in Attach A, shall use the California voter registration information in accordance with Title 2, Division 7, Chapter 1, Article 1 of the California Code of Regulations, and Elections Code Sections 2188 and 2194, Government Code Section 6254.4, and any other applicable California laws.

GCS will use administrative, physical, and technical safeguards to protect the voter registration records. Only authorized employees at GCS will have access to the data. GCS will contractually require any third party receiving the information to use the same safeguards. The voter registration data will be kept in a secure, locked location and only authorized employees of GCS and/or any third party will have access to the data.

Please direct your response or any questions that you may have concerning this application for the purchase and use of California voter registration information to GC Strategies, LLC, via Cameron Wessel – Owner, at (909) 838-0022, or Cameron@GCStrategiesHQ.com.

Thank you in advance for your reply.

Sincerely,

Cameron Wessel
Owner
GC Strategies, LLC

Exhibit E, 2 of 3



## ATTACHMENT A

**Requesting Entities**

- i360, LLC

# Exhibit F

ALEX PADILLA | SECRETARY OF STATE | STATE OF CALIFORNIA
ELECTIONS DIVISION
1500 11ᵗʰ Street, 5ᵗʰ Floor, Sacramento, CA 95814 | Tel 916.657.2166 | Fax 916.653.3214 | www.sos.ca.gov

August 27, 2018

Cameron Wessel
GC Strategies, LLC
9087 Arrow Route #210
Rancho Cucamonga, CA 91730

Re:     California Voter Registration File Request

Dear Mr. Wessel,

The enclosed disc contains the voter registration data you requested. The file has been encrypted using WinZip software and will require a password, which we will provide separately. You will find the decrypted data is in a standard tab-delimited text format. The first record contains the names of each field. To decrypt the file:

1.   Open the .zip file with WinZip or another zip utility that supports .zip files.

2.   Unzip the files to chosen location by entering the password from our office.

You are approved to use this data only for the purpose stated in your application – **not for any type of commercial purpose**. You must obtain authorization from the Secretary of State before this data can be used for any other purpose or before it can be transferred to another party.

Please contact our office at (916) 654-1141 for the decryption password.

Sincerely,

Jenny Chernis-Sanders
Associate Elections Analyst

Exhibit F, Page 2 of 2

# Exhibit G



August 26, 2019

Secretary of State
Elections Division
1500 11th Street
5th Floor
Sacramento, CA 95814
Attn: Ms. Paige Kent, Associate Elections Analyst

Re: California Voter Registration File Request

Dear Ms. Kent,

I am respectfully writing in response to your letter dated June 24, 2019, our phone conversation on July 15, 2019, and the follow up email that was sent on July 15, 2019, from your office.

As noted in our initial request to your office, GC Strategies, LLC ("GCS") is a private vendor for the entities listed in the Attachment A (the "Transferees"). GCS is a consulting and strategy company, with services including data and technology consulting services for political and non-profit organizations. GCS is requesting the California voter registration information for its own use and to transfer the California voter registration information to the Transferees. i360, the Transferee, utilizes strict security and confidentiality measures which are consistent with high standards in the data management industry, to secure and protect the voter registration list from unauthorized us, access, or disclosure. This includes keeping the voter registration disc in a locked, secure file cabinet.

GCS and the Transferees will use the California voter registration information to enable campaign efforts, voter education, voter persuasion, get out to vote efforts, advocacy efforts, issue education, issue advocacy, and social organizing (the "Specific Efforts"). The Specific Efforts will be carried out through providing tools that facilitate:

Creating voter universes
Targeting voter universes

Exhibit G, Page 2 of 3



Door knocking

Phone banking and calling

Sending peer to peer text messages

Sending emails

Event attendance

Election day mobilizing

Absentee ballot and early voting

Contacting public officials

Actionable data visualization

Using and operationalizing analytics and models

Strategic planning and program execution

I believe use of the California voter registration information by GCS and the Transferees as described above is in accordance with Title 2, Division 7, Chapter 1, Article 1 of the California Code of Regulations, and Elections Code Sections 2188 and 2194, Government Code Section 6254.4, and any other applicable California laws.

Please direct your response or any questions that you may have concerning this application for the purchase and use of California voter registration information to GC Strategies, LLC, via Cameron Wessel – Owner, at (909) 838-0022, or Cameron@GCStrategiesHQ.com.

Thank you in advance for your reply.

Sincerely,

Cameron Wessel
Owner

# Exhibit H

# APPLICATION: CALIFORNIA VOTER REGISTRATION FILE REQUEST

**SECRETARY OF STATE**
Elections Division
1500 11th Street, 5th Floor Sacramento, C
95814
(916) 657-2166 / www.sos.ca.gov

**CONTACT INFORMATION**

**Full name of applicant**
GC Strategies, LLC

If applicable, the full name of the beneficiary, i.e. business, organization, or committee
i360, LLC

**Applicant's phone**
(109) 838-0022

**Applicant's email**
Cameron@gcstrategieshq.com

**Applicant's business address (street name and number)**
2151 E. Convention Center Way    STE 210

City: Ontario    State: CA    Zip: 91704

**Applicant's mailing address (if different than above)**
2300 Clarendon Blvd.    STE 800

City: Arlington    State: VA    Zip: 222 01

**Beneficiary's (business, organization, or committee) business address**

City: _____    State: _____    Zip: _____

## REQUESTING QUALIFICATIONS

**What type(s) of business, organization, or committee do you represent?**

| | | |
|---|---|---|
| ☐ Political Campaign/Committee | ☐ Academic | |
| ☑ Media | ☐ Private Vendor | |
| ☐ Legal | ☐ Governmental | |
| ☐ Investigation | ☐ Other (specify) _____ | |

**For what purpose(s) are you requesting this information?**

Proposed California ballot measure(s) (list each) _____

California candidate(s) (list each) _____

| | | |
|---|---|---|
| ☑ Political Research | ☐ Recall | |
| ☐ Scholarly Research | ☐ Governmental | |
| ☐ Initiative/Referendum | ☐ Other | |

**Provide (1) a detailed description of the specific intended use(s) of this information/data (any application that refers to "any other lawful use" will be rejected) and (2) describe how the information will be maintained securely and confidentially. If more space is needed, continue on another sheet of paper**

GC Strategies and i360 made a
NVRA Request on 08/27/19. The letters
they used then are very similar to the
ones on their new application. On both
applications they do not state who
they will eventually share the data with

— Renee 12/06/19

★

VOTE
CALIFORNIA

RegisterToVote.ca.gov

APPROVED by
9/20/19

# 902

Exhibit H, Page 2 of 4

Exhibit H, Page 3 of 4

## ORDER FORM

All applications must be received with an original signature, a clear copy of applicant's current valid driver license or state identification card, any accompanying documentation, and payment before the application will be reviewed. Applications must be hand-delivered or mailed to the Secretary of State at 1500 11th Street, 5th Floor, Sacramento, CA 95814. Applications will not be accepted by fax or email.

### Data Format

The data is sent on an encrypted DVD in three plain text tab-delimited files. In many cases, the file is too large to save on a DVD; therefore, our office uses WinZip to compress the files onto one disk. Since voter registration data can be large and exceed record limitations of many applications, it is strongly suggested that you use a large database system to open and compile this information. In most cases, you will not be able to open this information with MS Excel or MS Access. Requests for specific voter records are sent by email in an encrypted WinZip attachment. The Secretary of State is not responsible for end-user technical support for processing data (text) files and does not provide training or assistance on converting the data or usage. Once data has been extracted and sent to the applicant, no refunds will be issued.

### Type of Data Requested

Would you like available Voting History data included?    Yes ☒    No ☐

Would you like Precinct to District data included?    Yes ☒    No ☐

For what location(s) do you want registration information?    Yes ☒    No ☐

☒ State

☐ County (or counties): _____

☐ Specific voter records. Up to 10 per application. Please fill out record details in the next section (full name, date of birth, and county of residence, address, etc.)

☐ Other _____

NOTE: Please allow 7-14 business days to process the data once an application has been submitted and approved.

### SHIPPING INFORMATION

Ship to (full name) GC Strategies, LLC    Phone 909-838-0022

Address

City Ontario 2151 E. Convention Center Way STE 210    State CA    Zip 91764

Ship via:

☒ US Mail (no fee)    ☐ Pick Up at SOS Office (no fee)    ☐ Other*

*Include proper forms/labels and additional fee.

### SPECIFIC VOTER RECORDS

If requesting specific voter records, please specify the following information for the voter(s) below. The Secretary of State will ONLY use the exact information provided: full name, date of birth, county of residence, and residence address.

1. _____

2. _____

3. _____

4. _____

5. _____

6. _____

7. _____

8. _____

9. _____

10. _____

RECEIVED
AUG -1 2018
California Secretary of State
Elections Division

All information furnished on this application is subject to verification.

☑ Applicant and beneficiary, if applicable, hereby agree that the information set forth in the voter registration records will be used for the approved purposes, consistent with state law, as defined by Elections Code section 2194, California
*Initial here* Code of Regulations section 19003, and Government Code section 6254.4.

☑ Applicant and beneficiary, if applicable, further agree not to sell, lease, loan, or deliver possession of the registration information, or a copy thereof, or any portion thereof, in any form or format, to any person, organization, or
*Initial here* agency without first submitting a new application and receiving written authorization from the Secretary of State to release such registration information.

☑ Applicant and beneficiary, if applicable, agree to maintain information in a secure and confidential manner and notify the Secretary of State immediately of any violation or breach.
*Initial here*

☑ Applicant and beneficiary, if applicable, understand that it is a misdemeanor for a person in possession of voter registration information to use or permit the use of all or any part of the information for any purpose other than as permitted by
*Initial here* law. (Elections Code section 18109)

☑ Applicant and beneficiary, if applicable, agree to pay to the State of California, as compensation for any unauthorized use of each individual's registration information, an amount equal to the sum of fifty cents ($.50) multiplied by the
*Initial here* number of times each registration record is used by the applicant and/or the beneficiary, if applicable, in an unauthorized manner. (California Code of Regulations sections 19001-19009)

I certify under penalty of perjury, under the laws of the State of California, that all of the information provided on this application is true and correct.

Executed at: _____   07/30/19
Signature of applicant or beneficiary                           Date

Rancho Cucamonga                        CA              91730
City                                    State           Zip

Cameron Wessel                          ████████████
Print name of applicant or beneficiary   Driver license number (include state if not CA)

Residence address

Highland                                CA              92346
City                                    State           Zip

owner
Title or position

Cameron@gcstrategiesllc.com    N/A              909-838-0022
Email address                  Home phone        Mobile phone

Exhibit H, Page 4 of 4

# Exhibit I



*letter from GC Re: interest use*

January 16, 2020

Secretary of State - Elections Division
VoteCalHelp@sos.ca.gov

Re: Following up on Conversation with Cameron Wessel of GC Strategies Regarding California Voter Registration File Request

To Whom It May Concern,

I am respectfully writing to follow up on your recent conversations with Cameron Wessel of GC Strategies. Mr. Wessel advised i360 that we submit this letter to your office to describe i360's activities as a transferee of the California voter registration file from GC Strategies and include i360's clients that would access the California voter registration file through i360.

Activities
i360 is a data and technology company. It will use voter registration file information to enable others' campaign efforts, voter education, voter persuasion, get out to vote efforts, advocacy efforts, issue education, issue advocacy, and social organizing (the "Specific Efforts"). The Specific Efforts will be carried out through providing tools that facilitate:

- Creating voter universes
- Targeting voter universes
- Door knocking
- Phone banking and calling
- Sending peer to peer text messages
- Sending emails
- Event attendance
- Election day mobilizing
- Absentee ballot and early voting
- Contacting public officials
- Actionable data visualization
- Using and operationalizing analytics and models
- Strategic planning and program execution

Clients
For the list of clients that would access the California voter registration file through i360 please see Appendix A.

Thank you in advance for your reply.

Sincerely,

Chris Cardiff
COO

www.i-360.com                                                                                       1

Exhibit I, Page 2 of 3

## Appendix A

- Republican Party of San Diego
- Jay Obernolte for Congress
- Dr. Lisa Sparks for Congress
- Laurie Davies for State Assembly
- Jeremy Smith for State Assembly
- Check Washington for Supervisor 2020
- Carl Demaio for Congress
- River Right LLC
- Diane Dixon for Assembly 2020

# Exhibit J

| committee_id | committee_name | recipient_r | recipient_t | beneficiary | national_c | disbursem | disbursem | disbursem | memo_cod | memo_cod | disbursement_date | disbursemer |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C00384529 | LISA MURKOWSKI FOR US SENATE | 1360 LLC | MD | | | ONLINE DATABASE SERVICES | | | | | 4/10/2019 0:00 | 300 |
| C00384529 | LISA MURKOWSKI FOR US SENATE | 1360 LLC | MD | | | ONLINE DATABASE SERVICES | | | | | 4/30/2019 0:00 | 150 |
| C00384529 | LISA MURKOWSKI FOR US SENATE | 1360 LLC | MD | | | ONLINE DATABASE SERVICES | | | | | 5/30/2019 0:00 | 150 |
| C00311043 | BRADY FOR CONGRESS | 1360, LLC | IL | | | DATABASE SERVICES | | | | | 4/12/2019 0:00 | 112.5 |
| C00311043 | BRADY FOR CONGRESS | 1360, LLC | IL | | | DATABASE SERVICES | | | | | 5/16/2019 0:00 | 967.29 |
| C00311043 | BRADY FOR CONGRESS | 1360, LLC | IL | | | DATABASE SERVICES | | | | | 6/20/2019 0:00 | 1112.5 |
| C00393629 | MCHENRY FOR CONGRESS | 1360 | MD | | | WEB SERVICES | | | | | 4/8/2019 0:00 | 225 |
| C00393629 | MCHENRY FOR CONGRESS | 1360 | MD | | | WEB SERVICES | | | | | 6/3/2019 0:00 | 225 |
| C00392688 | MCCAUL FOR CONGRESS, INC | 1360, LLC | IL | | | DATABASE SERVICES | | | | | 6/20/2019 0:00 | 1497.81 |
| C00697417 | BYRNE FOR SENATE, INC. | 1360, LLC | IL | | | GRASSROOTS CONSULTING | | | | | 4/5/2019 0:00 | 2000 |
| C00697417 | BYRNE FOR SENATE, INC. | 1360, LLC | IL | | | GRASSROOTS CONSULTING | | | | | 4/19/2019 0:00 | 1578.08 |
| C00697417 | BYRNE FOR SENATE, INC. | 1360, LLC | IL | | | GRASSROOTS CONSULTING | | | | | 5/1/2019 0:00 | 2421.92 |
| C00462143 | MARTHA ROBY FOR CONGRESS | 1360 | IL | | | WEB SERVICES | | | | | 5/30/2019 0:00 | 868.36 |
| C00462143 | MARTHA ROBY FOR CONGRESS | 1360 | IL | | | SOFTWARE | | | | | 6/21/2019 0:00 | 150 |
| C00666040 | MCSALLY FOR SENATE INC | 1360 | IL | | | SOFTWARE | | | | | 4/22/2019 0:00 | 300 |
| C00666040 | MCSALLY FOR SENATE INC | 1360 | IL | | | SOFTWARE | | | | | 5/20/2019 0:00 | 300 |
| C00657981 | FRIENDS OF STEVE NEGRON | 1360, LLC | IL | | | DATABASE SERVICES | | | | | 3/15/2019 0:00 | 1000 |
| C00657981 | FRIENDS OF STEVE NEGRON | 1360, LLC | IL | | | DATABASE SERVICES | | | | | 2/1/2019 0:00 | 1000 |
| C00545467 | HURD FOR CONGRESS | 1360, LLC | IL | | | SUBSCRIPTIONS | | | | | 5/22/2019 0:00 | 15703.91 |
| C00620518 | MARCO RUBIO FOR SENATE | 1360 | IL | | | DATA MANAGEMENT | | | | | 4/29/2019 0:00 | 7500 |
| C00620518 | MARCO RUBIO FOR SENATE | 1360 | IL | | | DATA MANAGEMENT | | | | | 6/24/2019 0:00 | 2500 |
| C00658401 | GREG PENCE FOR CONGRESS | 1360 LLC | IL | | | VOTER DATA SOFTWARE EXPENSI | | | | | 4/1/2019 0:00 | 102 |
| C00658401 | GREG PENCE FOR CONGRESS | 1360 LLC | IL | | | VOTER DATA SOFTWARE EXPENSI | | | | | 4/17/2019 0:00 | 102 |
| C00658401 | GREG PENCE FOR CONGRESS | 1360 LLC | IL | | | VOTER DATA SOFTWARE EXPENSI | | | | | 5/29/2019 0:00 | 102 |
| C00658401 | GREG PENCE FOR CONGRESS | 1360 LLC | IL | | | VOTER DATA SOFTWARE EXPENSI | | | | | 6/26/2019 0:00 | 102 |
| C00653147 | MIKE BRAUN FOR INDIANA | 1360, LLC | MD | | | DATA MODELLING | | | | | 4/4/2019 0:00 | 300 |
| C00653147 | MIKE BRAUN FOR INDIANA | 1360, LLC | MD | | | DATA MODELLING | | | | | 6/10/2019 0:00 | 3891.24 |
| C00547893 | ELISE FOR CONGRESS | 1360, LLC | IL | | | SUBSCRIPTION | | | | | 4/8/2019 0:00 | 427.05 |
| C00547893 | ELISE FOR CONGRESS | 1360, LLC | IL | | | SUBSCRIPTION | | | | | 5/17/2019 0:00 | 225 |
| C00556365 | KATKO FOR CONGRESS | 1360, LLC | MD | | | WEB SERVICES | | | | | 4/23/2019 0:00 | 426.27 |
| C00464032 | TOM REED FOR CONGRESS | 1360 LLC | IL | | | DATA SUBSCRIPTION | | | | | 4/1/2019 0:00 | 2002.76 |
| C00464032 | TOM REED FOR CONGRESS | 1360 LLC | IL | | | DATA SUBSCRIPTION | | | | | 4/12/2019 0:00 | 1000 |
| C00464032 | TOM REED FOR CONGRESS | 1360 LLC | IL | | | DATA SUBSCRIPTION | | | | | 5/17/2019 0:00 | 1000 |
| C00653634 | VAN TAYLOR CAMPAIGN | 1360 LLC | IL | | | SUBSCRIPTION | | | | | 4/12/2019 0:00 | 112.5 |
| C00653634 | VAN TAYLOR CAMPAIGN | 1360 LLC | IL | | | SUBSCRIPTION | | | | | 5/20/2019 0:00 | 112.5 |
| C00472365 | YODER FOR CONGRESS, INC | 1360, LLC | VA | | | DATA STORAGE | | | | | 4/15/2019 0:00 | 1436.71 |
| C00472365 | YODER FOR CONGRESS, INC | 1360, LLC | VA | | | DATA STORAGE | | | | | 5/17/2019 0:00 | 300 |
| C00476291 | JUSTIN AMASH FOR CONGRESS | 1360 LLC | MD | | | CAMPAIGN SOFTWARE | | | | | 4/24/2019 0:00 | 300 |
| C00476291 | JUSTIN AMASH FOR CONGRESS | 1360 LLC | MD | | | CAMPAIGN SOFTWARE | | | | | 5/23/2019 0:00 | 150 |
| C00476291 | JUSTIN AMASH FOR CONGRESS | 1360 LLC | MD | | | CAMPAIGN SOFTWARE | | | | | 6/25/2019 0:00 | 150 |
| C00459255 | FRIENDS OF TODD YOUNG, INC. | 1360 LLC | IL | | | DATA SERVICES | | | | | 4/27/2020 0:00 | 150 |
| C00459255 | FRIENDS OF TODD YOUNG, INC. | 1360 LLC | IL | | | DATA SERVICES | | | | | 5/26/2020 0:00 | 150 |
| C00459255 | FRIENDS OF TODD YOUNG, INC. | 1360 LLC | IL | | | DATA SERVICES | | | | | 6/25/2020 0:00 | 150 |
| C00670695 | ROMNEY FOR UTAH INC | 1360, LLC | IL | | | SUBSCRIPTION | | | | | 5/10/2019 0:00 | 390 |
| C00670695 | ROMNEY FOR UTAH INC | 1360, LLC | IL | | | SUBSCRIPTION | | | | | 5/21/2019 0:00 | 390 |
| C00661561 | BEN CLINE FOR CONGRESS, INC. | 1360 LLC | IL | | | SUBSCRIPTION | | | | | 4/5/2019 0:00 | 112.5 |
| C00661561 | BEN CLINE FOR CONGRESS, INC. | 1360 LLC | IL | | | SUBSCRIPTION | | | | | 4/29/2019 0:00 | 112.5 |
| C00661561 | BEN CLINE FOR CONGRESS, INC. | 1360 LLC | IL | | | SUBSCRIPTION | | | | | 6/6/2019 0:00 | 112.5 |
| C00441014 | ROB WITTMAN FOR CONGRESS | 1360 LLC | IL | | | VOTER DATABASE | | | | | 6/13/2019 0:00 | 873.29 |
| C00441014 | ROB WITTMAN FOR CONGRESS | 1360 LLC | IL | | | VOTER DATABASE | | | | | 6/25/2019 0:00 | 750 |
| C00376939 | MARSHA FOR SENATE | 1360 LLC | IL | | | SUBSCRIPTIONS | | | | | 4/17/2019 0:00 | 300 |
| C00376939 | MARSHA FOR SENATE | 1360 LLC | IL | | | SUBSCRIPTIONS | | | | | 5/22/2019 0:00 | 300 |
| C00376939 | MARSHA FOR SENATE | 1360 LLC | IL | | | SUBSCRIPTIONS | | | | | 6/25/2019 0:00 | 300 |
| C00652149 | BURCHETT FOR CONGRESS | 1360 LLC | IL | | | DIGITAL MARKETING | | | | | 5/2/2019 0:00 | 450 |
| C00652149 | BURCHETT FOR CONGRESS | 1360 LLC | IL | | | DIGITAL DATAT STORAGE | | | | | 5/24/2019 0:00 | 112.5 |
| C00652149 | BURCHETT FOR CONGRESS | 1360 LLC | IL | | | DIGITAL DATA STORAGE | | | | | 6/20/2019 0:00 | 112.5 |
| C00652743 | JOHN ROSE FOR TENNESSEE | 1360, LLC | IL | | | SUBSCRIPTIONS | | | | | 4/22/2019 0:00 | 112.5 |
| C00652743 | JOHN ROSE FOR TENNESSEE | 1360, LLC | IL | | | SUBSCRIPTIONS | | | | | 5/20/2019 0:00 | 112.5 |
| C00652743 | JOHN ROSE FOR TENNESSEE | 1360, LLC | IL | | | DATA STORAGE | | | | | 6/20/2019 0:00 | 112.5 |
| C00443218 | WICKER FOR SENATE | 1360, LLC | IL | | | DATA SUBSCRIPTION | | | | | 1/4/2019 0:00 | 2500 |
| C00575167 | DON BACON FOR CONGRESS | 1360, LLC | MD | | | DATABASE SYSTEM | | | | | 2/5/2019 0:00 | 75 |
| C00715854 | ALEK FOR OREGON | 1360 | VA | | | DATABASE SERVICES | | | | | 10/22/2020 0:00 | 1210 |
| C00715854 | ALEK FOR OREGON | 1360 | VA | | | DATABASE SERVICES | | | | | 11/6/2020 0:00 | 1486.67 |
| C00666396 | MICHAEL WALTZ FOR CONGRESS | 1360, LLC | IL | | | DATA SUBSCRIPTION | | | | | 4/26/2019 0:00 | 450 |
| C00666396 | MICHAEL WALTZ FOR CONGRESS | 1360, LLC | IL | | | DATA SUBSCRIPTION | | | | | 5/17/2019 0:00 | 112.5 |
| C00666396 | MICHAEL WALTZ FOR CONGRESS | 1360, LLC | IL | | | DATA SUBSCRIPTION | | | | | 6/20/2019 0:00 | 112.5 |
| C00564765 | FREEDOM PARTNERS ACTION FUND, INC. | 1360 | | | | REFUND OF MEDIA PLACEMENT ( | | | | | 6/4/2019 0:00 | -76526.48 |
| C00558445 | ARIZONA GRASSROOTS ACTION PAC | 1360, LLC | MD | | | WEB SERVICES | | | | | 1/25/2019 0:00 | 2250.32 |
| C00658385 | MARK GREEN FOR CONGRESS | 1360 | IL | | | DATA | | | | | 9/30/2020 0:00 | 1246.95 |
| C00473827 | FRIENDS OF MIKE LEE INC | 1360, LLC | MD | | | DATABASE | | | | | 7/18/2019 0:00 | 1200 |
| C00701672 | TUBERVILLE FOR SENATE, INC. | 1360 LLC | IL | | | DEBT REPAYMENT - DATA SUBSCI | | | | | 10/19/2020 0:00 | 6061.51 |
| C00698449 | RIDENHOUR FOR CONGRESS | 1360, LLC | IL | | | SUBSCRIPTION | | | | | 4/16/2019 0:00 | 998.28 |
| C00698449 | RIDENHOUR FOR CONGRESS | 1360, LLC | IL | | | SUBSCRIPTION | | | | | 5/21/2019 0:00 | 1033.34 |
| C00698530 | JOAN PERRY FOR CONGRESS | 1360, LLC | IL | | | ONLINE/LIST MANAGEMENT SERV | | | | | 6/7/2019 0:00 | 3563.93 |
| C00698530 | JOAN PERRY FOR CONGRESS | 1360, LLC | IL | | | ONLINE/LIST MANAGEMENT SERV | | | | | 6/11/2019 0:00 | 905.47 |
| C00702324 | CONSERVATIVES FOR A BETTER NORTH CA | 1360, LLC | IL | | | SUBSCRIPTION | | | | | 5/20/2019 0:00 | 1124.66 |
| C00652149 | BURCHETT FOR CONGRESS | 1360 LLC | IL | | | DIGITAL MARKETING | | | | | 1/3/2019 0:00 | 1285.49 |
| C00652743 | JOHN ROSE FOR TENNESSEE | 1360, LLC | IL | | | SUBSCRIPTIONS | | | | | 2/26/2019 0:00 | 112.5 |
| C00652743 | JOHN ROSE FOR TENNESSEE | 1360, LLC | IL | | | SUBSCRIPTIONS | | | | | 3/22/2019 0:00 | 112.5 |
| C00652743 | JOHN ROSE FOR TENNESSEE | 1360, LLC | IL | | | SUBSCRIPTIONS | | | | | 3/25/2019 0:00 | 112.5 |
| C00653634 | VAN TAYLOR CAMPAIGN | 1360 LLC | IL | | | SUBSCRIPTION | | | | | 1/25/2019 0:00 | 112.5 |
| C00653634 | VAN TAYLOR CAMPAIGN | 1360 LLC | IL | | | SUBSCRIPTION | | | | | 3/1/2019 0:00 | 112.5 |

