UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER TAG,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>i360, LLC et al.,<br><br>　　　　　　　　　Defendants. | Case No.: 21cv1184-L-MDD<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>**[ECF No. 18]** |

Pending before the Court is Plaintiff's motion to remand this putative class action alleging unlawful sale of confidential California voter registration records. (ECF No. 18.) Defendants filed an opposition and Plaintiff replied. For the reasons stated below, the motion is granted.

**I.　Background**

Plaintiff alleges Defendants i360, LLC ("i360") and GC Strategies, LLC ("GCS")[1] wrongfully purchased, sold and/or distributed confidential voter registration information. (Class Action Complaint ("Compl."), ECF No. 1-5.) The Complaint alleges four causes of action: (1) negligence, (2) public disclosure of private facts; (3) invasion of privacy in

---

[1]　Defendant Joseph Leventhal has been dismissed. (ECF No. 11.)

1

violation of California Constitution Art. 1, § 1; and (4) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.  Plaintiff seeks to certify a class of Californians registered to vote whose information was allegedly distributed and sold without prior approval from the California Secretary of State or California election officials, and a subclass of Californians with confidential voter status under California Elections Code § 2166.  (Compl. ¶ 129.)

Plaintiff has previously filed a nearly identical complaint in this District, case no. 21cv975-L-MDD.  Because the complaint did not allege sufficient facts to establish federal subject matter jurisdiction, it was dismissed with leave to amend.  Two days later, Plaintiff filed a notice of voluntary dismissal, dismissing the case without prejudice.

A day later, on May 27, 2021, Plaintiff commenced the instant action in state court. (*See* Notice of Removal ("Removal") at 3, ECF No. 1.)  Defendants removed the action to this Court claiming federal subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  Plaintiff moves to remand based on CAFA's local controversy exception, 28 U.S.C. § 1332(d)(4)(A).  (Mem. of P.&A. in Supp. of Pl.'s Mot. to Remand ("Mot.") at 1, ECF No. 18-1.)

**II.     Subject Matter Jurisdiction**

> Through CAFA, Congress broadened federal diversity jurisdiction over class actions by, among other things, replacing the typical requirement of complete diversity with one of only minimal diversity and allowing aggregation of class members' claims to satisfy a minimum amount in controversy of $5 million.

*Mondragon v. Capital One Auto Finance,* 736 F.3d 880, 882 (9th Cir. 2013).[2]  These requirements are met here.

The minimal diversity requirement means that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).  Plaintiff

---

[2]     Unless otherwise noted, internal quotation marks, citations, and footnotes are omitted from citations.

alleges she was a California citizen at the relevant time. (Compl. ¶ 18.) Defendants claim she currently has an address in Tennessee and argue she is a citizen of Tennessee. (Removal at 5.) They assert that i360 is a Kansas citizen. (*Id.*) Whether Plaintiff is a citizen of California or Tennessee, the minimal diversity requirement is met.

The minimum amount in controversy under CAFA is $5 million. 28 U.S.C. § 1332(d)(6). Plaintiff seeks actual, nominal, statutory, and punitive damages on behalf of the putative class. (Compl. at 39.) She estimates the putative class to comprise of more than 20 million California voters. (*Id.* ¶ 131.) It is undisputed that this action meets the $5 million minimum amount in controversy.

Based on the foregoing, the Court has subject matter jurisdiction over this case pursuant to CAFA.