| ID | Name | Entity | State | Payee | Description | Date | Amount |
|---|---|---|---|---|---|---|---|
| C00545616 | YOUNG FOR IOWA, INC. | 1360 | MD | | SOFTWARE | 1/29/2019 0:00 | 1800 |
| C00545673 | BYRNE FOR CONGRESS | 1360, LLC | IL | | GRASSROOTS CONSULTING | 1/29/2019 0:00 | 2000 |
| C00547976 | BEN SASSE FOR U.S. SENATE, INC. | 1360, LLC | MD | | DATA SUBSCRIPTION | 1/25/2019 0:00 | 900 |
| C00530766 | WOMEN SPEAK OUT PAC | 1360 | MD | | DATA SUBSCRIPTION SERVICES | 8/6/2020 0:00 | 499.94 |
| C00701672 | TUBERVILLE FOR SENATE, INC. | 1360 LLC | IL | | DATA SUBSCRIPTION SERVICES / I | 11/12/2020 0:00 | 3022.36 |
| C00661561 | BEN CLINE FOR CONGRESS, INC. | 1360, LLC | IL | | SUBSCRIPTION | 1/10/2019 0:00 | 90.61 |
| C00661561 | BEN CLINE FOR CONGRESS, INC. | 1360, LLC | IL | | SUBSCRIPTION | 1/22/2019 0:00 | 114.59 |
| C00661561 | BEN CLINE FOR CONGRESS, INC. | 1360, LLC | IL | | SUBSCRIPTION | 3/15/2019 0:00 | 112.58 |
| C00620518 | MARCO RUBIO FOR SENATE | 1360 | IL | | DATA MANAGEMENT | 1/28/2019 0:00 | 5000 |
| C00662767 | CHIP ROY FOR CONGRESS | 1360 LLC | IL | | SUBSCRIPTIONS | 1/8/2019 0:00 | 120.2 |
| C00662767 | CHIP ROY FOR CONGRESS | 1360 LLC | IL | | SUBSCRIPTIONS | 3/1/2019 0:00 | 150.64 |
| C00437913 | OLSON FOR CONGRESS COMMITTEE | 1360, LLC | IL | | DATABASE SERVICES | 3/30/2019 0:00 | 426.27 |
| C00441014 | ROB WITTMAN FOR CONGRESS | 1360 LLC | IL | | VOTER DATABASE | 1/21/2019 0:00 | 500 |
| C00666040 | MCSALLY FOR SENATE INC | 1360 | IL | | SOFTWARE | 3/25/2019 0:00 | 147.95 |
| C00666040 | MCSALLY FOR SENATE INC | 1360 LLC | MD | | SOFTWARE | 2/25/2019 0:00 | 236.76 |
| C00666396 | MICHAEL WALTZ FOR CONGRESS | 1360 | IL | | DATA SUBSCRIPTION | 1/7/2019 0:00 | 88.77 |
| C00459255 | FRIENDS OF TODD YOUNG, INC. | 1360, LLC | IL | | DATA STORAGE | 3/1/2019 0:00 | 300 |
| C00670695 | ROMNEY FOR UTAH INC | 1360, LLC | IL | | SUBSCRIPTION | 1/2/2019 0:00 | 308.59 |
| C00670695 | ROMNEY FOR UTAH INC | 1360, LLC | IL | | SUBSCRIPTION | 3/7/2019 0:00 | 780 |
| C00670695 | ROMNEY FOR UTAH INC | 1360, LLC | IL | | SUBSCRIPTION | 3/29/2019 0:00 | 390 |
| C00464032 | TOM REED FOR CONGRESS | 1360, LLC | IL | | DATA SUBSCRIPTION | 2/15/2019 0:00 | 1002.76 |
| C00464032 | TOM REED FOR CONGRESS | 1360, LLC | IL | | DATA SUBSCRIPTION | 2/25/2019 0:00 | 1002.76 |
| C00473827 | FRIENDS OF MIKE LEE INC | 1360, LLC | MD | | DATABASE | 1/21/2019 0:00 | 1200 |
| C00473827 | FRIENDS OF MIKE LEE INC | 1360, LLC | MD | | DATABASE | 2/28/2019 0:00 | 1200 |
| C00473827 | FRIENDS OF MIKE LEE INC | 1360, LLC | MD | | DATABASE | 3/21/2019 0:00 | 1200 |
| C00476291 | JUSTIN AMASH FOR CONGRESS | 1360 LLC | MD | | CAMPAIGN SOFTWARE | 1/24/2019 0:00 | 150 |
| C00476291 | JUSTIN AMASH FOR CONGRESS | 1360 LLC | MD | | CAMPAIGN SOFTWARE | 3/19/2019 0:00 | 150 |
| C00620518 | MARCO RUBIO FOR SENATE | 1360 | IL | | DATA MANAGEMENT | 2/26/2019 0:00 | 2500 |
| C00628917 | FRIENDS OF DUSTY JOHNSON | 1360, LLC | IL | FRIENDS OF DUSTY JOHNSON | TECHNOLOGY SERVICES/SOFTWA | 2/7/2019 0:00 | 570.72 |
| C00628917 | FRIENDS OF DUSTY JOHNSON | 1360, LLC | IL | FRIENDS OF DUSTY JOHNSON | TECHNOLOGY/SOFTWARE | 3/15/2019 0:00 | 150 |
| C00495846 | ANN WAGNER FOR CONGRESS | 1360 LLC | MD | | SUBSCRIPTION SERVICE | 2/25/2019 0:00 | 268.36 |
| C00495846 | ANN WAGNER FOR CONGRESS | 1360 LLC | MD | | SUBSCRIPTION SERVICE | 3/22/2019 0:00 | 300 |
| C00495846 | ANN WAGNER FOR CONGRESS | 1360 LLC | MD | | SUBSCRIPTION SERVICE | 3/22/2019 0:00 | 150 |
| C00498345 | MULLIN FOR CONGRESS | 1360 LLC | IL | | SUBSCRIPTION | 1/24/2019 0:00 | 112.5 |
| C00498345 | MULLIN FOR CONGRESS | 1360 LLC | IL | | SUBCRIPTION | 3/8/2019 0:00 | 112.5 |
| C00498345 | MULLIN FOR CONGRESS | 1360 LLC | IL | | SUBSCRIPTION | 3/25/2019 0:00 | 201.27 |
| C00633610 | RALPH NORMAN FOR CONGRESS | 1360 | MD | | DATA SERVICES | 1/9/2019 0:00 | 562.5 |
| C00384529 | LISA MURKOWSKI FOR US SENATE | 1360 LLC | MD | | ONLINE DATABASE SERVICES | 1/21/2019 0:00 | 300 |
| C00393629 | MCHENRY FOR CONGRESS | 1360 | MD | | WEB SERVICES | 1/15/2019 0:00 | 88.77 |
| C00393629 | MCHENRY FOR CONGRESS | 1360 | MD | | WEB SERVICES | 2/6/2019 0:00 | 112.5 |
| C00027466 | NRSC | 1360 | IL | | SUBSCRIPTION | 5/29/2019 0:00 | 1500 |
| C00027466 | NRSC | 1360 | IL | | SUBSCRIPTION | 5/30/2019 0:00 | 1500 |
| C00027466 | NRSC | 1360 | IL | | SUBSCRIPTION | 4/2/2019 0:00 | 7500 |
| C00027466 | NRSC | 1360 | IL | | SUBSCRIPTION | 4/24/2019 0:00 | 1500 |
| C00311043 | BRADY FOR CONGRESS | 1360, LLC | IL | | DATABASE SERVICES | 1/23/2019 0:00 | 112.5 |
| C00311043 | BRADY FOR CONGRESS | 1360, LLC | IL | | DATABASE SERVICES | 3/2/2019 0:00 | 112.5 |
| C00311043 | BRADY FOR CONGRESS | 1360, LLC | IL | | DATABASE SERVICES | 3/22/2019 0:00 | 112.5 |
| C00042622 | MASSACHUSETTS REPUBLICAN PARTY | 1360 LLC | IL | | DATA MANAGEMENT SERVICES | 1/31/2019 0:00 | 4522.4 |
| C00376939 | MARSHA FOR SENATE | 1360 LLC | IL | | SUBSCRIPTIONS | 1/8/2019 0:00 | 236.98 |
| C00376939 | MARSHA FOR SENATE | 1360 LLC | IL | | SUBSCRIPTIONS | 1/29/2019 0:00 | 305.22 |
| C00376939 | MARSHA FOR SENATE | 1360 LLC | IL | | SUBSCRIPTIONS | 3/7/2019 0:00 | 300 |
| C00376939 | MARSHA FOR SENATE | 1360 LLC | IL | | SUBSCRIPTIONS | 3/27/2019 0:00 | 300 |
| C00620518 | MARCO RUBIO FOR SENATE | 1360 | IL | | DATA SERVICES | 10/31/2019 0:00 | 7500 |
| C00491357 | STEVE DAINES FOR MONTANA | 1360 | MD | | DATA SUBSCRIPTION | 3/12/2019 0:00 | 150 |
| C00662767 | CHIP ROY FOR CONGRESS | 1360 LLC | IL | | SUBSCRIPTION | 5/16/2019 0:00 | 450 |
| C00701003 | HUNT FOR CONGRESS | 1360, LLC | IL | | DATABASE SERVICES | 6/7/2019 0:00 | 500 |
| C00701003 | HUNT FOR CONGRESS | 1360, LLC | IL | | DATABASE SERVICES | 6/7/2019 0:00 | 2943.84 |
| C00701003 | HUNT FOR CONGRESS | 1360, LLC | IL | | DATABASE SERVICES | 6/21/2019 0:00 | 900 |
| C00701003 | HUNT FOR CONGRESS | 1360, LLC | IL | | DATABASE SERVICES | 1/5/2020 0:00 | 2916.82 |
| C00701003 | HUNT FOR CONGRESS | 1360, LLC | IL | | DATABASE SERVICES | 1/23/2020 0:00 | 1220.45 |
| C00662767 | CHIP ROY FOR CONGRESS | 1360 LLC | IL | | SUBSCRIPTION | 7/18/2019 0:00 | 450 |
| C00662767 | CHIP ROY FOR CONGRESS | 1360 LLC | IL | | SUBSCRIPTION | 8/29/2019 0:00 | 150 |
| C00393629 | MCHENRY FOR CONGRESS | 1360 | MD | | WEB SERVIX | 7/5/2019 0:00 | 250 |
| C00530766 | WOMEN SPEAK OUT PAC | 1360 | MD | | DATA SUBSCRIPTION SERVICES | 5/15/2020 0:00 | 500 |
| C00393629 | MCHENRY FOR CONGRESS | 1360 | MD | | RESEARCH | 7/19/2019 0:00 | 1174.79 |
| C00393629 | MCHENRY FOR CONGRESS | 1360 | MD | | WEB EXPENSES | 8/25/2019 0:00 | 950 |
| C00393629 | MCHENRY FOR CONGRESS | 1360 | MD | | WEB EXPENSES | 9/27/2019 0:00 | 950 |
| C00703504 | HOMRICH FOR CONGRESS | 1360 LLC | IL | | SOFTWARE | 10/18/2019 0:00 | 900.14 |
| C00703504 | HOMRICH FOR CONGRESS | 1360 LLC | IL | | SOFTWARE | 11/11/2019 0:00 | 906.89 |
| C00376939 | MARSHA FOR SENATE | 1360 LLC | IL | | SUBSCRIPTIONS | 2/25/2020 0:00 | 300 |
| C00376939 | MARSHA FOR SENATE | 1360 LLC | IL | | SUBSCRIPTIONS | 2/28/2020 0:00 | 300 |
| C00376939 | MARSHA FOR SENATE | 1360 LLC | IL | | SUBSCRIPTIONS | 3/11/2020 0:00 | 300 |
| C00539825 | CAPITO FOR WEST VIRGINIA | 1360 | IL | | WEB SERVICE | 1/11/2020 0:00 | 315.07 |
| C00539825 | CAPITO FOR WEST VIRGINIA | 1360 | IL | | WEB SERVICE | 2/4/2020 0:00 | 2000 |
| C00539825 | CAPITO FOR WEST VIRGINIA | 1360 | IL | | WEB SERVICE | 3/11/2020 0:00 | 5000 |
| C00027466 | NRSC | 1360 | IL | | SUBSCRIPTION | 7/8/2019 0:00 | 1500 |
| C00027466 | NRSC | 1360 | IL | | SUBSCRIPTION | 7/22/2019 0:00 | 1500 |
| C00491357 | STEVE DAINES FOR MONTANA | 1360 | MD | | DATA SUBSCRIPTION | 5/21/2019 0:00 | 112.5 |
| C00441014 | ROB WITTMAN FOR CONGRESS | 1360 LLC | IL | | VOTER DATABASE | 11/8/2019 0:00 | 1500 |
| C00074450 | REPUBLICAN PARTY OF WISCONSIN | 1360 LLC | IL | | SOFTWARE | 2/22/2019 0:00 | 2000 |
| C00653634 | VAN TAYLOR CAMPAIGN | 1360 LLC | IL | | SUBSCRIPTION | 11/22/2019 0:00 | 112.5 |
| C00697789 | JERRY CARL FOR CONGRESS | 1360 LLC | IL | | UTILITIES | 1/30/2020 0:00 | 1231.8 |
| C00376939 | MARSHA FOR SENATE | 1360 LLC | IL | | SUBSCRIPTIONS | 8/28/2019 0:00 | 300 |

Exhibit J, 3 of 17

| Account | Committee | Entity | State | Description | Date | Amount |
|---|---|---|---|---|---|---|
| C00653634 | VAN TAYLOR CAMPAIGN | 1360 LLC | IL | WEB SERVICE | 8/9/2019 0:00 | 225 |
| C00653634 | VAN TAYLOR CAMPAIGN | 1360 LLC | IL | WEB SERVICE | 8/12/2019 0:00 | 112.5 |
| C00684985 | WIN AT THE DOOR PAC | 1360, LLC | IL | CAREY ACCT: DATA SOFTWARE | 3/8/2019 0:00 | 596.98 |
| C00684985 | WIN AT THE DOOR PAC | 1360, LLC | IL | CAREY ACCT: DATA SOFTWARE | 3/8/2019 0:00 | 793.65 |
| C00684985 | WIN AT THE DOOR PAC | 1360, LLC | IL | CAREY ACCT: DATA SOFTWARE | 3/25/2019 0:00 | 935.86 |
| C00684985 | WIN AT THE DOOR PAC | 1360, LLC | IL | CAREY ACCT: DATA SOFTWARE | 3/25/2019 0:00 | 659.56 |
| C00684985 | WIN AT THE DOOR PAC | 1360, LLC | IL | CAREY ACCT: DATA SOFTWARE | 5/31/2019 0:00 | 642.75 |
| C00684985 | WIN AT THE DOOR PAC | 1360, LLC | IL | CAREY ACCT: DATA SOFTWARE | 5/31/2019 0:00 | 966.37 |
| C00684985 | WIN AT THE DOOR PAC | 1360, LLC | IL | CAREY ACCT: DATA SOFTWARE | 5/31/2019 0:00 | 1261.72 |
| C00684985 | WIN AT THE DOOR PAC | 1360, LLC | IL | CAREY ACCT: DATA SOFTWARE | 5/31/2019 0:00 | 284.93 |
| C00684985 | WIN AT THE DOOR PAC | 1360, LLC | IL | CAREY ACCT: DATA SOFTWARE | 5/31/2019 0:00 | 1347.57 |
| C00662171 | RON WRIGHT FOR CONGRESS | 1360 | IL | DATABASE SERVICES | 3/29/2019 0:00 | 2722.85 |
| C00704064 | NEESE FOR CONGRESS | 1360, LLC | IL | SUBSCRIPTION | 6/18/2020 0:00 | 3487.52 |
| C00721357 | JANET BARRESI FOR CONGRESS | 1360 | IL | SUBSCRIPTION | 6/15/2020 0:00 | 1000 |
| C00620518 | MARCO RUBIO FOR SENATE | 1360 | IL | DATA SERVICE | 8/16/2019 0:00 | 5000 |
| C00476291 | JUSTIN AMASH FOR CONGRESS | 1360 LLC | MD | CAMPAIGN SOFTWARE | 8/22/2019 0:00 | 150 |
| C00476291 | JUSTIN AMASH FOR CONGRESS | 1360 LLC | MD | CAMPAIGN SOFTWARE | 9/20/2019 0:00 | 150 |
| C00476291 | JUSTIN AMASH FOR CONGRESS | 1360 LLC | MD | CAMPAIGN SOFTWARE | 7/23/2019 0:00 | 150 |
| C00666396 | MICHAEL WALTZ FOR CONGRESS | 1360, LLC | IL | DATA SUBSCRIPTION | 7/18/2019 0:00 | 112.5 |
| C00666396 | MICHAEL WALTZ FOR CONGRESS | 1360, LLC | IL | DATA SUBSCRIPTION | 8/23/2019 0:00 | 112.5 |
| C00666396 | MICHAEL WALTZ FOR CONGRESS | 1360, LLC | IL | DATA SUBSCRIPTION | 9/20/2019 0:00 | 112.5 |
| C00547893 | ELISE FOR CONGRESS | 1360 LLC | IL | SUBSCRIPTION/DATA SERVICE | 1/30/2020 0:00 | 3495.84 |
| C00703504 | HOMRICH FOR CONGRESS | 1360 LLC | IL | SOFTWARE | 7/17/2019 0:00 | 4314.25 |
| C00703504 | HOMRICH FOR CONGRESS | 1360 LLC | IL | SOFTWARE | 8/7/2019 0:00 | 900 |
| C00703504 | HOMRICH FOR CONGRESS | 1360 LLC | IL | SOFTWARE | 8/20/2019 0:00 | 900 |
| C00703504 | HOMRICH FOR CONGRESS | 1360 LLC | IL | SOFTWARE | 8/21/2019 0:00 | 1196.29 |
| C00703504 | HOMRICH FOR CONGRESS | 1360 LLC | IL | SOFTWARE | 9/19/2019 0:00 | 900 |
| C00703504 | HOMRICH FOR CONGRESS | 1360 LLC | IL | SOFTWARE | 9/23/2019 0:00 | 20.57 |
| C00652743 | JOHN ROSE FOR TENNESSEE | 1360, LLC | IL | DATA STORAGE | 7/19/2019 0:00 | 112.5 |
| C00652743 | JOHN ROSE FOR TENNESSEE | 1360, LLC | IL | DATA STORAGE | 8/23/2019 0:00 | 112.5 |
| C00368522 | JOE WILSON FOR CONGRESS | 1360 LLC | IL | DATA MANAGEMENT | 8/1/2019 0:00 | 4107.19 |
| C00311043 | BRADY FOR CONGRESS | 1360, LLC | IL | DATABASE SERVICES | 7/18/2019 0:00 | 1112.5 |
| C00311043 | BRADY FOR CONGRESS | 1360, LLC | IL | DATABASE SERVICES | 8/21/2019 0:00 | 1000 |
| C00311043 | BRADY FOR CONGRESS | 1360, LLC | IL | DATABASE SERVICES | 9/23/2019 0:00 | 1000 |
| C00721027 | FOSTER FOR KANSAS | 1360 LLC | VA | ADVERTISING & MARKETING | 1/21/2020 0:00 | 1612.6 |
| C00658401 | GREG PENCE FOR CONGRESS | 1360 LLC | IL | VOTER DATA SOFTWARE EXPENSI | 1/3/2019 0:00 | 102 |
| C00658401 | GREG PENCE FOR CONGRESS | 1360 LLC | IL | VOTER DATA SOFTWARE EXPENSI | 1/31/2019 0:00 | 102 |
| C00658401 | GREG PENCE FOR CONGRESS | 1360 LLC | IL | VOTER DATA SOFTWARE EXPENSI | 3/11/2019 0:00 | 102 |
| C00498345 | MULLIN FOR CONGRESS | 1360 LLC | IL | SUBSCRIPTION | 4/18/2019 0:00 | 112.5 |
| C00498345 | MULLIN FOR CONGRESS | 1360 LLC | IL | SUBSCRIPTION | 5/20/2019 0:00 | 112.5 |
| C00498345 | MULLIN FOR CONGRESS | 1360 LLC | IL | SUBSCRIPTION | 6/20/2019 0:00 | 112.5 |
| C00462143 | MARTHA ROBY FOR CONGRESS | 1360 | IL | SOFTWARE | 7/18/2019 0:00 | 150 |
| C00462143 | MARTHA ROBY FOR CONGRESS | 1360 | IL | SOFTWARE | 8/30/2019 0:00 | 150 |
| C00462143 | MARTHA ROBY FOR CONGRESS | 1360 | IL | SOFTWARE | 9/23/2019 0:00 | 150 |
| C00661561 | BEN CLINE FOR CONGRESS, INC. | 1360, LLC | IL | SUBSCRIPTION | 7/11/2019 0:00 | 112.5 |
| C00661561 | BEN CLINE FOR CONGRESS, INC. | 1360, LLC | IL | SUBSCRIPTION | 8/8/2019 0:00 | 112.5 |
| C00661561 | BEN CLINE FOR CONGRESS, INC. | 1360, LLC | IL | SUBSCRIPTION | 9/10/2019 0:00 | 112.5 |
| C00698530 | JOAN PERRY FOR CONGRESS | 1360, LLC | IL | ONLINE/EMAIL SERVICES | 7/18/2019 0:00 | 2723.91 |
| C00698530 | JOAN PERRY FOR CONGRESS | 1360, LLC | IL | ONLINE/EMAIL SERVICES | 9/9/2019 0:00 | 976.89 |
| C00556365 | KATKO FOR CONGRESS | 1360, LLC | MD | WEB SERVICES | 8/28/2019 0:00 | 450 |
| C00498345 | MULLIN FOR CONGRESS | 1360 LLC | IL | SUBSCRIPTION | 7/19/2019 0:00 | 112.5 |
| C00498345 | MULLIN FOR CONGRESS | 1360 LLC | IL | SUBSCRIPTION | 8/21/2019 0:00 | 112.5 |
| C00392688 | MCCAUL FOR CONGRESS, INC | 1360, LLC | IL | DATABASE SERVICES | 8/26/2019 0:00 | 2200 |
| C00392688 | MCCAUL FOR CONGRESS, INC | 1360, LLC | IL | DATABASE SERVICES | 9/26/2019 0:00 | 1100 |
| C00666040 | MCSALLY FOR SENATE INC | 1360 | IL | SOFTWARE | 7/2/2019 0:00 | 300 |
| C00666040 | MCSALLY FOR SENATE INC | 1360 | IL | SOFTWARE | 7/30/2019 0:00 | 300 |
| C00666040 | MCSALLY FOR SENATE INC | 1360 | IL | SOFTWARE | 8/28/2019 0:00 | 300 |
| C00384529 | LISA MURKOWSKI FOR US SENATE | 1360 LLC | MD | ONLINE DATABASE SERVICES | 8/14/2019 0:00 | 300 |
| C00384529 | LISA MURKOWSKI FOR US SENATE | 1360 LLC | MD | ONLINE DATABASE SERVICES | 9/24/2019 0:00 | 150 |
| C00459255 | FRIENDS OF TODD YOUNG, INC. | 1360 LLC | IL | DATA STORAGE | 7/1/2019 0:00 | 150 |
| C00459255 | FRIENDS OF TODD YOUNG, INC. | 1360 LLC | IL | DATA STORAGE | 7/25/2019 0:00 | 150 |
| C00459255 | FRIENDS OF TODD YOUNG, INC. | 1360 LLC | IL | DATA STORAGE | 9/5/2019 0:00 | 150 |
| C00437913 | OLSON FOR CONGRESS COMMITTEE | 1360, LLC | IL | DATABASE SERVICES | 7/13/2019 0:00 | 244.01 |
| C00437913 | OLSON FOR CONGRESS COMMITTEE | 1360, LLC | IL | DATABASE SERVICES | 7/18/2019 0:00 | 725 |
| C00437913 | OLSON FOR CONGRESS COMMITTEE | 1360, LLC | IL | DATABASE SERVICES | 8/22/2019 0:00 | 500 |
| C00437913 | OLSON FOR CONGRESS COMMITTEE | 1360, LLC | IL | DATABASE SERVICES | 9/4/2019 0:00 | 828.77 |
| C00713511 | TEDDY DANIELS FOR CONGRESS | 1360 | IL | SOFTWARE | 4/8/2020 0:00 | 1000 |
| C00736959 | JOHN BARGE FOR CONGRESS | 1360 LLC | IL | DIGITAL PLANNING | 3/12/2020 0:00 | 394.52 |
| C00697789 | JERRY CARL FOR CONGRESS | 1360 LLC | IL | DATA PROCESSING SERVICES | 8/30/2019 0:00 | 558.9 |
| C00697789 | JERRY CARL FOR CONGRESS | 1360 LLC | IL | DATA PROCESSING SERVICES | 9/27/2019 0:00 | 1044.46 |
| C00733881 | JOHN CLARK FOR CONGRESS | 1360 LLC | IL | VOTER DATA COLLECTION | 7/21/2020 0:00 | 780.87 |
| C00733881 | JOHN CLARK FOR CONGRESS | 1360 LLC | IL | VOTER DATA COLLECTION | 8/18/2020 0:00 | 854.9 |
| C00733881 | JOHN CLARK FOR CONGRESS | 1360 LLC | IL | VOTER DATA COLLECTION | 8/19/2020 0:00 | 187.51 |
| C00464032 | TOM REED FOR CONGRESS | 1360, LLC | IL | DATA SUBSCRIPTION | 7/1/2019 0:00 | 976.52 |
| C00464032 | TOM REED FOR CONGRESS | 1360, LLC | IL | DATA SUBSCRIPTION | 7/26/2019 0:00 | 750 |
| C00464032 | TOM REED FOR CONGRESS | 1360, LLC | IL | DATA SUBSCRIPTION | 8/26/2019 0:00 | 750 |
| C00700526 | STEVIE FOR CONGRESS | 1360 | VA | COMMUNICATIONS & DIGITAL SE | 7/18/2019 0:00 | 2330.19 |
| C00376939 | MARSHA FOR SENATE | 1360 LLC | IL | SUBSCRIPTIONS | 7/24/2019 0:00 | 300 |
| C00653634 | VAN TAYLOR CAMPAIGN | 1360 LLC | IL | WEB SERVICE | 8/21/2019 0:00 | 112.5 |
| C00670695 | ROMNEY FOR UTAH INC | 1360, LLC | IL | SUBSCRIPTION | 7/10/2019 0:00 | 390 |
| C00670695 | ROMNEY FOR UTAH INC | 1360, LLC | IL | SUBSCRIPTION | 7/31/2019 0:00 | 390 |
| C00670695 | ROMNEY FOR UTAH INC | 1360, LLC | IL | SUBSCRIPTION | 9/6/2019 0:00 | 390 |
| C00473827 | FRIENDS OF MIKE LEE INC | 1360, LLC | MD | DATABASE | 4/11/2019 0:00 | 1200 |