### III. Local Controversy Exception

Congress "provided exceptions allowing certain class actions that would otherwise satisfy CAFA's jurisdictional requirements to be remanded to state court. Among these is the exception commonly referred to as the local controversy exception[.]" *Mondragon*, 736 F.3d at 882. This is a "narrow exception" and the plaintiff "bears the burden of showing its application." *Allen v. Boeing Co.*, 821 F.3d 1111, 1116 (9th Cir. 2016.) "However, if the exception applies, the district court must remand the case to state court." *Id.*

The exception provides as follows:

(4) A district court shall decline to exercise jurisdiction under paragraph (2)—
  (A)(i) over a class action in which—
    (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
    (II) at least 1 defendant is a defendant—
      (aa) from whom significant relief is sought by members of the plaintiff class;
      (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

> > (cc) who is a citizen of the State in which the action was originally filed; and
> >
> > (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

28 U.S.C. § 1332(d)(4)(A).  The exception is intended to

> respond to concerns that class actions with a truly local focus should not be moved to federal court under [CAFA] because state courts have a strong interest in adjudicating such disputes.  A federal court should bear in mind that the purpose of each of these criteria is to identify a truly local controversy—a controversy that uniquely affects a particular locality to the exclusion of all others.

*Allen*, 821 F.3 at 1118.

### A.     Judicial Estoppel and Other Class Actions in Prior Three Years

Defendants argue that Plaintiff's initial action, filed originally in this Court and voluntarily dismissed, requires denial of remand.  They contend that the statement in her prior complaint that, "None of the exceptions to CAFA apply to this action" (Defs' Req. for Judicial Notice ("RJN") Ex. 1 (Original Compl.) at 4, ECF No. 19-1) judicially estops her from removal based on a CAFA exception, and that it also precludes her from showing that no other class action asserting the same or similar claims has been filed in the three years prior to the instant action, *see* 28 U.S.C. § 1332(d)(4)(A)(ii).  (Opp'n to Mot. to Remand ("Opp'n") at 2, 11, ECF No. 19.)

For their judicial estoppel argument, Defendants rely in part on *American Title Insurance Co. v. Lacelaw Corp.,* 861 F.2d 224 (9th Cir.).  *Lacelaw* did not address judicial estoppel but judicial admissions.  "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing

wholly with the need for proof of the fact." *Id.* at 226.  Plaintiff's statement about CAFA exceptions is not a fact but a legal position.  Defendants' reliance on *Lacelaw* is unavailing.

By contrast, "[j]udicial estoppel ... precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Helfand v. Gerson*, 105 F.3d 530, 534 (9th Cir. 1997); *see also New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001); *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012).  Several factors are relevant in deciding whether judicial estoppel should be used as a bar in a subsequent action, including:

> (1) Is the party's later position "clearly inconsistent with its earlier position?" (2) Did the party succeed in persuading a court to accept its earlier position, creating a perception that the first or second court was misled? and (3) Will the party seeking to assert an inconsistent position "derive an unfair advantage or impose an unfair detriment on the opposing party?"

*Baughman,* 685 F.3d at 1133 (quoting *New Hampshire*, 532 U.S. at 750-51).

Plaintiff's statement in her prior action about CAFA exceptions is irrelevant because her complaint was dismissed with leave to amend for failure to allege federal jurisdiction. (RJN Ex. 2, ECF No. 19-1.)  Plaintiff therefore neither persuaded the Court to accept her position nor created a perception that the Court was misled.  Plaintiff's prior position was neither central to her claims nor did it induce settlement, *see Baughman,* 685 F.3d at 1134, as Plaintiff dismissed the complaint before Defendants made an appearance.  (*See* Decl. of Ronald Marron in Supp. of Pl.'s Reply in Supp. of Mot., Ex. 1 ("Dismissal"), ECF No. 20-2.)  Plaintiff derived no advantage, fair or unfair, from her initial position, nor does her current position unfairly strengthen the merits of her case. *See Baughman*, 685 F.3d at 1134.  The Court therefore declines to apply the doctrine of judicial estoppel to deny remand.

Alternatively, Defendants argue that Plaintiff's prior filing precludes her from showing that no other class action asserting the same or similar claims had been filed in the three years prior to the instant action, because her prior action and the present action

are identical. (Opp'n at 11-12.) Plaintiff does not dispute that the actions are identical but argues that her prior action does not preclude remand. (Pl's Reply in Supp. of Mot. ("Reply") at 3-5, ECF No. 20.)