| ID | Name | Entity | State | | Description | Date | Amount |
|---|---|---|---|---|---|---|---|
| C00473827 | FRIENDS OF MIKE LEE INC | I360, LLC | MD | | DATABASE | 5/16/2019 0:00 | 1200 |
| C00473827 | FRIENDS OF MIKE LEE INC | I360, LLC | MD | | DATABASE | 6/19/2019 0:00 | 1200 |
| C00473827 | FRIENDS OF MIKE LEE INC | I360, LLC | MD | | DATABASE | 8/21/2019 0:00 | 1200 |
| C00473827 | FRIENDS OF MIKE LEE INC | I360, LLC | MD | | DATABASE | 9/20/2019 0:00 | 1200 |
| C00660050 | COMMITTEE TO RE-ELECT STEVE WATKINS | I360, LLC | IL | | SOFTWARE SERVICE | 4/29/2019 0:00 | 8320.87 |
| C00655332 | CLOUD FOR CONGRESS | I360 LLC | IL | | SOFTWARE SERVICE | 4/12/2019 0:00 | 112.5 |
| C00655332 | CLOUD FOR CONGRESS | I360 LLC | IL | | SOFTWARE SERVICE | 5/17/2019 0:00 | 112.5 |
| C00655332 | CLOUD FOR CONGRESS | I360 LLC | IL | | SOFTWARE SERVICE | 6/21/2019 0:00 | 112.5 |
| C00027466 | NRSC | I360 | IL | | SUBSCRIPTION | 9/25/2019 0:00 | 1500 |
| C00530766 | WOMEN SPEAK OUT PAC | I360 | MD | | SUBSCRIPTION SERVICES | 10/31/2019 0:00 | 500 |
| C00530766 | WOMEN SPEAK OUT PAC | I360 | MD | | NON-FEDERAL - SUBSCRIPTION SI | 10/10/2019 0:00 | 1500 |
| C00530766 | WOMEN SPEAK OUT PAC | I360 | MD | | NON-FEDERAL - SUBSCRIPTION SI | 10/31/2019 0:00 | 500 |
| C00027466 | NRSC | I360 | IL | | SUBSCRIPTION | 10/23/2019 0:00 | 1500 |
| C00701003 | HUNT FOR CONGRESS | I360, LLC | IL | | DATABASE SERVICES | 7/22/2019 0:00 | 900 |
| C00701003 | HUNT FOR CONGRESS | I360, LLC | IL | | DATABASE SERVICES | 8/23/2019 0:00 | 400 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | NONFEDERAL INDEPENDENT EXPI | 11/15/2019 0:00 | 2507.53 |
| C00027466 | NRSC | I360 | IL | | DATA MANAGEMENT SVC | 11/15/2019 0:00 | 1500 |
| C00027466 | NRSC | I360 | IL | | SUBSCRIPTION | 11/12/2019 0:00 | 35000 |
| C00652149 | BURCHETT FOR CONGRESS | I360 LLC | IL | | DATA STORAGE | 7/19/2019 0:00 | 112.5 |
| C00652149 | BURCHETT FOR CONGRESS | I360 LLC | IL | | DATA STORAGE | 8/22/2019 0:00 | 112.5 |
| C00652149 | BURCHETT FOR CONGRESS | I360 LLC | IL | | DATA STORAGE | 9/20/2019 0:00 | 112.5 |
| C00658401 | GREG PENCE FOR CONGRESS | I360, LLC | IL | | VOTER DATA SOFTWARE EXPENSI | 7/25/2019 0:00 | 102 |
| C00638401 | GREG PENCE FOR CONGRESS | I360, LLC | IL | | VOTER DATA SOFTWARE EXPENSI | 8/28/2019 0:00 | 102 |
| C00722439 | BETH FOR INDIANA | I360 | IL | BETH FOR INDIANA | SOFTWARE | 4/27/2020 0:00 | 1450.18 |
| C00735688 | BOGNET FOR CONGRESS | I360, LLC | VA | | DATA SERVICES | 4/3/2020 0:00 | 1131.51 |
| C00735688 | BOGNET FOR CONGRESS | I360, LLC | VA | | DATA SERVICES | 5/11/2020 0:00 | 1000 |
| C00658401 | GREG PENCE FOR CONGRESS | I360, LLC | IL | | VOTER DATA SOFTWARE EXPENSI | 4/16/2020 0:00 | 102 |
| C00697417 | BYRNE FOR SENATE, INC. | I360, LLC | IL | | GRASSROOTS CONSULTING | 7/15/2019 0:00 | 3693.55 |
| C00697417 | BYRNE FOR SENATE, INC. | I360, LLC | IL | | GRASSROOTS CONSULTING | 7/18/2019 0:00 | 2000 |
| C00697417 | BYRNE FOR SENATE, INC. | I360, LLC | IL | | GRASSROOTS CONSULTING | 8/21/2019 0:00 | 2000.14 |
| C00666396 | MICHAEL WALTZ FOR CONGRESS | I360, LLC | IL | | DATA SUBSCRIPTION | 10/18/2019 0:00 | 112.5 |
| C00666396 | MICHAEL WALTZ FOR CONGRESS | I360, LLC | IL | | DATA SUBSCRIPTION | 12/13/2019 0:00 | 112.5 |
| C00666396 | MICHAEL WALTZ FOR CONGRESS | I360, LLC | IL | | DATA SUBSCRIPTION | 12/16/2019 0:00 | 112.5 |
| C00722512 | CASTORANI FOR CONGRESS | I360, LLC | IL | | CAMPAIGN PORTAL SET-UP FEE | 11/12/2019 0:00 | 2050 |
| C00722512 | CASTORANI FOR CONGRESS | I360, LLC | IL | | TEXT MESSAGES (11/6/2019 - 11/ | 12/16/2019 0:00 | 2207.76 |
| C00722512 | CASTORANI FOR CONGRESS | I360, LLC | IL | | TERAPLAN SUBSCRIPTION | 12/16/2019 0:00 | 1550.14 |
| C00393629 | MCHENRY FOR CONGRESS | I360 | MD | | DATA SERVICE | 10/22/2019 0:00 | 950 |
| C00393629 | MCHENRY FOR CONGRESS | I360 | MD | | DATA SERVICE | 12/2/2019 0:00 | 950 |
| C00558445 | ARIZONA GRASSROOTS ACTION PAC | I360, LLC | MD | | WEB SERVICES | 7/18/2019 0:00 | 4500 |
| C00558445 | ARIZONA GRASSROOTS ACTION PAC | I360, LLC | MD | | WEB SERVICES | 12/31/2019 0:00 | 3750 |
| C00384529 | LISA MURKOWSKI FOR US SENATE | I360 LLC | MD | | ONLINE DATABASE SERVICES | 10/24/2019 0:00 | 300 |
| C00384529 | LISA MURKOWSKI FOR US SENATE | I360 LLC | MD | | ONLINE DATABASE SERVICES | 11/21/2019 0:00 | 150 |
| C00384529 | LISA MURKOWSKI FOR US SENATE | I360 LLC | MD | | ONLINE DATABASE SERVICES | 12/17/2019 0:00 | 150 |
| C00462143 | MARTHA ROBY FOR CONGRESS | I360 | IL | | SOFTWARE | 10/21/2019 0:00 | 150 |
| C00462143 | MARTHA ROBY FOR CONGRESS | I360 | IL | | SOFTWARE | 11/25/2019 0:00 | 150 |
| C00462143 | MARTHA ROBY FOR CONGRESS | I360 | IL | | SOFTWARE | 12/16/2019 0:00 | 150 |
| C00620518 | MARCO RUBIO FOR SENATE | I360 | IL | | DATA SERVICES | 12/28/2019 0:00 | 2500 |
| C00530766 | WOMEN SPEAK OUT PAC | I360 | MD | | DATA SUBSCRIPTION SERVICES | 12/6/2019 0:00 | 500 |
| C00530766 | WOMEN SPEAK OUT PAC | I360 | MD | | DIGITAL CONSULTING | 12/6/2019 0:00 | 163.36 |
| C00530766 | WOMEN SPEAK OUT PAC | I360 | MD | | NON-FEDERAL - DIGITAL CONSUL' | 12/19/2019 0:00 | 155.74 |
| C00697789 | JERRY CARL FOR CONGRESS | I360 LLC | IL | | UTIL | 10/28/2019 0:00 | 1119.66 |
| C00697789 | JERRY CARL FOR CONGRESS | I360 LLC | IL | | COMPUTER SUPPORT | 11/15/2019 0:00 | 1231.98 |
| C00697789 | JERRY CARL FOR CONGRESS | I360 LLC | IL | | COMPUTER SUPPORT | 12/19/2019 0:00 | 1180.72 |
| C00715698 | JEFF COLEMAN FOR CONGRESS, INC. | I360 LLC | CA | | DIGITAL SERVICES | 10/29/2019 0:00 | 880 |
| C00715698 | JEFF COLEMAN FOR CONGRESS, INC. | I360 LLC | CA | | DIGITAL SERVICES | 12/18/2019 0:00 | 318.25 |
| C00367862 | MIKE ROGERS FOR CONGRESS | I360, LLC | IL | | DATA STORAGE | 12/18/2019 0:00 | 1050 |
| C00666040 | MCSALLY FOR SENATE INC | I360 | IL | | SOFTWARE | 10/4/2019 0:00 | 300 |
| C00666040 | MCSALLY FOR SENATE INC | I360 | IL | | SOFTWARE | 10/22/2019 0:00 | 300 |
| C00666040 | MCSALLY FOR SENATE INC | I360 | IL | | SOFTWARE | 11/13/2019 0:00 | 300 |
| C00684985 | WIN AT THE DOOR PAC | I360, LLC | IL | | CAREY ACCT: DATA SUBSCRIPTIOI | 7/11/2019 0:00 | 666.67 |
| C00684985 | WIN AT THE DOOR PAC | I360, LLC | IL | | CAREY ACCT: DATA SUBSCRIPTIOI | 7/11/2019 0:00 | 1672.56 |
| C00684985 | WIN AT THE DOOR PAC | I360, LLC | IL | | CAREY ACCT: DATA SUBSCRIPTIOI | 7/22/2019 0:00 | 666.67 |
| C00684985 | WIN AT THE DOOR PAC | I360, LLC | IL | | CAREY ACCT: DATA SUBSCRIPTIOI | 7/23/2019 0:00 | 1470.41 |
| C00684985 | WIN AT THE DOOR PAC | I360, LLC | IL | | CAREY ACCT: DATA SUBSCRIPTIOI | 8/23/2019 0:00 | 666.67 |
| C00684985 | WIN AT THE DOOR PAC | I360, LLC | IL | | CAREY ACCT: DATA SUBSCRIPTIOI | 8/28/2019 0:00 | 6347.14 |
| C00684985 | WIN AT THE DOOR PAC | I360, LLC | IL | | CAREY ACCT: DATA SUBSCRIPTIOI | 8/28/2019 0:00 | 666.67 |
| C00684985 | WIN AT THE DOOR PAC | I360, LLC | IL | | CAREY ACCT: DATA SUBSCRIPTIOI | 10/2/2019 0:00 | 1376.46 |
| C00684985 | WIN AT THE DOOR PAC | I360, LLC | IL | | CAREY ACCT: DATA SUBSCRIPTIOI | 10/2/2019 0:00 | 666.66 |
| C00684985 | WIN AT THE DOOR PAC | I360, LLC | IL | | CAREY ACCT: DATA SUBSCRIPTIOI | 10/2/2019 0:00 | 666.67 |
| C00684985 | WIN AT THE DOOR PAC | I360, LLC | IL | | CAREY ACCT: DATA SUBSCRIPTIOI | 10/30/2019 0:00 | 666.67 |
| C00684985 | WIN AT THE DOOR PAC | I360, LLC | IL | | CAREY ACCT: DATA SUBSCRIPTIOI | 10/30/2019 0:00 | 723.99 |
| C00684985 | WIN AT THE DOOR PAC | I360, LLC | IL | | CAREY ACCT: DATA SUBSCRIPTIOI | 10/30/2019 0:00 | 1392.79 |
| C00684985 | WIN AT THE DOOR PAC | I360, LLC | IL | | CAREY ACCT: DATA SUBSCRIPTIOI | 10/30/2019 0:00 | 3166.67 |
| C00684985 | WIN AT THE DOOR PAC | I360, LLC | IL | | CAREY ACCT: DATA SUBSCRIPTIOI | 11/13/2019 0:00 | 1133.5 |
| C00684985 | WIN AT THE DOOR PAC | I360, LLC | IL | | CAREY ACCT: DATA SUBSCRIPTIOI | 11/13/2019 0:00 | 2961.53 |
| C00684985 | WIN AT THE DOOR PAC | I360, LLC | IL | | CAREY ACCT: DATA SUBSCRIPTIOI | 11/13/2019 0:00 | 1462.9 |
| C00684985 | WIN AT THE DOOR PAC | I360, LLC | IL | | CAREY ACCT: DATA SUBSCRIPTIOI | 11/26/2019 0:00 | 1271.97 |
| C00684985 | WIN AT THE DOOR PAC | I360, LLC | IL | | CAREY ACCT: DATA SUBSCRIPTIOI | 11/26/2019 0:00 | 701.37 |
| C00684985 | WIN AT THE DOOR PAC | I360, LLC | IL | | CAREY ACCT: DATA SUBSCRIPTIOI | 12/17/2019 0:00 | 1973.34 |
| C00697417 | BYRNE FOR SENATE, INC. | I360, LLC | IL | | GRASSROOTS CONSULTING | 10/15/2019 0:00 | 2597.2 |
| C00697417 | BYRNE FOR SENATE, INC. | I360, LLC | IL | | GRASSROOTS CONSULTING | 11/6/2019 0:00 | 4372.68 |
| C00697417 | BYRNE FOR SENATE, INC. | I360, LLC | IL | | GRASSROOTS CONSULTING | 11/13/2019 0:00 | 4534.81 |
| C00027466 | NRSC | I360 | IL | | SUBSCRIPTION | 12/19/2019 0:00 | 1500 |

Exhibit J, 5 of 17

| C00027466 | NRSC | I360 | IL | SUBSCRIPTION | 8/28/2019 0:00 | 1500 |
|---|---|---|---|---|---|---|
| C00570994 | ALASKANS FOR DAN SULLIVAN | I360, LLC | MD | DATA MANAGEMENT SERVICES | 10/12/2020 0:00 | 16056.96 |
| C00720375 | BARRY MOORE FOR CONGRESS | I360, INC | IL | ADVERTISING AD BUYS | 6/12/2020 0:00 | 3083.84 |
| C00718239 | ANNA PAULINA LUNA FOR CONGRESS | I360 | TX | DATABASE SERVICES | 12/4/2019 0:00 | 1183.56 |
| C00718239 | ANNA PAULINA LUNA FOR CONGRESS | I360 | TX | DATABASE SERVICES | 12/31/2019 0:00 | 3600 |
| C00729996 | RANDY HENDERSON FOR CONGRESS | I360 LLC | IL | VOTER DATA/CONTACT | 7/21/2020 0:00 | 1241.56 |
| C00726117 | KIM KLACIK FOR CONGRESS | I360 LLC | IL | CANVASSING DATA | 4/9/2020 0:00 | 337.64 |
| C00726117 | KIM KLACIK FOR CONGRESS | I360 LLC | IL | DIGITAL | 5/11/2020 0:00 | 728.28 |
| C00547893 | ELISE FOR CONGRESS | I360 LLC | IL | SUBSCRIPTION | 11/5/2019 0:00 | 800 |
| C00570994 | ALASKANS FOR DAN SULLIVAN | I360, LLC | MD | DATA MANAGEMENT SERVICES | 7/22/2019 0:00 | 1600 |
| C00301838 | STEVE CHABOT FOR CONGRESS | I360, LLC | IL | DATA/SOFTWARE | 10/7/2020 0:00 | 1000 |
| C00658401 | GREG PENCE FOR CONGRESS | I360, LLC | IL | VOTER DATA SOFTWARE EXPENSI | 10/2/2019 0:00 | 102 |
| C00459255 | FRIENDS OF TODD YOUNG, INC. | I360 LLC | IL | DATA SERVICES | 10/25/2019 0:00 | 150 |
| C00459255 | FRIENDS OF TODD YOUNG, INC. | I360 LLC | IL | DATA STORAGE | 10/4/2019 0:00 | 150 |
| C00459255 | FRIENDS OF TODD YOUNG, INC. | I360 LLC | IL | DATA SERVICES | 11/25/2019 0:00 | 150 |
| C00459255 | FRIENDS OF TODD YOUNG, INC. | I360 LLC | IL | DATA SERVICES | 12/26/2019 0:00 | 150 |
| C00392688 | MCCAUL FOR CONGRESS, INC | I360, LLC | IL | DATABASE SERVICES | 10/20/2019 0:00 | 1194.59 |
| C00392688 | MCCAUL FOR CONGRESS, INC | I360, LLC | IL | DATABASE SERVICES | 11/16/2019 0:00 | 1109.77 |
| C00392688 | MCCAUL FOR CONGRESS, INC | I360, LLC | IL | DATABASE SERVICES | 12/20/2019 0:00 | 1100 |
| C00713503 | WAGLE FOR KANSAS | I360, LLC | IL | DATA SERVICES | 10/31/2019 0:00 | 3789.04 |
| C00311043 | BRADY FOR CONGRESS | I360, LLC | IL | DATABASE SERVICES | 10/20/2019 0:00 | 1000 |
| C00311043 | BRADY FOR CONGRESS | I360, LLC | IL | DATABASE SERVICES | 11/1/2019 0:00 | 1495.44 |
| C00311043 | BRADY FOR CONGRESS | I360, LLC | IL | DATABASE SERVICES | 12/17/2019 0:00 | 1643.52 |
| C00539825 | CAPITO FOR WEST VIRGINIA | I360 | | WEB SERVICE | 12/5/2019 0:00 | 2000 |
| C00662767 | CHIP ROY FOR CONGRESS | I360 LLC | IL | SUBSCRIPTIONS | 10/22/2019 0:00 | 150 |
| C00662767 | CHIP ROY FOR CONGRESS | I360 LLC | IL | SUBSCRIPTIONS | 11/15/2019 0:00 | 150 |
| C00662767 | CHIP ROY FOR CONGRESS | I360 LLC | IL | SUBSCRIPTIONS | 12/6/2019 0:00 | 150 |
| C00446032 | TOM REED FOR CONGRESS | I360, LLC | IL | DATA SUBSCRIPTION | 12/5/2019 0:00 | 750 |
| C00446032 | TOM REED FOR CONGRESS | I360, LLC | IL | DATA SUBSCRIPTION | 12/18/2019 0:00 | 750 |
| C00716571 | GADE FOR VIRGINIA, INC. | I360, LLC | IL | COMPUTER AND INTERNET EXPEI | 3/2/2020 0:00 | 2328.77 |
| C00716571 | GADE FOR VIRGINIA, INC. | I360, LLC | IL | COMPUTER AND INTERNET EXPEI | 3/11/2020 0:00 | 4828.77 |
| C00546788 | JONI FOR IOWA | I360 LLC | IL | SUBSCRIPTION | 10/13/2020 0:00 | 1500 |
| C00476291 | JUSTIN AMASH FOR CONGRESS | I360 LLC | MD | CAMPAIGN SOFTWARE | 10/22/2019 0:00 | 150 |
| C00476291 | JUSTIN AMASH FOR CONGRESS | I360 LLC | MD | CAMPAIGN SOFTWARE | 11/22/2019 0:00 | 150 |
| C00476291 | JUSTIN AMASH FOR CONGRESS | I360 LLC | MD | CAMPAIGN SOFTWARE | 12/23/2019 0:00 | 150 |
| C00710111 | JACQUELINE TSENG FOR CONGRESS | I360, LLC | IL | DATABASE SERVICES | 11/13/2019 0:00 | 1075.7 |
| C00720375 | BARRY MOORE FOR CONGRESS | I360, INC | IL | FUNDRAISING MAILOUT | 10/12/2020 0:00 | 4866.8 |
| C00495846 | ANN WAGNER FOR CONGRESS | I360 LLC | MD | SUBSCRIPTION SERVICE | 10/1/2019 0:00 | 600 |
| C00495846 | ANN WAGNER FOR CONGRESS | I360 LLC | MD | SUBSCRIPTION SERVICE | 12/6/2019 0:00 | 300 |
| C00376939 | MARSHA FOR SENATE | I360 LLC | IL | SUBSCRIPTIONS | 10/7/2019 0:00 | 300 |
| C00376939 | MARSHA FOR SENATE | I360 LLC | IL | SUBSCRIPTIONS | 11/5/2019 0:00 | 300 |
| C00376939 | MARSHA FOR SENATE | I360 LLC | IL | SUBSCRIPTIONS | 11/15/2019 0:00 | 300 |
| C00376939 | MARSHA FOR SENATE | I360 LLC | IL | SUBSCRIPTIONS | 12/23/2019 0:00 | 300 |
| C00495846 | ANN WAGNER FOR CONGRESS | I360 LLC | MD | SUBSCRIPTION SERVICE | 4/24/2019 0:00 | 150 |
| C00556365 | KATKO FOR CONGRESS | I360, LLC | MD | WEB SERVICES | 12/30/2019 0:00 | 2110.24 |
| C00653634 | VAN TAYLOR CAMPAIGN | I360 LLC | IL | SUBSCRIPTION | 10/4/2019 0:00 | 112.5 |
| C00653634 | VAN TAYLOR CAMPAIGN | I360 LLC | IL | SUBSCRIPTION | 12/31/2019 0:00 | 112.5 |
| C00655332 | CLOUD FOR CONGRESS | I360 LLC | IL | SOFTWARE SERVICE | 10/1/2019 0:00 | 112.5 |
| C00655332 | CLOUD FOR CONGRESS | I360 LLC | IL | SOFTWARE SERVICE | 10/21/2019 0:00 | 112.5 |
| C00655332 | CLOUD FOR CONGRESS | I360 LLC | IL | SOFTWARE SERVICE | 11/12/2019 0:00 | 112.5 |
| C00655332 | CLOUD FOR CONGRESS | I360 LLC | IL | SOFTWARE SERVICE | 12/18/2019 0:00 | 112.5 |
| C00670695 | ROMNEY FOR UTAH INC | I360, LLC | IL | SUBSCRIPTION | 10/14/2019 0:00 | 390 |
| C00670695 | ROMNEY FOR UTAH INC | I360, LLC | IL | SUBSCRIPTION | 11/5/2019 0:00 | 390 |
| C00670695 | ROMNEY FOR UTAH INC | I360, LLC | IL | SUBSCRIPTION | 11/13/2019 0:00 | 390 |
| C00721357 | JANET BARRESI FOR CONGRESS | I360, LLC | IL | SUBSCRIPTION | 12/31/2019 0:00 | 624.66 |
| C00498345 | MULLIN FOR CONGRESS | I360, LLC | IL | SUBSCRIPTION | 10/24/2019 0:00 | 225 |
| C00498345 | MULLIN FOR CONGRESS | I360, LLC | IL | SUBSCRIPTION | 12/18/2019 0:00 | 225 |
| C00530766 | WOMEN SPEAK OUT PAC | I360 | MD | DUES / SUBSCRIPTIONS | 1/10/2020 0:00 | 500 |
| C00652743 | JOHN ROSE FOR TENNESSEE | I360, LLC | IL | SUBSCRIPTIONS | 11/1/2019 0:00 | 112.5 |
| C00652743 | JOHN ROSE FOR TENNESSEE | I360, LLC | IL | SUBSCRIPTIONS | 11/12/2019 0:00 | 225 |
| C00652743 | JOHN ROSE FOR TENNESSEE | I360, LLC | IL | SUBSCRIPTIONS | 12/18/2019 0:00 | 112.5 |
| C00652149 | BURCHETT FOR CONGRESS | I360 LLC | IL | DATA STORAGE | 10/24/2019 0:00 | 112.5 |
| C00652149 | BURCHETT FOR CONGRESS | I360 LLC | IL | STORAGE | 12/20/2019 0:00 | 225 |
| C00661561 | BEN CLINE FOR CONGRESS, INC. | I360 LLC | IL | SUBSCRIPTION | 10/15/2019 0:00 | 112.5 |
| C00661561 | BEN CLINE FOR CONGRESS, INC. | I360 LLC | IL | SUBSCRIPTION | 11/12/2019 0:00 | 112.5 |
| C00661561 | BEN CLINE FOR CONGRESS, INC. | I360 LLC | IL | SUBSCRIPTION | 12/4/2019 0:00 | 112.5 |
| C00655332 | CLOUD FOR CONGRESS | I360 LLC | IL | SOFTWARE SERVICE | 7/19/2019 0:00 | 112.5 |
| C00655332 | CLOUD FOR CONGRESS | I360 LLC | IL | SOFTWARE SERVICE | 8/22/2019 0:00 | 112.5 |
| C00441014 | ROB WITTMAN FOR CONGRESS | I360 LLC | IL | VOTER DATABASE | 8/22/2019 0:00 | 750 |
| C00441014 | ROB WITTMAN FOR CONGRESS | I360 LLC | IL | VOTER DATABASE | 9/23/2019 0:00 | 750 |
| C00441014 | ROB WITTMAN FOR CONGRESS | I360 LLC | IL | VOTER DATABASE | 7/26/2019 0:00 | 750 |
| C00708628 | DR MANNY FOR US SENATE | I360 LLC | IL | PORTAL SETUP | 10/16/2019 0:00 | 1000 |
| C00708628 | DR MANNY FOR US SENATE | I360 LLC | IL | DIGITAL DATA STORAGE | 10/30/2019 0:00 | 4438.36 |
| C00708628 | DR MANNY FOR US SENATE | I360 LLC | | AMERICAN OSTEOPATHIC INFORMATION ASS DIGITAL MARKETING | 11/14/2019 0:00 | 2112.5 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | PHONE BANKS AND P2P TEXTS (IE | 7/1/2020 0:00 | -893.48 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | PHONE BANKS AND P2P TEXTS (IE | 7/5/2020 0:00 | -642.56 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | PHONE BANKS AND P2P TEXTS (IE | 7/6/2020 0:00 | -205.95 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | PHONE BANKS AND P2P TEXTS (IE | 7/7/2020 0:00 | -1443.56 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | PRE-PAYMENT FOR JULY PHONE E | 7/1/2020 0:00 | 47567.45 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | PHONE BANKS AND P2P TEXTS (IE | 7/8/2020 0:00 | -2065.65 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | PHONE BANKS AND P2P TEXTS (IE | 7/9/2020 0:00 | -718.4 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | PHONE BANKS AND P2P TEXTS (IE | 7/11/2020 0:00 | -1547.04 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | PHONE BANKS AND P2P TEXTS (IE | 7/2/2020 0:00 | -769.08 |