"[T]he reason for the no prior class action prerequisite to remand is to ensure that controversies giving rise to multiple class actions be heard in federal court in one proceeding." *Kendrick v. Conduent State and Local Solutions, Inc.*, 910 F.3d 1255, 1261 (9th Cir. 2018). This purpose does not preclude the application of the local controversy exception here. *Kendrick* applied the local controversy exception against an analogous procedural background. There, the plaintiff initially filed in state court. *Id.* at 1260. After CAFA removal to federal court, the plaintiff voluntarily dismissed her individual claims, but the remainder of the putative class action remained pending. *Id.* at 1260-61. The same action was also filed in state court and the plaintiff became one of the plaintiffs therein. *Id.* at 1261. The defendant again removed to federal court under CAFA. *Id.* After removal, the later-filed action was joined with the prior-filed action as a related case. *Id.* The court held that the prior-filed action did not preclude a showing that no other class action asserting the same or similar claims had been filed in the preceding three years because the two actions were not proceeding on separate tracks. *Id.*

The same is true here. Plaintiff dismissed the initial action without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) (*see* Dismissal) before any Defendant made an appearance. She then refiled her action in state court. Defendants removed it to this Court under CAFA. The prior action is not continuing on a separate track so as to preclude the hearing of the same controversy in one proceeding. *See Kendrick*, 910 F.3d at 1261. Moreover, the effect of Plaintiff's Dismissal is to "leave[] the situation as if the [prior] action never had been filed." *City of S. Pasadena v. Mineta*, 284 F.3d 1154, 1157 (9th Cir. 2002).

Accordingly, Defendant's argument is rejected. Plaintiff's prior dismissed action does not preclude a finding under the local controversy exception that no other class action asserting the same or similar claims had been filed in the preceding three years.

### B.  In-State Injury and Citizenship of Class Members

Defendants do not dispute that the principal alleged injuries were incurred in California, as required by 28 U.S.C. § 1332(d)(4)(A)(i)(III).  They dispute, however, that Plaintiff has met her burden to show that greater than two-thirds of the putative class members are California citizens as required by subsection (i)(I).

Ordinarily the plaintiff must show by a preponderance of the evidence "that two-thirds of the putative class members are local state citizens ... if that question is disputed[.]" *Mondragon*, 736 F.3d at 881, 884.  This burden "should not be exceptionally difficult to bear[,]" *id.* at 886, and "should be considered with the goal of CAFA in mind: to keep interstate actions in federal court and truly intrastate actions in the state courts[,]" *Adams v. West Marine Prods., Inc.,* 956 F.3d 1216, 1223 (9th Cir. 2020).

"A pure inference regarding the citizenship of prospective class members may be sufficient if the class is defined as limited to citizens of the state in question[.]" *Mondragon,* 736 F.3d at 881-82.

Plaintiff defines the class as

> All individuals whose California voter registration information was distributed and sold by [GCS or i360] to other persons and/or entities without the prior express approval from the California Secretary of State or California elections officials on or after May 1, 2018 and until notice is disseminated to the Class[.]

(Compl. ¶ 128.)  By definition, the class includes only individuals registered to vote in California.  Aside from United States citizenship, one of the requirements for voter registration in California is California residency.  Cal. Elec. Code § 2000; Cal. Const. Art. II, § 2.  "'Residence' for voting purposes means a person's domicile." Cal. Elec. Code § 349(a).

The state of citizenship for federal jurisdiction purposes is controlled by federal common law.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1963). A person is a citizen of a state if he or she is a United States citizen and is domiciled in

the state. *Id.* "One's domicile is her permanent home – that is, where (i) she resides, (ii) with the intention to remain or to which she intends to return." *Adams*, 958 F.3d at 1221. The California Elections Code definition of domicile tracks the federal common law definition:

> The domicile of a person is that place in which his or her habitation is fixed, wherein the person has intention of remaining, and to which, whenever he or she is absent, the person has the intention of returning.