| ID | Name | Entity | ST | | Description | Date | Amount |
|---|---|---|---|---|---|---|---|
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 7/13/2020 0:00 | -42.26 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 7/14/2020 0:00 | -4830.6 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 7/15/2020 0:00 | -3062.26 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 7/16/2020 0:00 | -1476.73 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 7/18/2020 0:00 | -126.59 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 7/20/2020 0:00 | -20.46 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 7/21/2020 0:00 | -360.53 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 7/22/2020 0:00 | -3252.16 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 7/23/2020 0:00 | -1145.07 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 7/25/2020 0:00 | -5591.55 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 7/27/2020 0:00 | -3369.45 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 7/28/2020 0:00 | -72.21 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 7/29/2020 0:00 | -127.22 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 7/30/2020 0:00 | -5640.39 |
| C00694208 | RICHARDS FOR CONGRESS | I360 LLC | IL | | SOFTWARE | 4/16/2020 0:00 | 1512.65 |
| C00697417 | BYRNE FOR SENATE, INC. | I360, LLC | IL | | GRASSROOTS CONSULTING | 1/6/2020 0:00 | 2894.74 |
| C00697417 | BYRNE FOR SENATE, INC. | I360, LLC | IL | | GRASSROOTS CONSULTING | 1/20/2020 0:00 | 2000.41 |
| C00367862 | MIKE ROGERS FOR CONGRESS | | | | DATA STORAGE | 2/1/2020 0:00 | 150 |
| C00723759 | JESSICA TAYLOR FOR CONGRESS, INC. | I360 LLC | IL | | ROBOCALLS | 1/6/2020 0:00 | 1600 |
| C00723759 | JESSICA TAYLOR FOR CONGRESS, INC. | I360 LLC | IL | | ROBOCALLS | 1/6/2020 0:00 | 1104.66 |
| C00723759 | JESSICA TAYLOR FOR CONGRESS, INC. | I360 LLC | IL | | ROBOCALLS | 1/6/2020 0:00 | 1601.8 |
| C00715698 | JEFF COLEMAN FOR CONGRESS, INC. | I360 LLC | CA | | DIGITAL SERVICES | 1/24/2020 0:00 | 880 |
| C00706051 | DR. LISA SPARKS FOR CONGRESS | I360, LLC | IL | | VOTER DATA BASE COSTS | 1/23/2020 0:00 | 887.67 |
| C00720078 | JAY OBERNOLTE FOR CONGRESS 2020 | I360 | IL | | SOFTWARE SUBSCRIPTION | 1/29/2020 0:00 | 493.15 |
| C00713859 | BETH FOR CONGRESS | I360, LLC | IL | | SUBSCRIPTIONS | 9/14/2020 0:00 | 7622.9 |
| C00706614 | TONY GONZALES FOR CONGRESS | I360 LLC | IL | | SUBSCRIPTION | 1/6/2020 0:00 | 750 |
| C00491357 | STEVE DAINES FOR MONTANA | I360 | MD | | DATA SUBSCRIPTION | 9/20/2020 0:00 | 37.5 |
| C00491357 | STEVE DAINES FOR MONTANA | I360 | MD | | DATA SUBSCRIPTION | 7/24/2020 0:00 | 37.5 |
| C00491357 | STEVE DAINES FOR MONTANA | I360 | MD | | DATA SUBSCRIPTION | 8/19/2020 0:00 | 37.5 |
| C00711457 | BOBBY FOR IOWA | I360, LLC | MD | | VOTER DATA MANAGEMENT | 4/1/2020 0:00 | 647.82 |
| C00711457 | BOBBY FOR IOWA | I360, LLC | MD | | VOTER DATA MANAGEMENT | 4/15/2020 0:00 | 735.78 |
| C00711457 | BOBBY FOR IOWA | I360, LLC | MD | | VOTER DATA MANAGEMENT | 5/13/2020 0:00 | 1500 |
| C00491357 | STEVE DAINES FOR MONTANA | I360 | MD | | DATA SUBSCRIPTION | 11/16/2020 0:00 | 3383.78 |
| C00491357 | STEVE DAINES FOR MONTANA | I360 | MD | | REPAYMENT OF BILL | 11/3/2020 0:00 | 2734.03 |
| C00713958 | BRAKEY FOR CONGRESS | I360 | VA | | DATABASE SERVICES | 4/8/2020 0:00 | 4523.66 |
| C00713958 | BRAKEY FOR CONGRESS | I360 | VA | | DATABASE SERVICES | 6/10/2020 0:00 | 4424.98 |
| C00713958 | BRAKEY FOR CONGRESS | I360 | VA | | DATABASE SERVICES | 10/27/2020 0:00 | 3069.97 |
| C00528917 | FRIENDS OF DUSTY JOHNSON | I360, LLC | IL | FRIENDS OF DUSTY JOHNSON | CAMPAIGN SOFTWARE | 12/15/2020 0:00 | 88.77 |
| C00462143 | MARTHA ROBY FOR CONGRESS | I360 | IL | | SOFTWARE | 10/3/2020 0:00 | 150 |
| C00462143 | MARTHA ROBY FOR CONGRESS | I360 | IL | | SOFTWARE | 10/10/2020 0:00 | 150 |
| C00462143 | MARTHA ROBY FOR CONGRESS | I360 | IL | | SOFTWARE | 11/7/2020 0:00 | 150 |
| C00462143 | MARTHA ROBY FOR CONGRESS | I360 | IL | | SOFTWARE | 12/15/2020 0:00 | 150 |
| C00727594 | MCGUIRE FOR VIRGINIA | I360 | IL | | VOTER CONTACT CALLS | 7/17/2020 0:00 | 207.46 |
| C00680488 | FRIENDS OF DENVER RIGGLEMAN, INC. | I360, LLC | IL | | WEB SERVICES | 1/31/2019 0:00 | 1352.6 |
| C00680488 | FRIENDS OF DENVER RIGGLEMAN, INC. | I360, LLC | IL | | WEB SERVICES | 3/7/2019 0:00 | 800 |
| C00697250 | SANDY SMITH FOR CONGRESS, INC | I360 | VA | | SOFTWARE SUBSCRIPTION | 3/5/2020 0:00 | 361.64 |
| C00680488 | FRIENDS OF DENVER RIGGLEMAN, INC. | I360, LLC | IL | | WEB SERVICES | 7/26/2019 0:00 | 1600 |
| C00680488 | FRIENDS OF DENVER RIGGLEMAN, INC. | I360, LLC | IL | | WEB SERVICES | 9/23/2019 0:00 | 800 |
| C00655332 | CLOUD FOR CONGRESS | I360 LLC | IL | | SOFTWARE SERVICE | 2/20/2020 0:00 | 112.5 |
| C00655332 | CLOUD FOR CONGRESS | I360 LLC | IL | | SOFTWARE SERVICE | 3/6/2020 0:00 | 112.5 |
| C00680488 | FRIENDS OF DENVER RIGGLEMAN, INC. | I360, LLC | IL | | WEB SERVICES | 10/21/2019 0:00 | 800 |
| C00680488 | FRIENDS OF DENVER RIGGLEMAN, INC. | I360, LLC | IL | | WEB SERVICES | 11/18/2019 0:00 | 800 |
| C00680488 | FRIENDS OF DENVER RIGGLEMAN, INC. | I360, LLC | IL | | WEB SERVICES | 12/18/2019 0:00 | 1600 |
| C00715169 | J.ROSS LACY FOR CONGRESS | I360 LLC | IL | | SUBSCRIPTION | 3/6/2020 0:00 | 1633.64 |
| C00662767 | CHIP ROY FOR CONGRESS | I360 LLC | IL | | SUBSCRIPTION | 1/9/2020 0:00 | 150 |
| C00662767 | CHIP ROY FOR CONGRESS | I360 LLC | IL | | SUBSCRIPTION | 2/3/2020 0:00 | 150 |
| C00730150 | NEHLS FOR CONGRESS | I360 LLC | IL | | DATA SERVICES | 1/23/2020 0:00 | 750 |
| C00655332 | CLOUD FOR CONGRESS | I360 LLC | IL | | SOFTWARE SERVICE | 1/27/2020 0:00 | 112.5 |
| C00733618 | COMMITTEE TO ELECT MIKE MARSICANO | I360, LLC | IL | | I360 | 3/19/2020 0:00 | 5614.58 |
| C00393629 | MCHENRY FOR CONGRESS | I360 | MD | | WEB SERVICES | 1/10/2020 0:00 | 950 |
| C00499020 | FREEDOMWORKS FOR AMERICA | I360 LLC | VA | | VOTER DATA | 2/27/2020 0:00 | 1502.92 |
| C00027466 | NRSC | I360 | IL | | SUBSCRIPTION | 1/29/2020 0:00 | 1500 |
| C00711572 | BECCHI FOR CONGRESS | I360, LLC | IL | | SUBSCRIPTIONS | 4/2/2020 0:00 | 500 |
| C00711572 | BECCHI FOR CONGRESS | I360, LLC | IL | | SUBSCRIPTION | 4/2/2020 0:00 | 500 |
| C00464032 | TOM REED FOR CONGRESS | I360, LLC | IL | | DATA SUBSCRIPTION | 1/7/2020 0:00 | 1145.62 |
| C00464032 | TOM REED FOR CONGRESS | I360, LLC | IL | | DATA SUBSCRIPTION | 1/13/2020 0:00 | 750 |
| C00530766 | WOMEN SPEAK OUT PAC | I360 | MD | | DEBT REPAYMENT - DUES / SUBS( | 2/18/2020 0:00 | 214.08 |
| C00392688 | MCCAUL FOR CONGRESS, INC | I360, LLC | IL | | DATABASE SERVICES | 1/30/2020 0:00 | 1100 |
| C00721357 | JANET BARRESI FOR CONGRESS | I360 | IL | | SUBSCRIPTION | 2/27/2020 0:00 | 2000 |
| C00721357 | JANET BARRESI FOR CONGRESS | I360 | IL | | SUBSCRIPTION | 3/6/2020 0:00 | 1000 |
| C00704064 | NEESE FOR CONGRESS | I360, LLC | IL | | SUBSCRIPTION | 2/25/2020 0:00 | 789.04 |
| C00301838 | STEVE CHABOT FOR CONGRESS | I360, LLC | OH | | INTERNET/WEBSITE MANAGEMEI | 3/3/2020 0:00 | 631.51 |
| C00498345 | MULLIN FOR CONGRESS | I360, LLC | VA | | DATA STORAGE | 1/30/2020 0:00 | 112.5 |
| C00498345 | MULLIN FOR CONGRESS | I360, LLC | VA | | DATA STORAGE | 2/20/2020 0:00 | 112.5 |
| C00498345 | MULLIN FOR CONGRESS | I360, LLC | VA | | DATA STORAGE | 3/16/2020 0:00 | 112.5 |
| C00726687 | PAUL JUNGE FOR CONGRESS | I360, LLC | VA | | COMPUTER AND INTERNET EXPEI | 6/5/2020 0:00 | 657.81 |
| C00733485 | FRIENDS OF LEON BENJAMIN, INC. | I360, LLC | IL | | COMPUTER AND INTERNET EXPEI | 8/10/2020 0:00 | 1210 |
| C00733485 | FRIENDS OF LEON BENJAMIN, INC. | I360, LLC | IL | | COMPUTER AND INTERNET EXPEI | 10/7/2020 0:00 | 175.86 |
| C00732941 | WAYNE KING FOR CONGRESS | I360 | IL | WAYNE KING FOR CONGRESS | ROBO CALLS | 3/2/2020 0:00 | 1351.12 |
| C00694208 | RICHARDS FOR CONGRESS | I360 LLC | IL | | SOFTWARE | 5/22/2020 0:00 | 790 |
| C00733485 | FRIENDS OF LEON BENJAMIN, INC. | I360, LLC | IL | | COMPUTER AND INTERNET EXPEI | 9/8/2020 0:00 | 1210 |
| C00694208 | RICHARDS FOR CONGRESS | I360 LLC | IL | | SOFTWARE | 6/11/2020 0:00 | 1072.45 |
| C00476291 | JUSTIN AMASH FOR CONGRESS | I360 LLC | MD | | CAMPAIGN SOFTWARE | 2/22/2020 0:00 | 150 |

Exhibit J, 7 of 17

| Account | Committee | Entity | State | Note | Description | Date | Amount |
|---|---|---|---|---|---|---|---|
| C00476291 | JUSTIN AMASH FOR CONGRESS | 1360 LLC | MD | | CAMPAIGN SOFTWARE | 3/23/2020 0:00 | 150 |
| C00733485 | FRIENDS OF LEON BENJAMIN, INC. | 1360, LLC | IL | | COMPUTER AND INTERNET EXPEI | 10/8/2020 0:00 | 1210 |
| C00476291 | JUSTIN AMASH FOR CONGRESS | 1360 LLC | MD | | CAMPAIGN SOFTWARE | 1/23/2020 0:00 | 150 |
| C00027466 | NRSC | 1360 | IL | | SUBSCRIPTION | 5/11/2020 0:00 | 3000 |
| C00715698 | JEFF COLEMAN FOR CONGRESS, INC. | 1360 LLC | CA | | DIGITAL SERVICES | 4/27/2020 0:00 | 5916.71 |
| C00027466 | NRSC | 1360 | IL | | SUBSCRIPTION | 5/8/2020 0:00 | 60000 |
| C00715698 | JEFF COLEMAN FOR CONGRESS, INC. | 1360 LLC | CA | | DIGITAL SERVICES | 6/11/2020 0:00 | 2368.24 |
| C00706614 | TONY GONZALES FOR CONGRESS | 1360 LLC | IL | | WEB SERVICE/SUBSCRIPTION | 5/21/2020 0:00 | 750 |
| C00706614 | TONY GONZALES FOR CONGRESS | 1360 LLC | IL | | WEB SERVICE/SUBSCRIPTION | 6/3/2020 0:00 | 715.07 |
| C00697789 | JERRY CARL FOR CONGRESS | 1360 LLC | IL | | FUNDRAISING PHONE CALLS | 4/13/2020 0:00 | 1420.98 |
| C00311043 | BRADY FOR CONGRESS | 1360, LLC | IL | | DATABASE SERVICES | 1/24/2020 0:00 | 1171.85 |
| C00701672 | TUBERVILLE FOR SENATE, INC. | 1360 | IL | | PHONE CALLS | 6/22/2020 0:00 | 7494.31 |
| C00697789 | JERRY CARL FOR CONGRESS | 1360 LLC | IL | | FUNDRAISING PHONE CALLS | 5/11/2020 0:00 | 2000.22 |
| C00697789 | JERRY CARL FOR CONGRESS | 1360 LLC | IL | | FUNDRAISING PHONE CALLS | 6/9/2020 0:00 | 1928.08 |
| C00311043 | BRADY FOR CONGRESS | 1360, LLC | IL | | DATABASE SERVICES | 4/17/2020 0:00 | 12145.73 |
| C00722439 | BETH FOR INDIANA | 1360 | IL | BETH FOR INDIANA | SOFTWARE | 6/5/2020 0:00 | 16038.37 |
| C00311043 | BRADY FOR CONGRESS | 1360, LLC | IL | | DATABASE SERVICES | 5/9/2020 0:00 | 4440.29 |
| C00706614 | TONY GONZALES FOR CONGRESS | 1360 LLC | IL | | SUBSCRIPTION/WEB SERVICE | 2/17/2020 0:00 | 1465.07 |
| C00539825 | CAPITO FOR WEST VIRGINIA | 1360 | IL | | WEB SERVICE | 4/22/2020 0:00 | 2500 |
| C00721027 | FOSTER FOR KANSAS | 1360 LLC | VA | | MARKETING | 12/3/2019 0:00 | 1104.66 |
| C00733842 | CLAYTON FULLER FOR CONGRESS | 1360, LLC | IL | | VOTER DATA | 4/16/2020 0:00 | 1000 |
| C00473827 | FRIENDS OF MIKE LEE INC | 1360, LLC | MD | | DATABASE | 12/16/2019 0:00 | 1200 |
| C00473827 | FRIENDS OF MIKE LEE INC | 1360, LLC | MD | | DATABASE | 11/8/2019 0:00 | 1200 |
| C00473827 | FRIENDS OF MIKE LEE INC | 1360, LLC | MD | | DATABASE | 10/18/2019 0:00 | 1200 |
| C00393629 | MCHENRY FOR CONGRESS | 1360 | MD | | WEB SERVICES | 4/10/2020 0:00 | 1560.97 |
| C00393629 | MCHENRY FOR CONGRESS | 1360 | MD | | WEB SERVICES | 5/15/2020 0:00 | 1934.65 |
| C00476291 | JUSTIN AMASH FOR CONGRESS | 1360 LLC | MD | | CAMPAIGN SOFTWARE | 4/23/2020 0:00 | 150 |
| C00392688 | MCCAUL FOR CONGRESS, INC | 1360, LLC | IL | | DATABASE SERVICES | 5/8/2020 0:00 | 1100 |
| C00393629 | MCHENRY FOR CONGRESS | 1360 | MD | | WEB SERVICES | 6/30/2020 0:00 | 950 |
| C00392688 | MCCAUL FOR CONGRESS, INC | 1360, LLC | IL | | DATABASE SERVICES | 6/22/2020 0:00 | 1100 |
| C00476291 | JUSTIN AMASH FOR CONGRESS | 1360 LLC | MD | | CAMPAIGN SOFTWARE | 6/23/2020 0:00 | 150 |
| C00476291 | JUSTIN AMASH FOR CONGRESS | 1360 LLC | MD | | CAMPAIGN SOFTWARE | 5/26/2020 0:00 | 150 |
| C00459255 | FRIENDS OF TODD YOUNG, INC. | 1360 LLC | IL | | DATA SERVICES | 1/27/2020 0:00 | 150 |
| C00703504 | HOMRICH FOR CONGRESS | 1360 LLC | IL | | SOFTWARE | 4/27/2020 0:00 | 1531.85 |
| C00459255 | FRIENDS OF TODD YOUNG, INC. | 1360 LLC | IL | | DATA SERVICES | 3/25/2020 0:00 | 150 |
| C00658401 | GREG PENCE FOR CONGRESS | 1360 LLC | IL | | VOTER DATA SOFTWARE EXPENSI | 1/6/2020 0:00 | 102 |
| C00459255 | FRIENDS OF TODD YOUNG, INC. | 1360 LLC | IL | | DATA SERVICES | 2/25/2020 0:00 | 150 |
| C00703504 | HOMRICH FOR CONGRESS | 1360 LLC | IL | | SOFTWARE | 5/14/2020 0:00 | 2616.84 |
| C00658401 | GREG PENCE FOR CONGRESS | 1360 LLC | IL | | VOTER DATA SOFTWARE EXPENSI | 2/12/2020 0:00 | 102 |
| C00658401 | GREG PENCE FOR CONGRESS | 1360 LLC | IL | | VOTER DATA SOFTWARE EXPENSI | 3/4/2020 0:00 | 102 |
| C00715086 | TINA CANNON FOR CONGRESS | 1360 LLC | IL | | SUBSCRIPTION | 4/15/2020 0:00 | 1750 |
| C00658401 | GREG PENCE FOR CONGRESS | 1360 LLC | IL | | VOTER DATA SOFTWARE EXPENSI | 2/19/2020 0:00 | 102 |
| C00658401 | GREG PENCE FOR CONGRESS | 1360 LLC | IL | | VOTER DATA SOFTWARE EXPENSI | 3/16/2020 0:00 | 102 |
| C00491357 | STEVE DAINES FOR MONTANA | 1360 | MD | | DATA SUBSCRIPTION | 7/23/2019 0:00 | 37.5 |
| C00491357 | STEVE DAINES FOR MONTANA | 1360 | MD | | DATA SUBSCRIPTION | 9/30/2019 0:00 | 37.5 |
| C00491357 | STEVE DAINES FOR MONTANA | 1360 | MD | | DATA SUBSCRIPTION | 8/23/2019 0:00 | 37.5 |
| C00708628 | DR MANNY FOR US SENATE | 1360 LLC | IL | | DIGITAL PLANNING | 1/24/2020 0:00 | 3887.5 |
| C00708628 | DR MANNY FOR US SENATE | 1360 LLC | IL | | DIGITAL MEDIA | 3/5/2020 0:00 | 5000 |
| C00701003 | HUNT FOR CONGRESS | 1360 LLC | IL | | SUBSCRIPTION - DATABASE SERVI | 3/13/2020 0:00 | 2016.27 |
| C00680488 | FRIENDS OF DENVER RIGGLEMAN, INC. | 1360, LLC | IL | | WEB SERVICES | 6/17/2019 0:00 | 1600 |
| C00701003 | HUNT FOR CONGRESS | 1360 LLC | IL | | SUBSCRIPTION - DATABASE SERVI | 2/26/2020 0:00 | 1433.7 |
| C00680488 | FRIENDS OF DENVER RIGGLEMAN, INC. | 1360, LLC | IL | | WEB SERVICES | 5/2/2019 0:00 | 800 |
| C00682179 | JOSHUA SCOTT FOR CONGRESS | 1360, LLC | IL | | SURVEY | 10/5/2020 0:00 | 750 |
| C00730150 | NEHLS FOR CONGRESS | 1360, LLC | IL | | FIELD OPERATIONS DATA | 2/22/2020 0:00 | 750 |
| C00697789 | JERRY CARL FOR CONGRESS | 1360, LLC | IL | | UTILITIES | 3/9/2020 0:00 | 2645.62 |
| C00701003 | HUNT FOR CONGRESS | 1360, LLC | IL | | DATABASE SERVICES | 10/4/2019 0:00 | 900 |
| C00701003 | HUNT FOR CONGRESS | 1360, LLC | IL | | DATABASE SERVICES | 10/11/2019 0:00 | 500 |
| C00701003 | HUNT FOR CONGRESS | 1360, LLC | IL | | DATABASE SERVICES | 10/18/2019 0:00 | 983.03 |
| C00680488 | FRIENDS OF DENVER RIGGLEMAN, INC. | 1360, LLC | IL | | WEB SERVICES | 1/22/2020 0:00 | 803.24 |
| C00392688 | MCCAUL FOR CONGRESS, INC | 1360, LLC | IL | | DATABASE SERVICES | 2/28/2020 0:00 | 1100 |
| C00392688 | MCCAUL FOR CONGRESS, INC | 1360, LLC | IL | | DATABASE SERVICES | 3/6/2020 0:00 | 2200 |
| C00680488 | FRIENDS OF DENVER RIGGLEMAN, INC. | 1360, LLC | IL | | WEB SERVICES | 3/11/2020 0:00 | 2836.47 |
| C00733485 | FRIENDS OF LEON BENJAMIN, INC. | 1360, LLC | IL | | COMPUTER AND INTERNET EXPEI | 11/9/2020 0:00 | 1210 |
| C00652149 | BURCHETT FOR CONGRESS | 1360 LLC | IL | | DIGITAL STORAGE | 3/4/2020 0:00 | 112.5 |
| C00556365 | KATKO FOR CONGRESS | 1360, LLC | MD | | WEB SERVICES | 3/6/2020 0:00 | 3000 |
| C00652149 | BURCHETT FOR CONGRESS | 1360 LLC | IL | | DIGITAL STORAGE | 2/4/2020 0:00 | 112.5 |
| C00652149 | BURCHETT FOR CONGRESS | 1360 LLC | IL | | DIGITAL STORAGE | 3/5/2020 0:00 | 112.5 |
| C00652743 | JOHN ROSE FOR TENNESSEE | 1360, LLC | IL | | SUBSCRIPTIONS | 2/3/2020 0:00 | 112.5 |
| C00652743 | JOHN ROSE FOR TENNESSEE | 1360, LLC | IL | | SUBSCRIPTIONS | 3/6/2020 0:00 | 112.5 |
| C00652743 | JOHN ROSE FOR TENNESSEE | 1360, LLC | IL | | SUBSCRIPTIONS | 2/19/2020 0:00 | 112.5 |
| C00680488 | FRIENDS OF DENVER RIGGLEMAN, INC. | 1360, LLC | IL | | WEB SERVICES | 7/1/2020 0:00 | 1941.92 |
| C00733842 | CLAYTON FULLER FOR CONGRESS | 1360, LLC | IL | | VOTER CONTACT SOFTWARE | 3/11/2020 0:00 | 789.04 |
| C00666040 | MCSALLY FOR SENATE INC | 1360 | IL | | SOFTWARE | 2/25/2020 0:00 | 300 |
| C00666040 | MCSALLY FOR SENATE INC | 1360 | IL | | SOFTWARE | 1/28/2020 0:00 | 300 |
| C00721704 | KINZLER FOR CONGRESS | 1360, LLC | IL | KINZLER FOR CONGRESS | ROBOCALLING - INVOICE #03052( | 3/15/2020 0:00 | 1292.39 |
| C00721704 | KINZLER FOR CONGRESS | 1360, LLC | IL | KINZLER FOR CONGRESS | ROBOCALLING - INVOICE #03202( | 3/24/2020 0:00 | 2122.42 |
| C00661561 | BEN CLINE FOR CONGRESS, INC. | 1360, LLC | IL | | SUBSCRIPTION | 1/6/2020 0:00 | 112.5 |
| C00666040 | MCSALLY FOR SENATE INC. | 1360 | IL | | SOFTWARE | 1/8/2020 0:00 | 300 |
| C00733347 | ARCHERD FOR CONGRESS | 1360 LLC | IL | | COMPUTER SERVICES | 3/11/2020 0:00 | 3966.85 |
| C00530766 | WOMEN SPEAK OUT PAC | 1360 | MD | | DATA SUBSCRIPTION SERVICES | 4/27/2020 0:00 | 499.99 |
| C00661561 | BEN CLINE FOR CONGRESS, INC. | 1360, LLC | IL | | SUBSCRIPTION | 2/12/2020 0:00 | 112.5 |
| C00661561 | BEN CLINE FOR CONGRESS, INC. | 1360, LLC | IL | | SUBSCRIPTION | 3/13/2020 0:00 | 112.5 |
| C00713230 | ROB JONES FOR CONGRESS | 1360 | IL | | SOFTWARE | 2/20/2020 0:00 | 658.49 |