Cal. Elec. Code § 349(b). Accordingly, California registered voters are by definition limited to the citizens of California, as is the class definition in the Complaint.

Defendants argue that Plaintiff "does not establish the putative class of 2018 and 2019 California voters are still California citizens." (Opp'n at 15.) The Court disagrees. Plaintiff provided evidence that more than two-thirds of the proposed class are California citizens. The relevant date of citizenship is June 28, 2021, the date of removal. *See Mondragon*, 736 F.3d at 883 ("as of the date the case became removable"). As of February 10, 2021, the last date for which data was provided, there were more than 22 million registered voters in California. (Decl. of Elisa Pineda in Supp. of Pl.'s Mot. to Remand ("Pineda Decl.") ¶ 3 & Ex. 8 at 32, ECF No. 18-2.)[3] Since the beginning of the class period on May 1, 2018, the number of putative class members has increased from just over 19 million registered voters on May 21, 2018, to more than 22 million on February 10, 2021. (*Cf. id.* Ex. 8 at 2, 32; *see also id.* Ex. 8 at 5, 8, 11, 14, 17, 20, 23, 26, 29.) Plaintiff also points to a study by the California Policy Lab[4] to show that a relatively

---

[3] The Court takes judicial notice of the California Secretary of State records. *See Khoja v. Orexigen Therapeutics, Inc.*, 988 F.3d 988, 999 (9th Cir. 2018); Fed. R. Evid. 201.

[4] California Policy Lab is a non-partisan research institute based at the University of California. It uses University of California's Consumer Credit Panel for residential locations of all Californians with a credit history. (Pineda Decl. ¶ 4.) Defendants did not object to this evidence.

insignificant number of people left California during the relevant time when compared to the number of registered California voters during the same period. (Pineda Decl. ¶ 4 & Ex. 9.) This evidence is sufficient to show that more than two-thirds of the putative class members remained domiciled in California as of June 28, 2021. Alternatively, "a party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Mondragon*, 756 F.3d at 885.

All that is required of Plaintiff is to meet her burden by a preponderance. *Mondragon*, 736 F.3d at 884. Proof by a preponderance is a showing that a fact is more probably true than not true. 9th Cir. Model Civil Jury Instr. 1.6. Plaintiff has a "substantial cushion" given California voter registration qualification requirements and evidence that relatively few Californians left the state during the relevant time *See Adams,* 958 F.3d at 1223. To succeed, Defendants would have to present evidence that one-third of registered voters changed their domicile during the relevant time.

Defendants have not done so. Instead, they argue Plaintiff offers nothing more than "inferences and speculation," they question, without support, whether the putative class of 2018 and 2019 voters are still California citizens, and point to Plaintiff, who changed her address during the class period.[5] (Opp'n at 14-15.) They offer no evidence to counter Plaintiff's evidence or rebut the continuing domicile presumption. Accordingly, Plaintiff has met her burden.

### C. In-State Defendant

The local controversy exception requires that at least one in-state defendant be named in the complaint against whom significant relief is sought and "whose alleged

---

[5] "[T]he State Bar of California website currently lists a Tennessee address for Plaintiff." (Removal at 5.) A change in address is not sufficient to change domicile. *See, e.g.,* Cal. Elec. Code § 2021(a) ("A person who leaves his or her home to go into another state ... for temporary purposes merely, with the intention of returning, does not lose his or her domicile."); *see also, e.g., id.* §§ 2025, 2028.

conduct forms a significant basis for the claims asserted by the proposed plaintiff class." 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa)-(cc). Defendants do not dispute that GCS is a California citizen and that significant relief is sought against it. They dispute, however, that GCS conduct forms a significant basis for the claims.