Exhibit J, 8 of 17

| ID | Committee | Entity | State | Additional | Service | Date | Amount |
|---|---|---|---|---|---|---|---|
| C00680488 | FRIENDS OF DENVER RIGGLEMAN, INC. | 1360, LLC | IL | | WEB SERVICES | 4/28/2020 0:00 | 825.07 |
| C00713230 | ROB JONES FOR CONGRESS | 1360 | IL | | SOFTWARE | 3/6/2020 0:00 | 550 |
| C00662767 | CHIP ROY FOR CONGRESS | 1360 LLC | IL | | SUBSCRIPTION | 3/12/2020 0:00 | 300 |
| C00311043 | BRADY FOR CONGRESS | 1360, LLC | IL | | DATABASE SERVICES | 2/21/2020 0:00 | 923.32 |
| C00530766 | WOMEN SPEAK OUT PAC | 1360 | MD | | DATA SUBSCRIPTION SERVICES | 3/5/2020 0:00 | 500 |
| C00530766 | WOMEN SPEAK OUT PAC | 1360 | MD | | DATA SUBSCRIPTION SERVICES | 3/28/2020 0:00 | 500 |
| C00738666 | FRIENDS OF MATT GURTLER, INC. | 1360 | IL | | DATA MANAGEMENT SERVICES | 2/25/2020 0:00 | 1100 |
| C00728451 | TODD KENT FOR CONGRESS | 1360 | | | | 3/28/2020 0:00 | 1394.52 |
| C00706051 | DR. LISA SPARKS FOR CONGRESS | 1360, LLC | IL | | VOTER OUTREACH | 2/26/2020 0:00 | 1245.66 |
| C00706051 | DR. LISA SPARKS FOR CONGRESS | 1360, LLC | IL | | VOTER OUTREACH | 3/17/2020 0:00 | 2303.95 |
| C00732941 | WAYNE KING FOR CONGRESS | 1360 | IL | WAYNE KING FOR CONGRESS | PORTAL SET UP | 3/11/2020 0:00 | 500 |
| C00732941 | WAYNE KING FOR CONGRESS | 1360 | IL | WAYNE KING FOR CONGRESS | SOCIAL MEDIA EXPENSE | 3/20/2020 0:00 | 297 |
| C00732941 | WAYNE KING FOR CONGRESS | 1360 | IL | WAYNE KING FOR CONGRESS | SOCIAL MEDIA MARKETING | 3/30/2020 0:00 | 124.88 |
| C00670695 | ROMNEY FOR UTAH INC | 1360, LLC | IL | | SUBSCRIPTION | 1/9/2020 0:00 | 390 |
| C00670695 | ROMNEY FOR UTAH INC | 1360, LLC | IL | | SUBSCRIPTION | 2/4/2020 0:00 | 390 |
| C00670695 | ROMNEY FOR UTAH INC | 1360, LLC | IL | | SUBSCRIPTION | 3/3/2020 0:00 | 390 |
| C00738666 | FRIENDS OF MATT GURTLER, INC. | 1360 | | | DATA MANAGEMENT SERVICES | 3/25/2020 0:00 | 1100 |
| C00697250 | SANDY SMITH FOR CONGRESS, INC. | 1360 | VA | | SOFTWARE SUBSCRIPTION | 10/22/2020 0:00 | 623.01 |
| C00697250 | SANDY SMITH FOR CONGRESS, INC. | 1360 | VA | | SOFTWARE SUBSCRIPTION | 11/17/2020 0:00 | 1098.63 |
| C00558445 | ARIZONA GRASSROOTS ACTION PAC | 1360 | MD | | WEB SERVICES | 1/20/2020 0:00 | 750 |
| C00694417 | BYRNE FOR SENATE, INC. | 1360, LLC | IL | | GRASSROOTS CONSULTING | 3/12/2020 0:00 | 15524 |
| C00367862 | MIKE ROGERS FOR CONGRESS | 1360, LLC | IL | | DATA STORAGE | 3/9/2020 0:00 | 300 |
| C00570994 | ALASKANS FOR DAN SULLIVAN | 1360, LLC | MD | | SOFTWARE SUBSCRIPTION | 3/26/2020 0:00 | 1600 |
| C00701672 | TUBERVILLE FOR SENATE, INC. | 1360 LLC | IL | | DEBT REPAYMENT - DATA SUBSCI | 7/6/2020 0:00 | 3240.14 |
| C00701672 | TUBERVILLE FOR SENATE, INC. | 1360 LLC | IL | | DATA SUBSCRIPTION SERVICES / I | 7/13/2020 0:00 | 7052.46 |
| C00701672 | TUBERVILLE FOR SENATE, INC. | 1360 LLC | IL | | DATA SUBSCRIPTION SERVICES / I | 9/25/2020 0:00 | 4603.42 |
| C00473827 | FRIENDS OF MIKE LEE INC | 1360, LLC | MD | | DATABASE | 1/23/2020 0:00 | 1200 |
| C00473827 | FRIENDS OF MIKE LEE INC | 1360, LLC | MD | | DATABASE | 3/5/2020 0:00 | 1200 |
| C00670695 | ROMNEY FOR UTAH INC | 1360, LLC | IL | | SUBSCRIPTION | 3/11/2020 0:00 | 390 |
| C00687103 | AMERICANS FOR PROSPERITY ACTION, INC | 1360 LLC | MD | | NON-FEDERAL DATA SERVICES | 6/30/2020 0:00 | 168633.96 |
| C00393629 | MCHENRY FOR CONGRESS | 1360 | MD | | DATA SERVICE | 8/20/2020 0:00 | 1900 |
| C00393629 | MCHENRY FOR CONGRESS | 1360 | MD | | DATA SERVICE | 9/21/2020 0:00 | 1514.3 |
| C00473827 | FRIENDS OF MIKE LEE INC | 1360, LLC | MD | | DATABASE | 2/19/2020 0:00 | 1200 |
| C00655332 | CLOUD FOR CONGRESS | 1360 LLC | IL | | SOFTWARE SERVICE | 3/21/2019 0:00 | 426.27 |
| C00462143 | MARTHA ROBY FOR CONGRESS | 1360 | IL | | SOFTWARE | 2/25/2020 0:00 | 150 |
| C00462143 | MARTHA ROBY FOR CONGRESS | 1360 | IL | | SOFTWARE | 3/6/2020 0:00 | 150 |
| C00682179 | JOSHUA SCOTT FOR CONGRESS | 1360, LLC | IL | | SURVEY | 3/10/2020 0:00 | 750 |
| C00384529 | LISA MURKOWSKI FOR US SENATE | 1360 | MD | | ONLINE DATABASE SERVICES | 2/6/2020 0:00 | 150 |
| C00384529 | LISA MURKOWSKI FOR US SENATE | 1360 | MD | | ONLINE DATABASE SERVICES | 2/27/2020 0:00 | 150 |
| C00384529 | LISA MURKOWSKI FOR US SENATE | 1360 | MD | | ONLINE DATABASE SERVICES | 3/23/2020 0:00 | 150 |
| C00715086 | TINA CANNON FOR CONGRESS | 1360, LLC | IL | | SUBSCRIPTION | 2/4/2020 0:00 | 1150.68 |
| C00715086 | TINA CANNON FOR CONGRESS | 1360, LLC | IL | | SUBSCRIPTION | 2/24/2020 0:00 | 1750 |
| C00715086 | TINA CANNON FOR CONGRESS | 1360, LLC | IL | | SUBSCRIPTION | 3/11/2020 0:00 | 1750 |
| C00655332 | CLOUD FOR CONGRESS | 1360 LLC | IL | | SOFTWARE SERVICE | 10/7/2020 0:00 | 112.5 |
| C00393629 | MCHENRY FOR CONGRESS | 1360 | MD | | DATA SERVICE | 2/20/2020 0:00 | 1900 |
| C00462143 | MARTHA ROBY FOR CONGRESS | 1360 | IL | | SOFTWARE | 1/23/2020 0:00 | 150 |
| C00723759 | JESSICA TAYLOR FOR CONGRESS, INC. | 1360 LLC | IL | | ROBOCALLS | 3/31/2020 0:00 | 1600 |
| C00723759 | JESSICA TAYLOR FOR CONGRESS, INC. | 1360 LLC | IL | | ROBOCALLS | 3/31/2020 0:00 | 3499.65 |
| C00722439 | BETH FOR INDIANA | 1360 | IL | BETH FOR INDIANA | SOFTWARE | 3/20/2020 0:00 | 1120.12 |
| C00705269 | ARNOLD FOR ALABAMA | 1360 | IL | | VOTER DATA | 2/22/2020 0:00 | 7463.01 |
| C00705269 | ARNOLD FOR ALABAMA | 1360 | IL | | VOTER DATA | 2/28/2020 0:00 | 1650 |
| C00545467 | HURD FOR CONGRESS | 1360 LLC | IL | | SUBSCRIPTIONS | 7/22/2020 0:00 | 3002 |
| C00713503 | WAGLE FOR KANSAS | 1360, LLC | IL | | WEB SERVICES | 1/13/2020 0:00 | 3000 |
| C00710111 | JACQUELINE TSENG FOR CONGRESS | 1360, LLC | IL | | VOTER FILE | 2/14/2020 0:00 | 790 |
| C00715029 | CARL DEMAIO FOR CONGRESS | 1360, LLC | IL | | TEXTING SERVICES | 10/7/2019 0:00 | 5682.86 |
| C00715029 | CARL DEMAIO FOR CONGRESS | 1360, LLC | IL | | TEXTING SERVICES | 12/6/2019 0:00 | 5606.33 |
| C00530766 | WOMEN SPEAK OUT PAC | 1360 | MD | | DATA SUBSCRIPTION SERVICES | 6/16/2020 0:00 | 500.01 |
| C00721332 | DARRELL ISSA FOR CONGRESS | 1360 LLC | IL | | VOTER OUTREACH | 3/19/2020 0:00 | 4505.47 |
| C00497115 | KEYSTONE FUTURE PAC | 1360, LLC | IL | | WEB SERVICE | 5/8/2019 0:00 | 2986.31 |
| C00715029 | CARL DEMAIO FOR CONGRESS | 1360, LLC | IL | | DATA | 1/6/2020 0:00 | 2220.17 |
| C00715029 | CARL DEMAIO FOR CONGRESS | 1360, LLC | IL | | TEST MESSAGE SERVICE | 1/24/2020 0:00 | 3009.13 |
| C00703504 | HOMRICH FOR CONGRESS | 1360 LLC | IL | | SOFTWARE | 1/21/2020 0:00 | 903.42 |
| C00703504 | HOMRICH FOR CONGRESS | 1360 LLC | IL | | SOFTWARE | 1/27/2020 0:00 | 900.23 |
| C00703504 | HOMRICH FOR CONGRESS | 1360 LLC | IL | | SOFTWARE | 2/20/2020 0:00 | 970.92 |
| C00703504 | HOMRICH FOR CONGRESS | 1360 LLC | IL | | SOFTWARE | 3/12/2020 0:00 | 952.07 |
| C00666396 | MICHAEL WALTZ FOR CONGRESS | 1360, LLC | IL | | DATA SUBSCRIPTION | 2/12/2020 0:00 | 112.5 |
| C00666396 | MICHAEL WALTZ FOR CONGRESS | 1360, LLC | IL | | DATA SUBSCRIPTION | 3/6/2020 0:00 | 112.5 |
| C00718239 | ANNA PAULINA LUNA FOR CONGRESS | 1360 | TX | | DIGITAL SERVICES | 1/28/2020 0:00 | 1800 |
| C00718239 | ANNA PAULINA LUNA FOR CONGRESS | 1360 | TX | | DIGITAL SERVICES | 3/17/2020 0:00 | 1800 |
| C00743393 | HILL FOR CONGRESS | 1360, LLC | IL | | SUBSCRIPTION EXPENSE | 6/14/2020 0:00 | 2106.55 |
| C00653634 | VAN TAYLOR CAMPAIGN | 1360 | IL | | WEB SERVICE/SUBSCRIPTION | 10/1/2020 0:00 | 1819.84 |
| C00661561 | BEN CLINE FOR CONGRESS, INC. | 1360, LLC | IL | | SUBSCRIPTION | 5/15/2020 0:00 | 225 |
| C00027466 | NRSC | 1360 | IL | | SUBSCRIPTION | 12/15/2020 0:00 | 3000 |
| C00713230 | ROB JONES FOR CONGRESS | 1360 | IL | | SOFTWARE | 5/11/2020 0:00 | 1180.96 |
| C00661561 | BEN CLINE FOR CONGRESS, INC. | 1360, LLC | IL | | SUBSCRIPTION | 4/2/2020 0:00 | 112.5 |
| C00701003 | HUNT FOR CONGRESS | 1360, LLC | IL | | SUBSCRIPTION - DATABASE SERVI | 11/10/2020 0:00 | 988.77 |
| C00547893 | ELISE FOR CONGRESS | 1360 LLC | IL | | SUBSCRIPTION | 4/14/2020 0:00 | 3050.04 |
| C00556365 | KATKO FOR CONGRESS | 1360, LLC | MD | | WEB SERVICES | 4/30/2020 0:00 | 1000 |
| C00441014 | ROB WITTMAN FOR CONGRESS | 1360 LLC | IL | | DATABASE SERVICES | 5/12/2020 0:00 | 750 |
| C00628917 | FRIENDS OF DUSTY JOHNSON | 1360, LLC | IL | FRIENDS OF DUSTY JOHNSON | CAMPAIGN SOFTWARE | 6/20/2019 0:00 | 150 |
| C00628917 | FRIENDS OF DUSTY JOHNSON | 1360, LLC | IL | FRIENDS OF DUSTY JOHNSON | CAMPAIGN SOFTWARE | 8/26/2019 0:00 | 150 |
| C00441014 | ROB WITTMAN FOR CONGRESS | 1360 LLC | IL | | VOTER DATABASE | 1/7/2020 0:00 | 750 |
| C00687103 | AMERICANS FOR PROSPERITY ACTION, INC | 1360 LLC | MD | | NON-FEDERAL DIGITAL PLACEMEI | 12/19/2019 0:00 | 59570.45 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| C00729996 | RANDY HENDERSON FOR CONGRESS | 1360 LLC | IL | | VOTER DATA/CONTACT | 8/12/2020 0:00 | 1821.67 |
| C00713958 | BRAKEY FOR CONGRESS | 1360 | VA | | DATABASE SERVICES | 1/29/2020 0:00 | 956.67 |
| C00473827 | FRIENDS OF MIKE LEE INC | 1360, LLC | MD | | DATABASE | 11/7/2020 0:00 | 1200 |
| C00721092 | DAVID HILL FOR OKLAHOMA, INC. | 1360 LLC | IL | | DATABASE SERVICES | 4/23/2020 0:00 | 1154.45 |
| C00441014 | ROB WITTMAN FOR CONGRESS | 1360 LLC | IL | | VOTER DATABASE | 4/20/2020 0:00 | 750 |
| C00628917 | FRIENDS OF DUSTY JOHNSON | 1360, LLC | IL | FRIENDS OF DUSTY JOHNSON | CAMPAIGN SOFTWARE | 7/28/2019 0:00 | 150 |
| C00628917 | FRIENDS OF DUSTY JOHNSON | 1360, LLC | IL | FRIENDS OF DUSTY JOHNSON | CAMPAIGN SOFTWARE | 9/22/2019 0:00 | 150 |
| C00441014 | ROB WITTMAN FOR CONGRESS | 1360 LLC | IL | | VOTER DATABASE | 3/10/2020 0:00 | 2250 |
| C00498345 | MULLIN FOR CONGRESS | 1360 LLC | IL | | DATA STORAGE | 4/24/2020 0:00 | 112.5 |
| C00729996 | RANDY HENDERSON FOR CONGRESS | 1360 LLC | IL | | VOTER DATA/CONTACT | 8/24/2020 0:00 | 650.96 |
| C00473827 | FRIENDS OF MIKE LEE INC | 1360, LLC | MD | | DATABASE | 10/6/2020 0:00 | 1200 |
| C00473827 | FRIENDS OF MIKE LEE INC | 1360, LLC | MD | | DATABASE | 12/14/2020 0:00 | 1200 |
| C00721092 | DAVID HILL FOR OKLAHOMA, INC. | 1360 LLC | IL | | DATABASE SERVICES | 5/13/2020 0:00 | 1324.54 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | NONFEDERAL INDEPENDENT EXPE | 4/27/2020 0:00 | 1583.58 |
| C00700559 | GREG RATHS FOR CONGRESS 2020 | 1360 | IL | | PHONE BANKING | 10/6/2020 0:00 | 971.96 |
| C00499020 | FREEDOMWORKS FOR AMERICA | 1360 LLC | VA | | VOTER DATA | 6/4/2020 0:00 | 528.39 |
| C00539825 | CAPITO FOR WEST VIRGINIA | 1360 | IL | | DIGITAL MARKETING | 7/8/2020 0:00 | 2704.11 |
| C00539825 | CAPITO FOR WEST VIRGINIA | 1360 | IL | | DIGITAL MARKETING | 9/23/2020 0:00 | 2750 |
| C00473827 | FRIENDS OF MIKE LEE INC | 1360, LLC | MD | | DATABASE | 6/9/2020 0:00 | 1200 |
| C00713511 | TEDDY DANIELS FOR CONGRESS | 1360 | IL | | DATA SUBSCRIPTION | 6/29/2020 0:00 | 159.86 |
| C00732099 | LYNDA BENNETT FOR CONGRESS | 1360 | IL | | LIST MANAGEMENT | 4/16/2020 0:00 | 1165.56 |
| C00713357 | JANET BARRESI FOR CONGRESS | 1360 | IL | | SUBSCRIPTION | 5/13/2020 0:00 | 1000 |
| C00700559 | GREG RATHS FOR CONGRESS 2020 | 1360 | IL | | PHONE BANKING | 10/12/2020 0:00 | 1210 |
| C00687103 | AMERICANS FOR PROSPERITY ACTION, INC | 1360 LLC | MD | | POLLING/RESEARCH | 7/30/2020 0:00 | 5231.86 |
| C00547976 | BEN SASSE FOR U.S. SENATE, INC. | 1360, LLC | MD | | DATA SUBSCRIPTION | 3/17/2020 0:00 | 1300 |
| C00721332 | DARRELL ISSA FOR CONGRESS | 1360 LLC | IL | | DATA STORAGE COSTS | 7/21/2020 0:00 | 300 |
| C00539825 | CAPITO FOR WEST VIRGINIA | 1360 | IL | | DIGITAL MARKETING | 8/13/2020 0:00 | 5500 |
| C00473827 | FRIENDS OF MIKE LEE INC | 1360, LLC | MD | | DATABASE | 5/8/2020 0:00 | 1200 |
| C00713511 | TEDDY DANIELS FOR CONGRESS | 1360 | IL | | SOFTWARE | 5/26/2020 0:00 | 1287.67 |
| C00721332 | DARRELL ISSA FOR CONGRESS | 1360 LLC | IL | | DATA STORAGE COSTS | 9/24/2020 0:00 | 2134.38 |
| C00732099 | LYNDA BENNETT FOR CONGRESS | 1360 | IL | | LIST MANAGEMENT | 6/1/2020 0:00 | 1157.33 |
| C00027466 | NRSC | 1360 | IL | | SUBSCRIPTION | 4/16/2020 0:00 | 3000 |
| C00708289 | GREENE FOR CONGRESS | 1360 | IL | | VOTER DATA FILES APPENDED FO | 2/25/2020 0:00 | 506.3 |
| C00708289 | GREENE FOR CONGRESS | 1360 | IL | | VOTER DATA FILES APPENDED FO | 5/18/2020 0:00 | 10568.7 |
| C00459255 | FRIENDS OF TODD YOUNG, INC. | 1360 LLC | IL | | DATA SERVICES | 7/27/2020 0:00 | 150 |
| C00459255 | FRIENDS OF TODD YOUNG, INC. | 1360 LLC | IL | | DATA SERVICES | 8/25/2020 0:00 | 150 |
| C00459255 | FRIENDS OF TODD YOUNG, INC. | 1360 LLC | IL | | DATA SERVICES | 9/25/2020 0:00 | 150 |
| C00693663 | FEENSTRA FOR CONGRESS | 1360 | MD | | DATA | 2/24/2020 0:00 | 880 |
| C00693663 | FEENSTRA FOR CONGRESS | 1360 | MD | | DATA | 3/15/2020 0:00 | 1760 |
| C00459255 | FRIENDS OF TODD YOUNG, INC. | 1360 LLC | IL | | DATA STORAGE | 4/4/2019 0:00 | 150 |
| C00459255 | FRIENDS OF TODD YOUNG, INC. | 1360 LLC | IL | | DATA STORAGE | 5/2/2019 0:00 | 150 |
| C00459255 | FRIENDS OF TODD YOUNG, INC. | 1360 LLC | IL | | DATA STORAGE | 5/22/2019 0:00 | 150 |
| C00543231 | WALKER 4 NC | 1360 LLC | IL | | LIST MANAGEMENT/RENTAL | 1/24/2019 0:00 | 300 |
| C00027466 | NRSC | 1360 | IL | | SUBSCRIPTION | 4/16/2020 0:00 | 3000 |
| C00027466 | NRSC | 1360 | IL | | SUBSCRIPTION | 3/9/2020 0:00 | 3000 |
| C00736959 | JOHN BARGE FOR CONGRESS | 1360 LLC | IL | | DIGITAL PLAN | 5/9/2020 0:00 | 1500.11 |
| C00710103 | NANCY MACE FOR CONGRESS | 1360, LLC | IL | | SOFTWARE | 4/1/2020 0:00 | 1562.45 |
| C00566396 | MICHAEL WALTZ FOR CONGRESS | 1360, LLC | IL | | DATA SUBSCRIPTION | 7/10/2020 0:00 | 158.53 |
| C00693663 | FEENSTRA FOR CONGRESS | 1360 | MD | | DATA | 1/23/2020 0:00 | 2904.56 |
| C00693663 | FEENSTRA FOR CONGRESS | 1360 | MD | | DATA | 5/1/2020 0:00 | 2271.06 |
| C00693663 | FEENSTRA FOR CONGRESS | 1360 | MD | | DATA | 6/26/2020 0:00 | 9724.03 |
| C00733618 | COMMITTEE TO ELECT MIKE MARSICANO | 1360 LLC | IL | COMMITTEE TO ELECT MIKE MARSICANO | VOTER LISTS | 5/19/2020 0:00 | 5317.6 |
| C00384529 | LISA MURKOWSKI FOR US SENATE | 1360 LLC | MD | | ONLINE DATABASE SERVICES | 7/22/2020 0:00 | 150 |
| C00384529 | LISA MURKOWSKI FOR US SENATE | 1360 LLC | MD | | ONLINE DATABASE SERVICES | 9/10/2020 0:00 | 150 |
| C00384529 | LISA MURKOWSKI FOR US SENATE | 1360 LLC | MD | | ONLINE DATABASE SERVICES | 9/30/2020 0:00 | 150 |
| C00473827 | FRIENDS OF MIKE LEE INC | 1360, LLC | MD | | DATABASE | 7/20/2020 0:00 | 1200 |
| C00543231 | WALKER 4 NC | 1360 LLC | IL | | LIST MANAGEMENT SERVICES | 11/11/2019 0:00 | 600 |
| C00543231 | WALKER 4 NC | 1360 LLC | IL | | ONLINE SERVICES | 5/20/2019 0:00 | 600 |
| C00543231 | WALKER 4 NC | 1360 LLC | IL | | EMAIL SERVICES | 9/24/2019 0:00 | 600 |
| C00473827 | FRIENDS OF MIKE LEE INC | 1360, LLC | MD | | DATABASE | 8/12/2020 0:00 | 1200 |
| C00701409 | PRINGLE FOR CONGRESS, INC. | 1360, LLC | IL | PRINGLE FOR CONGRESS INC | PORTAL SETUP FEE AND PARTIAL | 7/22/2019 0:00 | 2789.04 |
| C00701409 | PRINGLE FOR CONGRESS, INC. | 1360, LLC | IL | PRINGLE FOR CONGRESS INC | MONTHLY RETAINER | 8/28/2019 0:00 | 2000 |
| C00701409 | PRINGLE FOR CONGRESS, INC. | 1360, LLC | IL | PRINGLE FOR CONGRESS INC | MONTHLY RETAINER | 10/4/2019 0:00 | 2000 |
| C00701409 | PRINGLE FOR CONGRESS, INC. | 1360, LLC | IL | PRINGLE FOR CONGRESS INC | DATA PROCESSING/MONTHLY RE | 11/1/2019 0:00 | 2000 |
| C00701409 | PRINGLE FOR CONGRESS, INC. | 1360, LLC | IL | PRINGLE FOR CONGRESS INC | MONTHLY RETAINER | 12/2/2019 0:00 | 2000 |
| C00543231 | WALKER 4 NC | 1360 LLC | IL | | DATA LIST SERVICES | 7/1/2020 0:00 | 300 |
| C00727594 | MCGUIRE FOR VIRGINIA | 1360 | IL | | DATA SERVICES | 11/23/2020 0:00 | 5420.6 |
| C00661561 | BEN CLINE FOR CONGRESS, INC. | 1360, LLC | IL | | SUBSCRIPTION | 11/9/2020 0:00 | 225 |
| C00662767 | CHIP ROY FOR CONGRESS | 1360 LLC | IL | | SUBSCRIPTION | 8/21/2020 0:00 | 150 |
| C00714089 | SARA HART WEIR FOR CONGRESS | 1360, LLC | IL | | DIGITAL SX N | 7/29/2020 0:00 | 1404.17 |
| C00543231 | WALKER 4 NC | 1360 LLC | IL | | LIST MANAGEMENT/RENTAL | 3/18/2019 0:00 | 300 |
| C00543231 | WALKER 4 NC | 1360 LLC | IL | | ONLINE SERVICES | 4/17/2019 0:00 | 300 |
| C00543231 | WALKER 4 NC | 1360 LLC | IL | | EMAIL SERVICES | 7/10/2019 0:00 | 300 |
| C00543231 | WALKER 4 NC | 1360 LLC | IL | | EMAIL SERVICES | 9/9/2019 0:00 | 300 |
| C00710111 | JACQUELINE TSENG FOR CONGRESS | 1360, LLC | IL | | VOTER DATA | 4/20/2020 0:00 | 2370 |
| C00701409 | PRINGLE FOR CONGRESS, INC. | 1360, LLC | IL | PRINGLE FOR CONGRESS INC | MONTHLY RETAINER - GRASSROC | 2/14/2020 0:00 | 2063.72 |
| C00701409 | PRINGLE FOR CONGRESS, INC. | 1360, LLC | IL | PRINGLE FOR CONGRESS INC | MONTHLY RETAINER/PHONE BAN | 3/6/2020 0:00 | 2197.91 |
| C00701409 | PRINGLE FOR CONGRESS, INC. | 1360, LLC | IL | PRINGLE FOR CONGRESS INC | MONTHLY RETAINER/PHONE BAN | 3/9/2020 0:00 | 2598.71 |
| C00701409 | PRINGLE FOR CONGRESS, INC. | 1360, LLC | IL | PRINGLE FOR CONGRESS INC | MONTHLY SERVICES | 1/10/2020 0:00 | 2323.18 |
| C00498345 | MULLIN FOR CONGRESS | 1360, LLC | IL | | DATA STORAGE | 5/17/2020 0:00 | 112.5 |
| C00473827 | FRIENDS OF MIKE LEE INC | 1360, LLC | MD | | DATABASE | 9/20/2020 0:00 | 1200 |
| C00543231 | WALKER 4 NC | 1360 LLC | IL | | LIST MANAGEMENT SERVICES | 12/23/2019 0:00 | 1916.71 |
| C00543231 | WALKER 4 NC | 1360 LLC | IL | | LIST MANAGEMENT SERVICES | 1/29/2020 0:00 | 2000 |

| ID | Committee | Entity | State | Note | Service | Date | Amount |
|---|---|---|---|---|---|---|---|
| C00543231 | WALKER 4 NC | I360 LLC | IL | | LIST MANAGEMENT SERVICES | 3/2/2020 0:00 | 2000 |
| C00662767 | CHIP ROY FOR CONGRESS | I360 LLC | IL | | SUBSCRIPTION | 7/24/2020 0:00 | 300 |
| C00662767 | CHIP ROY FOR CONGRESS | I360 LLC | IL | | SUBSCRIPTION | 9/2/2020 0:00 | 830 |
| C00653634 | VAN TAYLOR CAMPAIGN | I360 LLC | IL | | SUBSCRIPTION | 1/31/2020 0:00 | 112.5 |
| C00653634 | VAN TAYLOR CAMPAIGN | I360 LLC | IL | | SUBSCRIPTION | 2/7/2020 0:00 | 112.5 |
| C00547976 | BEN SASSE FOR U.S. SENATE, INC. | I360, LLC | MD | | DATA SUBSCRIPTION | 10/24/2019 0:00 | 500 |
| C00547976 | BEN SASSE FOR U.S. SENATE, INC. | I360, LLC | MD | | DATA SUBSCRIPTION | 12/16/2019 0:00 | 300 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 5/11/2020 0:00 | -235.94 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 5/12/2020 0:00 | -172.9 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS (IE PAID 5/1/20; S | 5/18/2020 0:00 | -154.66 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS (IE PAID 5/1/20; S | 5/19/2020 0:00 | -162.82 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 5/20/2020 0:00 | -128.57 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 5/21/2020 0:00 | -143.31 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 5/24/2020 0:00 | -335.87 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 5/13/2020 0:00 | -3048.14 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | NONFEDERAL INDEPENDENT EXPE | 5/29/2020 0:00 | 310.03 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | NONFEDERAL INDEPENDENT EXPE | 5/29/2020 0:00 | -310.03 |
| C00711572 | BECCHI FOR CONGRESS | I360 LLC | IL | | SUBSCRIPTIONS | 4/8/2020 0:00 | 573.97 |
| C00694208 | RICHARDS FOR CONGRESS | I360 LLC | IL | | SOFTWARE | 6/18/2020 0:00 | 475.87 |
| C00730150 | NEHLS FOR CONGRESS | I360, LLC | IL | | DATA SERVICES | 4/15/2020 0:00 | 1546.31 |
| C00653634 | VAN TAYLOR CAMPAIGN | I360 LLC | IL | | SUBSCRIPTION | 2/27/2020 0:00 | 225 |
| C00697789 | JERRY CARL FOR CONGRESS | I360 LLC | IL | | DATA SUBSCRIPTION SVC / PHON | 11/9/2020 0:00 | 2457.69 |
| C00547893 | ELISE FOR CONGRESS | I360 LLC | IL | | SUBSCRIPTION | 7/18/2019 0:00 | 503.89 |
| C00714089 | SARA HART WEIR FOR CONGRESS | I360, LLC | IL | | DIGITAL SCX | 8/23/2020 0:00 | 2954.67 |
| C00547976 | BEN SASSE FOR U.S. SENATE, INC. | I360, LLC | MD | | DATA SUBSCRIPTION | 7/17/2019 0:00 | 300 |
| C00547976 | BEN SASSE FOR U.S. SENATE, INC. | I360, LLC | MD | | DATA SUBSCRIPTION | 12/5/2019 0:00 | 600 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PRE-PAYMENT FOR MAY PHONE E | 5/1/2020 0:00 | 17000 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS (IE PAID 5/1/20; S | 5/4/2020 0:00 | -194.08 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 5/5/2020 0:00 | -4621.79 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 5/5/2020 0:00 | -958.34 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 5/6/2020 0:00 | -173.98 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 5/7/2020 0:00 | -201.91 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 5/9/2020 0:00 | -305.57 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 5/26/2020 0:00 | -175.6 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 5/27/2020 0:00 | -881.64 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 5/28/2020 0:00 | -594.99 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 5/30/2020 0:00 | -2372.3 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 5/14/2020 0:00 | -943.33 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 5/18/2020 0:00 | -379.39 |
| C00701672 | TUBERVILLE FOR SENATE, INC. | I360 LLC | IL | | PHONE CALLS | 3/3/2020 0:00 | 10165.24 |
| C00727594 | MCGUIRE FOR VIRGINIA | I360 | IL | | VOTER CONTACT COMMUNICATI | 5/12/2020 0:00 | 1578.21 |
| C00727594 | MCGUIRE FOR VIRGINIA | I360 | IL | | VOTER CONTACT COMMUNICATI | 5/19/2020 0:00 | 500 |
| C00727594 | MCGUIRE FOR VIRGINIA | I360 | IL | | VOTER CONTACT COMMUNICATI | 5/19/2020 0:00 | 471.02 |
| C00547893 | ELISE FOR CONGRESS | I360 LLC | IL | | SUBSCRIPTION/WEB SERVICE | 8/23/2019 0:00 | 1788.81 |
| C00715029 | CARL DEMAIO FOR CONGRESS | I360, LLC | IL | | TEXT MESAGGING SERVICES | 4/2/2020 0:00 | 3392.21 |
| C00367862 | MIKE ROGERS FOR CONGRESS | I360, LLC | IL | | DATA STORAGE | 4/15/2020 0:00 | 150 |
| C00367862 | MIKE ROGERS FOR CONGRESS | I360, LLC | IL | | DATA STORAGE | 5/15/2020 0:00 | 150 |
| C00367862 | MIKE ROGERS FOR CONGRESS | I360, LLC | IL | | DATA STORAGE | 6/18/2020 0:00 | 150 |
| C00473827 | FRIENDS OF MIKE LEE INC | I360, LLC | MD | | DATABASE | 4/13/2020 0:00 | 1200 |
| C00726687 | PAUL JUNGE FOR CONGRESS | I360, LLC | IL | | SUBSCRIPTION (PARTIAL) | 11/23/2020 0:00 | 1000 |
| C00664466 | BROWNING FOR CONGRESS | I360 LLC | IL | BROWNING FOR CONGRESS | VOTER DATA | 5/15/2020 0:00 | 633.4 |
| C00664466 | BROWNING FOR CONGRESS | I360 LLC | IL | BROWNING FOR CONGRESS | VOTER DATA | 6/9/2020 0:00 | 1191.89 |
| C00737767 | VICTORIA SPARTZ FOR CONGRESS | I360, LLC | IL | | CAMPAIGN SOFTWARE | 6/7/2020 0:00 | 11015.23 |
| C00570994 | ALASKANS FOR DAN SULLIVAN | I360, LLC | MD | | DATA MANAGEMENT SERVICES | 4/21/2020 0:00 | 631.23 |
| C00570994 | ALASKANS FOR DAN SULLIVAN | I360, LLC | MD | | DATA MANAGEMENT SERVICES | 5/15/2020 0:00 | 3200 |
| C00570994 | ALASKANS FOR DAN SULLIVAN | I360, LLC | MD | | DATA MANAGEMENT SERVICES | 6/9/2020 0:00 | 1600 |
| C00738666 | FRIENDS OF MATT GURTLER, INC. | I360 | IL | | DATA SUBSCRIPTION | 5/26/2020 0:00 | 1100 |
| C00738666 | FRIENDS OF MATT GURTLER, INC. | I360 | IL | | DATA SUBSCRIPTION | 6/9/2020 0:00 | 2158.11 |
| C00738666 | FRIENDS OF MATT GURTLER, INC. | I360 | IL | | DATA SUBSCRIPTION | 6/25/2020 0:00 | 1100 |
| C00725028 | WOLFF FOR CONGRESS | I360, LLC | IL | WOLFF FOR CONGRESS | CRM SOFTWARE | 5/20/2020 0:00 | 675.28 |
| C00713230 | ROB JONES FOR CONGRESS | I360 | IL | | SOFTWARE | 6/10/2020 0:00 | 550 |
| C00713230 | ROB JONES FOR CONGRESS | I360 | IL | | SOFTWARE | 6/30/2020 0:00 | 1550.14 |
| C00726117 | KIM KLACIK FOR CONGRESS | I360 LLC | IL | | DATA | 5/19/2020 0:00 | 452.36 |
| C00666396 | MICHAEL WALTZ FOR CONGRESS | I360 LLC | IL | | DATA SUBSCRIPTION | 4/14/2020 0:00 | 225 |
| C00658401 | GREG PENCE FOR CONGRESS | I360 LLC | IL | | VOTER DATA SOFTWARE EXPENSE | 6/16/2020 0:00 | 102 |
| C00620518 | MARCO RUBIO FOR SENATE | I360 | IL | | DATA SERVICE | 6/25/2020 0:00 | 5000 |
| C00670695 | ROMNEY FOR UTAH INC | I360, LLC | IL | | SUBSCRIPTION | 6/18/2020 0:00 | 1170 |
| C00713503 | WAGLE FOR KANSAS | I360, LLC | IL | | DATA SERVICES | 5/8/2020 0:00 | 4500 |
| C00539825 | CAPITO FOR WEST VIRGINIA | I360 | IL | | DIGITAL MARKETING | 5/26/2020 0:00 | 2500 |
| C00652149 | BURCHETT FOR CONGRESS | I360 LLC | IL | | DIGITAL DATA STORAGE | 6/9/2020 0:00 | 112.5 |
| C00682179 | JOSHUA SCOTT FOR CONGRESS | I360, LLC | IL | | SURVEY | 4/3/2020 0:00 | 750 |
| C00384529 | LISA MURKOWSKI FOR US SENATE | I360 LLC | MD | | ONLINE DATABASE SERVICES | 4/21/2020 0:00 | 150 |
| C00384529 | LISA MURKOWSKI FOR US SENATE | I360 LLC | MD | | ONLINE DATABASE SERVICES | 6/2/2020 0:00 | 150 |
| C00384529 | LISA MURKOWSKI FOR US SENATE | I360 LLC | MD | | ONLINE DATABASE SERVICES | 6/30/2020 0:00 | 150 |
| C00462143 | MARTHA ROBY FOR CONGRESS | I360 | IL | | SOFTWARE | 5/1/2020 0:00 | 150 |
| C00462143 | MARTHA ROBY FOR CONGRESS | I360 | IL | | SOFTWARE | 6/1/2020 0:00 | 150 |
| C00462143 | MARTHA ROBY FOR CONGRESS | I360 | IL | | SOFTWARE | 6/12/2020 0:00 | 150 |
| C00721332 | DARRELL ISSA FOR CONGRESS | I360 LLC | IL | | VOTER OUTREACH COSTS | 6/16/2020 0:00 | 4975.04 |
| C00498345 | MULLIN FOR CONGRESS | I360, LLC | IL | | DATA STORAGE | 6/12/2020 0:00 | 112.5 |
| C00464032 | TOM REED FOR CONGRESS | I360, LLC | IL | | DATA SUBSCRIPTION | 6/10/2020 0:00 | 3087.81 |
| C00737767 | VICTORIA SPARTZ FOR CONGRESS | I360, LLC | IL | | CAMPAIGN SOFTWARE | 6/11/2020 0:00 | 12147.72 |
| C00753910 | CARMELITA FOR CONGRESS | I360 | IL | | SUBSCRIPTION | 6/2/2020 0:00 | 2561.22 |
| C00732099 | LYNDA BENNETT FOR CONGRESS | I360 | IL | | LIST SERVICES | 6/23/2020 0:00 | 1315.87 |