The Court looks only to the complaint to determine wither the significant basis requirement is met. *Allen*, 821 F.3d at 1117; *see also id.* at 1122. "This inherently limits the amount of specificity required for a showing that the action falls within the local controversy exception." *Id.* at 1122; *see also id.* at 1117. Although the significant basis inquiry "necessarily implicates the merits of the case," this does not "turn a jurisdictional determination concerning the local defendant's alleged conduct into a mini trial on the merits of the plaintiff's claims." *Id.* at 1117-18; *see also id.* at 1119 & n.8. In deciding the significant basis issue, the Court considers the gravamen of Plaintiff's claims and compares the allegations made against the local defendant and out-of-state defendants. *Id.* at 1118, 1121.

Plaintiff's claims are directed against i360 and GCS. i360, an out-of-state Defendant, is in the business of harvesting data to build voter profiles. (Compl. ¶ 26.) It described itself to the Federal Election Commission ("FEC") as "a data warehouse and data resource vendor" selling "enhanced data" from its "library of over 190 million voters" serving, among other customers, "political committees, candidates, and political party committees." (Compl. Ex. B, Resp. of i360 to the Complaints in [Matter Under Review] 6888, filed with the FEC Jan. 6, 2015 ("FEC Resp.") at 2 & 15, ECF No. 1-5; *see also* Compl. ¶¶ 28-29, 117-118.) Its "library" is "available to be accessed and used by [i360] clients on their own prerogative." (FEC Resp. at 22; *see also* Compl. ¶¶ 33-35, 37.) i360 also had a contract with Data Trust, another commercial vendor offering "commoditized data," to give each of their clients access to the other's library of voter data. (Compl. ¶¶ 39-44.)

GCS was a private vendor to i360. (Compl. Ex. D, Jul. 23, 2018, letter from i360 to Cal. Voter Registration and Elections Dept., ECF No. 1-5; Compl. Ex. E, Aug. 22,

2018, letter from GCS to Cal. Sec. of State, ECF No. 1-5; Compl. ¶ 47.)  GCS applications to the California Secretary of State and related correspondence are indicative of the role GCS played to enable i360 to harvest California voter registration data.

GCS applied to the Secretary of State to obtain the voter registration file as a "private vendor" for "political research."  (*See* Compl. Ex. C, Jul. 18, 2018 Application: Cal. Voter Registration File Request ("Jul. 18, 2018 App."), ECF No. 1-5; Compl. ¶ 46.) It certified under penalty of perjury that it would use the data "for approved purposes, consistent with state law," would not sell or otherwise deliver it to anyone "without first obtaining a new application and receiving written authorization from the Secretary of State," and would "maintain [the data] in a secure and confidential manner[.]"  On July 23, 2018, i360 separately wrote to the Secretary of State requesting a letter of authorization to access voter registration data through GCS, representing that i360 would use the data in accordance with California law and "for non-commercial, political purposes only."  (Compl. Ex, D; *id.* ¶ 47.)  On August 22, 2018, GCS also wrote to the Secretary of State for a letter of authorization as a private vendor to i360, again representing that GCS and i360 would use voter data in accordance with California law, and further assured that

> GCS will use administrative, physical, and technical safeguards to protect the voter registration records.  Only authorized employees at GCS will have access to the data.  *GCS will contractually require any third party receiving the information to use the same safeguards.*

(Compl. Ex. E, ECF No. 1-5 (emphasis added); *see also* Compl. ¶ 48.)  Based on the foregoing representations and assurances, the Secretary of State released voter registration data to GCS on August 27, 2018.  (Compl. Ex. F, ECF No. 1-5.)  In the letter enclosing voter data, the Secretary of State included the following:

> You are approved to use the data only for the purposes stated in your application – **not for any type of commercial purpose**.  You must obtain

///

>authorization from the Secretary of State before this data can be used for any other purpose or before it can be transferred to another party.

(Compl. Ex, F (emphasis in original); *see also id.* ¶ 49.)