| ID | Name | Entity | State | | Description | Date | Amount |
|---|---|---|---|---|---|---|---|
| C00704064 | NEESE FOR CONGRESS | i360, LLC | IL | | SUBSCRIPTION | 4/2/2020 0:00 | 1000 |
| C00704064 | NEESE FOR CONGRESS | i360, LLC | IL | | SUBSCRIPTION | 5/7/2020 0:00 | 1028.22 |
| C00703504 | HOMRICH FOR CONGRESS | i360 LLC | IL | | SOFTWARE | 6/9/2020 0:00 | 1630.67 |
| C00703504 | HOMRICH FOR CONGRESS | i360, LLC | IL | | SOFTWARE | 6/26/2020 0:00 | 280.3 |
| C00711432 | ERIC EARLY FOR CONGRESS 2020 | i360 | IL | | ONLINE SUBSCRIPTION-DATA SER | 8/21/2020 0:00 | 2225.75 |
| C00717306 | CLAIRE CHASE FOR CONGRESS | i360, LLC | IL | | SUBSCRIPTIONS | 6/2/2020 0:00 | 1889.32 |
| C00717306 | CLAIRE CHASE FOR CONGRESS | i360, LLC | IL | | SOFTWARE SUBSCRIPTION/ GOTV | 6/18/2020 0:00 | 4229.72 |
| C00740589 | STEVE DARDEN FOR CONGRESS | i360, LLC | IL | | DOOR-TO-DOOR LISTING | 8/26/2020 0:00 | 2967.96 |
| C00658401 | GREG PENCE FOR CONGRESS | i360 LLC | IL | | VOTER DATA SOFTWARE EXPENSI | 5/21/2020 0:00 | 102 |
| C00620518 | MARCO RUBIO FOR SENATE | i360 | IL | | DATA SERVICE | 5/14/2020 0:00 | 10000 |
| C00547893 | ELISE FOR CONGRESS | i360 LLC | IL | | SUBSCRIPTION/TELEPHONE SERV | 6/11/2020 0:00 | 5682.83 |
| C00713503 | WAGLE FOR KANSAS | i360, LLC | IL | | DATA SERVICES | 6/23/2020 0:00 | 3723.7 |
| C00652149 | BURCHETT FOR CONGRESS | i360, LLC | IL | | DIGITAL STORAGE | 5/4/2020 0:00 | 112.5 |
| C00652149 | BURCHETT FOR CONGRESS | i360, LLC | IL | | DIGITAL DATA STORAGE | 6/23/2020 0:00 | 112.5 |
| C00652743 | JOHN ROSE FOR TENNESSEE | i360, LLC | IL | | SUBSCRIPTIONS | 5/26/2020 0:00 | 112.5 |
| C00718239 | ANNA PAULINA LUNA FOR CONGRESS | i360 | TX | | DIGITAL SERVICES | 4/1/2020 0:00 | 2273.42 |
| C00757724 | COMMONWEALTH EDUCATIONAL OPPOR | i360, LLC | IL | COMMONWEALTH EDUCATIONAL OPPORTU | DATA MANAGEMENT | 12/20/2020 0:00 | 1400 |
| C00711010 | BOLDUC 2022, INC. | i360, LLC | IL | | SOFTWARE SUBSCRIPTION | 4/21/2020 0:00 | 2565 |
| C00027466 | NRSC | i360 | IL | | SUBSCRIPTION | 7/22/2020 0:00 | 3000 |
| C00662767 | CHIP ROY FOR CONGRESS | i360 LLC | IL | | SUBSCRIPTION | 5/1/2020 0:00 | 150 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | i360, LLC | IL | | PHONE BANKS (IE PAID 5/1/20; SI | 6/1/2020 0:00 | -146.21 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | i360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 6/3/2020 0:00 | -702.95 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | i360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 6/4/2020 0:00 | -1802.65 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | i360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 6/9/2020 0:00 | -315.55 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | i360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 6/10/2020 0:00 | -2264.36 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | i360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 6/13/2020 0:00 | -556.54 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | i360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 6/25/2020 0:00 | -108.44 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | i360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 6/27/2020 0:00 | -3789.96 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | i360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 6/30/2020 0:00 | -180.93 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | i360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 6/16/2020 0:00 | -1376.15 |
| C00701003 | HUNT FOR CONGRESS | i360 LLC | IL | | SUBSCRIPTION - DATABASE SERVI | 5/12/2020 0:00 | 1445.18 |
| C00721027 | FOSTER FOR KANSAS | i360, LLC | VA | | ADVERTISING & MARKETING | 4/1/2020 0:00 | 3870.5 |
| C00697250 | SANDY SMITH FOR CONGRESS, INC. | i360 | VA | | SOFTWARE SUBSCRIPTION | 5/26/2020 0:00 | 2000 |
| C00697250 | SANDY SMITH FOR CONGRESS, INC. | i360 | VA | | SOFTWARE SUBSCRIPTION | 6/22/2020 0:00 | 150 |
| C00655332 | CLOUD FOR CONGRESS | i360 LLC | IL | | SOFTWARE SERVICE | 5/11/2020 0:00 | 112.5 |
| C00655332 | CLOUD FOR CONGRESS | i360 LLC | IL | | SOFTWARE SERVICE | 6/11/2020 0:00 | 112.5 |
| C00714089 | SARA HART WEIR FOR CONGRESS | i360, LLC | IL | | X | 4/20/2020 0:00 | 328.77 |
| C00714089 | SARA HART WEIR FOR CONGRESS | i360, LLC | IL | | DIGITAL SC X | 7/2/2020 0:00 | 2350.83 |
| C00376939 | MARSHA FOR SENATE | i360 LLC | IL | | SUBSCRIPTIONS | 5/22/2020 0:00 | 300 |
| C00708628 | DR MANNY FOR US SENATE | i360 LLC | IL | | DIGITAL PLANNING | 4/27/2020 0:00 | 10000 |
| C00666040 | MCSALLY FOR SENATE INC | i360 | IL | | SOFTWARE | 10/5/2020 0:00 | 2750 |
| C00666040 | MCSALLY FOR SENATE INC | i360 | IL | | SOFTWARE | 4/3/2020 0:00 | 300 |
| C00666040 | MCSALLY FOR SENATE INC | i360 | IL | | SOFTWARE | 5/13/2020 0:00 | 300 |
| C00738666 | FRIENDS OF MATT GUTLER, INC. | i360 | IL | | DATA SUBSCRIPTION SERVICES | 4/14/2020 0:00 | 1891.01 |
| C00738666 | FRIENDS OF MATT GUTLER, INC. | i360 | IL | | DATA SUBSCRIPTION | 4/27/2020 0:00 | 1100 |
| C00527457 | FRIENDS OF DAVE JOYCE | i360 | IL | | VOTER CONTACT SOFTWARE | 5/12/2020 0:00 | 4464.71 |
| C00509729 | THOMAS MASSIE FOR CONGRESS | i360, LLC | IL | | MESSAGE PHONE CALLS | 4/1/2020 0:00 | 2386.67 |
| C00509729 | THOMAS MASSIE FOR CONGRESS | i360, LLC | IL | | MESSAGE PHONE CALLS | 5/14/2020 0:00 | 1533.31 |
| C00495846 | ANN WAGNER FOR CONGRESS | i360 LLC | MD | | SUBSCRIPTION SERVICE | 5/13/2020 0:00 | 150 |
| C00697789 | JERRY CARL FOR CONGRESS | i360 LLC | IL | | DATA SUBSCRIPTION SERVICES / I | 7/23/2020 0:00 | 1908.19 |
| C00720078 | JAY OBERNOLTE FOR CONGRESS 2020 | i360 | IL | | SOFTWARE SUBSCRIPTION | 8/9/2020 0:00 | 150 |
| C00710962 | PETER MEIJER FOR CONGRESS | i360, LLC | IL | | DATA MANAGEMENT | 9/2/2020 0:00 | 2500 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | i360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 6/17/2020 0:00 | -436.33 |
| C00652743 | JOHN ROSE FOR TENNESSEE | i360, LLC | IL | | SUBSCRIPTIONS | 4/14/2020 0:00 | 112.5 |
| C00652743 | JOHN ROSE FOR TENNESSEE | i360, LLC | IL | | SUBSCRIPTIONS | 6/10/2020 0:00 | 112.5 |
| C00718239 | ANNA PAULINA LUNA FOR CONGRESS | i360 | TX | | DIGITAL SERVICES | 5/14/2020 0:00 | 1800 |
| C00495846 | ANN WAGNER FOR CONGRESS | i360 LLC | MD | | SUBSCRIPTION SERVICE | 1/14/2020 0:00 | 150 |
| C00711010 | BOLDUC 2022, INC. | i360, LLC | IL | | SOFTWARE SUBSCRIPTION | 5/12/2020 0:00 | 2600 |
| C00706614 | TONY GONZALES FOR CONGRESS | i360 LLC | IL | | WEB SERVICE/SUBSCRIPTION | 6/25/2020 0:00 | 3644.22 |
| C00662767 | CHIP ROY FOR CONGRESS | i360 LLC | IL | | SUBSCRIPTION | 6/11/2020 0:00 | 150 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | i360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 6/2/2020 0:00 | -885.9 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | i360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 6/8/2020 0:00 | -162.24 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | i360, LLC | IL | | PRE-PAYMENT FOR JUNE PHONE | 6/1/2020 0:00 | 22495.18 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | i360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 6/11/2020 0:00 | -1176.56 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | i360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 6/15/2020 0:00 | -191.78 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | i360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 6/26/2020 0:00 | -1002.1 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | i360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 6/29/2020 0:00 | -1719.63 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | i360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 6/6/2020 0:00 | -2466.8 |
| C00701003 | HUNT FOR CONGRESS | i360 LLC | IL | | SUBSCRIPTION - DATABASE SERVI | 4/17/2020 0:00 | 1429.52 |
| C00701003 | HUNT FOR CONGRESS | i360 LLC | IL | | SUBSCRIPTION - DATABASE SERVI | 6/12/2020 0:00 | 900.14 |
| C00697250 | SANDY SMITH FOR CONGRESS, INC. | i360 | VA | | SOFTWARE SUBSCRIPTION | 4/2/2020 0:00 | 1000 |
| C00697250 | SANDY SMITH FOR CONGRESS, INC. | i360 | VA | | SOFTWARE SUBSCRIPTION | 6/10/2020 0:00 | 150 |
| C00655332 | CLOUD FOR CONGRESS | i360 LLC | IL | | SOFTWARE SERVICE | 4/20/2020 0:00 | 112.5 |
| C00653634 | VAN TAYLOR CAMPAIGN | i360 | IL | | SUBSCRIPTION | 4/26/2020 0:00 | 112.5 |
| C00714089 | SARA HART WEIR FOR CONGRESS | i360, LLC | IL | | DIGITAL SC X | 5/7/2020 0:00 | 548.87 |
| C00376939 | MARSHA FOR SENATE | i360 LLC | IL | | SUBSCRIPTIONS | 4/21/2020 0:00 | 300 |
| C00376939 | MARSHA FOR SENATE | i360 LLC | IL | | SUBSCRIPTIONS | 6/22/2020 0:00 | 300 |
| C00708628 | DR MANNY FOR US SENATE | i360 LLC | IL | | TERAPLAN DIALER MINUTES | 5/21/2020 0:00 | 5371.39 |
| C00738666 | FRIENDS OF MATT GUTLER, INC. | i360 | IL | | SOFTWARE SUBSCRIPTION | 7/22/2020 0:00 | 799.7 |
| C00666040 | MCSALLY FOR SENATE INC | i360 | IL | | SOFTWARE | 4/22/2020 0:00 | 300 |
| C00027466 | NRSC | i360 | IL | | SUBSCRIPTION | 8/13/2020 0:00 | 3000 |
| C00738666 | FRIENDS OF MATT GUTLER, INC. | i360 | IL | | DATA SUBSCRIPTION | 4/23/2020 0:00 | 375.66 |
| C00738666 | FRIENDS OF MATT GUTLER, INC. | i360 | IL | | DATA SUBSCRIPTION | 5/19/2020 0:00 | 3169.4 |

Exhibit J, 12 of 17

| ID | Committee | Entity | State | Payee | Description | Date | Amount |
|---|---|---|---|---|---|---|---|
| C00301838 | STEVE CHABOT FOR CONGRESS | 1360, LLC | OH | | INTERNET/WEBSITE MANAGEMEN | 5/20/2020 0:00 | 3000 |
| C00509729 | THOMAS MASSIE FOR CONGRESS | 1360, LLC | IL | | MESSAGE PHONE CALLS | 4/14/2020 0:00 | 1123.76 |
| C00495846 | ANN WAGNER FOR CONGRESS | 1360 LLC | MD | | SUBSCRIPTION SERVICE | 4/14/2020 0:00 | 600 |
| C00697789 | JERRY CARL FOR CONGRESS | 1360 LLC | IL | | DATA SUBSCRIPTION SERVICES / I | 8/19/2020 0:00 | 1417.6 |
| C00697789 | JERRY CARL FOR CONGRESS | 1360 LLC | IL | | DATA SUBSCRIPTION SERVICES / I | 9/22/2020 0:00 | 1630.91 |
| C00710962 | PETER MEIJER FOR CONGRESS | 1360, LLC | IL | | DATA MANAGEMENT | 7/23/2020 0:00 | 4559.41 |
| C00710962 | PETER MEIJER FOR CONGRESS | 1360, LLC | IL | | DATA MANAGEMENT | 9/24/2020 0:00 | 20574.51 |
| C00027466 | NRSC | 1360 | | | SUBSCRIPTION | 6/12/2020 0:00 | 3000 |
| C00666396 | MICHAEL WALTZ FOR CONGRESS | 1360, LLC | IL | | DATA SUBSCRIPTION | 6/10/2020 0:00 | 107.26 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | NONFEDERAL IE - PHONE BANKS , | 8/5/2020 0:00 | 2720.46 |
| C00652149 | BURCHETT FOR CONGRESS | 1360, LLC | IL | | DATA STORAGE | 8/6/2020 0:00 | 112.5 |
| C00509729 | THOMAS MASSIE FOR CONGRESS | 1360, LLC | IL | | MESSAGE PHONE CALLS | 7/27/2020 0:00 | 2286.79 |
| C00732842 | CLAYTON FULLER FOR CONGRESS | 1360, LLC | IL | | DATABASE SERVICES | 7/10/2020 0:00 | 1001.08 |
| C00732842 | CLAYTON FULLER FOR CONGRESS | 1360, LLC | IL | | DATABASE SERVICES | 7/10/2020 0:00 | 369.56 |
| C00253260 | ALASKA REPUBLICAN PARTY | 1360, LLC | MD | | VOTER DATA SUBSCRIPTION- REG | 8/1/2020 0:00 | 726 |
| C00666040 | MCSALLY FOR SENATE INC | 1360 | IL | | SOFTWARE | 8/7/2020 0:00 | 2750 |
| C00441014 | ROB WITTMAN FOR CONGRESS | 1360 LLC | IL | | VOTER DATABASE | 6/15/2020 0:00 | 750 |
| C00628917 | FRIENDS OF DUSTY JOHNSON | 1360, LLC | IL | FRIENDS OF DUSTY JOHNSON | SOFTWARE EXPENSE | 10/28/2019 0:00 | 150 |
| C00628917 | FRIENDS OF DUSTY JOHNSON | 1360, LLC | IL | FRIENDS OF DUSTY JOHNSON | TECHNOLOGY SERVICE/SOFTWAR | 11/10/2019 0:00 | 150 |
| C00628917 | FRIENDS OF DUSTY JOHNSON | 1360, LLC | IL | FRIENDS OF DUSTY JOHNSON | SOFTWARE EXPENSE | 12/15/2019 0:00 | 150 |
| C00628917 | FRIENDS OF DUSTY JOHNSON | 1360, LLC | IL | | CAMPAIGN SOFTWARE | 5/17/2020 0:00 | 1130.48 |
| C00708289 | GREENE FOR CONGRESS | 1360 | IL | | VOTER DATA FILES APPENDED AN | 6/15/2020 0:00 | 1094.88 |
| C00652149 | BURCHETT FOR CONGRESS | 1360 LLC | IL | | TERAPLAN | 10/6/2020 0:00 | 2226.71 |
| C00719252 | JESSI MELTON FOR CONGRESS | 1360, LLC | IL | | PHONE CALLS | 9/25/2020 0:00 | 7166.15 |
| C00462143 | MARTHA ROBY FOR CONGRESS | 1360 | IL | | SOFTWARE | 8/5/2020 0:00 | 150 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 8/3/2020 0:00 | -52.79 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 8/13/2020 0:00 | -8115.17 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 8/25/2020 0:00 | -89.09 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 8/31/2020 0:00 | -19381.54 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 8/17/2020 0:00 | -929.93 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 8/18/2020 0:00 | -1074.83 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 8/26/2020 0:00 | -1136.48 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 8/10/2020 0:00 | -1871.11 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 8/4/2020 0:00 | -2368.12 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 8/22/2020 0:00 | -2754.6 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 8/1/2020 0:00 | -4862.82 |
| C00687103 | AMERICANS FOR PROSPERITY ACTION, INC | 1360 LLC | MD | | DATA SERVICES | 10/14/2020 0:00 | 33390.6 |
| C00687103 | AMERICANS FOR PROSPERITY ACTION, INC | 1360 LLC | MD | | DATA SERVICES | 10/8/2020 0:00 | 7324.85 |
| C00757724 | COMMONWEALTH EDUCATIONAL OPPOR | 1360, LLC | IL | | DATA MANAGEMENT | 10/16/2020 0:00 | 1320.23 |
| C00757724 | COMMONWEALTH EDUCATIONAL OPPOR | 1360, LLC | IL | COMMONWEALTH EDUCATIONAL OPPORTU | DATA MANAGEMENT | 11/19/2020 0:00 | 1438.48 |
| C00441014 | ROB WITTMAN FOR CONGRESS | 1360 LLC | IL | | VOTER DATABASE | 7/21/2020 0:00 | 750 |
| C00441014 | ROB WITTMAN FOR CONGRESS | 1360 LLC | IL | | VOTER DATABASE | 8/12/2020 0:00 | 750 |
| C00441014 | ROB WITTMAN FOR CONGRESS | 1360 LLC | IL | | VOTER DATABASE | 9/22/2020 0:00 | 750.05 |
| C00732099 | LYNDA BENNETT FOR CONGRESS | 1360 | IL | | TELEMARKETING SERVICES | 9/29/2020 0:00 | 2901.02 |
| C00657981 | FRIENDS OF STEVE NEGRON | 1360, LLC | IL | | VOTER FILES | 9/8/2020 0:00 | 1210 |
| C00512335 | MIDDLE RESOLUTION FEDERAL PAC INC | 1360, LLC | IL | | IT SERVICES | 10/14/2020 0:00 | 457.28 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (SI | 6/18/2020 0:00 | -436.33 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 6/20/2020 0:00 | -2283.56 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 6/22/2020 0:00 | -119.56 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 6/23/2020 0:00 | -172.66 |
| C00652149 | BURCHETT FOR CONGRESS | 1360 LLC | IL | | DATA STORAGE | 8/14/2020 0:00 | 112.5 |
| C00509729 | THOMAS MASSIE FOR CONGRESS | 1360, LLC | IL | | MESSAGE PHONE CALLS | 9/3/2020 0:00 | 250 |
| C00732842 | CLAYTON FULLER FOR CONGRESS | 1360, LLC | IL | | DATABASE SERVICES | 7/10/2020 0:00 | 1016.52 |
| C00720078 | JAY OBERNOLTE FOR CONGRESS 2020 | 1360 | IL | | SOFTWARE SUBSCRIPTION | 6/10/2020 0:00 | 1322.14 |
| C00666040 | MCSALLY FOR SENATE INC | 1360 | IL | | SOFTWARE | 7/22/2020 0:00 | 1927.4 |
| C00666040 | MCSALLY FOR SENATE INC | 1360 | IL | | SOFTWARE | 8/17/2020 0:00 | 2750 |
| C00628917 | FRIENDS OF DUSTY JOHNSON | 1360, LLC | IL | FRIENDS OF DUSTY JOHNSON | CAMPAIGN SOFTWARE | 4/15/2019 0:00 | 300 |
| C00628917 | FRIENDS OF DUSTY JOHNSON | 1360, LLC | IL | FRIENDS OF DUSTY JOHNSON | CAMPAIGN SOFTWARE | 5/20/2019 0:00 | 150 |
| C00628917 | FRIENDS OF DUSTY JOHNSON | 1360, LLC | IL | FRIENDS OF DUSTY JOHNSON | CAMPAIGN SOFTWARE | 2/15/2020 0:00 | 150 |
| C00628917 | FRIENDS OF DUSTY JOHNSON | 1360, LLC | IL | FRIENDS OF DUSTY JOHNSON | CAMPAIGN SOFTWARE | 3/15/2020 0:00 | 1935.34 |
| C00628917 | FRIENDS OF DUSTY JOHNSON | 1360, LLC | IL | FRIENDS OF DUSTY JOHNSON | CAMPAIGN SOFTWARE | 4/13/2020 0:00 | 1000 |
| C00652743 | JOHN ROSE FOR TENNESSEE | 1360, LLC | IL | | SUBSCRIPTIONS | 10/7/2020 0:00 | 112.5 |
| C00710103 | NANCY MACE FOR CONGRESS | 1360, LLC | IL | | SOFTWARE | 6/11/2020 0:00 | 21295.84 |
| C00657981 | FRIENDS OF STEVE NEGRON | 1360, LLC | IL | FRIENDS OF STEVE NEGRON | DATA | 7/20/2020 0:00 | 9763.61 |
| C00462143 | MARTHA ROBY FOR CONGRESS | 1360 | IL | | SOFTWARE | 8/15/2020 0:00 | 150 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 8/5/2020 0:00 | -4615.61 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 8/6/2020 0:00 | -7152.19 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 8/8/2020 0:00 | -9507.35 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 8/11/2020 0:00 | -2401.69 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 8/12/2020 0:00 | -8263.38 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | NONFEDERAL IE - P2P TEXTING | 8/13/2020 0:00 | 1712.46 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PRE-PAYMENT FOR AUGUST PHO | 8/1/2020 0:00 | 146197.97 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 8/20/2020 0:00 | -5857.72 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 8/15/2020 0:00 | -7646.57 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 8/20/2020 0:00 | -8670.18 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 8/27/2020 0:00 | -9531.17 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 8/24/2020 0:00 | -15577.36 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 8/29/2020 0:00 | -31042.38 |
| C00687103 | AMERICANS FOR PROSPERITY ACTION, INC | 1360 LLC | MD | | PARTIAL REFUND OF NON-FEDER/ | 10/14/2020 0:00 | -129303.6 |
| C00693531 | FUTURE LEADERS FUND | 1360, LLC | IL | | WEB SERVICE | 10/31/2020 0:00 | 700.85 |
| C00716571 | GADE FOR VIRGINIA, INC. | 1360, LLC | IL | | COMPUTER AND INTERNET EXPEI | 10/7/2020 0:00 | 19865.26 |
| C00441014 | ROB WITTMAN FOR CONGRESS | 1360, LLC | IL | | VOTER DATABASE | 10/20/2020 0:00 | 909.75 |
| C00716571 | GADE FOR VIRGINIA, INC. | 1360, LLC | IL | | COMPUTER AND INTERNET EXPEI | 7/1/2020 0:00 | 10823.96 |