Making the same representations as before, GCS applied for and received voter data again in February and September 2019. (Pineda Decl. ¶ 2 & Exs. 1-7.) For example, GCS applied on July 30, 2019. (Compl. Ex. H, Jul. 30 2019 Application: California Voter Registration File Request ("Jul. 30, 2019 App."), ECF No. 1-5.) The July 30, 2019 Application contained the same certifications as the July 18, 2018 Application. On August 26, 2019, GCS responded to an inquiry from the Secretary of State, by assuring that i360, to whom GCS would transfer the information, "utilizes strict security and confidentiality measures[.]" (Compl. Ex. G, ECF No. 1-5; *see also* Compl. ¶ 52.)

On December 6, 2019, a government employee flagged the July 30, 2019 Application, noting that neither GCS nor i360 disclosed "who they will eventually share the data with." (Jul. 30, 2019 App.; Compl. ¶ 53.) On January 16, 2020, i360 wrote to the Secretary of State "to describe i360's activities as a transferee of the California voter registration file from [GCS] and include i360's clients that would access the California voter registration file through i360." (Compl. Ex. I, ECF No. 1-5; Compl. ¶ 54.) The letter describes i360 as a "data and technology company" that would use the information to assist in various "campaign efforts, voter education," and similar activities. (Compl. Ex. I; *id.* ¶¶ 54-55.) It also provided a list of nine individuals and organizations with whom i360 would share California voter data. (Compl. Ex. I; *id.* ¶ 56.) i360 did not disclose to the Secretary of State what it represented to the FEC, *i.e.,* that its "library" of voter data is available to its clients to use "in their own prerogative." (FEC Resp. at 22.)

Plaintiff alleges that Defendants sold California voter registration data to individuals and organizations which were not disclosed to the Secretary of State. (Compl. ¶¶ 78-83, 89-91, 112-115, 119.) Her theory of liability against i360 is that it operates by granting its clients access to confidential California voter registration data in

its possession without Secretary of State approval as required by law. (Compl. ¶ 93.) Her theory of liability against GCS is that GCS knew that this was i360 business model, but it provided i360 with confidential California voter data anyway. (Compl. ¶ 94.) Specifically, Plaintiff claims that GCS conspired with i360 to apply and obtain California voter data on i360's behalf. (*Id.; see also* ¶¶ 8, 152 (GCS "aided" i360's scheme to profit from i360's unlawful conduct).

Defendants argue that GCS conduct cannot form a significant basis for the claims. They contend Plaintiff cannot state a claim against GCS because it obtained permission from the Secretary of State to distribute voter data to i360. (Opp'n at 8.) Aside from the fact that Defendants "inappropriately blur[] the distinction between a jurisdictional inquiry and a merits determination under Federal Rule of Civil Procedure 12(b)(6)," *Allen*, 821 F.3d at 1119, the argument ignores the allegations that GCS knowingly enabled and conspired with i360. Along the same lines, Defendants also argue that Plaintiff merely "conflates" her claim against i360 with GCS, maintaining that only i360 distributed voter information to third parties. (Opp'n at 14.) This argument misses Plaintiff's independent theory of liability against GCS, *i.e.*, GCS's knowing agreement to enable and enabling of i360's alleged misconduct. Defendants' arguments are unavailing.

GCS is only one of two Defendants in this case. All four causes of action are asserted equally against both of them. Taking the allegations in the complaint at face value, as the Court must, *see Allen*, 821 F.3d at 1119, the allegations that GCS knowingly enabled and conspired with i360 in its unlawful use of California voter registration data raise an important ground for Plaintiffs' claims. The complaint raises a significant colorable claim against GCS. *See id.* at 1118 (discussing *Benko v. Quality Loans Serv. Corp.*, 789 F.3d 1111 (9th Cir. 2015)); *see also id.* at 1121.

///

**IV.     Conclusion**

For the foregoing reasons, Plaintiff met her burden to show that the local controversy exception applies in this case.  Her motion is granted.  This action is remanded to the Superior Court of the State of California for the County of San Diego.

**IT IS SO ORDERED.**

Dated:  March 16, 2022

Hon. M. James Lorenz
United States District Judge