| ID | Name | Entity | State | Alt Name | Description | Date | Amount |
|---|---|---|---|---|---|---|---|
| C00716571 | GADE FOR VIRGINIA, INC. | I360, LLC | IL | | COMPUTER AND INTERNET EXPEI | 7/7/2020 0:00 | 5000 |
| C00716571 | GADE FOR VIRGINIA, INC. | I360, LLC | IL | | COMPUTER AND INTERNET EXPEI | 7/7/2020 0:00 | 10112.47 |
| C00657981 | FRIENDS OF STEVE NEGRON | I360, LLC | IL | | VOTER FILES | 9/10/2020 0:00 | 2697.44 |
| C00700559 | GREG RATHS FOR CONGRESS 2020 | I360 | IL | | PHONE BANKING | 11/17/2020 0:00 | 3464.69 |
| C00700559 | GREG RATHS FOR CONGRESS 2020 | I360 | IL | | PHONE BANKING | 11/18/2020 0:00 | 3464.69 |
| C00743393 | HILL FOR CONGRESS | I360 | IL | | SUBSCRIPTION EXPENSE | 8/3/2020 0:00 | 1898.87 |
| C00743393 | HILL FOR CONGRESS | I360 | IL | | SUBSCRIPTION EXPENSE | 8/15/2020 0:00 | 2184.76 |
| C00743393 | HILL FOR CONGRESS | I360 | IL | | SUBSCRIPTION EXPENSE | 9/24/2020 0:00 | 395.4 |
| C00491357 | STEVE DAINES FOR MONTANA | I360 | MD | | DATA SUBSCRIPTION | 5/12/2020 0:00 | 37.5 |
| C00491357 | STEVE DAINES FOR MONTANA | I360 | MD | | DATA SUBSCRIPTION | 12/20/2019 0:00 | 37.5 |
| C00509729 | THOMAS MASSIE FOR CONGRESS | I360, LLC | IL | | MESSAGE PHONE CALLS | 10/28/2020 0:00 | 250 |
| C00509729 | THOMAS MASSIE FOR CONGRESS | I360, LLC | IL | | MESSAGE PHONE CALLS | 11/11/2020 0:00 | 816.38 |
| C00662767 | CHIP ROY FOR CONGRESS | I360, LLC | IL | | SUBSCRIPTION | 12/2/2020 0:00 | 2460 |
| C00730150 | NEHLS FOR CONGRESS | I360, LLC | IL | | FIELD PROGRAM DATA SERVICE | 10/12/2020 0:00 | 750 |
| C00730150 | NEHLS FOR CONGRESS | I360, LLC | IL | | FIELD PROGRAM DATA SERVICE | 11/10/2020 0:00 | 2727.79 |
| C00737767 | VICTORIA SPARTZ FOR CONGRESS | I360, LLC | IL | | CAMPAIGN DATA | 11/9/2020 0:00 | 3398.71 |
| C00207993 | FRIENDS OF JIM INHOFE | I360, LLC | IL | | DATA SERVICES | 11/10/2020 0:00 | 3781.2 |
| C00491357 | STEVE DAINES FOR MONTANA | I360 | MD | | DATA SUBSCRIPTION | 2/3/2020 0:00 | 37.5 |
| C00491357 | STEVE DAINES FOR MONTANA | I360 | MD | | DATA SUBSCRIPTION | 2/19/2020 0:00 | 37.5 |
| C00491357 | STEVE DAINES FOR MONTANA | I360 | MD | | DATA SUBSCRIPTION | 3/23/2020 0:00 | 37.5 |
| C00628917 | FRIENDS OF DUSTY JOHNSON | I360, LLC | IL | | CAMPAIGN SOFTWARE | 7/17/2020 0:00 | 11579.65 |
| C00723072 | MONICA DE LA CRUZ HERNANDEZ FOR US | I360, LLC | IL | | INVOICE 057201427001 | 8/25/2020 0:00 | 500 |
| C00723072 | MONICA DE LA CRUZ HERNANDEZ FOR US | I360, LLC | IL | | INVOICE 060520144275001 | 8/25/2020 0:00 | 1454.19 |
| C00723072 | MONICA DE LA CRUZ HERNANDEZ FOR US | I360, LLC | IL | | INVOICE 09142014275001 | 9/28/2020 0:00 | 1028.17 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 12/1/20; SEE : | 12/12/2020 0:00 | -18013.14 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 12/1/20; SEE : | 12/5/2020 0:00 | -21002.94 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 12/1/20; SEE : | 12/2/2020 0:00 | -1190.34 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 12/1/20; SEE : | 11/29/2020 0:00 | -8011.38 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 12/1/20; SEE : | 12/21/2020 0:00 | -5.34 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 12/1/20; SEE : | 12/19/2020 0:00 | -3875.94 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 12/1/20; SEE : | 12/16/2020 0:00 | -8.28 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 12/1/20; SEE : | 12/14/2020 0:00 | -6379.92 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTING | 12/31/2020 0:00 | -2798.94 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTING | 12/28/2020 0:00 | -3192.78 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTING | 12/30/2020 0:00 | -8239.86 |
| C00367862 | MIKE ROGERS FOR CONGRESS | I360, LLC | IL | | DATA STORAGE | 10/15/2020 0:00 | 900 |
| C00652743 | JOHN ROSE FOR TENNESSEE | I360, LLC | IL | | SUBSCRIPTIONS | 8/19/2020 0:00 | 112.5 |
| C00700559 | GREG RATHS FOR CONGRESS 2020 | I360 | IL | | VOTER LISTS | 8/12/2020 0:00 | 1200 |
| C00027466 | NRSC | I360 | IL | | SUBSCRIPTION | 9/23/2020 0:00 | 3000 |
| C00693663 | FEENSTRA FOR CONGRESS | I360 | MD | | DATA | 10/8/2020 0:00 | 3154.32 |
| C00666396 | MICHAEL WALTZ FOR CONGRESS | I360 | IL | | DATA SUBSCRIPTION | 9/21/2020 0:00 | 748.26 |
| C00556365 | KATKO FOR CONGRESS | I360, LLC | MD | | DATA SERVICE | 12/31/2020 0:00 | 1681.78 |
| C00706614 | TONY GONZALES FOR CONGRESS | I360 | IL | | PHONE MESSAGINE SVC | 12/31/2020 0:00 | 266.3 |
| C00711432 | ERIC EARLY FOR CONGRESS 2020 | I360 | IL | | ONLINE SUBSCRIPTION-DATA SER | 12/11/2020 0:00 | 1200 |
| C00721333 | DARRELL ISSA FOR CONGRESS | I360 LLC | IL | | DATA STORAGE FEE | 12/17/2020 0:00 | 266.3 |
| C00726042 | LISA MCCLAIN FOR CONGRESS | I360 | VA | LISA MCCLAIN FOR CONGRESS | CAMPAIGN WEB FEE | 8/17/2020 0:00 | 1000 |
| C00726687 | PAUL JUNGE FOR CONGRESS | I360, LLC | IL | | SUBSCRIPTION | 8/15/2020 0:00 | 1800 |
| C00495846 | ANN WAGNER FOR CONGRESS | I360 LLC | MD | | SUBSCRIPTION SERVICE | 9/26/2020 0:00 | 600 |
| C00717868 | HOUSE CD6 | I360, LLC | IL | | DATA SERVICES | 9/23/2020 0:00 | 2460 |
| C00738666 | FRIENDS OF MATT GURTLER, INC. | I360 | IL | | DATA MANAGEMENT | 8/14/2020 0:00 | 4038.98 |
| C00376939 | MARSHA FOR SENATE | I360 LLC | IL | | SUBSCRIPTIONS | 7/27/2020 0:00 | 300 |
| C00376939 | MARSHA FOR SENATE | I360 LLC | IL | | SUBSCRIPTIONS | 9/29/2020 0:00 | 300 |
| C00708289 | GREENE FOR CONGRESS | I360 | IL | | VOTER DATA FILES APPENDED AN | 8/28/2020 0:00 | 1096.41 |
| C00657981 | FRIENDS OF STEVE NEGRON | I360, LLC | IL | | DATA | 10/7/2020 0:00 | 2354.85 |
| C00737767 | VICTORIA SPARTZ FOR CONGRESS | I360, LLC | IL | | CAMPAIGN DATA | 10/6/2020 0:00 | 2067.63 |
| C00710962 | PETER MEIJER FOR CONGRESS | I360, LLC | IL | | DATA MANAGEMENT | 10/1/2020 0:00 | 11757.02 |
| C00730150 | NEHLS FOR CONGRESS | I360, LLC | IL | | FIELD SUPPLIES | 8/24/2020 0:00 | 3000 |
| C00207993 | FRIENDS OF JIM INHOFE | I360, LLC | IL | | DATA SERVICES | 10/9/2020 0:00 | 3463.4 |
| C00512335 | MIDDLE RESOLUTION FEDERAL PAC INC | I360, LLC | IL | | IT SERVICES | 11/13/2020 0:00 | 758.18 |
| C00653634 | VAN TAYLOR CAMPAIGN | I360 | | WEB SERVICE/SUBSCRIPTION | 10/15/2020 0:00 | 1732.72 |
| C00653634 | VAN TAYLOR CAMPAIGN | I360 | | WEB SERVICE/SUBSCRIPTION | 10/11/2020 0:00 | 1871.03 |
| C00658385 | MARK GREEN FOR CONGRESS | I360 | IL | | DATA | 11/18/2020 0:00 | 1374.3 |
| C00701433 | CHELE FARLEY FOR CONGRESS INC. | I360 | VA | | DATA MANAGEMENT | 10/30/2020 0:00 | 3715.62 |
| C00491357 | STEVE DAINES FOR MONTANA | I360 | MD | | DATA SUBSCRIPTION | 4/16/2020 0:00 | 37.5 |
| C00491357 | STEVE DAINES FOR MONTANA | I360 | MD | | DATA SUBSCRIPTION | 11/12/2019 0:00 | 37.5 |
| C00491357 | STEVE DAINES FOR MONTANA | I360 | MD | | DATA SUBSCRIPTION | 10/24/2019 0:00 | 37.5 |
| C00687103 | AMERICANS FOR PROSPERITY ACTION, INC | I360 LLC | MD | | DATA SERVICES | 11/12/2020 0:00 | 37902.99 |
| C00687103 | AMERICANS FOR PROSPERITY ACTION, INC | I360 LLC | MD | | DATA SERVICES | 11/19/2020 0:00 | 8837.1 |
| C00556365 | KATKO FOR CONGRESS | I360, LLC | MD | | DATA SERVICE | 10/28/2020 0:00 | 2365.89 |
| C00027466 | NRSC | I360 | IL | | SUBSCRIPTION | 11/10/2020 0:00 | 3000 |
| C00027466 | NRSC | I360 | IL | | SUBSCRIPTION | 10/16/2020 0:00 | 3000 |
| C00027466 | NRSC | I360 | IL | | SUBSCRIPTION | 11/9/2020 0:00 | 3000 |
| C00027466 | NRSC | I360 | IL | | SUBSCRIPTION | 11/10/2020 0:00 | 5000 |
| C00491357 | STEVE DAINES FOR MONTANA | I360 | MD | | DATA SUBSCRIPTION | 3/11/2020 0:00 | 37.5 |
| C00757724 | COMMONWEALTH EDUCATIONAL OPPOR | I360 | IL | | DATA MANAGEMENT | 9/30/2020 0:00 | 500 |
| C00628917 | FRIENDS OF DUSTY JOHNSON | I360, LLC | IL | FRIENDS OF DUSTY JOHNSON | CAMPAIGN SOFTWARE | 8/17/2020 0:00 | 1075.06 |
| C00723072 | MONICA DE LA CRUZ HERNANDEZ FOR US | I360, LLC | IL | | INVOICE 07142014275001 | 8/25/2020 0:00 | 3945.73 |
| C00723072 | MONICA DE LA CRUZ HERNANDEZ FOR US | I360, LLC | IL | | INVOICE 0811201275001 | 8/25/2020 0:00 | 549.67 |
| C00721357 | JANET BARRESI FOR CONGRESS | I360 | IL | | SUBSCRIPTION | 7/22/2020 0:00 | 2000 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 12/1/20; SEE : | 12/8/2020 0:00 | -45.36 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 12/1/20; SEE : | 12/3/2020 0:00 | -3246.12 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 12/1/20; SEE : | 12/1/2020 0:00 | -1373.64 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PRE-PAYMENT FOR DECEMBER P: | 12/1/2020 0:00 | 89360.94 |

| ID | Name | Entity | State | Name2 | Description | Date | Amount |
|---|---|---|---|---|---|---|---|
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 12/1/20; SEE : | 12/20/2020 0:00 | -107.58 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 12/1/20; SEE : | 12/18/2020 0:00 | -1133.64 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 12/1/20; SEE : | 12/15/2020 0:00 | -4361.46 |
| C00720078 | JAY OBERNOLTE FOR CONGRESS 2020 | I360 | IL | | SOFTWARE SUBSCRIPTION | 9/16/2020 0:00 | 150 |
| C00720078 | JAY OBERNOLTE FOR CONGRESS 2020 | I360 | IL | | SOFTWARE SUBSCRIPTION | 4/3/2020 0:00 | 2001.35 |
| C00597789 | JERRY CARL FOR CONGRESS | I360 | IL | | DATA SUBSCRIPTION SERVICE / PI | 10/13/2020 0:00 | 2001.44 |
| C00721332 | DARRELL ISSA FOR CONGRESS | I360, LLC | IL | | DATA STORAGE COSTS | 8/13/2020 0:00 | 300 |
| C00652743 | JOHN ROSE FOR TENNESSEE | I360, LLC | IL | | SUBSCRIPTIONS | 7/22/2020 0:00 | 112.5 |
| C00652743 | JOHN ROSE FOR TENNESSEE | I360, LLC | IL | | SUBSCRIPTIONS | 9/22/2020 0:00 | 112.5 |
| C00700559 | GREG RATHS FOR CONGRESS 2020 | I360 | IL | | VOTER LISTS | 9/12/2020 0:00 | 1210 |
| C00393629 | MCHENRY FOR CONGRESS | I360 | MD | | DATA SERVICE | 10/9/2020 0:00 | 2799.57 |
| C00620518 | MARCO RUBIO FOR SENATE | I360 | IL | | DATA SERVICE | 8/10/2020 0:00 | 10000 |
| C00527457 | FRIENDS OF DAVE JOYCE | I360, LLC | IL | | VOTER CONTACT SOFTWARE | 10/7/2020 0:00 | 1179.91 |
| C00655332 | CLOUD FOR CONGRESS | I360, LLC | IL | | SOFTWARE SERVICE | 12/17/2020 0:00 | 112.5 |
| C00686040 | MCSALLY FOR SENATE INC | I360 | IL | | SOFTWARE | 11/30/2020 0:00 | 108930.87 |
| C00721332 | DARRELL ISSA FOR CONGRESS | I360, LLC | IL | | SOFTWARE SERVICE FOR VOTER ( | 12/9/2020 0:00 | 3018.76 |
| C00726042 | LISA MCCLAIN FOR CONGRESS | I360 | VA | LISA MCCLAIN FOR CONGRESS | CAMPAIGN ADVERTISING | 7/24/2020 0:00 | 1000 |
| C00726687 | PAUL JUNGE FOR CONGRESS | I360, LLC | IL | | SUBSCRIPTION | 7/20/2020 0:00 | 1800 |
| C00726687 | PAUL JUNGE FOR CONGRESS | I360, LLC | IL | | SUBSCRIPTION | 7/20/2020 0:00 | 1200 |
| C00476291 | JUSTIN AMASH FOR CONGRESS | I360 | MD | | CAMPAIGN SOFTWARE | 7/23/2020 0:00 | 150 |
| C00738666 | FRIENDS OF MATT GURTLER, INC. | I360 | IL | | DATA MANAGEMENT SERVICES | 7/28/2020 0:00 | 1100 |
| C00509729 | THOMAS MASSIE FOR CONGRESS | I360, LLC | IL | | MESSAGE PHONE CALLS | 10/3/2020 0:00 | 250 |
| C00376939 | MARSHA FOR SENATE | I360 LLC | IL | | SUBSCRIPTIONS | 8/19/2020 0:00 | 300 |
| C00708289 | GREENE FOR CONGRESS | I360 | IL | | VOTER DATA FILES APPENDED AN | 7/24/2020 0:00 | 1133.04 |
| C00708289 | GREENE FOR CONGRESS | I360 | IL | | VOTER DATA FILES APPENDED AN | 9/24/2020 0:00 | 2294.31 |
| C00658401 | GREG PENCE FOR CONGRESS | I360 LLC | IL | | VOTER DATA SOFTWARE EXPENSI | 10/7/2020 0:00 | 102 |
| C00726687 | PAUL JUNGE FOR CONGRESS | I360, LLC | IL | | SUBSCRIPTION | 10/13/2020 0:00 | 3606.99 |
| C00710962 | PETER MEIJER FOR CONGRESS | I360, LLC | IL | | DATA MANAGEMENT | 10/13/2020 0:00 | 8949.01 |
| C00670695 | ROMNEY FOR UTAH INC | I360, LLC | IL | | SUBSCRIPTION | 8/25/2020 0:00 | 780 |
| C00715854 | ALEK FOR OREGON | I360 | VA | | DATABASE SERVICES | 10/7/2020 0:00 | 865.89 |
| C00704064 | NEESE FOR CONGRESS | I360, LLC | IL | | SUBSCRIPTION | 9/29/2020 0:00 | 1981.22 |
| C00311043 | BRADY FOR CONGRESS | I360, LLC | IL | | DATABASE SERVICES | 7/21/2020 0:00 | 5788.27 |
| C00311043 | BRADY FOR CONGRESS | I360, LLC | IL | | DATABASE SERVICES | 9/24/2020 0:00 | 1000 |
| C00662767 | CHIP ROY FOR CONGRESS | I360 LLC | IL | | SUBSCRIPTION | 11/2/2020 0:00 | 2460 |
| C00720375 | BARRY MOORE FOR CONGRESS | I360, INC | IL | | FUNDRAISING MAILOUT | 10/19/2020 0:00 | 4866.8 |
| C00620518 | MARCO RUBIO FOR SENATE | I360 | IL | | DATA MANAGEMENT | 11/16/2020 0:00 | 5000 |
| C00727743 | BEN LOYOLA FOR CONGRESS, INC. | I360 LLC | IL | | DATA SERVICES SOFTWARE | 3/1/2020 0:00 | 1000 |
| C00727743 | BEN LOYOLA FOR CONGRESS, INC. | I360, LLC | IL | | DATA  INVOICE # 0218201423740 | 2/27/2020 0:00 | 427.4 |
| C00491357 | STEVE DAINES FOR MONTANA | I360 | MD | | DATA SUBSCRIPTION | 6/23/2020 0:00 | 37.5 |
| C00661561 | BEN CLINE FOR CONGRESS, INC. | I360, LLC | IL | | SUBSCRIPTION | 7/2/2020 0:00 | 112.5 |
| C00661561 | BEN CLINE FOR CONGRESS, INC. | I360, LLC | IL | | SUBSCRIPTION | 9/8/2020 0:00 | 112.5 |
| C00710103 | NANCY MACE FOR CONGRESS | I360, LLC | IL | | SOFTWARE | 9/21/2020 0:00 | 1000 |
| C00301838 | STEVE CHABOT FOR CONGRESS | I360, LLC | IL | | DATA/SOFTWARE | 9/23/2020 0:00 | 5500 |
| C00464032 | TOM REED FOR CONGRESS | I360, LLC | IL | | DATA/SOFTWARE | 4/2/2020 0:00 | 2250 |
| C00693663 | FEENSTRA FOR CONGRESS | I360 | MD | | DATA | 9/25/2020 0:00 | 642.15 |
| C00530766 | WOMEN SPEAK OUT PAC | I360 | MD | | DATA SUBSCRIPTION SERVICES | 9/2/2020 0:00 | 500 |
| C00658401 | GREG PENCE FOR CONGRESS | I360 LLC | IL | | VOTER DATA SOFTWARE EXPENSI | 7/27/2020 0:00 | 102 |
| C00658401 | GREG PENCE FOR CONGRESS | I360 LLC | IL | | VOTER DATA SOFTWARE EXPENSI | 8/19/2020 0:00 | 102 |
| C00726042 | LISA MCCLAIN FOR CONGRESS | I360 | VA | LISA MCCLAIN FOR CONGRESS | CAMPAIGN MARKETING | 10/15/2020 0:00 | 1000 |
| C00726042 | LISA MCCLAIN FOR CONGRESS | I360 | VA | LISA MCCLAIN FOR CONGRESS | CAMPAIGN MARKETING | 11/12/2020 0:00 | 1098.63 |
| C00701672 | TUBERVILLE FOR SENATE, INC. | I360 LLC | IL | | DATA SUBSCRIPTION SERVICES / | 10/12/2020 0:00 | 9241.67 |
| C00701003 | HUNT FOR CONGRESS | I360 LLC | IL | | SUBSCRIPTION - DATABASE SERVI | 8/14/2020 0:00 | 900 |
| C00701003 | HUNT FOR CONGRESS | I360 LLC | IL | | SUBSCRIPTION - DATABASE SERVI | 9/4/2020 0:00 | 900 |
| C00701003 | HUNT FOR CONGRESS | I360 LLC | IL | | SUBSCRIPTION - DATABASE SERVI | 9/25/2020 0:00 | 900 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PRE-PAYMENT SEPTEMBER 2020 | 9/1/2020 0:00 | 159467.07 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 9/15/2020 0:00 | -3776.08 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 9/16/2020 0:00 | -5984.12 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 9/17/2020 0:00 | -7927.68 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 9/19/2020 0:00 | -25882.44 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 9/21/2020 0:00 | -11051.74 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 9/22/2020 0:00 | -10357.81 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 9/29/2020 0:00 | -7056.42 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 9/30/2020 0:00 | -1355.58 |
| C00706614 | TONY GONZALES FOR CONGRESS | I360 LLC | IL | | WEB SERVICE/SUBSCRIPTION | 8/3/2020 0:00 | 4015.11 |
| C00706614 | TONY GONZALES FOR CONGRESS | I360 LLC | IL | | WEB SERVICE/SUBSCRIPTION | 8/24/2020 0:00 | 3737.94 |
| C00392688 | MCCAUL FOR CONGRESS, INC | I360 LLC | IL | | DATABASE SERVICES | 7/28/2020 0:00 | 2200 |
| C00547976 | BEN SASSE FOR U.S. SENATE, INC. | I360, LLC | MD | | DATA SUBSCRIPTION | 4/23/2019 0:00 | 900 |
| C00547976 | BEN SASSE FOR U.S. SENATE, INC. | I360, LLC | MD | | DATA SUBSCRIPTION | 7/23/2020 0:00 | 3634.25 |
| C00546788 | JONI FOR IOWA | I360 LLC | IL | | SUBSCRIPTION | 7/8/2020 0:00 | 3732.88 |
| C00546788 | JONI FOR IOWA | I360 LLC | IL | | SUBSCRIPTION | 9/9/2020 0:00 | 1500 |
| C00558445 | ARIZONA GRASSROOTS ACTION PAC | I360 | MD | | WEB SERVICES | 11/2/2020 0:00 | 6751.72 |
| C00628917 | FRIENDS OF DUSTY JOHNSON | I360, LLC | IL | FRIENDS OF DUSTY JOHNSON | CAMPAIGN SOFTWARE | 10/20/2020 0:00 | 2767.93 |
| C00628917 | FRIENDS OF DUSTY JOHNSON | I360, LLC | IL | FRIENDS OF DUSTY JOHNSON | CAMPAIGN SOFTWARE | 11/19/2020 0:00 | 6237.7 |
| C00733881 | JOHN CLARK FOR CONGRESS | I360, LLC | IL | | TELE TOWN HALL VOTER DATA C( | 5/12/2020 0:00 | 419.18 |
| C00733881 | JOHN CLARK FOR CONGRESS | I360, LLC | IL | | TELE TOWN HALL VOTER DATA C( | 6/23/2020 0:00 | 814.71 |
| C00682179 | JOSHUA SCOTT FOR CONGRESS | I360, LLC | IL | | SURVEY | 7/3/2020 0:00 | 750 |
| C00735910 | CARMELITA FOR CONGRESS | I360 | IL | | PRIMARY SUBSCRIPTION | 8/20/2020 0:00 | 1640.9 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | PRE-PAYMENT FOR OCTOBER TEX | 10/1/2020 0:00 | 276329.72 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/1/2020 0:00 | -11317.32 |
| C00547893 | ELISE FOR CONGRESS | I360 LLC | IL | | SUBSCRIPTION | 7/10/2020 0:00 | 4063.6 |
| C00547893 | ELISE FOR CONGRESS | I360 LLC | IL | | SUBSCRIPTION/TELEPHONE SERV | 7/22/2020 0:00 | 11255.06 |
| C00547893 | ELISE FOR CONGRESS | I360 LLC | IL | | SUBSCRIPTIONS/TELEPHONE SERV | 8/21/2020 0:00 | 11715.01 |
| C00687103 | AMERICANS FOR PROSPERITY ACTION, IN( | I360 LLC | MD | | DATA SERVICES | 9/30/2020 0:00 | 2776.65 |

| ID | Name | Entity | State | Memo | Description | Date | Amount |
|---|---|---|---|---|---|---|---|
| C00608695 | MIKE JOHNSON FOR LOUISIANA | 1360, LLC | MD | | ELECTRONIX | 11/3/2020 0:00 | 15580.83 |
| C00608695 | MIKE JOHNSON FOR LOUISIANA | 1360, LLC | MD | | ELECTRONIX | 9/14/2020 0:00 | 1661.71 |
| C00720078 | JAY OBERNOLTE FOR CONGRESS 2020 | 1360 | IL | | SOFTWARE SUBSCRIPTION | 10/10/2020 0:00 | 427.86 |
| C00720078 | JAY OBERNOLTE FOR CONGRESS 2020 | 1360 | IL | | SOFTWARE SUBSCRIPTION | 10/10/2020 0:00 | 722.14 |
| C00311043 | BRADY FOR CONGRESS | 1360, LLC | IL | | DATABASE SERVICES | 11/8/2020 0:00 | 8689.99 |
| C00395467 | JEFF FORTENBERRY FOR UNITED STATES C | 1360 LLC | IL | | DISTRICT VOTER SUBSCRIPTION | 10/23/2020 0:00 | 3579.68 |
| C00395467 | JEFF FORTENBERRY FOR UNITED STATES C | 1360 LLC | IL | | DISTRICT VOTER SUBSCRIPTION | 9/23/2020 0:00 | 14499.11 |
| C00464032 | TOM REED FOR CONGRESS | 1360, LLC | IL | | DATA SUBSCRIPTION | 8/27/2020 0:00 | 4209.25 |
| C00735688 | BOGNET FOR CONGRESS | 1360, LLC | VA | | DATA SERVICES | 8/5/2020 0:00 | 453.1 |
| C00530766 | WOMEN SPEAK OUT PAC | 1360 | MD | | DATA SUBSCRIPTION SERVICES | 10/21/2020 0:00 | 5000 |
| C00530766 | WOMEN SPEAK OUT PAC | 1360 | MD | | DATA SUBSCRIPTION SERVICES | 11/17/2020 0:00 | 15500 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/25/2020 0:00 | -12375.21 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/26/2020 0:00 | -15218.44 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/27/2020 0:00 | -14653.86 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/28/2020 0:00 | -28726.74 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/29/2020 0:00 | -31227.33 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/30/2020 0:00 | -23236.62 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/31/2020 0:00 | -12154.11 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PRE-PAYMENT FOR NOVEMBER P | 11/15/2020 0:00 | 40000 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | P2P TEXTS (IE PAID 11/15/2020 - . | 11/16/2020 0:00 | -3155.16 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | IE - P2P TEXTS (IE PAID 11/15/202 | 11/17/2020 0:00 | -3313.56 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | IE - P2P TEXTS (IE PAID 11/15/202 | 11/18/2020 0:00 | -1188.6 |
| C00715854 | ALEK FOR OREGON | 1360 | VA | | DATABASE SERVICES | 8/24/2020 0:00 | 1210 |
| C00715854 | ALEK FOR OREGON | 1360 | VA | | DATABASE SERVICES | 9/22/2020 0:00 | 1210 |
| C00572457 | FRIENDS OF DAVE JOYCE | 1360 | IL | | VOTER CONTACT SOFTWARE | 9/23/2020 0:00 | 1480.47 |
| C00704064 | NEESE FOR CONGRESS | 1360, LLC | IL | | SUBSCRIPTION | 9/4/2020 0:00 | 1383.54 |
| C00498345 | MULLIN FOR CONGRESS | 1360, LLC | IL | | DATA STORAGE | 8/24/2020 0:00 | 302.67 |
| C00311043 | BRADY FOR CONGRESS | 1360, LLC | IL | | DATABASE SERVICES | 8/12/2020 0:00 | 5069.28 |
| C00546788 | JONI FOR IOWA | 1360, LLC | IL | | SUBSCRIPTION | 11/17/2020 0:00 | 1746.58 |
| C00711432 | ERIC EARLY FOR CONGRESS 2020 | 1360, LLC | IL | | ONLINE SUBSCRIPTION-DATA SER | 11/19/2020 0:00 | 3718.36 |
| C00716571 | GADE FOR VIRGINIA, INC. | 1360, LLC | IL | | COMPUTER AND INTERNET EXPEI | 11/30/2020 0:00 | 15000 |
| C00620518 | MARCO RUBIO FOR SENATE | 1360 | IL | | DATA MANAGEMENT | 12/31/2020 0:00 | 2500 |
| C00655332 | CLOUD FOR CONGRESS | 1360 LLC | IL | | SOFTWARE SERVICE | 7/21/2020 0:00 | 112.5 |
| C00655332 | CLOUD FOR CONGRESS | 1360 LLC | IL | | SOFTWARE SERVICE | 9/22/2020 0:00 | 112.5 |
| C00743153 | BOB HAMILTON FOR KANSAS INC. | 1360 | | | DATABASE SERVICES | 10/1/2020 0:00 | 2780 |
| C00661561 | BEN CLINE FOR CONGRESS, INC. | 1360, LLC | IL | | SUBSCRIPTION | 8/7/2020 0:00 | 112.5 |
| C00710103 | NANCY MACE FOR CONGRESS | 1360, LLC | IL | | SOFTWARE | 8/24/2020 0:00 | 1009.05 |
| C00301838 | STEVE CHABOT FOR CONGRESS | 1360, LLC | IL | | DATA/SOFTWARE | 7/28/2020 0:00 | 1000 |
| C00704064 | NEESE FOR CONGRESS | 1360, LLC | IL | | SUBSCRIPTION | 8/3/2020 0:00 | 1919.17 |
| C00693663 | FEENSTRA FOR CONGRESS | 1360 | MD | | DATA | 8/5/2020 0:00 | 5650.07 |
| C00726042 | LISA MCCLAIN FOR CONGRESS | 1360 | VA | LISA MCCLAIN FOR CONGRESS | WEBSITE FEES | 10/6/2020 0:00 | 1000 |
| C00530766 | WOMEN SPEAK OUT PAC | 1360 | MD | | DATA SUBSCRIPTION SERVICES | 9/28/2020 0:00 | 500 |
| C00658401 | GREG PENCE FOR CONGRESS | 1360 LLC | IL | | VOTER DATA SOFTWARE EXPENSI | 9/25/2020 0:00 | 102 |
| C00661561 | BEN CLINE FOR CONGRESS, INC. | 1360, LLC | IL | | SUBSCRIPTION | 10/13/2020 0:00 | 112.5 |
| C00706614 | TONY GONZALES FOR CONGRESS | 1360 LLC | IL | | PHONE MESSAGINE SVC | 10/8/2020 0:00 | 2339.98 |
| C00662767 | CHIP ROY FOR CONGRESS | 1360 LLC | IL | | SUBSCRIPTION | 10/2/2020 0:00 | 3271.72 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 9/1/2020 0:00 | -1397.17 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 9/6/2020 0:00 | -6842.19 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | IE - P2P TEXTING (SEE PAYMENT ( | 9/19/2020 0:00 | 869.7 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 9/2/2020 0:00 | -4740.03 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 9/3/2020 0:00 | -5818.66 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 9/8/2020 0:00 | -46.74 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 9/10/2020 0:00 | -1878.34 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 9/12/2020 0:00 | -7122.26 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 9/14/2020 0:00 | -10448.71 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 9/23/2020 0:00 | -8094.44 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 9/24/2020 0:00 | -5489.22 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 9/27/2020 0:00 | -17084.69 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | PHONE BANKS AND P2P TEXTS (IE | 9/28/2020 0:00 | -13245.67 |
| C00706614 | TONY GONZALES FOR CONGRESS | 1360 LLC | IL | | WEB SERVICE/SUBSCRIPTION | 9/8/2020 0:00 | 5946.95 |
| C00701003 | HUNT FOR CONGRESS | 1360 LLC | IL | | SUBSCRIPTION - DATABASE SERVI | 10/12/2020 0:00 | 900 |
| C00547976 | BEN SASSE FOR U.S. SENATE, INC. | 1360, LLC | MD | | DATA SUBSCRIPTION | 6/18/2019 0:00 | 300 |
| C00547976 | BEN SASSE FOR U.S. SENATE, INC. | 1360, LLC | MD | | DATA SUBSCRIPTION | 8/19/2019 0:00 | 4500 |
| C00546788 | JONI FOR IOWA | 1360 LLC | IL | | SUBSCRIPTION | 7/24/2020 0:00 | 1500 |
| C00546788 | JONI FOR IOWA | 1360 LLC | IL | | SUBSCRIPTION | 9/30/2020 0:00 | 1500 |
| C00723072 | MONICA DE LA CRUZ HERNANDEZ FOR US | 1360, LLC | IL | | INVOICE 0914201427S001 | 11/10/2020 0:00 | 2642.15 |
| C00733881 | JOHN CLARK FOR CONGRESS | 1360 LLC | IL | | TELE TOWIX | 5/4/2020 0:00 | 210.5 |
| C00733881 | JOHN CLARK FOR CONGRESS | 1360 LLC | IL | | TELE TOWIX | 6/1/2020 0:00 | 638.24 |
| C00658385 | MARK GREEN FOR CONGRESS | 1360 | IL | | DATA | 10/7/2020 0:00 | 3130.52 |
| C00658385 | MARK GREEN FOR CONGRESS | 1360 | IL | | DATA | 10/13/2020 0:00 | 1267.02 |
| C00682179 | JOSHUA SCOTT FOR CONGRESS | 1360, LLC | IL | | SURVEY | 9/4/2020 0:00 | 750 |
| C00682179 | JOSHUA SCOTT FOR CONGRESS | 1360, LLC | IL | | SURVEY | 9/4/2020 0:00 | 750 |
| C00682179 | JOSHUA SCOTT FOR CONGRESS | 1360, LLC | IL | | SURVEY | 9/16/2020 0:00 | 750 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/5/2020 0:00 | -6299.22 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/5/2020 0:00 | -37869.06 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/6/2020 0:00 | -3833.22 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/7/2020 0:00 | -3786.66 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/8/2020 0:00 | -7087.14 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/11/2020 0:00 | -10301.82 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/13/2020 0:00 | -351.6 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/14/2020 0:00 | -93.96 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | 1360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/12/2020 0:00 | -1734 |
| C00657981 | FRIENDS OF STEVE NEGRON | 1360, LLC | IL | | DATA | 10/28/2020 0:00 | 1210 |

| ID | Committee | Vendor | State | Note | Description | Date | Amount |
|---|---|---|---|---|---|---|---|
| C00652149 | BURCHETT FOR CONGRESS | I360 LLC | IL | | SOFTWARE / ANALYTICS | 11/10/2020 0:00 | 1329.34 |
| C00570994 | ALASKANS FOR DAN SULLIVAN | I360, LLC | MD | | DATA MANAGEMENT SERVICES | 11/19/2020 0:00 | 19143.93 |
| C00721092 | DAVID HILL FOR OKLAHOMA, INC. | I360 LLC | IL | | DATABASE SERVICES | 11/12/2020 0:00 | 1509 |
| C00393629 | MCHENRY FOR CONGRESS | I360 | MD | | WEB SERVICES | 11/22/2020 0:00 | 3183.32 |
| C00464032 | TOM REED FOR CONGRESS | I360, LLC | IL | | DATA SUBSCRIPTION | 7/7/2020 0:00 | 3166.83 |
| C00464032 | TOM REED FOR CONGRESS | I360, LLC | IL | | DATA SUBSCRIPTION | 9/2/2020 0:00 | 3123.67 |
| C00735688 | BOGNET FOR CONGRESS | I360, LLC | VA | | DATA SERVICES | 7/1/2020 0:00 | 2395.64 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | NONFEDERAL IE - PHONE BANKS , | 11/4/2020 0:00 | 64000.68 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/15/2020 0:00 | -1150.2 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/16/2020 0:00 | -21.54 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/17/2020 0:00 | -4186.02 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/19/2020 0:00 | -2174.04 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/20/2020 0:00 | -23.52 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/21/2020 0:00 | -19593.81 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/22/2020 0:00 | -3760.86 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/23/2020 0:00 | -1761.18 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | P2P TEXTS (IE PAID 10/1/20; SEE : | 10/24/2020 0:00 | -10352.49 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | IE - P2P TEXTS (IE PAID 11/15/202 | 11/19/2020 0:00 | -11352.3 |
| C00053553 | NATIONAL RIFLE ASSOCIATION OF AMERIC | I360, LLC | IL | | IE - P2P TEXTS (IE PAID 11/15/202 | 11/22/2020 0:00 | -13901.22 |
| C00715854 | ALEK FOR OREGON | I360 | VA | | DATABASE SERVICES | 8/24/2020 0:00 | 1210 |
| C00715854 | ALEK FOR OREGON | I360 | VA | | DATABASE SERVICES | 8/27/2020 0:00 | 0.59 |
| C00527457 | FRIENDS OF DAVE JOYCE | I360 | | | VOTER CONTACT SOFTWARE | 7/25/2020 0:00 | 2407.92 |
| C00527457 | FRIENDS OF DAVE JOYCE | I360 | | | VOTER CONTACT SOFTWARE | 9/30/2020 0:00 | 8550.68 |
| C00737767 | VICTORIA SPARTZ FOR CONGRESS | I360, LLC | IL | | CAMPAIGN SOFTWARE | 8/18/2020 0:00 | 7161.52 |
| C00737767 | VICTORIA SPARTZ FOR CONGRESS | I360, LLC | IL | | CAMPAIGN DATA | 9/21/2020 0:00 | 1560 |
| C00556365 | KATKO FOR CONGRESS | I360, LLC | MD | | DATA SERVICE | 7/3/2020 0:00 | 2000 |
| C00556365 | KATKO FOR CONGRESS | I360, LLC | MD | | DATA SERVICE | 7/29/2020 0:00 | 1081.54 |
| C00655332 | CLOUD FOR CONGRESS | I360 LLC | IL | | SOFTWARE SERVICE | 8/14/2020 0:00 | 112.5 |
| C00710103 | NANCY MACE FOR CONGRESS | I360, LLC | IL | | SOFTWARE | 10/23/2020 0:00 | 1012.51 |
| C00726042 | LISA MCCLAIN FOR CONGRESS | I360 | VA | | CAMPAIGN MARKETING | 4/20/2020 0:00 | 460.27 |
| C00726042 | LISA MCCLAIN FOR CONGRESS | I360 | VA | LISA MCCLAIN FOR CONGRESS | CAMPAIGN MARKETING | 5/13/2020 0:00 | 1000 |
| C00726042 | LISA MCCLAIN FOR CONGRESS | I360 | VA | LISA MCCLAIN FOR CONGRESS | CAMPAIGN MARKETING | 6/15/2020 0:00 | 1000 |
| C00691931 | PARROTT FOR CONGRESS | I360 | VA | | VOTER COI X | 10/5/2020 0:00 | 1288 |
| C00691931 | PARROTT FOR CONGRESS | I360 | VA | | VOTER COI X | 10/6/2020 0:00 | 0.81 |
| C00691931 | PARROTT FOR CONGRESS | I360 | VA | | VOTER COI X | 11/6/2020 0:00 | 46.27 |
| C00670695 | ROMNEY FOR UTAH INC | I360, LLC | IL | | SUBSCRIPTION | 10/13/2020 0:00 | 1950 |
| C00384529 | LISA MURKOWSKI FOR US SENATE | I360 LLC | MD | | ONLINE DATABASE SERVICES | 12/22/2020 0:00 | 150 |
| C00393629 | MCHENRY FOR CONGRESS | I360 | MD | | WEB SERVICES | 12/21/2020 0:00 | 150.9 |
| C00547893 | ELISE FOR CONGRESS | I360 LLC | IL | | SUBSCRIPTION/DATA | 10/20/2020 0:00 | 24559.24 |
| C00706614 | TONY GONZALES FOR CONGRESS | I360 LLC | IL | | PHONE MESSAGINE SVC | 11/23/2020 0:00 | 2197.26 |
| C00717421 | GRIT PAC | I360 | IL | | DATABASE SERVICES | 10/1/2020 0:00 | 9090 |
| C00710962 | PETER MEIJER FOR CONGRESS | I360, LLC | IL | | DATA MANAGEMENT | 4/20/2020 0:00 | 1819.94 |
| C00207993 | FRIENDS OF JIM INHOFE | I360, LLC | IL | | DATA SERVICES | 7/2/2020 0:00 | 500 |
| C00207993 | FRIENDS OF JIM INHOFE | I360, LLC | IL | | DATA SERVICES | 7/22/2020 0:00 | 2341.73 |
| C00207993 | FRIENDS OF JIM INHOFE | I360, LLC | IL | | DATA SERVICES | 8/14/2020 0:00 | 2662.09 |
| C00207993 | FRIENDS OF JIM INHOFE | I360, LLC | IL | | DATA SERVICES | 9/23/2020 0:00 | 3257.62 |
| C00556365 | KATKO FOR CONGRESS | I360, LLC | MD | | DATA SERVICE | 9/26/2020 0:00 | 3720.4 |
| C00666040 | MCSALLY FOR SENATE INC | I360 | IL | | SOFTWARE | 10/23/2020 0:00 | 2876 |
| C00710103 | NANCY MACE FOR CONGRESS | I360, LLC | IL | | SOFTWARE | 11/6/2020 0:00 | 1098.63 |
| C00491357 | STEVE DAINES FOR MONTANA | I360 | MD | | DATA SUBSCRIPTION | 10/6/2020 0:00 | 3.7 |
| C00464032 | TOM REED FOR CONGRESS | I360, LLC | IL | | DATA SUBSCRIPTION | 11/9/2020 0:00 | 10263.27 |
| C00715698 | JEFF COLEMAN FOR CONGRESS, INC. | I360 LLC | CA | | DIGITAL SERVICES | 12/23/2020 0:00 | 2905.14 |
| C00691931 | PARROTT FOR CONGRESS | I360 | VA | | VOTER COI X | 10/7/2020 0:00 | 605 |
| C00691931 | PARROTT FOR CONGRESS | I360 | VA | | VOTER COI X | 11/2/2020 0:00 | 1210 |
| C00509729 | THOMAS MASSIE FOR CONGRESS | I360 LLC | IL | | MESSAGE PHONE CALLS | 12/29/2020 0:00 | 133.15 |
| C00384529 | LISA MURKOWSKI FOR US SENATE | I360 LLC | MD | | ONLINE DATABASE SERVICES | 10/29/2020 0:00 | 150 |
| C00384529 | LISA MURKOWSKI FOR US SENATE | I360 LLC | MD | | ONLINE DATABASE SERVICES | 12/2/2020 0:00 | 150 |
| C00547893 | ELISE FOR CONGRESS | I360 LLC | IL | | SUBSCRIPTION/DATA SERVICE | 11/6/2020 0:00 | 29471.11 |
| C00706614 | TONY GONZALES FOR CONGRESS | I360, LLC | IL | | PHONE MESSAGINE SVC | 10/23/2020 0:00 | 2162.27 |
| C00710962 | PETER MEIJER FOR CONGRESS | I360, LLC | IL | | DATA MANAGEMENT | 5/12/2020 0:00 | 1949.49 |
| C00710962 | PETER MEIJER FOR CONGRESS | I360, LLC | IL | | DATA MANAGEMENT | 4/6/2020 0:00 | 1124.38 |
| C00710962 | PETER MEIJER FOR CONGRESS | I360, LLC | IL | | DATA MANAGEMENT & GOTV | 6/22/2020 0:00 | 8691.41 |

# Exhibit K

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| JENNIFER M. TAG, STATE BAR NO. 252867<br>POST OFFICE BOX 500113<br>SAN DIEGO, CA 92150-0113<br><br>TELEPHONE NO.: (619) 441-4721          FAX NO.(Optional):<br><br>EMAIL ADDRESS (Optional):<br><br>ATTORNEY FOR (Name): Self | **F I L E D**<br>Clerk of the Superior Court<br><br>NOV 0 1 2019<br><br>By: C. Vasquez, Deputy |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO<br>CENTRAL DIVISION, CIVIL, 330 W. BROADWAY, ROOM 225, SAN DIEGO, CA 92101 | |
| APPLICATION OF<br>JENNIFER M. TAG | |
| **APPLICATION AND ORDER DECLARING INFORMATION ON<br>AFFIDAVIT OF VOTER REGISTRATION CONFIDENTIAL** | CASE NUMBER<br>**37-2019-00058130-CU-PT-CTL** |

Applicant applies for an order declaring the residence address, telephone number, and email address listed on applicant's affidavit of voter registration declared confidential and not a public record.

## DECLARATION

I, JENNIFER M. TAG                    , declare that in accordance with Elec. Code § 2166 a life threatening circumstance exists to me or a member of my household in that:
I am a deputy district attorney for the San Diego County District Attorney's Office and have been so employed for the last 12 years. I am currently assigned to the Sex Crimes and Human Trafficking Division. Within that assignment I prosecute cases involving child molestation, rape, kidnapping, human trafficking, stalking, and all forms of sexual assault. I have young children who reside with me at home. I have been the target of threatening letters from stalkers I have prosecuted who have turned their fixation to me. It is my belief that the defendants I prosecute pose an extreme danger to me and my family, especially my young children. As such, I believe good cause exists for, and I hereby respectfully request, that my home address, and any other identifying information about me or my family, be ordered sealed and/or confidential, and thereby restricted from release as a public record.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: _10-31-19_                    _Jennifer M. Tag_
                                                         Signature of Applicant

## ORDER

Good cause appearing, the San Diego County Registrar of Voters is **ORDERED** to keep confidential the residence address, telephone number, and email address information appearing on the affidavit of voter registration of applicant, _Jennifer M. Tag_          , pursuant to Elec. Code § 2166.

                                                         PETER C. DEDDEH
                                                         Judge

Date: _NOV 0 4 2019_          _____
                                                         Judge of the Superior Court

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

Central
330 West Broadway
San Diego, CA 92101

**SHORT TITLE:** Jennifer M Tag [Imaged]

| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | CASE NUMBER:<br>**37-2019-00058130-CU-PT-CTL** |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of the Application and Order Declaring Information on Affidavit of Voter Registration Confidential was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at <u>San Diego</u>, California, on <u>11/04/2019</u>.

Clerk of the Court, by: _____, Deputy
T. Stippat

JENNIFER  M TAG
P.O.BOX 500113
SAN DIEGO, CA 92150-0113

☐ Additional names and address attached.

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

Page: 1

Exhibit K, 3 of 3

# Exhibit L

# Gmail

**Chat transcript**

**LiveChat** <support@livechatinc.com>
Reply-To: mattjentag@gmail.com
To: mattjentag@gmail.com

Tue, Jul 28, 2020 at 2:17 PM

# Chat transcript

| | |
|---|---|
| Visitor | Tue, 07/28/20 09:05:07 pm UTC |

I'm trying to find out what exactly i360 is and how it can be used for canvassing

| | |
|---|---|
| Chris | 09:05:07 pm |

Hi, do you have any questions about our products or pricing? I'd be happy to help!

| | |
|---|---|
| Visitor | 09:05:37 pm |

if purchased does it provide a list of voters within a certain city, and I can narrow down by political party?

| | |
|---|---|
| Chris | 09:06:59 pm |

Yes, our platform provides all of the voter data so you can define universes based on whatever criteria you'd like. You can then create a survey for the walk app that provides efficient routing for the voters you've chosen.

| | |
|---|---|
| Visitor | 09:07:41 pm |

so do we need to cross reference in any way with the county registrar of voters?

| | |
|---|---|
| Chris | 09:08:08 pm |

Nope! We already have all of the voter data.

Exhibit L, Page 2 of 4

Visitor                                                                                          09:08:22 pm

wow, so it makes it easier for us

how often is it updated? like is someone moves residences etc

*if

Chris                                                                                            09:09:00 pm

We do quarterly voter file updates and monthly NCOA (change of address) updates.

What campaign or organization would this be for?

Visitor                                                                                          09:09:42 pm

and it it automatically loaded onto the platform? so we don't have to worry and it would be

updated in real time?

Chris                                                                                            09:10:02 pm

That's right, your database will automatically update.

Visitor                                                                                          09:10:35 pm

have there been issues if someone has a confidential address? would those come through too?

my neighbor is a police officer for instance

how much does this service cost?

Chris                                                                                            09:11:10 pm

We follow all applicable laws and regulations - if their address is not on the voter file, we don't

ingest it. If its a confidential address, generally those don't make it onto the voter file.

What geography would it be for?

Visitor                                                                                          09:11:30 pm

San Diego

Chris                                                                                            09:12:30 pm

We'd be at $1,390/month. Could I get your email address for our records so I can document the

quote you were given?

Visitor                                                                                          09:13:23 pm

does the quarterly update always occur on a set date? or is it quarterly from your individual

purchase date?

Chris                                                                                            09:14:12 pm

It's not a set date as the state varies on when they will provide it, but it's approximately every

three months

Exhibit L, Page 3 of 4

Gmail - Chat transcript

7/28/20, 2:24 PM

Visitor

09:14:48 pm

okay, thank you. I'll keep this for my records, need to talk to the boss

Chris

09:15:03 pm

Could I get the name of the campaign? Thanks!

Visitor

09:15:16 pm

no papers filed yet, just thinking about it

Chris

09:15:26 pm

Got it. Your best POC will be

Visitor

09:15:33 pm

thank you for the contact

appreciate it

You archived the chat

09:17:06 pm

Duration: 11m 59s

Chat started on:

Exhibit L, Page 4 of 4

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Ronald A. Marron (SBN 175650)<br>Law Offices of Ronald A. Marron<br>651 Arroyo Drive, San Diego, California 92103<br><br>TELEPHONE NO.: 619-696-9006   FAX NO. *(Optional):*<br>ATTORNEY FOR *(Name):* Jennifer Tag | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Diego
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego 92101
BRANCH NAME: Hall of Justice

CASE NAME: Jennifer Tag, on behalf of herself, all others similarly situated, and the general public,
v. i360, LLC, a Delaware Limited Liability Company; GC Strategies, LLC, a California Limited Liability Company;
Joseph Leventhal, an individual; and DOES 1-1,000

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1.  Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[X] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2.  This case [X] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
    a. [ ] Large number of separately represented parties
    b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
    c. [ ] Substantial amount of documentary evidence
    d. [ ] Large number of witnesses
    e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
    f. [ ] Substantial postjudgment judicial supervision

3.  Remedies sought *(check all that apply):* a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4.  Number of causes of action *(specify):* Four
5.  This case [X] is  [ ] is not  a class action suit.
6.  If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: May 26, 2021

Ronald A. Marron
(TYPE OR PRINT NAME)

▶ *Ronald A. Marron*
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |
|---|---|---|

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip
and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination,
false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel)
(13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer
or wrongful eviction)*
Contract/Warranty Breach–Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage *(not provisionally
complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent
domain, landlord/tenant, or
foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
drugs, check this item; otherwise,
report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex
case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment *(non-
domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-
harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified
above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late
Claim
Other Civil Petition

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

| Print this form | Save this form | | Clear this form |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 330 W Broadway<br>MAILING ADDRESS: 330 W Broadway<br>CITY AND ZIP CODE: San Diego CA 92101-3827<br>BRANCH NAME: Central | |

| Short Title: Tag vs i360 LLC [E-FILE] | |
|---|---|

| NOTICE OF CONFIRMATION OF ELECTRONIC FILING | CASE NUMBER:<br>37-2021-00023265-CU-CR-CTL |
|---|---|

San Diego Superior Court has reviewed the electronic filing described below. The fee assessed for processing and the filing status of each submitted document are also shown below.

**Electronic Filing Summary Data**

| | |
|---|---|
| Electronically Submitted By: | Kas Gallucci |
| On Behalf of: | Jennifer Tag |
| Transaction Number: | 21018248 |
| Court Received Date: | 05/26/2021 |
| Filed Date: | 05/26/2021 |
| Filed Time: | 02:06 PM |
| Fee Amount Assessed: | $1,435.00 |
| Case Number: | 37-2021-00023265-CU-CR-CTL |
| Case Title: | Tag vs i360 LLC [E-FILE] |
| Location: | Central |
| Case Type: | Civil Rights |
| Case Category: | Civil - Unlimited |
| Jurisdictional Amount: | > 25000 |

| **Status** | **Documents Electronically Filed/Received** |
|---|---|
| Accepted | Complaint |
| Accepted | Civil Case Cover Sheet |
| Accepted | Original Summons |
| Accepted | Notice of Related Case |

**Comments**

Clerk's Comments:    Per the E-filing Requirements, All parties must be entered by the submitter.

**Events Scheduled**

| Hearing(s) | Date | Time | Location | Department |
|---|---|---|---|---|
| Civil Case Management Conference | 10/29/2021 | 01:30 PM | Central | C-73 |

05/27/2021                    **NOTICE OF CONFIRMATION OF FILING**

**Electronic Filing Service Provider Information**

Service Provider:    OneLegal
Email:    support@onelegal.com
Contact Person:    Customer Support
Phone:    (800) 938-8815

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: 330 W Broadway | |
| MAILING ADDRESS: 330 W Broadway | |
| CITY AND ZIP CODE: San Diego, CA 92101-3827 | |
| DIVISION: Central | |
| TELEPHONE NUMBER: (619) 450-7073 | |

| PLAINTIFF(S) / PETITIONER(S):   Jennifer Tag |
|---|

| DEFENDANT(S) / RESPONDENT(S):  i360 LLC et.al. |
|---|

| TAG VS I360 LLC [E-FILE] | |
|---|---|

| **NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL)** | CASE NUMBER:<br>37-2021-00023265-CU-CR-CTL |
|---|---|

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge:  Joel R. Wohlfeil                                      Department: C-73

## COMPLAINT/PETITION FILED: 05/26/2021

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 10/29/2021 | 01:30 pm | C-73 | Joel R. Wohlfeil |

**Due to the COVID-19 pandemic, all Case Management Conferences (CMCs) are being conducted virtually unless there is a court order stating otherwise.** Prior to the hearing date, visit the "virtual hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC. (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

**TIME FOR SERVICE AND RESPONSE:** The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint. An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed. If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6). If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

**JURY FEES:** In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

**COURT REPORTERS:** Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date. See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged. The court encourages and expects the parties to consider using ADR options prior to the CMC. The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases.  Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing.  E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court.  All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program."  This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain.  The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150.  Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed.  Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.

**CM-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Ronald A. Marron (SBN 175650)<br>Law Offices of Ronald A. Marron<br>651 Arroyo Drive, San Diego, California 92103 | |

TELEPHONE NO.: 619-696-9006          FAX NO. *(Optional):*

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name)*: Plaintiff Jennifer Tag

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
 STREET ADDRESS: 330 West Broadway
 MAILING ADDRESS: 330 West Broadway
 CITY AND ZIP CODE: San Diego 92101
 BRANCH NAME: Hall of Justice

| PLAINTIFF/PETITIONER: Jennifer Tag, on behalf of herself and all others similarly situated, and the general public, | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: i360, LLC, a Delaware Limited Liability Company; GC STRATEGIES, LLC, a California Limited Liability Company; JOSEPH LEVENTHAL, an individual; and DOES 1-1,000, | JUDICIAL OFFICER: |
| **NOTICE OF RELATED CASE** | DEPT.: |

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: Tag v. i360, LLC et al.

 b. Case number: Case No. 3:21-cv-00975-L-MDD

 c. Court: ☐ same as above

   ☒ other state or federal court *(name and address):* United States District Court for the Southern District of California 333 West Broadway, Ste. 420, San Diego, California 92101

 d. Department:

 e. Case type: ☐ limited civil ☒ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

 f. Filing date: May 21, 2021

 g. Has this case been designated or determined as "complex?" ☒ Yes ☐ No

 h. Relationship of this case to the case referenced above *(check all that apply):*

   ☒ involves the same parties and is based on the same or similar claims.

   ☒ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

   ☐ involves claims against, title to, possession of, or damages to the same property.

   ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

     ☐ Additional explanation is attached in attachment 1h

 i. Status of case:

   ☐ pending

   ☒ dismissed ☐ with ☒ without prejudice

   ☐ disposed of by judgment

2. a. Title:

 b. Case number:

 c. Court: ☐ same as above

     ☐ other state or federal court *(name and address):*

 d. Department:

Page 1 of 3

CM-015

| PLAINTIFF/PETITIONER: Jennifer Tag | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: i360, LLC, a Delaware Limited Liability Company; GC STRATEGIES, LLC, a California Limited Liability Company; JOSEPH LEVENTHAL, an individual; and DOES 1-1,000 | |

2. *(continued)*

   e. Case type: ☐ limited civil   ☐ unlimited civil   ☐ probate   ☐ family law   ☐ other *(specify):*

   f. Filing date:

   g. Has this case been designated or determined as "complex?"   ☐ Yes   ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

   ☐ involves the same parties and is based on the same or similar claims.

   ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

   ☐ involves claims against, title to, possession of, or damages to the same property.

   ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

   ☐ Additional explanation is attached in attachment 2h

   i. Status of case:

   ☐ pending

   ☐ dismissed   ☐ with   ☐ without prejudice

   ☐ disposed of by judgment

3. a. Title:

   b. Case number:

   c. Court: ☐ same as above

   ☐ other state or federal court *(name and address):*

   d. Department:

   e. Case type: ☐ limited civil   ☐ unlimited civil   ☐ probate   ☐ family law   ☐ other *(specify):*

   f. Filing date:

   g. Has this case been designated or determined as "complex?"   ☐ Yes   ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

   ☐ involves the same parties and is based on the same or similar claims.

   ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

   ☐ involves claims against, title to, possession of, or damages to the same property.

   ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

   ☐ Additional explanation is attached in attachment 3h

   i. Status of case:

   ☐ pending

   ☐ dismissed   ☐ with   ☐ without prejudice

   ☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: May 26, 2021

Ronald A. Marron
_____
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶ *Ronald A. Marron*
_____
(SIGNATURE OF PARTY OR ATTORNEY)

CM-015

| PLAINTIFF/PETITIONER: Jennifer Tag | CASE NUMBER: |
|---|---|
| i360, LLC, a Delaware Limited Liability Company; GC | |
| DEFENDANT/RESPONDENT: STRATEGIES, LLC, a California Limited Liability Company; | |
| JOSEPH LEVENTHAL, an individual; and DOES 1-1,000 | |

## PROOF OF SERVICE BY FIRST-CLASS MAIL

### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*
   a. ☐ deposited the sealed envelope with the United States Postal Service.
   b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:
   a. on *(date):*
   b. from *(city and state):*

4. The envelope was addressed and mailed as follows:
   a. Name of person served:

      Street address:
      City:
      State and zip code:

   b. Name of person served:

      Street address:
      City:
      State and zip code:

   c. Name of person served:

      Street address:
      City:
      State and zip code:

   d. Name of person served:

      Street address:
      City:
      State and zip code:

☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____         ▶  _____
(TYPE OR PRINT NAME OF DECLARANT)                      (SIGNATURE OF DECLARANT)